**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**MOTION OF DEBTORS FOR ENTRY OF**
**INTERIM AND FINAL ORDERS (I) AUTHORIZING**
**THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING AND**
**(B) UTILIZE CASH COLLATERAL, (II) GRANTING LIENS AND SUPERPRIORITY**
**ADMINISTRATIVE EXPENSE CLAIMS, (III) MODIFYING THE AUTOMATIC STAY,**
**(IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") state

as follows in support of this motion.[2]  In further support of this motion, the Debtors respectfully

submit the *Declaration of Amy Lee in Support of the Motion of Debtors for Entry of Interim and*

*Final Orders (I) Authorizing the Debtors To (A) Obtain Postpetition Financing and (B) Utilize*

*Cash Collateral, (II) Granting Liens And Superpriority Administrative Expense Claims,*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are:  Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343).  The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2]  By this motion, the Debtors also seek continued use of the Cash Collateral (as defined in the Interim Order attached hereto as Exhibit A) as previously approved by this Court in the *Interim Order (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 82] (the "Cash Collateral Order").  As the Interim Order will supersede the Cash Collateral Order upon its entry by the Court, the Debtors incorporate their prior request for relief made in the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 26], as supported by the *Declaration of William C. Kosturos in Support of the Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Use Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "Kosturos Declaration") attached as Exhibit B thereto, explicitly herein by reference.

*(III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* filed contemporaneously herewith (the "Lee Declaration"), and the *Declaration of David Salemi in Support of the Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Sale of Going-Concern Assets Free and Clear of all Liens, Claims, Encumbrances, and Other Interests and (II) Granting Related Relief* filed contemporaneously herewith (the "Salemi Declaration"), both of which are incorporated by reference herein.[3]

### Preliminary Statement

1.      These cases are at a critical juncture.  The Debtors worked tirelessly following the Petition Date to secure an actionable going-concern transaction, and they were successful.  As set forth in greater detail in the Sale Motion,[4] the Debtors executed an asset purchase agreement (the "Asset Purchase Agreement," and the transaction contemplated thereby, the "Sale Transaction") with AWS Claire's LLC (the "Purchaser" or the "DIP Lender") on August 18, 2025.  The Asset Purchase Agreement contemplates, among other things, the Purchaser's acquisition of certain assets of the Debtors, including (a) certain leases for retail locations and a distribution center (the "Go-Forward Stores"), (b) all inventory and other tangible personalty and/or improvements to real property, associated with the Go-Forward Stores, (c) the Debtors' intellectual property assets, and (d) certain other assets and assumed liabilities of the Debtors.

---

[3]    A detailed description of the Debtors and their business, including the facts and circumstances supporting the motion, is set forth in the *Declaration of Chris Cramer, Chief Executive Officer, Chief Operating Officer, and Chief Financial Officer of Claire's Holdings LLC and Certain of Its Affiliates in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 27] (the "First Day Declaration").  Capitalized terms used but not defined in this motion shall have the meanings ascribed to them in the First Day Declaration, the Cash Collateral Order, the Interim Order, the DIP Term Sheet, the Salemi Declaration, or the Lee Declaration, as applicable (each as defined herein).

[4]    "Sale Motion" means *Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Sale of Going-Concern Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests and (II) Granting Related Relief*, filed contemporaneously herewith.

2.    A key component of the Asset Purchase Agreement is the requirement that the Debtors maintain a certain level of inventory in the Go-Forward Stores.  Following hard-fought and arms'-length negotiations, the Debtors reached an agreement with the Purchaser whereby the Purchaser agreed to provide a $22.5 million deposit, which will be accessible to the Debtors prior to closing of the Sale Transaction to fund certain agreed-upon inventory purchases (the "DIP Facility").

3.    The full amount of the DIP Facility will be credited against the purchase price at closing.  The DIP Facility will be secured by (a) a junior lien on the ABL Priority Collateral, such that the Prepetition ABL Lenders are not primed with respect to the ABL Priority Collateral, and (b) with the consent of the Prepetition Secured Parties, a first priority lien on the Term Loan Priority Collateral.  No interest or fees will become due and owing under the DIP Facility *unless* the Debtors, in their business judgment, elect to pursue an alternative transaction and as a result, repay the DIP Facility in full prior to the Maturity Date.

4.    Immediate access to the DIP Facility is critical to the Debtors' ability to consummate the Sale Transaction.  The Sale Transaction requires the Debtors to stop liquidations at the Go-Forward Stores while simultaneously restarting inventory shipments and purchase orders.  The Debtors require incremental liquidity to fund ordinary course operations and the acquisition of new inventory.  The DIP Facility is integral to this funding need.  Without access to the DIP Facility, the Debtors, their creditors, and their estates would suffer irreparable harm as the Debtors will not be able to fund their operations and acquire the inventory necessary to close the Sale Transaction, and instead will be forced to continue with a full portfolio liquidation.

5.    Time is of the essence to restart inventory purchases.  Any delay in obtaining Court approval of the DIP Facility will imperil the Debtors' ability to comply with the closing conditions

for the Sale Transaction.  Entry into the DIP Facility is necessary to preserve and maximize the

value of their estates for the benefit of all stakeholders, to save jobs, and to effectuate the Sale

Transaction.  The Court should authorize entry into the DIP Facility on the terms set forth in the

DIP Term Sheet.

## **Relief Requested**

6.    The Debtors request entry of an interim order, substantially in the form attached

hereto as **Exhibit A**, and a final order (the "Interim Order" and "Final Order,"[5] respectively and

together, the "DIP Orders"):

    a.    authorizing Claire's Holdings LLC, in its capacity as borrower (the "DIP Borrower"), to obtain postpetition financing, and for each of the other Debtors to guarantee unconditionally (the Debtors, other than the DIP Borrower, the "DIP Guarantors" and together with the DIP Borrower, the "DIP Loan Parties"), on a joint and several basis, the DIP Borrowers' obligations in connection with a secured credit line (the "DIP Facility" and the loans provided thereunder, the "DIP Loans") in the aggregate principal amount of $22.5 million, all of which shall be made available to be drawn upon entry of the Interim Order, subject to certain conditions set forth in that certain Debtor-In-Possession Credit Facility Term Sheet attached to the Interim Order as Exhibit 1 (as amended, restated, amended and restated supplemented, or otherwise modified from time to time, the "DIP Term Sheet" and, together with all other documents and instruments that may reasonably be requested by the DIP Lender in connection with the DIP Facility (in each case, as amended, restated, supplemented, waived, or otherwise modified from time to time in accordance with the terms thereof and hereof) the "DIP Loan Documents"), by and among the Debtors and AWS  Claire's, LLC (the "DIP Lender");

    b.    authorizing the DIP Borrower and the DIP Guarantors to enter into any DIP Loan Documents, and to perform all such other and further acts as may be required in connection therewith;

    c.    granting to the DIP Lender valid, enforceable, non-avoidable and automatically perfected liens pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code on the DIP Collateral, on the terms described in the Interim Order;

---

[5]    A proposed Final Order will be posted to the docket prior to the Final Hearing.

d.    authorizing the Debtors to use Cash Collateral solely in accordance with the Interim Order and the Approved Budget;

e.    granting adequate protection to the Prepetition Secured Parties for their interests in the Prepetition Collateral, including Cash Collateral;

f.    approving certain stipulations by the Debtors with respect to the Prepetition Credit Documents and the Prepetition Collateral as set forth in the Interim Order;

g.    subject to entry of the Final Order granting such relief, waiving (a) the Debtors' right to surcharge the Prepetition Collateral and the Adequate Protection Collateral (together, the "Collateral") pursuant to section 506(c) of the Bankruptcy Code and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code;

h.    subject to entry of the Final Order granting such relief, waiving the equitable doctrine of "marshaling" and other similar doctrines with respect to the Collateral for the benefit of any party other than the DIP Lender or the Prepetition Secured Parties;

i.    vacating and modifying the automatic stay under section 362 of the Bankruptcy Code to the extent set forth herein and as necessary to permit the Debtors and their affiliates, the DIP Lender, and the Prepetition Secured Parties to implement and effectuate the terms and provisions of the DIP Loan Documents and the Interim Order, and, upon entry, the Final Order, and to deliver any notices of termination described below and as further set forth in the Interim Order;

j.    waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of the Interim Order and, upon entry, the Final Order;

k.    scheduling a final hearing (the "Final Hearing") to consider the relief requested in the motion and entry of the Final Order, and approval of the form of notice with respect to the Final Hearing; and

l.    granting related relief.

## Jurisdiction and Venue

7.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2),

and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

8.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9.      The statutory bases for the relief requested herein are sections 105, 361, 362, 363, 364, 503, 507, and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1, 4001-2, 9006-1, and 9013-1.

## Background

10.     On August 6, 2025 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On August 7, 2025, the Court entered an order [Docket No. 79] authorizing the procedural consolidation and the joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. On August 15, 2025, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 154] (the "Committee"). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

## Concise Statement of Material Terms of the Interim Order

11.     The terms of the Debtors' access to the DIP Facility, as reflected in the Interim Order, were extensively negotiated with the Purchaser and are the most favorable terms that the Debtors were able to obtain under the circumstances. The below chart contains a summary of the

material terms of the proposed DIP Facility, together with references to the applicable sections of the relevant source documents, as required by Bankruptcy Rules 4001(b)(1)(B) and 4001(c)(1)(B) and Local Rule 4001-2.

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| **Borrower**<br>4001(c)(1)(B) | Claire's Holdings LLC ("Borrower").<br>*See* DIP Term Sheet, "Borrower." |
| **Guarantors**<br>Bankruptcy Rule<br>4001(c)(1)(B) | Each entity which guarantees the Prepetition Priority Term Loan Credit Agreement<br>*See* DIP Term Sheet, "Guarantors." |
| **DIP Lender**<br>Bankruptcy Rule<br>4001(c)(1)(B) | AWS Claire's, LLC.<br>*See* DIP Term Sheet, "DIP Lender." |
| **Term**<br>Bankruptcy Rule<br>4001(b)(l)(B)(iii),<br>4001(c)(1)(B)<br><br>Local Rule<br>4001-2(a)(i) | Subject to Section 2.2 of the Asset Purchase Agreement and the DIP Orders, the DIP Facility shall be available from the Closing Date (as defined in the DIP Term Sheet) to the Maturity Date (as defined in the DIP Term Sheet), unless terminated earlier pursuant to the terms thereof or the DIP Orders.<br>*See* DIP Term Sheet, "Availability Period." |
| **Commitment**<br>Bankruptcy Rule<br>4001(c)(1)(B)<br><br>Local Rule<br>4001-2(a)(i)(A) | $22,500,000.00<br><br>*See* DIP Term Sheet, "DIP Facility"; Interim Order ¶ 2. |
| **Conditions of Borrowing**<br>Bankruptcy Rule<br>4001(c)(1)(B)<br><br>Local Rule<br>4001-2(a)(i)(E) | The obligation of the DIP Lender to fund the DIP Proceeds Account with the full DIP Facility Amount will be subject solely to satisfaction or written waiver, by the DIP Lender, of each of the following conditions precedent:<br><br>(i)      the Debtors shall have delivered to the DIP Lender a Notice of Borrowing in connection with such draw request no later than 11:00 A.M. (Eastern Time) on the Closing Date (or such later time as the DIP Lender may agree to);<br><br>(ii)     the Interim DIP Order shall have been entered by the Bankruptcy Court (after a hearing on notice to all parties having or asserting a lien on all or any portion of the DIP Collateral) and shall not have been reversed, modified, amended, stayed or vacated, or in the case of any modification or amendment, modified or amended in any manner without the consent of the DIP Lender and the Borrower;<br><br>(iii)    no Default or Event of Default under the DIP Term Sheet or DIP Termination Event under the applicable DIP Order shall have occurred and be continuing on the Closing Date or shall exist immediately after giving effect to the DIP Loan to be made on the Closing Date; and<br><br>(iv)    subject to Bankruptcy Court approval, (a) each Debtor shall have the organizational power and authority to make, deliver, and perform its obligations under the DIP Term Sheet and the applicable Interim DIP Order, and (b) no consent or authorization of, or filing |

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| | with, any governmental authority shall be required in connection with the execution, delivery or performance by any Debtor, or for the validity or enforceability in accordance with its terms against any Debtor, of the DIP Term Sheet and the Financing except for consents, authorizations, and filings which shall have been obtained or made and be in full force and effect and except for such consents, authorizations, and filings, the failure to obtain or perform could not reasonably be expected to cause a Material Adverse Effect. *See* DIP Term Sheet, "Conditions Precedent to the Interim DIP Loans." |
| **Interest Rates** Bankruptcy Rule 4001(c)(1)(B) Local Rule 4001-2(a)(i)(B) | Interest will be payable on the unpaid principal amount of all outstanding DIP Loans at a rate per annum equal to 5.00% per annum. Interest with respect to any DIP Loan shall be payable in kind and not in cash, with such interest amount being automatically added to, and made part of, the outstanding principal amount of DIP Loans, in each case on the last Business Day of each month; *provided*, that accrued interest shall only become due and owing in cash in connection with the payment of any Prepayment Penalty (as defined below) or upon the Maturity Date of the DIP Facility (except in the event the Closing (as defined in the Asset Purchase Agreement) occurs on the Maturity Date). For the avoidance of doubt, no accrued interest shall be due and owing, in kind nor in cash, if the Closing (as defined in the Asset Purchase Agreement) occurs. All interest and fees under the DIP Term Sheet shall be calculated on the basis of a 360-day year for the actual number of days elapsed. All accrued interest which for any reason has not therefore been paid shall be paid in full on the date on which the final principal amount of the DIP Loans is repaid unless otherwise provided in DIP Orders. *See* DIP Term Sheet, "Interest Rate"; Interim Order ¶2(b). |
| **Use of Proceeds** Bankruptcy Rule 4001(b)(l)(B)(ii) Local Rule 4001-2(a)(i) | In accordance with the terms of the Asset Purchase Agreement and the DIP Orders, including to primarily fund the purchase of Inventory for the Business (including (a) any Inventory in transit but for which Seller has not yet obtained title or possession and (b) actual freight and duty invoices associated with such Inventory) upon notification of such intended purchases to Purchaser, subject to the terms and conditions of section 2.2 of the Asset Purchase Agreement, including written approval (email being sufficient) from the Purchaser in accordance therewith. Notwithstanding anything to the contrary herein or in any DIP Order, the use of proceeds of the DIP Facility shall be limited as set forth more fully in section 2.2(b) of the Asset Purchase Agreement and no funds advanced by the DIP Lender shall be used for any other purpose including, but not limited to, funding of the Carve-Out or Carve-Out Reserves. *See* DIP Term Sheet, "Use of Proceeds"; Interim Order ¶ 22. |
| **Repayment Features** Local Rule 4001-2(a)(i)(E) | In accordance with the Asset Purchase Agreement, the Debtors may in their sole option, prior to the Closing (as defined in the Asset Purchase Agreement) upon notice to the DIP Lender, prepay the DIP Loans in full in cash (the "Prepayment"). Upon the Closing (as defined in the Asset Purchase Agreement), notwithstanding anything to the contrary in the DIP Term Sheet, in the DIP Orders, or in the Sale Order, the DIP Loans shall be automatically credited against the Purchase Price, and shall be deemed repaid in full and final satisfaction of all liens, claims, encumbrances, and other interests, and shall be deemed released and discharged by the DIP Lender in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any cause of action, directly or derivatively, by, through, for, or because of the DIP Lender, from any and all claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any |

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| | derivative claims, asserted or assertable on behalf of the DIP Lender on account of the DIP Loans. |
| | The Debtors shall pay to the DIP Lender a prepayment penalty in an amount equal to $2,580,000 (the "Prepayment Penalty") if the Closing (as defined in the Asset Purchase Agreement) has not occurred due to Seller's termination of the Asset Purchase Agreement pursuant to section Sections 8.1(g) or (h) thereof. |
| | *See* DIP Term Sheet, "Prepayment," "Prepayment Penalty." |
| **Budget**<br>Bankruptcy Rule 4001 (c)(1)(B)<br><br>Local Rule 4001-2(a)(i)(E) | The Debtors will use the proceeds of the DIP Facility in accordance with the approved budget (the "Approved Budget") and each subsequent Approved Budget.<br><br>*See* Interim Order ¶ H(xiv). |
| **Events of Default**<br>Bankruptcy Rule 4001(c)(l)(B)<br><br>Local Rule 4001-2(a)(i)(M) | Each of the following shall constitute an "Event of Default" (and any event, act, or condition set forth under this heading entitled "Events of Default" that with notice or lapse of time, or both, as set forth below under this heading entitled "Events of Default" would constitute an Event of Default shall constitute a "Default"):<br><br>(i)      the Court does not enter an Interim DIP Order or Final DIP Order approving this DIP Term Sheet on the terms set forth herein or on terms acceptable to the DIP Lender in their sole discretion; *provided* that with respect to provisions in the Interim DIP Order or Final DIP Order not directly applicable to the DIP Facility or the DIP Term Sheet, such provisions shall be reasonably acceptable to the DIP Lender;<br><br>(ii)     the Court does not enter the Interim DIP Order on or before August 22, 2025;<br><br>(iii)    the Court shall have entered an order, or the Debtors shall have filed a motion or application seeking an order, or the Debtors fail to timely contest a motion or application filed by another party seeking an order, (i) converting one or more of the Chapter 11 Cases of a Debtor to a case under chapter 7 of the Bankruptcy Code, (ii) appointing an examiner with expanded powers beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code, a trustee, or a responsible officer, in one or more of the Chapter 11 Cases of a Debtor, or (iii) dismissing the Chapter 11 Cases;<br><br>(iv)     the entry of an order appointing a trustee, receiver, or examiner with expanded powers with respect to any of the Debtors;<br><br>(v)      the Debtors shall attempt to invalidate, reduce, or otherwise impair the DIP Loans, the DIP Liens, or the DIP Obligations;<br><br>(vi)     the creation of any liens on DIP Collateral that are *pari passu* or senior to the liens in favor of the DIP Lender (except the Carve-Out and other than the Prepetition ABL Liens and the Adequate Protection Liens of the ABL Secured Parties with respect to the ABL Priority Collateral)<br><br>(vii)    the lifting of the Automatic Stay with respect to or the exercise of any remedies against any portion of the DIP Collateral with a fair value in excess of $1,000,000;<br><br>(viii)   termination of the Debtors' right to use Cash Collateral; |

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| | (ix)    the expenditure by any of the Debtors of any DIP Loans other than in accordance with the Interim Order or the DIP Loan Documents;<br><br>(x)    the Debtors shall have used any portion of the DIP Loans not in compliance with the Interim Order;<br><br>(xi)    failure by the Debtors to be in compliance in all material respects with provisions of this DIP Term Sheet (subject to applicable grace periods as set forth herein, in the Asset Purchase Agreement or in the DIP Orders);<br><br>(xii)    a material breach by the Debtors of any DIP Order with respect to the DIP Lender;<br><br>(xiii)    any request made to the Court by the Debtors (or the Debtors' failure to contest any request made by a third party) for the reversal, modification, amendment, stay, reconsideration or vacatur of any DIP Order in a manner adverse to the DIP Lender;<br><br>(xiv)    the stay, reversal, vacatur, recission. or other modification of any DIP Order in a manner materially adverse to the DIP Lender;<br><br>(xv)    the Court shall not have entered the Final DIP Order (in form and substance acceptable to the DIP Lender with respect to the items governing the DIP Facility and reasonably acceptable as to all other provisions) on or prior to September 10, 2025;<br><br>(xvi)    the Sale Transaction shall not be approved by an order of the Court, in form and substance acceptable to the DIP Lender, on or prior to September 10, 2025, or the motion to sell the assets of the Debtors pursuant to the Sale Transaction shall be denied by the Court;<br><br>(xvii)    any of the Debtors file any motions, pleadings, briefs, or support any other parties in furtherance of any event that would constitute an Event of Default;<br><br>(xviii)    termination of any DIP Order with respect to the DIP Facility, other than as a result of the satisfaction in full of the DIP Obligations;<br><br>(xix)    the Closing shall not have occurred on or before September 26, 2025; and<br><br>(xx)    failure to pay (A) principal in full when due, including without limitation, on the Maturity Date, or (B) interest or other DIP Obligations in full within three (3) Business Days after the same becomes due.<br><br>*See* DIP Term Sheet, "Events of Default." |
| **Carve Out**<br>Bankruptcy Rule 4001(c)(1)(B)<br><br>Local Rule 4001-2(a)(i)(F) | The Interim Order provides a "Carve Out" of certain statutory fees and allowed professional fees of the Debtors pursuant to section 1103 of the Bankruptcy Code.<br><br>*See* DIP Term Sheet, "Annex B"; Interim Order ¶ 13. |
| **Liens and Priorities**<br>Bankruptcy Rule 4001(c)(l)(B)(i) | The liens contemplated by the DIP Term Sheet will follow the priority set forth in ¶ 4 of the Interim Order.<br><br>*See* DIP Term Sheet, "Priority"; Interim Order ¶ 4. |

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| Local Rule 4001-2(a)(i)(D) and (G), (U) | |
| **Release**<br><br>Bankruptcy Rule 4001(c)(1)(B)(viii) | Effective as of the date of entry of the Interim Order, no claims or causes of action held by the Debtors or their estates exist against, or with respect to, the DIP Lender or any of their respective Representatives (in each case, in their capacity as such). Effective as of the date of entry of the Interim Order, each of the Debtors and each of the Debtors' estates, in each case on its own behalf and on behalf of its and their respective past, present and future predecessors, successors, heirs, subsidiaries, Representatives, and assigns, including without limitation any trustee and the Creditors' Committee, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits the DIP Lender (solely in its capacity as DIP Lender) and each of its respective Representatives (in such Representative's capacity) (collectively, the "DIP Released Parties," and together with the Prepetition Released Parties, the "Released Parties"), from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature or description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, upon contract or tort or under any state or federal law (including without limitation the Bankruptcy Code) or otherwise (collectively, the "DIP Released Claims," and together with the Prepetition Released Claims, the "Released Claims"), in each case arising out of or related to (as applicable) the DIP Loan Documents, the obligations owing and the financial obligations made thereunder, and the negotiation thereof and of the transactions and agreements reflected thereby, and the obligations and the financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or hereafter can or may have against any of the DIP Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of the Interim Order. For the avoidance of doubt, nothing in the Interim Order shall release the DIP Lender from any claims, action, cross-claim, third-party claim, controversy, dispute, demand, obligation, liability or cause of action of any kind in each case arising out of or related to (as applicable) the Sale Order, the Sale Transaction or Asset Purchase Agreement.<br><br>*See* Interim Order ¶ H. |
| **Waiver/Modification of Applicability of Non-bankruptcy Law Relating to Perfection or Enforceability of Liens**<br><br>Bankruptcy Rule 4001(c)(l)(B)(vii) | The Interim Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens, and, subject to the Challenge Period, the Prepetition Liens and the Adequate Protection Liens, and the other security interests granted in the Interim Order, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, execution, filing, registration, recording, continuation, or possession.<br><br>*See* Interim Order ¶ 11. |
| **Waiver/Modification of the Automatic Stay**<br><br>Bankruptcy Rule 4001(c)(1)(B)(iv) | Pursuant to the Interim Order, the automatic stay provisions of section 362 of the Bankruptcy Code are modified to the extent necessary to implement and effectuate the terms of the Interim Order.<br><br>*See* Interim Order ¶ 35. |

| Bankruptcy Code | Summary of Material Terms |
|---|---|
| **Joint Liability**<br><br>Local Rule 4001-2(a)(i)(J) | The DIP Loan Parties are jointly and severally liable for the DIP Obligations and all other obligations thereunder.<br><br>*See* Interim Order ¶ 2(d). |
| **Limitation on Remedies Hearing**<br><br>Local Rule 4001-2(a)(i)(T) | The Interim Order does not contain any provisions that specifically limit what parties in interest may raise at any emergency hearing scheduled during the DIP Remedies Notice Period. |
| **Marshaling**<br><br>Local Rule 4001-2(a)(i)(X) | Subject to entry of the Final Order granting such relief, in no event shall the DIP Lender, Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent, or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral.  Further, subject to entry of the Final Order granting such relief, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to each of the Prepetition ABL Agent, the Prepetition Existing Term Loan Agent, the Prepetition Priority Term Loan Agent or the Prepetition Secured Parties with respect to proceeds, products, offspring or profits of any DIP Collateral or Prepetition Collateral.<br><br>*See* Interim Order ¶ 17. |

## Explanation for Inclusion of Significant Provisions Pursuant to Local Rule 4001-2(a)(i)

### I.    The Significant Provisions Are Appropriate and Justified Under the Circumstances of These Chapter 11 Cases.

12.    Local Rule 4001-2(a)(i) requires that the Debtors explain the reason for including certain significant provisions described in Local Rules 4001-2(a)(i)(N)–(X) (collectively, the "Significant Provisions").[6]  The Debtors believe that each of the Significant Provisions, as well as the Carve-Out, is justified and necessary in the context and circumstances of these chapter 11 cases.

### A.    The Scope of the Carve Out Is Appropriate (Local Rule 4001-2(a)(i)(F)).

13.    The proposed DIP Liens (as defined in the Interim Order) are subject to the Carve-Out.  Without the Carve-Out, the Debtors and other parties in interest may be deprived of

---

[6]    Local Rules 4001-2(a)(i)(N), (O), and (R) are not applicable to the Interim Order.  In addition, Local Rule 4001-2(a)(i)(P) does not apply and Local Rules 4001-2(a)(i)(U)–(X) are only applicable upon entry of the Final Order.

certain rights and powers, including the right to select their own professionals, because the services for which professionals may be paid in these chapter 11 cases would be restricted. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (observing that courts insist on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced"). Moreover, the Carve-Out serves to enhance the value of these estates because, in the absence of a carveout, "nobody will represent the debtor or the committee and the case will fall apart, further diminishing the overall value of the secured creditor's collateral[.]" *In re Molycorp, Inc.*, 562 B.R. 67, 76 n. 39 (Bankr. D. Del. 2017).

14.     The Carve-Out does not directly or indirectly deprive the Debtors' estates or other parties in interest of possible rights and powers. Instead, the Carve-Out protects against administrative insolvency on account of process costs during the course of these chapter 11 cases by ensuring that assets remain for any payment owing to the Clerk of the Court, payable to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930, and professional fees of the Debtors and any statutory committee. But for the Carve-Out, such claims may find themselves subordinate to another secured creditor. Courts in this district have routinely approved debtor-in-possession financing arrangements with such a provision. *See, e.g., In re At Home Grp. Inc.*, No. 25-11120 (JKS) (Bankr. D. Del. July 14, 2025) (providing that postpetition liens granted to the DIP agent for the benefit of the DIP lender would be subject and subordinate to a carve out for allowed professional fees); *Liberated Brands LLC*, No. 25-10168 (JKS) (Bankr. D. Del. Feb. 28, 2025) (same); *In re Am. Tire Distribs., Inc.*, No. 24-12391 (CTG) (Bankr. D. Del. Nov. 18,

2024) (same); *In re Wheel Pros, Inc.*, No. 24-11939 (JTD) (Bankr. D. Del. Oct. 15, 2024); *In re Vyaire Med., Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. June 10, 2024) (same).[7]

    **B.    The Provisions Immediately Approving All Terms and Conditions of the DIP Loan Documents Are Appropriate.**

    15.    Local Rule 4001-2(a)(i)(R) requires explicit disclosure of provisions that immediately approve all terms and conditions of the underlying loan agreement. *See* Local Rule 4001-2(a)(i)(R). Here, the Interim Order provides that upon entry, the parties to the DIP Facility are authorized to enter into their respective obligations and that, upon execution, the DIP Loan Documents shall constitute valid and binding obligations of the Debtors. Moreover, to the extent the DIP Loan Documents conflict with the Interim Order, the Interim Order controls. *See* Interim Order ¶ 2. This provision is necessary and appropriate for the Debtors to access the DIP Facility and to provide all parties with the assurances that the Debtors' postpetition entry into the DIP Facility is valid. Without this provision, the Debtors would be unable to access the DIP Facility on an interim basis. As a matter of standard practice, courts in this district have routinely entered orders approving the terms and conditions of the underlying loan agreements in connection with postpetition financing. *See, e.g.*, *In re At Home Grp. Inc.*, No. 25-11120 (JKS) (Bankr. D. Del. July 14, 2025) (authoring parties to the postpetition financing facility to execute, deliver, and perform under all loan documentation related to the postpetition financing facility and approving the terms and conditions of such documentation); *Liberated Brands LLC*, No. 25-10168 (JKS) (Bankr. D. Del. Feb. 28, 2025) (same); *In re Am. Tire Distribs., Inc.*, No. 24-12391 (CTG) (Bankr. D. Del. Nov. 18, 2024) (same); *In re Wheel Pros, Inc.*, No. 24-11939 (JTD) (Bankr. D. Del. Oct. 15, 2024); *In re Vyaire Med., Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. June 10, 2024) (same).

---

[7]    Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request of the Debtors' proposed counsel.

**C.    The Provisions Modifying the Automatic Stay, Providing for a Remedies Notice Period, and Providing for a Default Notice Hearing Are Appropriate (Local Rules 4001-2(a)(i)(S), (T)).**

16.    Local Rules 4001-2(a)(i)(S) and (T) require explicit disclosure of provisions that modify the automatic stay upon a termination event without a remedies notice period of at least five (5) days and provisions that seek to limit what parties in interest may raise at an emergency hearing scheduled during the remedies notice period.  *See* Local Rules 4001-2(a)(i)(S) and (T). Here, the Interim Order provides for a five (5)-day remedies notice period (the "DIP Remedies Notice Period") for any Event of Default (as defined in the DIP Term Sheet) that has not been waived by the DIP Lender under the DIP Term Sheet (or applicable Loan Documents).  *See* Interim Order ¶ 11(b).  Upon the delivery of a DIP Termination Notice, the Debtors, the Creditors' Committee, and/or any party in interest shall be entitled to seek an emergency hearing with the Court for the purpose of contesting whether, in fact, an Event of Default has occurred and is continuing, *provided* that if a request for any such hearing is made prior to the end of the DIP Remedies Notice Period, the DIP Remedies Notice Period shall be continued until the Court hears and rules with respect thereto.  Subject to the DIP Remedies Notice Period, the DIP Lender may (i) terminate the DIP Facility and any DIP Loan Document as to any future liability or obligation of the DIP Loan Parties but without affecting any of the DIP Obligations or the DIP Liens securing such DIP Obligations; (ii) declare all DIP Obligations to be immediately due and payable; and (iii) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains under the DIP Facility.  *See* Interim Order ¶ 11.  The automatic stay pursuant to section 362 of the Bankruptcy Code shall be modified and vacated to the extent necessary to permit (i) upon the occurrence and during the continuance of an Event of Default, the DIP Lender to (x) deliver a DIP Termination Notice and (y) subject to the Debtors' permitted uses of Cash Collateral during the DIP Remedies Notice Period, terminate any

use of Cash Collateral and (ii) such other actions as described in the foregoing, provided that during the DIP Remedies Notice Period, unless the Court orders otherwise, the automatic stay (to the extent applicable) shall remain in effect.  *See* Interim Order ¶ 11.  Provisions of this kind are ordinary and standard features of debtor-in-possession financing arrangements and routinely approved by courts in this district.  *See, e.g.*, *In re At Home Grp. Inc.*, No.  25-11120 (JKS) (Bankr. D. Del. July 14, 2025) (modifying the automatic stay and providing for a remedies notice period and default notice hearing to the extent necessary under the terms of the postpetition financing facility); *Liberated Brands LLC*, No. 25-10168 (JKS) (Bankr. D. Del. Feb. 28, 2025) (same); *In re Am. Tire Distribs., Inc.*, No. 24-12391 (CTG) (Bankr. D. Del. Nov. 18, 2024) (same); *In re Wheel Pros, Inc.*, No. 24-11939 (JTD) (Bankr. D. Del. Oct. 15, 2024); *In re Vyaire Med., Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. June 10, 2024) (same).

17.     In light of the foregoing, the Debtors submit that the Significant Provisions are appropriate under the facts and circumstances of these chapter 11 cases.  Accordingly, the Significant Provisions in the Interim Order should be approved.

### The DIP Facility

**I.     The Debtors' Need to Access the DIP Facility.**

18.     The Debtors require access to additional liquidity to fund cash outlays necessary to preserve the viability of the Debtors' business and bridge to closing the Sale Transaction.  The Debtors implemented aggressive cash conservation measures in the weeks and months leading up to the Petition Date to extend their runway to market their assets and progress negotiations regarding a transaction.  These measures included slowing down or ceasing acquisitions of new inventory.  Under the terms of the Asset Purchase Agreement, the Debtors must maintain certain inventory levels to ensure the close of the Sale Transaction.  The DIP Lender has agreed to fund the DIP Facility immediately in order to restart the Debtors' supply chain.

19.     The Debtors and their advisors analyzed how much postpetition financing would be required to operate the Debtors' business as a going concern and consummate the proposed sale to the Purchaser.  *See* Lee Decl. ¶ 7.  The Debtors determined that cash on hand was insufficient and $22.5 million in incremental liquidity was required.  *Id*.  Specifically, access to the proposed DIP Facility will provide the Debtors with sufficient funds to restock inventory and allow the Debtors to execute the Sale Transaction.  *Id*.

20.     Without access to the incremental liquidity provided by the DIP Facility, it is unclear whether the Debtors will be able to comply with the conditions to close under the Asset Purchase Agreement, which likely would result in irreparable harm to the Debtors, their estates, and all parties in interest. *See* Lee Decl. ¶ 8.

**II.     Alternative Sources of Financing Are Not Readily Available.**

21.     The Debtors do not have any alternative sources of financing readily available with terms better than those included in the DIP Facility.  The Debtors approached the Prepetition Secured Parties regarding the provision of new capital, and, while significant relief and concessions were provided by the Prepetition Secured Parties, they were unwilling to provide new capital.

22.     The Debtors instead looked to Purchaser to fund the liquidity need.  Following hard-fought negotiations with Purchaser and the Prepetition Secured Parties, the Purchaser agreed to provide the necessary financing on a junior basis to the Prepetition ABL Lenders.  Interest payable-in-kind will accrue during the interim period but, importantly, no interest is payable—in kind nor in cash—unless the Debtors determine in their business judgment to pursue an alternative transaction and, as a result, repay the DIP Loans in cash in full.  As a result of such repayment, the Debtors would also be required to pay the Prepayment Penalty.  Importantly, any determination by the Debtors to pursue an alternative transaction would take into consideration these payments.

As discussed in the Salemi Declaration, after an exhaustive pre- and postpetition sale and marketing process, no other viable going-concern offer exists.  Therefore, the Debtors believe the DIP Facility represents the only viable path to obtaining critical funding and also the only viable path to a going-concern transaction.

23.     The terms of the DIP Facility are reasonable under the circumstances.  The DIP Facility is the product of good-faith, robust arm's-length negotiations and is necessary for the Debtors to pursue the Sale Transaction and maximize value on behalf of their constituents in these chapter 11 cases on the expedited timeline required.  *See* Lee Decl. ¶ 13.  Accordingly, the DIP Facility is in the best interest of the Debtors' estates and represents a sound exercise of the Debtors' reasonable business judgment.

**<u>Basis for Relief</u>**

**I.     The Debtors Should Be Authorized to Obtain Postpetition Financing Through the DIP Loan Documents.**

**A.     Entry into the DIP Loan Documents Is a Sound Exercise of the Debtors' Business Judgment.**

24.     The Court should authorize the Debtors, as a sound exercise of their business judgment, to execute and deliver the DIP Loan Documents and to obtain access to the DIP Facility. Section 364 of the Bankruptcy Code authorizes a debtor to obtain secured or superpriority financing under certain circumstances discussed in detail below.  Courts grant a debtor in possession considerable deference in acting in accordance with its business judgment in obtaining postpetition secured credit, so long as the agreement to obtain such credit does not run afoul of the provisions of, and policies underlying, the Bankruptcy Code.  *See, e.g.*, *In re Trans World Airlines, Inc.*, 163 B.R. 964, 974 (Bankr. D. Del. 1994) (approving a postpetition loan and receivables facility because such facility "reflect[ed] sound and prudent business judgment"); *In re L.A. Dodgers LLC*, 457 B.R. 308, 313 (Bankr. D. Del. 2011) ("[C]ourts will almost always defer to the

18

business judgment of a debtor in the selection of the lender."); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest.").

25.     Specifically, to determine whether the business judgment standard is met, a court need only "examine whether a reasonable businessperson would make a similar decision under similar circumstances." *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006); *see also In re Curlew Valley Assocs.*, 14 B.R. 506, 513–14 (Bankr. D. Utah 1981) (noting that courts should not second guess a debtor's business decision when that decision involves "a business judgment made in good faith, upon a reasonable basis, and within the scope of [the debtor's] authority under the [Bankruptcy] Code").

26.     Furthermore, in considering whether the terms of postpetition financing are fair and reasonable, courts consider the terms in light of the relative circumstances of both the debtor and the potential lender. *In re Farmland Indus., Inc.*, 294 B.R. 855, 886 (Bankr. W.D. Mo. 2003) ("Viewed in isolation, several of the terms of the [postpetition financing] might appear to be extreme or even unreasonable. Certainly, many of them favor the DIP Lender. But, taken in context, and considering the relative circumstances of the parties, the Court does not believe that the terms are unreasonable."); *see also Unsecured Creditors' Comm. Mobil Oil Corp. v. First Nat'l Bank & Trust Co. (In re Elingsen McLean Oil Co., Inc.)*, 65 B.R. 358, 365 n.7 (W.D. Mich. 1986) (recognizing that a debtor may have to enter into "'hard' bargains" to acquire funds for its reorganization). Courts may also appropriately take into consideration noneconomic benefits to a

debtor offered by a proposed postpetition facility.  For example, in *In re ION Media Networks, Inc.*,

the bankruptcy court for the Southern District of New York held that:

> Although all parties, including the Debtors and the Committee, are naturally
> motivated to obtain financing on the best possible terms, a business decision to
> obtain credit from a particular lender is almost never based purely on economic
> terms.  *Relevant features of the financing must be evaluated, including
> non-economic elements such as the timing and certainty of closing, the impact on
> creditor constituencies and the likelihood of a successful reorganization.*  This is
> particularly true in a bankruptcy setting where cooperation and establishing
> alliances with creditor groups can be a vital part of building support for a
> restructuring that ultimately may lead to a confirmable reorganization plan.  That
> which helps foster consensus may be preferable to a notionally better transaction
> that carries the risk of promoting unwanted conflict.

2009 WL 2902568, at *4 (Bankr. S.D.N.Y. July 6, 2009) (emphasis added).

27.     The Debtors' decision to move forward with the DIP Facility is a sound exercise of

their business judgment following an arm's-length process and careful evaluation of alternatives.

The proposed DIP Facility offers postpetition financing on terms that are favorable to the Debtors,

with no fees or interest owed absent a decision to execute on an alternative sale transaction.  *See*

Salemi Decl. ¶ 17.  Indeed, the DIP Facility only provides for a prepayment penalty in the event

that the Debtors do not close the Sale Transaction with the Purchaser.  *See* DIP Term Sheet,

"Prepayment Penalty."  As such, the terms of the proposed postpetition financing from the

Purchaser are fair and reasonable and the best financing available under the circumstances.  *See*

Salemi Decl. ¶ 19.  Accordingly, the Court should authorize the Debtors' entry into the DIP Loan

Documents, as it is a sound exercise of the Debtors' business judgment.  Courts in this district

have routinely approved debtor-in-possession financing facilities where entry into such

postpetition financing constituted a sound exercise of a debtor's business judgment.  *See, e.g.*, *In*

*re At Home Grp. Inc.*, No.  25-11120 (JKS) (Bankr. D. Del. July 14, 2025) (approving debtor-in-

possession financing facility as a prudent use of business judgment that provided reasonably

equivalent value and fair consideration to the Debtors); *Liberated Brands LLC*, No. 25-10168

(JKS) (Bankr. D. Del. Feb. 28, 2025) (same); *In re Am. Tire Distribs., Inc.*, No. 24-12391 (CTG) (Bankr. D. Del. Nov. 18, 2024) (same); *In re Wheel Pros, Inc.*, No. 24-11939 (JTD) (Bankr. D. Del. Oct. 15, 2024); *In re Vyaire Med., Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. June 10, 2024) (same).

### B.    The Debtors Should Be Authorized to Grant Liens.

28.    The Debtors propose to obtain financing under the DIP Facility by providing security interests and liens as set forth in the DIP Loan Documents pursuant to section 364(c) of the Bankruptcy Code.   More specifically, the Debtors propose to provide valid, binding, continuing, fully perfected, enforceable and non-avoidable security interests and liens to the DIP Lender on the DIP Collateral as described more fully in the Interim Order, subject only to the Carve-Out and on the terms set forth in the Interim Order.   The Debtors are unable to obtain secured credit without granting to the DIP Lender the DIP Liens and incurring the Adequate Protection Obligations (as defined in the Interim Order) on the terms and subject to the conditions set forth in the Interim Order and in the DIP Loan Documents, including the DIP Term Sheet.  *See* Salemi Decl. ¶ 18, 19.

29.    The statutory requirement for obtaining postpetition credit under section 364(c) of the Bankruptcy Code is a finding, made after notice and hearing, that a debtor is "unable to obtain unsecured credit allowable under section 503(b)(1) of [the Bankruptcy Code]." 11 U.S.C. § 364(c).  *See In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987) (secured credit under section 364(c) of the Bankruptcy Code is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained).   Courts have articulated a three-part test to determine whether a debtor is entitled to financing under section 364(c) of the Bankruptcy Code. Specifically, courts look to whether:

a.   the debtor is unable to obtain unsecured credit under section 364(b) of the

Bankruptcy Code—*i.e.*, by allowing a lender only an administrative claim;

b.  the credit transaction is necessary to preserve the assets of the estate; and

c.  the terms of the transaction are fair, reasonable, and adequate, given the circumstances of the debtor-borrower and proposed lenders.

*In re Crouse Grp., Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987); *see also L.A. Dodgers LLC*, 457 B.R. at 312–13 (Bankr. D. Del. 2011); *Ames Dep't Stores*, 115 B.R. at 37–40 (Bankr. S.D.N.Y. 1990); *In re St. Mary Hosp.*, 86 B.R. 393, 401 (Bankr. E.D. Pa. 1988).

30.   As described above and as set forth in the Salemi Declaration, the Debtors recognized that it would be particularly difficult to secure financing because time was limited and substantially all of the Debtors' cash and material assets are encumbered by existing liens under their prepetition debt and the terms of the Cash Collateral Order.  *See* Salemi Decl. ¶ 18.  As no party in the Debtors' capital structure indicated it would be willing to provide new capital, the Debtors and their advisors reasonably concluded any financing source was highly unlikely to provide unsecured financing or to do so on the terms upon which the DIP Lender agreed to lend. *Id*.

31.   Given the Debtors' circumstances, the Debtors believe that the terms of the DIP Facility, as set forth in the DIP Term Sheet, are fair, reasonable, and adequate.  For all these reasons, the Debtors have met the standard for obtaining postpetition financing.  Furthermore, courts in this district have routinely approved debtor-in-possession financing facilities with similar provisions.  *See, e.g.*, *In re At Home Grp. Inc.*, No.  25-11120 (JKS) (Bankr. D. Del. July 14, 2025) (authorizing the debtors to grant valid, binding, continuing, fully perfected, enforceable and non-avoidable security interests and liens to the DIP lender); *Liberated Brands LLC*, No. 25-10168 (JKS) (Bankr. D. Del. Feb. 28, 2025) (same); *In re Am. Tire Distribs., Inc.*, No. 24-12391 (CTG) (Bankr. D. Del. Nov. 18, 2024) (same); *In re Wheel Pros, Inc.*, No. 24-11939 (JTD) (Bankr. D.

Del. Oct. 15, 2024); *In re Vyaire Med., Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. June 10, 2024) (same).

> ### C.    No Comparable Alternative to the DIP Facility Is Reasonably Available.

32.    A debtor need only demonstrate "by a good faith effort that credit was not available without" the protections afforded to potential lenders by sections 364(c) of the Bankruptcy Code. *In re Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986); *see also In re Reading Tube Indus.*, 72 B.R. 329, 332 (Bankr. E.D. Pa 1987).   Moreover, in circumstances where only a few lenders likely can or will extend the necessary credit to a debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct such an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988), *aff'd sub nom. Anchor Sav. Bank FSB v. Sky Valley, Inc.*, 99 B.R. 117, 120 n.4 (N.D. Ga. 1989); *see also Snowshoe*, 789 F.2d at 1088 (demonstrating that credit was unavailable absent the senior lien by establishment of unsuccessful contact with other financial institutions in the geographic area); *In re Stanley Hotel, Inc.*, 15 B.R. 660, 663 (D. Colo. 1981) (holding that the bankruptcy court's finding that two national banks refused to grant unsecured loans was sufficient to support conclusion that the section 364 requirement was met); *Ames Dep't Stores*, 115 B.R. at 37–39 (finding that the debtor must show that it made reasonable efforts to seek other sources of financing under section 364(a) and (b) of the Bankruptcy Code).

33.    The Debtors do not believe that alternative or better sources of financing are reasonably available in light of the favorable terms agreed to with Purchaser.   *See* Salemi Decl. ¶ 18.  Simply put, the DIP Facility provides the Debtors with the liquidity they need at the lowest cost available while simultaneously placing the Debtors on an optimal path to pursue a value-maximizing disposition of their assets through a going-concern sale to the Purchaser.   Therefore, the requirement of section 364 of the Bankruptcy Code that alternative credit on more favorable terms be unavailable to the Debtors is satisfied.   Courts in this district have routinely approved a

debtor's entry into a debtor-in-possession financing facility when no alternative sources of financing were reasonably available. *See, e.g.*, *In re At Home Grp. Inc.*, No. 25-11120 (JKS) (Bankr. D. Del. July 14, 2025) (authorizing entry into a DIP facility where the debtors were unable to obtain financing on more favorable terms from sources other than the DIP lenders); *Liberated Brands LLC*, No. 25-10168 (JKS) (Bankr. D. Del. Feb. 28, 2025) (same); *In re Am. Tire Distribs., Inc.*, No. 24-12391 (CTG) (Bankr. D. Del. Nov. 18, 2024) (same); *In re Wheel Pros, Inc.*, No. 24-11939 (JTD) (Bankr. D. Del. Oct. 15, 2024); *In re Vyaire Med., Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. June 10, 2024) (same).

## II.     The DIP Lender Should Be Deemed to be a Good-Faith Lender Under Section 364(e) of the Bankruptcy Code.

34.     Section 364(e) of the Bankruptcy Code protects a good-faith lender's right to collect on loans extended to a debtor, and its right in any lien securing those loans, even if the authority of the debtor to obtain such loans or grant such liens is later reversed or modified on appeal. Section 364(e) of the Bankruptcy Code provides that:

> The reversal or modification on appeal of an authorization under this section [364 of the Bankruptcy Code] to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

35.     As explained herein and the Lee and Salemi Declarations, the DIP Loan Documents are the result of: (a) the Debtors' reasonable and informed determination that the DIP Lender offered the most favorable terms on which to obtain vital postpetition financing, and (b) arm's-length, good-faith negotiations between the Debtors and DIP Lender. The DIP Loan Documents are reasonable and appropriate under the circumstances, and the proceeds of the DIP

Facility will be used only for purposes that are permissible under the Bankruptcy Code and the DIP Loan Documents.

36.     Accordingly, the Court should find that the DIP Lender is a "good faith" lender within the meaning of section 364(e) of the Bankruptcy Code and is entitled to all of the protections afforded therein.  Courts in this district have routinely found DIP lenders to be good faith lenders within the meaning of section 364(e) where the postpetition financing was a product of arm's-length, good-faith negotiations and fair and reasonable under the circumstances.  *See, e.g.*, *In re At Home Grp. Inc.*, No. 25-11120 (JKS) (Bankr. D. Del. July 14, 2025) (finding that the parties to the postpetition financing facility had acted in good faith as that term is used in section 364(e) of the Bankruptcy Code); *Liberated Brands LLC*, No. 25-10168 (JKS) (Bankr. D. Del. Feb. 28, 2025) (same); *In re Am. Tire Distribs., Inc.*, No. 24-12391 (CTG) (Bankr. D. Del. Nov. 18, 2024) (same); *In re Wheel Pros, Inc.*, No. 24-11939 (JTD) (Bankr. D. Del. Oct. 15, 2024); *In re Vyaire Med., Inc.*, No. 24-11217 (BLS) (Bankr. D. Del. June 10, 2024) (same).

## III.     The Automatic Stay Should Be Modified on a Limited Basis.

37.     The relief requested herein contemplates modification of the automatic stay to the extent necessary to implement and effectuate the terms and provisions of the Interim Order, and to allow the DIP Lender to file financing statements, security agreements, mortgages, leasehold mortgages, notices of liens, and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the DIP Liens.  The proposed Interim Order further provides that the automatic stay be modified to the extent necessary to implement the terms of the Interim Order.  Finally, the proposed Interim Order provides that, following the occurrence of an Event of Default and an appropriate opportunity for the Debtors to obtain appropriate relief from the Court, the automatic stay shall be vacated and modified to the extent necessary to permit the

DIP Lender to exercise all rights and remedies in accordance with the DIP Loan Documents, or applicable law.

38.     Stay modifications of this kind are ordinary and standard features of debtor-in-possession financing arrangements, and, in the Debtors' business judgment, are reasonable and fair under the circumstances of these chapter 11 cases.  *In re At Home Grp. Inc.*, No. 25-11120 (JKS) (Bankr. D. Del. July 14, 2025) (modifying automatic stay as necessary to effectuate the terms of the order and following occurrence of an event of default); *In re Liberated Brands LLC*, No. 2510168 (JKS) (Bankr. D. Del. Mar. 19, 2025) (same); *In re JOANN Inc.*, No. 25-10068 (CTG) (Bankr. D. Del. Jan. 16, 2025) (same); *In re Am. Tire Distrib., Inc.*, No. 14-12391 (CTG) (Bankr. D. Del. Nov. 22, 2024) (same); *In re Wheel Pros, LLC*, No. 24-11939 (JTD) (Bankr. D. Del. Oct. 15, 2024) (same).

## IV.     Failure to Obtain Immediate Interim Access to the DIP Facility Would Cause Immediate and Irreparable Harm.

39.     Bankruptcy Rules 4001(b) and 4001(c) provide that a final hearing on a motion to obtain credit pursuant to section 364 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion.  Upon request, however, the Court may conduct a preliminary, expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate.

40.     For the reasons noted above and in the Lee Declaration, the Debtors have an immediate need for the liquidity provided by the DIP Facility.  *See* Lee Decl. ¶ 7.  The proposed DIP Facility is critical to the Debtors' ability to fund their operations and procure needed inventory to consummate a going-concern sale transaction through these chapter 11 cases.  *Id*.  The DIP

Facility is an essential component to the Sale Transaction and consequent value-maximization of the Debtors' estates.

41.     The Debtors request that the Court hold and conduct a hearing to consider entry of the Interim Order authorizing the Debtors, from and after entry of the Interim Order until the Final Hearing, to receive initial funding under the DIP Facility.  This relief will enable the Debtors to preserve and maximize value and, therefore, avoid immediate and irreparable harm and prejudice to their estates and all parties in interest, pending the Final Hearing.

### The Requirements of Bankruptcy Rule 6003(b) Are Satisfied

42.     Bankruptcy Rule 6003 empowers a court to grant certain relief within the first 21 days after the petition date only to the extent that relief is "needed to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003(a).  For the reasons set forth above, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations.  Failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture and cause immediate and irreparable harm.  The requested relief is necessary for the Debtors to operate their business in a value-maximizing manner for the benefit of all stakeholders.  The Debtors have demonstrated that the requested relief is "needed to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003, and request that the Court grant the requested relief.

### Reservation of Rights

43.     Notwithstanding anything to the contrary herein, nothing contained in this motion or any actions taken pursuant to any order granting the relief requested in this motion, and no action taken by the Debtors pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an implication or admission as to the amount, validity, or priority of, or basis for, any claim

against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law; (g) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy under section 365 of the Bankruptcy Code; (h) a waiver of the obligation of any party in interest to file a proof of claim; or (i) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.

## **Notice**

44.     The Debtors will provide notice of this motion to the following parties or their respective counsel, as applicable:  (a)  the U.S. Trustee; (b) the Priority Term Loan Agent; (c) the Existing Term Loan Agent; (d) the Agent under the ABL Facility; (e) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (f) the United States Attorney for the District of Delaware; (g) the Internal Revenue Service; (h) the Purchaser; (i) the state attorneys general for states in which the Debtors conduct business; (j) counsel to the Committee; and (i) any party that is entitled to notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  As this motion is seeking relief subject to Local Rule 9013-1(m), within two business days of the hearing on this motion, the Debtors will serve copies of this motion and any order

entered in respect to this motion as required by Local Rule 9013-1(m). In light of the nature of the relief requested, no other or further notice need be given.

### **No Prior Request**

45.     No prior request for the relief sought in this motion has been made to this or any other court.

[*Remainder of the page intentionally left blank*]

WHEREFORE, the Debtors request entry of the Interim Order substantially in the form attached hereto as **Exhibit A**, (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated:  August 20, 2025
Wilmington, Delaware

*/s/ Clint M. Carlisle*
**RICHARDS, LAYTON & FINGER, P.A.**
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Clint M. Carlisle (No. 7313)
Colin A. Meehan (No. 7237)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:            defranceschi@rlf.com
                     heath@rlf.com
                     shapiro@rlf.com
                     carlisle@rlf.com
                     meehan@rlf.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:            joshua.sussberg@kirkland.com
                     allyson.smith@kirkland.com

- and -

Alexandra F. Schwarzman, P.C. (admitted *pro hac vice*)
Robert A. Jacobson (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:            alexandra.schwarzman@kirkland.com
                     rob.jacobson@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

*Proposed Co-Counsel for the Debtors and Debtors in Possession*