IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| _____ ) | |
| In re: ) | Chapter 11 |
| ) | |
| CLAIRE'S HOLDINGS LLC, *et al.*, ) | Case No. 25-11454 (BLS) |
| ) | |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | Re:  Docket Nos. 7, 87 |
| ) | |
| ) | Obj. Deadline:9/2/25 at 4:00 p.m. |
| ) | Hearing Date:9/9/25 at 2:00 p.m. |
| _____ ) | |

**OBJECTION OF CERTAIN UTILITY COMPANIES TO THE MOTION OF DEBTORS
FOR ENTRY OF INTERIM AND FINAL ORDERS (I) APPROVING THE DEBTORS'
PROPOSED ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY
SERVICES, (II) APPROVING THE DEBTORS' PROPOSED PROCEDURES FOR
RESOLVING ADDITIONAL ASSURANCE REQUESTS, (III) PROHIBITING
UTILITY PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING
SERVICES, (IV) AUTHORIZING PAYMENTS TO THE DEBTORS' UTILITIES
<u>ADMINISTRATOR, AND (V) GRANTING RELATED RELIEF</u>**

Consolidated Edison Company of New York, Inc. ("Con

Edison"), Virginia Electric and Power Company d/b/a Dominion

Energy Virginia ("DEV"), Entergy Arkansas, LLC ("Entergy AR"),

Entergy Louisiana, LLC ("Entergy LA"), Entergy Mississippi, LLC

("Entergy MS"), Entergy Texas, Inc. ("Entergy TX") (Entergy AR,

Entergy LA, Entergy MS and Entergy TX collectively, "Entergy),

Florida Power & Light Company ("FPL"), Georgia Power Company

("Georgia Power"), San Diego Gas and Electric Company ("SDG&E"),

The Connecticut Light & Power Company ("CL&P"), Public Service

Company of New Hampshire ("PSNH"), NStar East Electric ("NStar

East") (CL&P, PSHN and NStar East collectively, "Eversource") and

Symmetry Energy Solutions, LLC ("SES") (collectively, the "Utilities"), hereby object to the *Motion of Debtors For Entry of Interim and Final Orders (I) Approving the Debtors' Proposed Adequate Assurance of Payment For Future Utility Services, (II) Approving the Debtors' Proposed Procedures For Resolving Additional Assurance Requests, (III) Prohibiting Utility Providers From Altering, Refusing, or Discontinuing Services, (IV) Authorizing Payments To the Debtors' Utilities Administrator, and (V) Granting Related Relief* (the "Utility Motion")(Docket No. 7), and respectfully set forth the following:

## Introduction

The Debtors' Utility Motion improperly seeks to shift the Debtors' obligations under Section 366(c)(3) of the Bankruptcy Code from seeking to modify the amounts of the adequate assurance of payment requested by the Utilities under Section 366(c)(2) to setting the form and amounts of the adequate assurance of payment acceptable to the Debtors.  This Court should not permit the Debtors to avoid the plain language and requirements of Section 366(c).

Through the Utility Motion, the Debtors seek to have this Court approve their proposed form of adequate assurance of payment, which is a bank account containing approximately $430,000 that supposedly reflects approximately one-half of the Debtors' average monthly utility charges, calculated as a

historical average payment for the twelve-month period that ended on June 30, 2025, minus approximately $70,000 held as prepetition deposits by some utility providers (the "Bank Account"). As an initial matter, the Debtors' proposal that monies contained in the Bank Account should be net of prepetition deposits does make sense because the Debtors do not know if any prepetition deposit amounts will even remain after recoupment of prepetition deposits against prepetition debt pursuant to Section 366(c)(4) of the Bankruptcy Code.

The Utility Providers List attached at Exhibit "C" to the Utility Motion reflects that the Bank Account would contain the following on behalf of the Utilities: (a) Con Edison – $0; (b) DEV – $0; (c) Entergy – $0; (d) FPL – $1,113.66; (e) Georgia Power – $583.47; (f) SDG&E – $0; (g) Eversource – $2,816.11; and (h) SES – $1,624.80.

This Court should reject the Debtors' proposed Bank Account because: (1) The Utilities bill the Debtors on a monthly basis and provide the Debtors with generous payment terms pursuant to applicable state law, tariffs, regulations and/or contract, such that a supposed two-week account, less prepetition deposits held by the Debtors' utility companies, maintained by the Debtors is not sufficient in amount or in form to provide the Utilities with adequate assurance of payment; (2) Section 366(c) of the Bankruptcy Code specifically defines the forms of adequate

3

assurance of payment in Section 366(c)(1), none of which include
a segregated bank account; (3) the proposed amounts to be
contained in the Bank Account would be net of any prepetition
deposits; (4) the Debtors are proposing that the Bank Account
would contain $0 on behalf of Con Edison, DEV, Entergy AR,
Entergy LA, Entergy MS and SDG&E; and (5) Even if this Court
were to improperly consider the Bank Account as a form of
adequate assurance of payment for the Utilities (which it should
not), and two-week amounts were actually contained in the Bank
Account for all of the Utilities, this Court should reject it as
an insufficient form of adequate assurance of payment for the
reasons set forth in Section A.1. of this Objection.

The Utilities are seeking the following cash deposits from
the Debtors, which are amounts that they are authorized to obtain
pursuant to applicable state law:  (a) Con Edison - $20,563 (2-
month); (b) DEV - $5,581 (2-month); (c) Entergy AR - $1,860 (2-
month); (d) Entergy LA - $5,970 (2-month); (e) Entergy MS -
$6,240; (f) Entergy TX - $1,180 (2-month); (g) FPL - $38,344 (2-
month); (h) Georgia Power - $11,890 (2-month); (i) SDG&E -
$25,104; (j) CL&P - $3,210 (1.5-month); (k) PSNH - $3,675 (2-
month); (l) NStar East - $600 (2-month); and (m) SES - $25,202
(2-month).  Based on the foregoing, this Court should deny the
Utility Motion as to the Utilities because the amounts of the
Utilities' post-petition deposit requests are reasonable under

4

the circumstances and should not be modified.

### Facts

### Procedural Facts

1.    On August 6, 2025 (the "Petition Date"), the Debtors commenced their cases under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") that are now pending with this Court.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.

2.    The Debtors' Chapter 11 bankruptcy cases are being jointly administered.

### The Utility Motion

3.    On the Petition Date, the Debtors filed the Utility Motion.

4.    On August 7, 2025, the Court entered the *Interim Order (I) Approving the Debtors' Proposed Adequate Assurance of Payment For Future Utility Services, (II) Approving the Debtors' Proposed Procedures For Resolving Additional Assurance Requests, (III) Prohibiting Utility Providers From Altering, Refusing, or Discontinuing Services, (IV) Authorizing Payments To the Debtors' Utilities Administrator, and (V) Granting Related Relief* (the "Interim Utility Order")(Docket No. 87).  The Interim Utility Order set (i) an objection deadline of September 2, 2025, and (ii) the final hearing on the Utility Motion to

5

take place on September 9, 2025 at 2:00 p.m.

5.    The Debtors claim that they pay approximately $1
million each month for utility services, calculated as a
historical average payment for the twelve-month period ending
June 30, 2025.  Utility Motion at ¶ 9.

6.    Through the Utility Motion, the Debtors seek to avoid
the applicable legal standards under Bankruptcy Code Sections
366(c)(2) and (3) by seeking Court approval for their own
proposed form of adequate assurance of payment, which is the
Bank Account containing approximately $430,000 that supposedly
reflects approximately one-half of the Debtors' average monthly
utility charges, calculated as a historical average payment for
the twelve-month period that ended on June 30, 2025, minus
approximately $70,000 held as prepetition deposits by some
utility providers.  Utility Motion at ¶ 11.

7.    The Utility Providers List attached at Exhibit "C" to
the Utility Motion reflects that the Bank Account would contain
the following on behalf of the Utilities:  (a) Con Edison - $0;
(b) DEV - $0; (c) Entergy - $0; (d) FPL - $1,113.66; (e) Georgia
Power - $583.47; (f) SDG&E - $0; (g) Eversource - $2,816.11; and
(h) SES - $1,624.80. The Debtors proposal that the Bank Account
would contain $0 for a number of the Utilities because they
supposedly held prepetition deposits does not make sense because
the Debtors do not know if any prepetition deposit amounts would

remain after recoupment against prepetition debt pursuant to
Section 366(c)(4) of the Bankruptcy Code.

8.   The Debtors propose to "deposit" approximately
$430,000 into the Bank Account, and refer to the monies
contained in the Bank Account as the "Adequate Assurance
Deposit." Utility Motion at ¶ 11.   However, monies contained in
an escrow account controlled by a customer of a utility, such as
the proposed Bank Account here, are not recognized by any state
public utility commission as a "cash deposit" provided by a
customer to a utility.   Section 366(c) of the Bankruptcy Code
specifically defines the forms of adequate assurance of payment
in Section 366(c)(1), none of which include a segregated utility
bank account.   Simply put, the Debtors are not proposing to
provide any of their utilities with cash deposits as adequate
assurance of payment pursuant to Section 366(c) of the
Bankruptcy Code.

9.   The proposed Bank Account is not acceptable to the
Utilities and should not be considered relevant by this Court
because Sections 366(c)(2) and (3) do not allow the Debtors to
establish the form or amount of adequate assurance of payment.
Under Sections 366(c)(2) and (3), this Court and the Debtors are
limited to modifying, if at all, the amount of the security
sought by the Utilities under Section 366(c)(2).

10.   The Debtors claim that to the best of their knowledge,

7

there are no defaults or arrearages with respect to undisputed
prepetition utility invoices.  Utility Motion at ¶ 9.  However,
even if true, Section 366(c)(3)(B)(ii) expressly provides that
in making an adequate assurance of payment determination, a
court may not consider a debtor's timely payment of prepetition
utility charges.

11.  The Debtors propose that the portion of monies
contained in the Bank Account with each utility provider shall
revert to the Debtors, less any amounts owed on account of
unpaid post-petition utility services, by no later than five
business days following the earlier of the date upon which (i)
the Debtors reconcile and pay final post-petition invoices, or
(ii) the effective date of any Chapter 11 plan.  Interim Utility
Order at ¶ 5.1.  The Utilities bill the Debtors in arrears and
will likely provide post-petition utility goods/services to the
Debtors through the effective date of a plan, meaning that any
monies contained in the Bank Account should not be returned to
the Debtors until the Debtors confirm that they have paid in
full their post-petition utility expenses owed to their utility
companies.

12.  The Utility Motion does not address why the Bank
Account would be underfunded with supposedly two-weeks of
utility charges, less any prepetition deposit amounts held by a
Utility, when the Debtors know that the Utilities are required

8

by applicable state laws, regulations, tariffs or contracts to bill the Debtors monthly.  Moreover, the Debtors presumably want the Utilities to continue to bill them monthly and provide them with the same generous payment terms that they received prepetition.  Accordingly, if the Bank Account is relevant, which the Utilities dispute, and two-week amounts were actually contained in the Bank Account for each of the Utilities, the Debtors need to explain: (A) Why they are only proposing to deposit supposed two-week amounts into the Bank Account; and (B) How such insufficient amounts could even begin to constitute adequate assurance of payment for the Utilities' monthly bills.

13.  Furthermore, the Utility Motion does not address why this Court should consider modifying, if at all, the amounts of the Utilities' adequate assurance requests pursuant to Section 366(c)(2).  Rather, without providing any specifics, the Utility Motion merely states that the Bank Account, "in conjunction with the Debtors' ability to pay for future Utility Services in accordance with their prepetition practices," constitutes sufficient adequate assurance of payment for the Debtors' utility providers.  Utility Motion at ¶ 13.

## Facts Regarding SES

14.  SES provides natural gas and related services to the Debtors pursuant to the Energy Service Agreement (the "Gas Agreement"), which sets forth the terms and conditions

9

concerning SES's provision of natural gas and related services to the Debtors.  SES has continued to provide the Debtors with natural gas and related services pursuant to the Gas Agreement since the Petition Date.

15.  Pursuant to the Gas Agreement, the Debtors receive approximately one month of natural gas and related services before SES issues a bill.  Once a bill is issued, the Debtors have approximately 20 days to pay the applicable bill.  If the Debtors fail to timely pay a bill, a late fee may be subsequently imposed on the account.  Accordingly, the Debtors could receive more than sixty days of natural gas and related services before SES could terminate the Gas Agreement after a post-petition payment default.

16.  SES is requesting a two-month cash deposit in the amount of $25,202 as adequate assurance of payment from the Debtors, which is an amount it can obtain from the Debtors pursuant to the terms and conditions of the Gas Agreement.

### Facts Regarding the Utilities Other Than SES

17.  Each of the Utilities provided the Debtors with prepetition utility goods and/or services, and has continued to provide the Debtors with utility goods and/or services since the Petition Date.

18.  Under the Utilities' billing cycles, the Debtors receive approximately one month of utility goods and/or services

10

before the Utility issues a bill for such charges.  Once a bill
is issued, the Debtors have approximately 20 to 30 days to pay
the applicable bill.  If the Debtors fail to timely pay the
bill, a past due notice is issued and, in most instances, a late
fee may be subsequently imposed on the account.  If the Debtors
fail to pay the bill after the issuance of the past due notice,
the Utilities issue a notice that informs the Debtors that they
must cure the arrearage within a certain period of time or their
service will be disconnected.  Accordingly, under the Utilities'
billing cycles, the Debtors could receive at least two months of
unpaid charges before the utility could cease the supply of
goods and/or services for a post-petition payment default.

19.  To avoid the need to bring witnesses and have lengthy
testimony regarding the Utilities regulated billing cycles, the
Utilities request that this Court, pursuant to Rule 201 of the
Federal Rules of Evidence, take judicial notice of the Utilities'
billing cycles.  Pursuant to the foregoing request and based on
the voluminous size of the applicable documents, the Utilities'
website links to their tariffs and/or state laws, regulations
and/or ordinances are set forth in Exhibit "A" attached hereto.

20.  Subject to a reservation of the Utilities' right to
supplement their post-petition deposit requests if additional
accounts belonging to the Debtors are subsequently identified,
the Utilities' estimated prepetition debt and post-petition

11

deposit requests are as follows:

| Utility | No. of Accts. | Est. Prepet. Debt | Dep. Request |
|---|---|---|---|
| Con Edison | 9 | $5,083.42 | $21,563 (2-month) |
| DEV | 10 | $4,455.19 | $5,581 (2-month) |
| Entergy AR | 2 | $930 | $1,860 (2-month) |
| Entergy LA | 6 | $2,470 | $5,970 (2-month) |
| Entergy MS | 4 | $2,033.17 | $6,240 (2-month) |
| Entergy TX | 1 | $588.82 | $1,180 (2-month) |
| FPL | 40 | $16,066.76 | $38,344 (2-month) |
| Georgia Power | 13 | To be supplemented | $11,890 (2-month) |
| SDG&E | 10 | $6,449.17 | $25,104 (2-month) |
| CL&P | 4 | $2,120.25 | $3,210 (1.5-month) |
| PSNH | 4 | To be supplemented | $3,675 (2-month) |
| NStar East | | To be supplemented | $600 (2-month) |

21. Con Edison held prepetition deposits totaling $7,854 that it recouped against the prepetition debt owing to Con Edison from the Debtors pursuant to Section 366(c)(4) of the Bankruptcy Code. Any prepetition deposit amount remaining after recoupment can be applied to the Con Edison post-petition deposit request.

22. Entergy AR held prepetition deposits totaling $1,970 that it recouped against the prepetition debt owing to Entergy AR from the Debtors pursuant to Section 366(c)(4) of the Bankruptcy Code. Any prepetition deposit amount remaining after recoupment can be applied to the Entergy AR post-petition deposit request.

23.    Entergy LA held prepetition deposits in the amount of $1,220 that it recouped against the prepetition debt owing to Entergy LA from the Debtors pursuant to Section 366(c)(4) of the Bankruptcy Code.  No prepetition deposit amount remains after recoupment.

24.    Entergy TX held a prepetition deposit in the amount of $970 that it recouped against the prepetition debt owing to Entergy TX from the Debtors pursuant to Section 366(c)(4) of the Bankruptcy Code.  Any prepetition deposit amount remaining after recoupment can be applied to the Entergy TX post-petition deposit request.

25.    FPL held prepetition deposits totaling $39,123 that it recouped against the prepetition debt owing to FPL from the Debtors pursuant to Section 366(c)(4) of the Bankruptcy Code. Any prepetition deposit amount remaining after recoupment can be applied to the FPL post-petition deposit request.

26.    Georgia Power holds a prepetition deposit in the amount of $9,951.05 that it will recoup against the prepetition debt owing to Georgia Power from the Debtors pursuant to Section 366(c)(4) of the Bankruptcy Code.  Any prepetition deposit amount remaining after recoupment can be applied to the Georgia Power post-petition deposit request.

**Discussion**

A.    **THE UTILITY MOTION SHOULD BE DENIED AS TO THE UTILITIES.**

Sections 366(c)(2) and (3) of the Bankruptcy Code provide:

> (2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility;

> (3)(A) On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

As set forth by the Supreme Court of the United States, "[i]t is well-established that 'when the statute's language is plain, the sole function of the courts - at least where the disposition required by the text is not absurd - is to enforce it according to its terms.'" *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) (*quoting Hartford Underwriters Ins. Co.* v. *Union Planters Bank, N. A.,* 530 U.S. 1, 6, 120 S. Ct. 1942, 147 L. Ed. 2d 1 (2000)). *Rogers v. Laurain (In re Laurain)*, 113 F.3d 595, 597 (6th Cir. 1997) ("Statutes . . . must be read in a 'straightforward' and 'commonsense' manner."). A plain reading of Section 366(c)(2) makes clear that a debtor is required to provide adequate assurance of payment satisfactory to its utilities on or within thirty (30) days of the filing of the petition. *In re* Lucre,

14

333 B.R. 151, 154 (Bankr. W.D. Mich. 2005).  If a debtor
believes the **amount** of the utility's request needs to be
modified, then the debtor can file a motion under Section
366(c)(3) requesting the court to modify the **amount** of the
utility's request under Section 366(c)(2).

In this case, the Debtors filed the Utility Motion to
improperly shift the focus of their obligations under Section
366(c)(3) from modifying the amount of the adequate assurance of
payment requested under Section 366(c)(2) to setting the form
and amount of the adequate assurance of payment acceptable to
the Debtors.  Accordingly, this Court should not reward the
Debtors for their failure to comply with the requirements of
Section 366(c), and it should deny the Utility Motion as to the
Utilities.

> **1.    The Debtors' Proposed Bank Account Is Not
> Relevant And Even If It Is Considered, It Is
> Unsatisfactory Because It Does Not Provide the
> Utilities With Adequate Assurance of Payment.**

This Court should not even consider the Bank Account as a
form of adequate assurance of payment because: (1) It is not
relevant because Section 366(c)(3) provides that a debtor can
only modify "the amount of an assurance of payment under
paragraph (2)"; and (2) The Bank Account is not a form of
adequate assurance of payment recognized by Section
366(c)(1)(A).  Moreover, even if this Court were to consider the

15

Bank Account, the Bank Account is an improper and otherwise
unreliable form of adequate assurance of future payment for the
following reasons:

1. Unlike the statutorily approved forms of adequate
   assurance of payment, the Bank Account is not something
   held by the Utilities.  Accordingly, the Utilities have
   no control over how long the Bank Account will remain
   in place.

2. It is underfunded from the outset because even if the
   Debtors were to place two-week amounts in the Bank
   Account for the Utilities, the Utilities issue monthly
   bills and by the time a default notice is issued, the
   Debtors will have received approximately 60 days of
   commodity or service.

3. The Debtors should not reduce the amount of the Bank
   Account on account of the termination of utility
   services to a Debtor account until the Debtors confirm
   that all post-petition charges on a closed account are
   paid in full.

4. The Debtors propose that the Bank Account would be net
   of prepetition deposits and would contain $0 on behalf
   of Con Edison, DEV, Entergy AR, Entergy LA, Entergy MS
   and SDG&E apparently because those Utilities held
   prepetition security.

Accordingly, this Court should not approve the Bank
Account as adequate assurance as to the Utilities because the
Bank Account: (a) Is not the **form** of adequate assurance
requested by the Utilities; (b) Is not a form recognized by
Section 366(c)(1)(A); and (c) Is an otherwise unreliable form
of adequate assurance.

**2.    The Utility Motion Should Be Denied As To The Utilities Because The Debtors Have Not Set Forth Any Basis For Modifying The Utilities' Requested Deposits.**

In the Utility Motion, the Debtors fail to address why this Court should modify the amounts of the Utilities' requests for adequate assurance of payment.  Under Section 366(c)(3), the Debtors have the burden of proof as to whether the amounts of the Utilities' adequate assurance of payment requests should be modified.  *See In re Stagecoach Enterprises, Inc.,* 1 B.R. 732, 734 (Bankr. M.D. Fla. 1979) (holding that the debtor, as the petitioning party at a Section 366 hearing, bears the burden of proof).  However, the Debtors here do not provide this Court with any evidence or factually supported documentation to explain why the amounts of the Utilities' adequate assurance requests should be modified.  Accordingly, this Court should deny the relief requested by Debtors in the Utility Motion and require the Debtors to comply with the plain requirements of Section 366(c) with respect to the Utilities.

**B.    THIS COURT SHOULD ORDER THE DEBTORS TO PROVIDE THE ADEQUATE ASSURANCE OF PAYMENT REQUESTED BY THE UTILITIES PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE.**

Section 366(c) was amended to overturn decisions such as *Virginia Electric and Power Company v. Caldor, Inc.,* 117 F.3d 646 (2d Cir. 1997), holding that an administrative expense, without more, could constitute adequate assurance of payment in

certain cases.  Section 366(c)(1)(A) specifically defines the

forms that assurance of payment may take as follows:

> (i) a cash deposit;
> (ii) a letter of credit;
> (iii) a certificate of deposit;
> (iv) a surety bond;
> (v) a prepayment of utility consumption; or
> (vi) another form of security that is mutually agreed
> upon between the utility and the debtor or the
> trustee.

Section 366 of the Bankruptcy Code was enacted to balance a

debtor's need for utility services from a provider that holds a

monopoly on such services, with the need of the utility to

ensure for itself and its rate payers that it receives payment

for providing these essential services. *See In re Hanratty*, 907

F.2d 1418, 1424 (3d Cir. 1990).  The deposit or other security

"should bear a reasonable relationship to expected or

anticipated utility consumption by a debtor."  *In re Coastal Dry*

*Dock & Repair Corp.*, 62 B.R. 879, 883 (Bankr. E.D.N.Y. 1986).

In making such a determination, it is appropriate for the Court

to consider "the length of time necessary for the utility to

effect termination once one billing cycle is missed."  *In re*

*Begley*, 760 F.2d 46, 49 (3d Cir. 1985).

The Utilities bill the Debtors on a monthly basis for the

charges already incurred by the Debtors in the prior month.  They

then provide the Debtors with 20 to 30 days to pay the bill, the

timing of which is set forth in applicable state laws, tariffs,

regulations and/or contract.  Based on the foregoing state-
mandated or contract-mandated billing cycles, the minimum period
of time the Debtors could receive service from the Utilities
before termination of service for non-payment of post-petition
bills is approximately two (2) months.  Moreover, even if the
Debtors timely pay their post-petition utility bills, the
Utilities still have potential exposure of approximately 60 days
or more based on their billing cycles.  Furthermore, the forms
and amounts of the Utilities' adequate assurance requests are the
forms and amounts that the applicable public service commission,
which is a neutral third-party entity, or contract, permits a
Utility to request from its customers.  The Utilities are not
taking the position that the cash deposits that they are entitled
to obtain under applicable state law or contract are binding on
this Court, but instead are introducing those forms and amounts
as evidence of the forms and amounts that the applicable
regulatory entity or contract permit the Utilities to request
from their customers.

    In contrast, the Debtors failed to address in the Utility
Motion why this Court should modify, if at all, the amounts of
the Utilities' adequate assurance of payment requests, which is
the Debtors' statutory burden.  Instead, the Debtors merely asked
this Court to approve the Bank Account supposedly containing
approximately two-weeks of the Debtors' utility charges, less any

prepetition deposit amounts held by the Utilities.  The Debtors did not provide an objective, much less an evidentiary, basis for their proposed adequate assurance in the form of the Bank Account.

Despite the fact that the Utilities continue to provide the Debtors with admittedly crucial post-petition utility goods/services on the same generous terms that were provided prepetition, with the risk of non-payment, the Debtors are seeking to deprive the Utilities of any adequate assurance of payment for which they are entitled to receive for continuing to provide the Debtors with post-petition utility goods/services. Against this factual background, it is reasonable for the Utilities to seek and be awarded the full security that they have requested herein.

WHEREFORE, the Utilities respectfully request that this Court enter an order:

1.    Denying the Utility Motion as to the Utilities;

2.    Awarding the Utilities the post-petition adequate assurance of payments pursuant to Section 366 in the amount and form satisfactory to the Utilities, which is the form and amount requested herein;

3.    Require the Debtors to close accounts with the Utilities when they no longer require post-petition service from the Utility for that account or remain

20

administratively responsible for such charges until

they do close the account(s); and

4.    Providing such other and further relief as the Court

deems just and appropriate.

Dated: August 25, 2025        WHITEFORD, TAYLOR & PRESTON LLC

/s/ *William F. Taylor, Jr.*
William F. Taylor, Jr. (#2936)
600 North King Street, Suite 300
Wilmington, Delaware 19801
Telephone: (302) 353-4145
Facsimile: (302) 357-3270
E-mail: wtaylor@whitefordlaw.com

and

LAW FIRM OF RUSSELL R. JOHNSON III, PLC
Russell R. Johnson III (VSB No. 31468)
John M. Craig (VSB No. 32977)
2258 Wheatlands Drive
Manakin-Sabot, Virginia  23103
Telephone: (804) 749-8861
E-mail: russell@russelljohnsonlawfirm.com
john@russelljohnsonlawfirm.com

*Counsel for Consolidated Edison Company of
New York, Inc., Virginia Electric and Power
Company d/b/a Dominion Energy Virginia,
Entergy Arkansas, LLC, Entergy Louisiana,
LLC, Entergy Mississippi, LLC, Entergy
Texas, Inc. Florida Power & Light Company,
Georgia Power Company, San Diego Gas and
Electric Company, The Connecticut Light &
Power Company, Public Service Company of
New Hampshire, NStar East Electric and
Symmetry Energy Solutions, LLC*