## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CLAIRE'S HOLDINGS LLC, *et al.*, [1] | Case No. 25-11454 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Related to Docket Nos. 190 & 209** |

**OBJECTION OF 429 FULTON STREET LLC, 3902 ANNADALE LANE, LP, BELDEN MALL LLC, BRIDGEWATER COMMONS MALL II, LLC, BROADSTONE CLE ILLINOIS, LLC, BROWARD MALL LLC, CAPITAL MALL LP, CENTENNIAL REAL ESTATE COMPANY, LLC, CENTERCAL PROPERTIES, LLC, CHAMPLAIN CENTRE NORTH LLC, CONTINENTAL REALTY, FR DEL MONTE, LLC, FR GROSSMONT, LLC, FRIT FLORIDA, LLC, FEDERAL REALTY OP LP, GTM DENTON, LTD., GALLATIN MALL GROUP, L.L.C., KRE COLONIE OWNER, LLC, NORTHPARK MALL LIMITED PARTNERSHIP, PGIM REAL ESTATE, PACIFIC QKC MANAGEMENT PR, LLC, PALM DESERT PACIFIC OWNER LLC, PAPPAS LAGUNA NO. 2, L.P., PARK MALL, L.L.C., PLAZA WEST COVINA LP, POAG SHOPPING CENTERS, LLC, SOUTHLAKE INDIANA LLC, STAR-WEST FRANKLIN PARK MALL, LLC, STAR-WEST GREAT NORTHERN MALL LLC, STAR-WEST PARKWAY MALL LP, THE FORBES COMPANY, THE MACERICH COMPANY, AND YTC MALL OWNER, LLC TO (I) PROPOSED SALE TRANSACTION AND ASSET PURCHASE AGREEMENT BETWEEN DEBTORS AND PURCHASER; AND (II) NOTICE OF POTENTIAL ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES [AND PROPOSED CURE COSTS]**

429 Fulton Street LLC, 3902 Annadale Lane, LP, Belden Mall LLC, Bridgewater

Commons Mall II, LLC, Broadstone CLE Illinois, LLC, Broward Mall LLC, Capital Mall LP,

Centennial Real Estate Company, LLC, CenterCal Properties, LLC, Champlain Centre North LLC,

Continental Realty, FR Del Monte, LLC, FR Grossmont, LLC, FRIT Florida, LLC, Federal Realty

OP LP, GTM Denton, LTD., Gallatin Mall Group, L.L.C., KRE Colonie Owner, LLC, Northpark

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are: Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343). The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

Mall Limited Partnership, PGIM Real Estate, Pacific QKC Management PR, LLC, Palm Desert Pacific Owner LLC, Pappas Laguna No. 2, L.P., Park Mall, L.L.C., Plaza West Covina LP, Poag Shopping Centers, LLC, Southlake Indiana LLC, Star-West Franklin Park Mall, LLC, Star-West Great Northern Mall LLC, Star-West Parkway Mall LP, The Forbes Company, The Macerich Company, and YTC Mall Owner, LLC (collectively, the "Landlords"), by and through their undersigned counsel, hereby file this objection (the "Objection) to (i) the proposed sale transaction (the "Sale") and asset purchase agreement dated as of August 18, 2025 (the "APA"), between the Debtors and AWS Claire's, LLC (the "Purchaser"), as attached to the *Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Sale of Going-Concern Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests and (II) Granting Related Relief* [D.I. 190] (the "Sale Motion"); and (ii) the *Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases* [D.I. 209] (the "Cure Notice"),[2] and respectfully represent as follows:

I.    **BACKGROUND**

1.    On August 6, 2025 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code with the United States Bankruptcy Court for the District of Delaware (the "Court"), which cases have been jointly consolidated for administrative purposes only (the "Chapter 11 Cases"). The Debtors continue to operate their businesses and manage their properties as debtors and debtors-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108. No trustee or examiner has been appointed in the Chapter 11 Cases.[3]

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Sale transaction documents, the Sale Motion, the APA, and the Cure Notice, as applicable.

[3] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

2.      The Debtors lease retail spaces (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at each of the locations more fully set forth on **Schedule A**, attached hereto and incorporated into this Objection by reference.

3.      With the exception of the Lease with Broadstone CLE Illinois, LLC, each Lease is a lease "of real property in a shopping center" as that term is used in Section 365(b)(3). See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-87 (3d Cir. 1990).

4.      On August 18, 2025, the Debtors entered into the APA with the Purchaser, which if approved, would provide for a going-concern Sale of substantially all of the Debtors' business to the Purchaser, and the assumption and assignment of certain unexpired leases of non-residential real property, including the Leases set forth in this Objection.

5.      On August 20, 2025, the Debtors filed the Sale Motion, which contemplates, among other things, the Sale of the Debtors' businesses pursuant to the APA, including the assumption and assignment of certain of the Debtors' non-residential real property leases in connection therewith, including the Leases.  The APA further contemplates certain post-closing designation rights, giving the Purchaser the right to extend the time to determine which Leases to assume or reject for as long as sixty (60) days after the Closing of the Sale.  APA § 1.5(b).

6.      On August 20, 2025, the Debtors also filed the Cure Notice, which sets forth the Debtors' proposed cure amounts for certain unexpired nonresidential real property leases and executory contracts that may be assumed and assigned to the Purchaser in connection with the Sale (the "Proposed Cure Amounts"), and established August 29, 2025, at 4:00 p.m. (ET) as the deadline for Landlords to object to the Proposed Cure Amounts, the assumption and assignment

of their Leases, and the Purchaser's ability to demonstrate the requisite adequate assurance of future performance.

7.      Upon request, Landlords have received certain high-level adequate assurance information relating to the Purchaser, which Landlords continue to review and are awaiting responses to follow up inquiries, and Landlords reserve all rights to raise other and further objections once Landlords receive complete adequate assurance information.

## II.    <u>OBEJECTION</u>

8.      While Landlords do not generally object to the Sale of the Debtors' assets to the Purchaser, Landlords do object to any assumption and assignment of the Leases unless Debtors and/or the Purchaser comply with all of the requirements of Sections 365 of the Bankruptcy Code.

9.      Further, the Proposed Cure Amounts do not reflect all outstanding balances due and owing to Landlords under the Leases, or account for accrued but unbilled charges which may come due in the future.  The Proposed Cure Amounts must be modified to reflect the additional charges owing, as well as recognize the liability for accruing charges due under the Leases until such time as the Leases are assumed and assigned, as set forth herein.

10.     Finally, the Proposed Sale Order must be modified to address the Landlords' objections raised herein.

**A.      The Debtors' proposed cure amounts as set forth in the Cure Notice fail to provide for the payment of all obligations due under the Leases.**

11.     Although the Debtors seek to assume and assign the Leases, in order to do so, the Debtors must comply with Section 365(b)(1) of the Bankruptcy Code which provides that:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee
> –

(A)     cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;. . .

11 U.S.C. § 365(b)(1).

12.     The Landlords' cure, as compared to the Debtors' cure, is summarized more fully in **Schedule A** attached hereto, and those charges comprising the Landlords' cure are more fully detailed in Exhibits 1 through 39, which are attached hereto and incorporated into this Objection by this reference.[4]

### i.     Year-end Adjustments and Reconciliations

13.     In addition to rent and related monthly charges, attorneys' fees, costs and interest, some charges for which the Debtors bear responsibility under the Leases have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods.  By way of example, the Debtors occupy retail space at the shopping centers pursuant to triple-net leases, where they typically pay rent and related lease charges in advance for each month.  The Debtors pay fixed

---

[4] Unless otherwise indicated, Landlords' cures do not include September rents and any other charges that are billed or come due after the filing of the Cure Notice or charges that are billed directly to the Debtors, including in some cases, real estate taxes.  To the extent Landlords are later billed for any amount due to the Debtors' failure to pay, Landlords reserve the right to amend the Objection to include such amounts.  The Debtors must timely pay all rent and other lease charges as they come due under the Leases, and the Landlords reserve the right to payment (and amend this Objection to the extent necessary) for any amounts that come due under the Leases through the later of the date of any cure payment or effective date of assumption and assignment.  In addition, unless otherwise indicated, Landlords' cure is exclusive of attorneys' fees, interest and costs that form the basis of the Landlords' actual pecuniary losses.  Presently, Landlords estimate that their attorneys' fees incurred to date are in an amount not less than $2,500 per Lease.

minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like.  Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end.  The reconciliation compares the amounts estimated and paid against actual charges incurred at the respective shopping center.  To the extent the estimated payments exceed actual charges, the result is a credit to the tenant.  To the extent the estimated payments do not cover actual charges incurred under the Leases, the result is an additional amount (or debit) for which the tenant is liable.  In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e., year-end reconciliations and adjustments that accrued through 2024 may not yet have been billed under the Leases, and such charges that are accruing for 2025 will not be billed until 2026).  In other instances, certain charges may be paid in arrears and cannot be calculated (in some cases) until a year or more after year-end.  Since these accrued, but unbilled, charges are not yet due under the Leases, they do not create a current default that gives rise to a requirement of cure by the Debtors at this time.  Accordingly, the Proposed Sale Order must be modified to make clear that the Sale and the assumption and assignment of the Leases is not free and clear of these continuing and accruing obligations under the Leases.

14.    Since Section 365(b) only requires debtors to cure defaults under their Leases at the time of an assumption and assignment, and since there can be no default for failure to pay an amount that has not as yet been billed, these accrued, but unbilled, charges are not yet due under the Leases, and they do not create a current default that gives rise to a requirement of cure by the Debtors at this time.  The obligation to pay the year-end adjustments is, however, certainly a part

of the obligation to provide adequate assurance of future performance.  As a result, the Court should deny any attempt to assign the Leases "free and clear" of these obligations.

15.    Debtors (or the Purchaser) remain responsible for all accrued or accruing charges under the Leases and must pay such charges when they come due under the Leases.  The Debtors assume and assign the Leases to the Purchaser subject to their terms and must assume and assign all obligations owing under the Leases, including obligations that have accrued but may not yet have been billed under the Leases.  The Proposed Sale Order should clearly state that the Debtors (or the Purchaser) will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the closing of the Sale.  In addition, any provision in the Proposed Sale Order that purports to release the Debtors (or the Purchaser) of further liability based upon a payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Leases, or any nonmonetary defaults where performance is required as cure at or after the assignment of the Leases.

16.    Finally, the Leases require the Debtors (or the Purchaser) to indemnify and hold the Landlords harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Leases, examples of which may include such claims as personal injuries at the Premises and damage to the Premises or shopping centers by the Debtors, the Purchaser or their agents.  Any assumption and assignment of the Leases must be subject to the terms of the Leases, including the continuation of all indemnification obligations, regardless of when they arose.[5]  In the alternative, the Debtors must provide (by tail insurance or otherwise)

---

[5] Any ability to assume and assign the Leases is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption (or assumption and assignment) must be in accordance with all provisions of the Leases.

that they can satisfy the indemnification obligations under the Leases for any claims that relate to the period prior to assumption or assumption and assignment of the Leases. Nothing in the Proposed Sale Order should preclude the Landlords from pursuing the Debtors, their insurance, or any other party that may be liable under the Leases, and the Landlords request that the Proposed Sale Order specifically preserve their right to pursue such rights irrespective of any resolution of cure amounts herein.[6]

17.     Landlords, therefore, request that in the event the assumption and assignment of the Leases is approved by the Court, language must be inserted into the Proposed Sale Order to provide that the Purchaser shall be responsible for all unpaid year-end adjustments, whether accruing prior to or after the effective date of assumption of the Leases, when such charges become due in accordance with the terms of the Leases, including with respect to indemnification and insurance obligations. Alternatively, a suitable escrow for the Leases equal to 150% of the average year-end adjustments for the prior three (3) years must be established to assure that any amounts due will be available to Landlords when the year-end adjustments are actually billed and due pursuant to the terms of the respective Leases.

### ii.     Attorneys' Fees, Costs, and Interest

18.     The Leases contain provisions for recovery of attorneys' fees, costs, and interest in the event the Landlords are required to take legal action to protect their interests. The Debtors are obligated to cure all defaults under the Leases and compensate the Landlords for their actual pecuniary losses as a result of defaults under the Leases. See 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. In re LCO Enters., 12 F.3d 938, 941 (9th Cir. 1993); Elkton

---

[6]   If Debtors are covered under an "occurrence basis" insurance policy, rather than a "claims made" policy, this objection may be satisfied by proof of such insurance by the Debtors for Landlords' locations.

Associates v. Shelco Inc. (Matter of Shelco), 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured *all pre-petition defaults*).

19.    The Debtors (or any assignee) take the Leases *cum onere*—subject to existing burdens.  The Debtors cannot assume the favorable portions, and reject the unfavorable provisions, of its Leases.  In re Washington Capital Aviation & Leasing, 156 B.R. 167,172 (Banks. E.D. Va. 1993).  If forced to continue in the performance of the Leases, the Landlords are entitled to the full benefit of the bargain under their Leases with the Debtors.  See Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996).  The "full benefit of the bargain" principle has been held to require payment of interest.   "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy.  One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract."  In re Entm't, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%).  Interest on pre-petition lease charges continues to run from the filing of the Debtors' petition and must be paid as a condition of the assumption of the Leases.  See In re Skylark Travel, Inc., 120 B.R. 352-55 (Bankr. S.D.N.Y. 1990).  Interest calculations are therefore not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlords for the Debtors' default under the Leases, and thus to properly assume the Leases.  Finally, post-petition interest is allowable where such interest is provided for under the terms of the Leases.  Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 853 (9th Cir. 2001).

20.    Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and the Debtors (or any

successor) must satisfy these lease charges as part of the assumption or assumption and assignment of the Leases.  In re Entm't, Inc., 223 B.R. at 152 (citation omitted).  There is no logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults.  Id. at 154.  The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay).  Id., see also In re Crown Books Corporation, 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); Urban Retail Properties v. Loews Cineplex Entm't Corp., et al., 01 Civ. 8946 (RWS), 2002 U.S. Dist. LEXIS 6186 at *25 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . . ."); Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Inc.), 167 F.3d 843, 850 (4th Cir. 1999).  The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law.  Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Electric, 127 S. Ct. 1199, 1206 (2007).

21.    Accordingly, unless otherwise agreed as between the Purchaser and the applicable Landlord, Landlords further request that they be reimbursed for all of their actual pecuniary losses including, but not limited to, attorney's fees and costs expended with regard to Debtors' defaults under the Leases.  To date, the Landlords' estimate their attorney's fees and costs to be approximately $2,500 per Lease.

### iii.    The Cure Amounts Serve Only as Estimates.

22.    Landlords can only provide the information presently available regarding amounts that the Debtors owe, while reserving the right to amend this Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorneys' fees, costs, interest, and year-end adjustments and reconciliations.  There is no basis to impose upon the Landlords the equivalent of an administrative bar date, limiting their recourse to recover charges to which they are entitled under the Leases.

### iv.    The Debtors or the Purchaser Must Pay Undisputed Cure Amounts Immediately.

23.    Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Leases upon assumption or assumption and assignment.  To the extent there is a dispute over the total cure obligation for any Lease, the undisputed portion of the cure amounts should be paid immediately.  Debtors should escrow disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption or assumption and assignment of the Leases to deal with any disputes that remain unresolved after such period.

### B.    Any assumption and assignment must comply with terms of the Leases.

24.    Through the BAPCPA amendments, "Section 365(f)(1) is amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the code does not override Section 365(b)."  Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).  In explaining the change to Section 365(f)(1), Senator Hatch stated:

The bill helps clarify that an owner should be able to retain control over the mix of retail uses in a shopping center.  When an owner enters into a use clause with a retail tenant forbidding assignments of the lease for a use different than that specified in the lease, that clause should be honored.  Congress has so intended already, but bankruptcy judges have sometimes ignored the law.

151 Cong. Rec. S. 2459, 2461 (daily ed. March 10, 2005).

25.    The changes embodied in the BAPCPA specifically preserve a landlords' right to enforce use and other lease provisions.  Again, Senator Hatch's remarks in the Congressional Record clarify the intent behind Section 365(b) and 365(f):

A shopping center operator . . . must be given broad leeway to determine the mix of retail tenants it leases to.  Congress decided that use or similar restrictions in a retail lease, which the retailer cannot evade under nonbankruptcy law, should not be evaded in bankruptcy.  It is my understanding that some bankruptcy judges have not followed this mandate.  Under another provisions of the Code, Section 365(f), a number of bankruptcy judges have misconstrued the Code and allowed the assignment of a lease even though terms of the lease are not being followed. (emphasis added).

151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

26.    BAPCPA clarified Section 365 to reflect the Congressional intent that Debtors cannot use Section 365(f)(1) to void lease provisions, and to overrule those prior court decisions that did not strictly enforce lease terms.  The predicate to the limited ability to assign a lease over a landlord's objection under Section 365(f) is that such assignment must be subject to the protections of Section 365(b)(1) and (3).

27.    Section 365(f)(1) does not modify or override Section 365(b).  Trak Auto Corp. v. West Town Ctr. LLC (In re Trak Auto Corp.), 367 F.3d 237, 243-44 (4th Cir. 2004) (bankruptcy courts could not use the general anti-assignment provision of Section 365(f)(1) to override the specific protections granted to landlords in Section 365(b)(3)(C)).  Landlords have inquired of the Purchaser as to whether the stores will be continued to be operated under the Claire's banner.  Any assignment must remain subject to all provisions of the Leases, including those provisions concerning use, radius, exclusivity, tenant mix and balance.

12

### C.    Additional Security

28.    While the Purchaser may be backed by entities with industry experience and/or adequate capitalization, here, AWS Claire's, LLC is a "Newco", so the assignee entity itself does not possess such experience or capitalization and, therefore, should provide some type of credit enhancement, such as: (i) a guaranty of future performance from a financially capable parent entity, like Ames Watson LLC; (ii) a letter or credit; or (iii) a cash security deposit.  Where the proposed assignee is a newly formed entity with no financial or operating history, an existing entity with acceptable financing should guaranty the performance of any newly-formed company that seeks an assignment of the Leases consistent with Section 365(l) of the Bankruptcy Code.  Pursuant to Section 365(l), a landlord may require a security deposit or letter of credit as security for the performance of the assignee's obligations under the Leases in the event that the assignee fails to perform on a going-forward basis.  Unless Landlords agree otherwise, this is a reasonable condition of demonstrating adequate assurance of future performance where the Debtors are seeking approval of an assignee with no operating history.

### D.    Assumption and Amendment Agreement

29.    Landlords also request that, as a condition to any order approving assumption and assignment of any of Landlords' Leases, the Purchaser shall be required to enter into a short form Assumption and Amendment Agreement whereby the Purchaser shall become directly obligated to Landlords and the provisions of the Leases regarding notice addresses will be modified.  A form of Assumption and Amendment Agreement can be provided upon request of the Purchaser.

### E.    Adequate Assurance of Future Performance

30.    Pursuant to Section 365(f)(2)(B) of the Bankruptcy Code, Debtors may only assume and assign the Landlords' Leases if "adequate assurance of future performance by the

assignee of such . . . lease is provided, . . . ." As set forth in Section 365(b)(3), adequate assurance

of future performance in the shopping center context includes, inter alia, adequate assurance:

> (A)     of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
>
> * * *
>
> (C)     that assumption and assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as radius, location, use or exclusivity provision, and will not breach any such provision contained in any other lease, . . . relating to the shopping center; . . . .

31.     The burden of proof on adequate assurance issues is with the Debtors.  See In re

Lafayette Radio Elecs. Corp., 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991).

32.     Further, since the Debtors' stores are located in shopping centers, Debtors and the

Purchaser must meet the heightened requirements of adequate assurance that the Bankruptcy Code

contemplates in the case of such assignments.  The Bankruptcy Code requires more than the basic

adequate assurance of future performance of the leases under Section 365(b)(1)(C).  In re Sun TV

and Appliances, Inc., 234 B.R. 356, 359 (Bankr. D. Del. 1999).  In order to assume and assign

shopping center leases, Debtors must satisfy the heightened requirements set forth in 11 U.S.C.

§ 365(b)(3)(A) – (D).  See Joshua Slocum, 922 F.2d at 1086; see also L.R.S.C. Co. v. Rickel Home

Centers, Inc. (In re Rickel Home Centers, Inc.), 209 F. 3d 291, 299 (3d Cir. 2000).  The heightened

adequate assurance requirements include the following:

- The source of rent and assurance that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee.  See 11 U.S.C. § 365(b)(3)(A);

- That any percentage rent due under the lease will not decline substantially.  See 11 U.S.C. § 365(b)(3)(B);

- That assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or

exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center.  See 11 U.S.C. § 365(b)(3)(C); and

- That assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center.  See 11 U.S.C. § 365(b)(3)(D).

33.  As discussed above, the Landlords have been provided with certain high-level, summary adequate assurance information from the Purchaser.  The Landlords have, however, requested additional adequate assurance information from Purchaser's counsel.  Landlords, therefore, file this Objection to preserve any objections they may have to the Purchaser's ability to provide adequate assurance of future performance under the Leases and all rights are reserved on those issues.

34.  Landlords are not aware that the Purchaser intends to change the use at the Premises, but any such assignment must be subject to all the provisions of the Leases, and the proposed Sale must be modified to ensure the Purchaser's compliance with the Section 365(b)(3) heightened adequate assurance requirements, specifically that it will comply will all provisions of the Leases, including as to radius, location, use or exclusivity.

35.  Moreover, unless and until a Lease is assumed and assigned to an assignee demonstrating adequate assurance of future performance—the Debtors as tenant under each Lease must remain liable to the Landlord under each Lease in all respects pursuant to Section 365(d)(3) of the Bankruptcy Code through any designation period, and only if a Lease is assumed and assigned and the cure amount paid, may the Debtors be released from liability pursuant to Section 365(k) of the Bankruptcy Code.  To that end, the Proposed Sale Order must be modified to ensure that no Section 365(k) release occurs until such time as a Lease is assumed and assigned pursuant to a subsequent assignment order entered by the Court.

**F.  Any Assignment of Leased Real Property Must be Subject to all Applicable Restrictive Covenants**

36.     The *cum onere* principle and requirements of section 365 (including section 365(b)(3)) of the Bankruptcy Code also mandate that restrictive covenants be respected in connection with any lease assignment. <u>See</u> 11 U.S.C. § 365(b)(3)(C) (requiring that "assumption or assignment of such lease is subject to all the provisions thereof"); <u>N.L.R.B. v. Bildisco and Bildisco</u>, 465 U.S. 513, 531 (1984); <u>In re MF Glob. Holdings Ltd.</u>, 466 B.R. 239, 241 (Bankr. S.D.N.Y. 2012).   As is typical, shopping center leases are part of an integrated and complex commercial relationship between the shopping center owner and tenants that arise under both leases as well as reciprocal easement agreements (or similar agreements) and other restrictive covenants applicable to the properties.  Accordingly, assumption of any assignment of any leases in accordance with section 365 of the Bankruptcy Code and applicable law requires compliance with, and is subject to, any agreements containing restrictive covenants or other obligations related to the properties.

37.     Accordingly, Landlords object to the assumption and assignment of the Leases to the extent such transfer is not subject to all applicable reciprocal easement agreements, other similar agreements, and other restrictive covenants or obligations set forth therein.

**G.     Proposed Sale Order and Designation Rights**

38.     As more fully set forth above, no assumption and assignment of the Leases can be free and clear of restrictive covenants or any obligations arising or accruing under the Leases, including for year-end adjustments or reconciliation of items such as common area maintenance, insurance, taxes, percentage rent and other items that are paid during the course of the year on an estimated basis, but not billed or due until some date in the future.  Accordingly, Paragraphs N, O, 5, 6, 9, 13, 18, 23 and 24 of the Proposed Sale Order must be modified to specifically provide that the Purchaser (and any assignee) will be responsible for all obligations arising or accruing under

the Leases, including year-end adjustments and tax obligations, when such obligations arise and as charges are billed and become due in accordance with the terms of the Leases, whether such obligations are accruing prior to or after the effective date of assumption and assignment of the Leases.

39.     Further, the Leases are assumed and assigned pursuant to Section 365 of the Bankruptcy Code, not Section 363.  Any and all references to the assignment of the Leases pursuant to Section 363 should be removed from the Proposed Sale Order.

40.     In addition, any Section 365(k) release of the Debtors must be modified to preserve indemnification obligations of the Debtors for the period prior to the Closing to the extent of available insurance, if the Purchaser is not assuming such obligations under the APA, as well as to ensure that the Debtors are not released from their obligations under Section 365(d)(3) of the Bankruptcy Code unless and until such Lease is assumed and assigned to the Purchaser. Specifically, Paragraph 27 of the Proposed Sale Order must be modified to remove any provisions that provide for a Debtor release for any postpetition rent obligations arising after August 31, 2025, until such time a Lease is assumed and assigned to the Purchaser.  The Purchaser is not a party to any Lease until such time as a Lease is assumed and assigned, and the Landlords are not in privity with the Purchaser to enforce any obligation for the Purchaser Rent Obligations.  Until such time as a Lease is assumed and assigned, the Debtors remain in privity under the Leases, and must remain liable thereunder. In addition, irrespective of the business agreement between the Debtors and the Purchaser, all amounts in default under the Leases must be cured at the time of the assumption and assignment of the Leases, including amounts due and owing for August post-petition rent and charges (the "Stub Rent").  Any provisions in the Sale Order that seek to absolve

the Purchaser and/or the Debtors of any liability to cure the full amounts due under the Leases, including any Stub Rent, at the time of assumption and assignment should be stricken.

41.     Further, the APA states that the Acquired Assets will be sold to the Purchaser (or its designee).  To assign the Leases, the Purchaser must identify the assignee prior to the Court's approval of the Sale and assignment of the Leases, and demonstrate adequate assurance of future performance for that approved assignee at the Sale Hearing.  The Debtors cannot assume and assign the Leases to an unknown assignee of the Leases.

42.     Paragraphs M and 7 seeks to bind the Order and the APA on all persons and entities, including the Lease counterparties.  However, Lease counterparties are not parties to the APA and therefore, the Order cannot bind them to its provisions.  Only the Order can be binding upon those parties who are not parties to the APA.

43.     Moreover, to the extent any of Landlords' Leases are not assumed and assigned at Closing, and are subject to the post-closing designation rights described in the APA, all of the objections raised by such Landlords herein must be fully preserved until such time as the Purchaser designates the Leases for assumption and assignment, and none of the findings of fact and conclusions of law in the Proposed Sale Order with respect to assumption and assignment of Leases should be binding upon such Landlords with respect to any designation Leases or be deemed law of the case or as creating issue preclusion on such issues.  The Proposed Sale Order should be further modified to ensure that when the designation rights are exercised by the Purchaser, any affected Landlords (and their counsel of record) receive a supplement notice of the proposed assignment, identifying the assignee entity and including an updated proposed cure amount, on no less than ten (10) days to object to the proposed assignment.  A determination of cure and adequate assurance of future performance is determined at the time of the assignment.

Given that the designation period is contemplated to be as long as 60 days, the Landlords should receive a post-closing notice of the Debtors' intent to assume and assign a designation lease to the Purchaser, and have an opportunity to update any cure amounts and receive updated adequate assurance information for the Purchaser at the time such Lease is designated for assumption and assignment. In addition, a supplemental assignment order should be entered for any Lease that is subject to the designation period, at the time of the assumption and assignment of such Lease, if such Lease is not assumed and assigned at Closing.

44.     Landlords reserve the right to raise other and further objections to any revised Proposed Sale Order for any of their Premises once a final proposed Sale Order and APA is filed of record.

## III.     **JOINDER IN OBJECTIONS RAISED BY OTHER LANDLORDS**

45.     To the extent consistent with the objections expressed herein, Landlords join in the objections of other landlords.

46.     Landlords reserve all rights reserve all rights to raise other and further objections to the extent their Lease is later designated as an Assigned Contract pursuant to Section 1.5 of the APA.

## IV.     **CONCLUSION**

The Landlords respectfully request that the Proposed Sale Order (i) allow the cure amounts (subject to adjustment by the Landlords) in the amounts set forth herein, (ii) order payment of all undisputed cure amounts, with an escrow established that is sufficient to pay any remaining disputed cure amounts, when resolved by the parties or this Court, (iii) order compliance with all Lease provisions, additional security to Landlords, as necessary, to satisfy adequate assurance

requirements, and that any assignee enter into a short form Assumption and Amendment Agreement; and (iv) grant such other relief requested herein.

*[Signature page follows]*

Dated: August 29, 2025          */s/Leslie C. Heilman*
Wilmington, Delaware            Leslie C. Heilman (DE No. 4716)
                                Laurel D. Roglen (DE No. 5759)
                                Margaret A. Vesper (DE No. 6995)
                                Erin L. Williamson (DE No. 7286)
                                BALLARD SPAHR LLP
                                919 N. Market Street, 11th Floor
                                Wilmington, Delaware 19801-3034
                                Telephone: (302) 252-4465
                                Facsimile: (302) 252-4466
                                E-mail: heilmanl@ballardspahr.com
                                        roglenl@ballardspahr.com
                                        vesperm@ballardspahr.com

                                -and-

                                Dustin P. Branch, Esquire
                                Nahal Zarnighian, Esquire
                                Sara Shahbazi, Esquire
                                BALLARD SPAHR LLP
                                2029 Century Park East, Suite 1400
                                Los Angeles, California 90067-2915
                                Telephone: (424) 204-4400
                                Facsimile: (424) 204-4350
                                E-mail: branchd@ballardspahr.com
                                        zarnighiann@ballardspahr.com
                                        shahbazis@ballardspahr.com

                                -and-

                                Craig Solomon Ganz (pro hac vice pending)
                                Michael S. Myers (pro hac vice pending)
                                Joel F. Newell (pro hac vice pending)
                                BALLARD SPAHR LLP
                                1 East Washington Street, Suite 2300
                                Phoenix, Arizona 85004-2555
                                Telephone: (602) 798-5427
                                Facsimile: (602) 798-5595
                                E-mail: ganzc@ballardspahr.com
                                        myersm@ballardspahr.com
                                        newellj@ballardspahr.com

                                *Attorneys for 429 Fulton Street LLC, 3902
                                Annadale Lane, LP, Belden Mall LLC,
                                Bridgewater Commons Mall II, LLC, Broadstone
                                CLE Illinois, LLC, Broward Mall LLC, Capital*

*Mall LP, Centennial Real Estate Company, LLC, CenterCal Properties, LLC, Champlain Centre North LLC, Continental Realty, FR Del Monte, LLC, FR Grossmont, LLC, FRIT Florida, LLC, Federal Realty OP LP, GTM Denton, LTD., Gallatin Mall Group, L.L.C., KRE Colonie Owner, LLC, Northpark Mall Limited Partnership, PGIM Real Estate, Pacific QKC Management PR, LLC, Palm Desert Pacific Owner LLC, Pappas Laguna No. 2, L.P., Park Mall, L.L.C., Plaza West Covina LP, Poag Shopping Centers, LLC, Southlake Indiana LLC, Star-West Franklin Park Mall, LLC, Star-West Great Northern Mall LLC, Star-West Parkway Mall LP, The Forbes Company, The Macerich Company, and YTC Mall Owner, LLC*

**SCHEDULE A**

| STORE NO. | CENTER | LOCATION | DEBTORS' CURE | LANDLORDS' CURE[7] | EXHIBIT NO. |
|---|---|---|---|---|---|
| **429 FULTON STREET LLC** | | | | | |
| 6802 | 489 Fulton Street | Brooklyn, NY | $0.00 | $280,146.74[8] | N/A |
| **3902 ANNADALE LANE, LP** | | | | | |
| 6073 | Hanford Mall | Hanford, CA | $9,113.00 | Agree | N/A |
| **BELDEN MALL LLC** | | | | | |
| 5154 | Belden Village Mall | Canton, OH | $24,936.00 | Agree | N/A |
| **BRIDGEWATER COMMONS MALL II, LLC** | | | | | |
| 3481 | Bridgewater Commons | Bridgewater, NJ | $57,137.00 | $58,772.66 | 1 |
| **BROADSTONE CLE ILLINOIS LLC** | | | | | |
| N/A | Distribution Center | Hoffman Estates, IL | Unknown | $0.00 | N/A |
| **BROWARD MALL LLC** | | | | | |
| 6426 | Broward Mall | Plantation, FL | $6,818.00 | Agree | N/A |
| **CAPITAL MALL LP** | | | | | |
| 5704 | Capital Mall | Olympia, WA | $23,266.00 | Agree | N/A |
| **CENTENNIAL REAL ESTATE COMPANY, LLC** | | | | | |
| 5310 | Annapolis Mall | Annapolis, MD | $51,751.00 | Agree | N/A |
| 5294 | Arden Fair | Sacramento, CA | $34,168.00 | Agree | N/A |
| 8110 | Arden Fair (Icing) | Sacramento, CA | Unknown | $2,500.00[9] | N/A |
| 5701 | Brazos Mall | Lake Jackson, TX | $10,583.00 | $10,672.25 | 2 |
| 5953 | Connecticut Post | Milford, CT | $16,406.00 | Agree | N/A |
| 6633 | Dulles Town Center | Dulles, VA | $11,703.00 | Agree | N/A |
| 5184 | Fox Valley Mall | Aurora, IL | $31,224.00 | Agree | N/A |
| 5276 | Greenwood Mall | Bowling Green, KY | $0.00 | $24,657.27 | 4 |
| 5614 | Hawthorn Mall | Vernon Hills, IL | Unknown | $13,897.88 | 5 |

---

[7] Except as otherwise stated, amounts are exclusive of attorneys' fees, costs and interests (among other charges), which fees, costs and interests shall be reconciled and added to the cure at the time of any assumption and assignment of the Leases consistent with the points raised in the Objection.

8 Debtors' non-payment of certain construction costs obtained by the Debtors at the Premises resulted in the attachment of a mechanic's lien to Landlord's real property filed by The Benmoore Construction Group, Inc. ("Benmoore") on July 10, 2025. On August 22, 2025, Benmoore filed a Notice of Perfection, Maintenance, and Continuation of Lien of The Benmoore Contruction Group, Inc., Pursuant to 11 U.S.C. § 546(b)(2) [D.I. 224], in the amount of $200,193.61 plus interest, costs, and fees. Any assumption and assignment of the Lease will require the full discharge and proof that the lien has been released, or the lien must be bonded off with proof of a sufficient bond. The Debtors' failure to do so within 30 days is a post-petition default under the Lease (Lease, § 3) voiding the free rent provisions of the Lease and making such fixed rent immediately due and owing (Lease, § 66). Landlord's cure amount includes rent commencing on April 22, 2025 through August 31, 2025 in the monthly amount of $18,593.75 plus prorated rent for the post-commencement portion of April 2025, totaling $79,953.13.

[9] Attorneys' fees only.

| 3825 | Liberty Center | Liberty Township, OH | $18,539.00 | $25,009.41 | 6 |
|---|---|---|---|---|---|
| 6394 | MainPlace Mall | Santa Ana, CA | $23,641.00 | Agree | N/A |
| 6763 | Port Charlotte Town Center | Port Charlotte, FL | $0.00 | $35,800.59 | 7 |
| 5840 | Promenade Saucon Valley | Center Valley, PA | $3,292.00 | Agree | N/A |
| 5703 | Pueblo Mall | Pueblo, CO | $8,575.00 | Agree | N/A |
| 8133 | Pueblo Mall (Icing) | Pueblo, CO | $6,214.00 | Agree | N/A |
| 5615 | Trumbull Mall | Trumbull, CT | Unknown | $18,960.60 | 8 |
| 6121 | Valencia Town Center | Valencia, CA | $15,406.00 | $18,874.57 | 9 |
| 5787 | Vancouver Mall | Vancouver, WA | $21,978.00 | Agree | N/A |
| 6194 | Westland Mall | Hialeah, FL | $32,787.00 | $35,502.72 | 10 |
| **CENTERCAL PROPERTIES, LLC** | | | | | |
| 5074 | Station Park | Farmington, UT | $19,009.00 | Agree | N/A |
| 6000 | Valley Mall | Union Gap, WA | $14,732.00 | Agree | N/A |
| **CHAMPLAIN CENTRE NORTH LLC** | | | | | |
| 1111 | Champlain Centre | Plattsburgh, NY | $5,617.00 | Agree | N/A |
| **CONTINENTAL REALTY** | | | | | |
| 6110 | Lakeside Village | Lakeland, FL | $8,888.00 | $9,065.54 | 36 |
| 6809 | Mount Pleasant Towne Centre | Mt. Pleasant, SC | $11,287.00 | $12,118.75 | 37 |
| 5506 | The Shoppes at Webb Gin | Snellville, GA | $25,168.00 | Agreed | N/A |
| **FR DEL MONTE LLC** | | | | | |
| 5623 | Del Monte Shopping Center | Monterey, CA | Unknown | $26,679.96 | 38 |
| **FR GROSSMONT, LLC** | | | | | |
| 5387 | Grossmont Center | La Mesa, CA | $5,449.00 | Agree | N/A |
| **FRIT FLORDIA, LLC** | | | | | |
| 5228 | Tower Shops | Davie, FL | $11,324.00 | Agree | N/A |
| **FEDERALY REALTY OP LP** | | | | | |
| 5057 | Shops at Willow Lawn | Richmond, VA | $10,234.00 | $10,331.12 | 39 |
| **GTM DENTON, LTD.** | | | | | |
| 5292 | Golden Triangle Mall | Denton, TX | $12,605.00 | Agree | N/A |
| **GALLATIN MALL GROUP, L.L.C.** | | | | | |
| 6068 | Gallatin Valley Mall | Bozeman, MT | $10,715.00 | $12,561.15 | 11 |
| **KRE COLONIE OWNER, LLC** | | | | | |
| 5207 | Colonie Center | Albany, NY | $9,989.00 | Agree | N/A |
| **NORTHPARK MALL LIMITED PARTNERSHIP** | | | | | |
| 3418 | Northpark Mall | Ridgeland, MS | $17,539.00 | $41,154.42 | 12 |
| **PGIM REAL ESTATE** | | | | | |
| 750 | The Avenue Peachtree City | Peachtree City, GA | $10,409.00 | Agree | N/A |
| 5520 | The Shoppes at Arbor Lakes | Maple Grove, MN | $6,011.00 | Agree | N/A |

| | PACIFIC QKC MANAGEMENT PR, LLC | | | | |
|---|---|---|---|---|---|
| 6410 | Queen Ka'ahumanu Center | Kahului, HI | $26,520.00 | $28,302.88 | 13 |
| | PALM DESERT PACIFIC OWNER LLC | | | | |
| 6124 | The Shops at Palm Desert | Palm Desert, CA | $31,219.00 | $33,091.23 | 14 |
| | PAPPAS LAGUNA NO. 2, L.P. | | | | |
| 5522 | Laguna Gateway – West (Icing) | Elk Grove, CA | $10,793.00 | Agree | N/A |
| | PARK MALL, L.L.C. | | | | |
| 5590 | Park Place Mall | Tucson, AZ | $36,004.00 | Agree | N/A |
| | PLAZA WEST COVINA LP | | | | |
| 5957 | Plaza West Covina | West Covina, CA | $15,986.00 | Agree | N/A |
| | POAG SHOPPING CENTERS, LLC | | | | |
| 5186 | The Shops at Perry Crossing | Plainfield, IN | $11,687.00 | Agree | N/A |
| 6781 | RiverTown Crossings | Grandville, MI | $38,261.00 | Agree | N/A |
| | SOUTHLAKE INDIANA LLC | | | | |
| 5423 | Southlake Mall | Merrillville, IN | $25,608.00 | $64,398.30 | 15 |
| | STAR-WEST FRANKLIN PARK MALL, LLC | | | | |
| 6143 | Franklin Park Mall | Toledo, OH | $16,157.00 | Agree | N/A |
| | STAR-WEST GREAT NORTHERN MALL LLC | | | | |
| 6050 | Great Northern Mall | North Olmsted, OH | $16,182.00 | Agree | N/A |
| | STAR-WEST PARKWAY MALL LP | | | | |
| 6432 | Parkway Plaza | El Cajon, CA | $11,682.00 | Agree | N/A |
| | THE FORBES COMPANY | | | | |
| 6425 | Somerset Collection | Troy, MI | $63,546.00 | Agree | N/A |
| 6359 | The Gardens | Palm Beach Gardens, FL | $16,105.00 | Agree | N/A |
| 6754 | The Mall at Millenia | Southaven, MS | $47,568.00 | Agree | N/A |
| | THE MACERICH COMPANY | | | | |
| 6113 | Arrowhead Towne Center | Glendale, AZ | $43,110.00 | $46,676.97 | 16 |
| 6924 | Chandler Fashion Center | Chandler, AZ | $40,618.00 | $98,805.64 | 17 |
| 6448 | Crabtree Valley Mall | Raleigh, NC | $32,673.00 | Agree | N/A |
| 5505 | Danbury Fair | Danbury, CT | $22,133.00 | Agree | N/A |
| 5877 | Deptford Mall | Deptford, NJ | $0.00 | Agree | N/A |
| 3396 | Deptford Mall (Icing) | Deptford, NJ | $5,675.00 | Agree | N/A |
| 5330 | Eastland Center | Evansville, IN | $5,185.00 | Agree | N/A |
| 8261 | Eastland Center (Icing) | Evansville, IN | $7,399.00 | $9,971.13 | 18 |
| 744 | Fashion District of Philadelphia | Philadelphia, PA | $20,837.00 | $21,738.25 | 19 |
| 3014 | FlatIron Crossing | Broomfield, CO | $28,154.00 | Agree | N/A |
| 5796 | Freehold Raceway | Freehold, NJ | $19,235.00 | $21,158.48 | 20 |
| 6025 | Fresno Fashion Fair | Fresno, CA | $37,500.00 | $94,866.44 | 21 |
| 6080 | Green Acres Mall | Valley Stream, NY | $18,865.00 | Agree | N/A |

| 1873 | Inland Center | San Bernardino, CA | $21,896.00 | $24,469.04 | 22 |
|---|---|---|---|---|---|
| 6186 | Kings Plaza | Brooklyn, NY | $0.00 | Agree | N/A |
| 6382 | Lakewood Center | Lakewood, CA | $11,455.00 | $28,046.47 | 23 |
| 3507 | Lakewood Center (Icing) | Lakewood, CA | $11,694.00 | $12,770.23 | 24 |
| 3443 | Los Cerritos Center | Cerritos, CA | $34,544.00 | $85,928.99 | 25 |
| 6496 | NorthPark Mall | Davenport, IA | $16,771.00 | Agree | N/A |
| 3561 | NorthPark Mall (Icing) | Davenport, IA | $6,744.00 | $12,804.23 | 26 |
| 6796 | Pacific View | Ventura, CA | $17,478.00 | $18,436.01 | 27 |
| 6517 | Queens Center | Elmhurst, NY | $71,196.00 | $73,884.77 | 28 |
| 5765 | SanTan Village Regional Center | Gilbert, AZ | $41,472.00 | $43,473.49 | 29 |
| 1138 | Scottsdale Fashion Square | Scottsdale, AZ | $33,711.00 | $35,549.74 | 30 |
| 5484 | South Plains Mall | Lubbock, TX | $5,334.00 | Agree | N/A |
| 6386 | Stonewood Center | Downey, CA | $27,061.00 | Agree | N/A |
| 5849 | Superstition Springs | Mesa, AZ | $21,650.00 | Agree | N/A |
| 5573 | The Mall of Victor Valley | Victorville, CA | $27,779.00 | Agree | N/A |
| 6063 | Tysons Corner Center | McLean, VA | $48,368.00 | $49,758.05 | 31 |
| 5451 | Valley Mall | Harrisonburg, VA | $12,190.00 | $12,976.78 | 32 |
| 8677 | Valley Mall (Icing) | Harrisonburg, VA | $0.00 | Agree | N/A |
| 6958 | Valley River Center | Eugene, OR | $25,437.00 | Agree | N/A |
| 5990 | Vintage Faire Mall | Modesto, CA | $46,094.00 | $48,933.13 | 33 |
| 8107 | Vintage Faire Mall (Icing) | Modesto, CA | $43,438.00 | $44,340.09 | 34 |
| 6391 | Washington Square | Tigard, OR | $58,316.00 | $59,932.40 | 35 |
| 6648 | Wilton Mall | Sarasota Springs, NY | $4,541.00 | Agree | N/A |
| **YTC MALL OWNER LLC** | | | | | |
| 5129 | Yorktown Center | Lombard, IL | Unknown | $65,217.62 | 3 |