**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) Case No. 25-11454 (BLS) |
| Debtors. | ) (Jointly Administered) |
| | ) Re: Docket Nos. 190, 209 |

**OBJECTION OF 5RIVERS CRE LLC, BRIXMOR PROPERTY GROUP, BROOKFIELD PROPERTIES RETAIL, INC., HINES GLOBAL REIT, JONES LANG LASALLE, KITE REALTY GROUP, REGENCY CENTERS, L.P., SITE CENTERS CORP., AND TURNBERRY ASSOCIATES TO (A) NOTICE OF POTENTIAL ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS OR LEASES, AND (B) MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE SALE OF GOING-CONCERN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND (II) GRANTING RELATED RELIEF**

5Rivers CRE LLC, Brixmor Property Group, Brookfield Properties Retail, Inc., Hines Global REIT, Jones Lang LaSalle, Kite Realty Group, Inc., Regency Centers, L.P., SITE Centers Corp., and Turnberry Associates (collectively, the "Landlords"), by and through their undersigned counsel, Kelley Drye & Warren LLP and Law Office of Susan E. Kaufman, LLC, submit this limited objection (the "Limited Objection") to the (A) *Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases* (the "Assumption Notice")[2], and (B) *Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Sale of Going-Concern Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests and*

---

[1] Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are: Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343). Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2] Docket No. 209.

1

*(II) Granting Related Relief* (the "Sale Motion")[3] filed by the above-captioned debtors (the "Debtors") and respectfully state as follows:

**PRELIMINARY STATEMENT**

1. Debtors propose to sell a substantial majority of their assets and assume and assign over 800 leases to the Purchaser (as defined below) in connection with a private sale. Landlords do not object to the assumption and assignment of their Leases to an entity capable of providing adequate assurance of future performance, curing all defaults, and complying with all provisions of the Leases on a go-forward basis, but file this Limited Objection to ensure that: (i) the cure amount for each Lease includes all amounts due and owing under the applicable Lease; (ii) all non-monetary defaults will also be cured; and (iii) Debtors provide Landlords with adequate assurance of future performance from the proposed assignee in connection with assumption and assignment of the Leases.

2. First, in connection with the potential assumption or assumption and assignment of the Leases, Debtors or any assignee must be required to pay the cure amounts set forth in the column "Landlord Cure Amount" on **Exhibit A**, attached hereto, plus any additional pecuniary losses suffered by Landlords, including reasonable attorneys' fees. Debtors or any assignee must also cure or provide adequate assurance that they or any assignee will cure all non-monetary defaults under the Leases.

3. Second, to satisfy Debtors' burden under section 365 of the Bankruptcy Code, Debtors must furnish Landlords with sufficient adequate assurance information to determine if any proposed assignee is creditworthy and could be a viable operator of the business, specifically in the

---

[3] Docket No. 190.

context of heightened requirements afforded to counterparties to shopping center leases, like Landlords, under section 365(b)(3) of the Bankruptcy Code.

4. Third, as part of adequate assurance of future performance, Debtors or any proposed assignee must satisfy any Adjustment Amounts (as defined below) which have not yet been billed or have not yet become due under the terms of the Lease. Debtors or any proposed assignee must also (i) be required to comply with all contractual obligations to indemnify and hold Landlords harmless with regard to events which occurred before assumption and assignment, but which were not known to Landlords as of the date of the assumption and assignment, and (ii) continue to timely pay all rent, additional rent, and percentage rent due under the Leases until the Leases are assumed, assumed and assigned, or rejected pursuant to section 365(d)(3) of the Bankruptcy Code.

5. Landlords hope to resolve some, if not all, of the issues raised herein with Debtors consensually, but reserve the right to argue these issues at the hearing.

**BACKGROUND**

6. Landlords are the owners or managing agents for the owners of numerous shopping centers located throughout the United States where Debtors lease retail space pursuant to the written leases (the "Leases") for the stores listed on Exhibit A (collectively, the "Leased Premises"). The Leased Premises are located in shopping centers as that term is used in section 365(b)(3) of the Bankruptcy Code. *See*, *e.g.*, *In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir. 1990).

7. On August 6, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code with this Court. Debtors remain in

possession of their properties and continue to manage their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

8. On August 20, 2025, Debtors filed the Sale Motion seeking approval of a private sale of certain of Debtors' assets (the "Sale"), including certain leases for retail locations and a distribution center, to AWS Claire's, LLC (the "Purchaser"). Also on August 20, 2025, Debtors filed the Assumption Notice, which advises of Debtors' intention to seek to assume or assume and assign certain unexpired leases of non-residential real property, including the Leases, and asserts Debtors' proposed cure amounts (the "Debtors' Proposed Cure Amounts") for, among others, the Leases. The cure amounts listed in the Assumption Notice are included on **Exhibit A**, attached hereto, in the column "Debtor Cure Amount."

## ARGUMENT

### I.   THE PROPOSED CURE AMOUNTS ARE INCORRECT

9. Landlords dispute Debtors' Proposed Cure Amounts as listed on **Exhibit A**, attached hereto, in the column titled "Debtor Cure Amount." The correct cure amounts for the Leases are set forth on **Exhibit A** in the column titled "Landlord Cure Amount," which includes an estimate of attorneys' fees incurred to date. Landlords reserve the right to amend the cure amounts to include additional fees and expenses which continue to accrue and any other obligations that arise and/or become known to Landlords prior to assumption of the Leases, or to account for any agreement reached between the parties with respect to the cure amounts.

10. Pursuant to the Leases, Debtors are obligated to pay regular installments of fixed monthly rent, percentage rent, and/or gross rent, as well as a share of common area maintenance costs, real estate taxes, and insurance. In addition, prior to assumption and assignment of the Leases, Debtors are required by section 365(b)(1) of the Bankruptcy Code to cure all

outstanding defaults under each respective Lease and compensate Landlords for any actual pecuniary loss, including the payment of related attorneys' fees. *See* 11 U.S.C. § 365(b)(1)(B). Attorneys' fees due under the Leases are compensable. *See LJC Corp. v. Boyle*, 768 F.2d 1489, 1494-96 (D.C. Cir. 1985); *In re Bullock*, 17 B.R. 438, 439 (B.A.P. 9th Cir. 1982); *In re Crown Books Corp.*, 269 B.R. 12, 14-15 (Bankr. D. Del. 2001); *In re BAB Enterprises, Inc.*, 100 B.R. 982, 984 (Bankr. W.D. Tenn. 1989); *In re Westview 74th St. Drug Corp.*, 59 B.R. 747, 757 (Bankr. S.D.N.Y. 1986); *In re Ribs of Greenwich Vill., Inc.*, 57 B.R. 319, 322 (Bankr. S.D.N.Y. 1986). Accordingly, as part of their pecuniary losses, Landlords are entitled to attorneys' fees in connection with Debtors' obligation to cure all monetary defaults under the Leases.

## II. DEBTORS MUST PROVIDE EVIDENCE OF ADEQUATE ASSURANCE OF FUTURE PERFORMANCE UNDER THE LEASES

### A. Adequate Assurance of Future Performance for Shopping Center Leases

11. Shopping center landlords receive heightened statutory protections under the Bankruptcy Code in connection with the assumption and assignment of leases in the form of adequate assurance of future performance. *Joshua Slocum*, 922 F.2d at 1086; *In re Trak Auto Corp.*, 277 B.R. 655 (Bankr. E.D. Va. 2002). Section 365(f)(2) provides:

> The trustee may assign an executory contract or unexpired lease of the debtor only if–
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

12. Section 365(b)(1) of the Bankruptcy Code further provides:

> If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee–
>
> (A)  cures, or provides adequate assurance that the trustee will promptly cure, such default…;
>
> (B)  compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease for any actual pecuniary loss to such party resulting from such default; and
>
> (C)  provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

13. In connection with a shopping center lease, adequate assurance of future performance includes adequate assurance:

> (A)   of the source of rent… due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee … shall be similar to the financial condition and operating performance of the debtor … as of the time the debtor became the lessee under the lease;
>
> (B)   that any percentage rent due under such lease will not decline substantially;
>
> (C)   that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision…, and
>
> (D)   that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

14. Debtors bear the burden of proving adequate assurance of future performance in connection with the potential assumption or assumption and assignment of the Leases. *In re F.W. Restaurant Assoc., Inc.*, 190 B.R. 143 (Bankr. D. Conn. 1995); *In re Rachels Indus. Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d

1303, 1309–10 (5th Cir. 1985); *In re Lafayette Radio Electronics Corp.*, 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1981).

15. To determine whether the requirements of adequate assurance of future performance will be satisfied, at a minimum, Landlords and their attorneys must receive the following information from the Purchaser or any other proposed assignee of the Leases (collectively, the "<u>Adequate Assurance Information</u>"):

   a. The exact name of the entity that will be designated as the proposed assignee of the Leases and any guarantor;

   b. Audited (or un-audited, if audited is not available) financial statements and any supplemental schedules for the calendar or fiscal years ended 2023 and 2024 for both the proposed assignee and any guarantors;

   c. Any and all documents regarding the proposed assignee's and any guarantor's experience operating retail stores, particularly jewelry stores;

   d. The proposed assignee's and any guarantor's 2025 and 2026 business plans, including sales and cash flow projections;

   e. Any financial projections, calculations, and/or financial *pro-formas* prepared in contemplation of purchasing the Leases;

   f. A statement setting forth the proposed assignee's intended use of the premises; and

   g. The number of retail locations similar to those operated by Debtors that the proposed assignee and any guarantor operates and all trade names used.

16. Landlords may also need similar information for Debtors in the years when Debtors entered into the Leases to appropriately evaluate the ability of the proposed assignee to provide adequate assurance of future performance.

17. Debtors note in the Assumption Notice that they will provide adequate assurance information at the request of the applicable counterparty, and so Landlords have made

such request through their counsel, but Debtors have yet to provide any adequate assurance information. Unless and until the Landlords receive all of this information, Debtors have not satisfied their burden pursuant to 11 U.S.C. § 365(b)(3).

18. Furthermore, Landlords must be given sufficient time to review the information provided to confirm that the Purchaser has the financial wherewithal to satisfy obligations under the Leases going forward. To date, Landlords have not received any information regarding the specific identity of the Proposed Assignee (s) and must be given an opportunity to ensure that information provided regarding adequate assurance of future performance satisfies the requirements of section 365(b) at the time the Leases are assumed and assigned.

B.     **The Leases Must Be Assumed or Assumed and Assigned *Cum Onere***

19. Section 365(b)(3)(C) of the Bankruptcy Code provides that the assumption of a shopping center lease "is subject to all the provisions [of such lease]…". 11 U.S.C. § 365(b)(3)(C). Bankruptcy courts have described the assumption of an unexpired lease as "an all-or-nothing proposition – either the whole contract [or lease] is assumed or the entire contract [or lease] is rejected." *See*, *e.g.*, *In re CellNet Data Systems, Inc.*, 327 F.3d 242, 249 (3d Cir. 2003).

20. As the court noted in *In re Washington Capital Aviation & Leasing*, 156 B.R. at 167, 175 n.3 (Bankr. E.D. Va. 1993):

> Adequate assurance of future performance by the assignee is important because 11 U.S.C. § 365(k) "relieves the . . . estate from any liability for any breach of such . . . lease occurring after such assignment." A party subject to a contractually created obligation ordinarily cannot divest itself of liability by substituting another in its place without the consent of the party owed the duty. *See* Douglas G. Baird and Thomas H. Jackson, Bankruptcy 285 (2d ed. 1990) (citing Restatement (Second) of Contracts § 318(3) (1981) ("delegation of performance . . . does not discharge any duty or liability of the delegating obligor")). While the assignee may be entitled to perform for the original obligor, the original obligor remains ultimately liable until discharged by performance or otherwise. Section 365(k) changes this common law rule and

relieves the estate from all liability under the lease following assignment.

*See also In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) (adequate assurance is "necessary to protect the rights of the non-debtor party to the contract or lease, because assignment relieves the trustee and the estate from liability arising from a post-assignment breach"). Debtors are not entitled to the benefits and protections of section 365(k) if they do not assume and assign a lease *cum onere* – with all benefits and burdens. *See*, *e.g.*, *American Flint Glass Workers Union v. Anchor Resolution Corp.*, 197 F.3d 76 (3d Cir. 1999).

21. The proposed order approving the Sale provides that the non-Debtor counterparty to an assumed lease is enjoined and barred from asserting claims against Debtors or the Purchaser for indemnification or warranties for claims arising before the closing date of the sale.[4] To the extent any such indemnifications or warranties are obligations of Debtors under the Leases, however, prohibiting Landlords from asserting such claims violates section 365(b)(3)(C) and the principles of lease assumption that require *all* obligations of the estate to be satisfied or assumed in order for the debtors or an assignee to receive the benefits of such lease.[5]

22. Debtors or any proposed assignee, including the Purchaser, must be required to comply with all contractual obligations to indemnify and hold Landlords harmless for events which occurred before assumption or assumption and assignment, but which were not known to Landlords as of the date of any assumption or assumption and assignment. This includes, but is not limited to, (i) claims for personal injury that occurred at the Leased Premises, (ii) damage and

---

[4] *See* Sale Motion, Exhibit A at ¶ 31.

[5] This provision of the proposed order granting the Sale also contradicts the Asset Purchase Agreement between Debtors and the Purchaser (the "Asset Purchase Agreement"), which provides that the Purchaser will assume "all Liabilities related to the Acquired Leased Real Property and the Acquired Leases. . . ." *See* Asset Purchase Agreement, §1.3(i).

destruction to the Leased Premises or property by Debtors or their agents, and (iii) environmental damage or clean-up. To cure possible pre-assumption, non-monetary defaults and provide adequate assurance of future performance with respect to the indemnification obligations under the Leases, either (a) Debtors or any proposed assignee must be required to satisfy any and all such claims, notwithstanding anything to the contrary contained in a plan or any court order, or (b) Debtors must be required to demonstrate or obtain adequate insurance (by purchase of "tail" coverage or otherwise) in order to satisfy potential indemnification obligations based on events or incidences that occurred prior to the effective date of an assignment. Such claims for indemnity could include claims for personal injury occurring at the Leased Premises where the applicable Landlord is joined as a party to a lawsuit or for damage and destruction of property by Debtors or their agents or employees.

23. If Debtors seek to assume and assign the Leases, the proposed assignee should also be required to execute short-form assumption and assignment agreements with Landlords in connection with the proposed assignment of the Leases so that Landlords will be in privity with their new tenant.

## III. DEBTORS OR PROPOSED ASSIGNEE MUST BE RESPONSIBLE FOR PAYMENT OF ADJUSTMENT AMOUNTS WHEN THEY COME DUE IN THE ORDINARY COURSE OF BUSINESS

24. To the extent that rent, attorneys' fees, interest, and/or other charges continue to accrue, and/or Landlords suffer other pecuniary losses with respect to the Leases, Landlords hereby reserve the right to amend the Landlord Cure Amounts to reflect such additional amounts or to account for year-end adjustments, including, without limitation, adjustments for 2024 and 2025, which have not yet been billed or have not yet become due under the terms of the Leases (the "Adjustment Amounts"). Debtors or any proposed assignee must be required to satisfy all accrued but unbilled obligations under the Leases, including the Adjustment Amounts, if any, when due in

accordance with the terms of the Leases, regardless of when such Adjustment Amounts were incurred.

## IV. DEMAND FOR SECURITY

25. Section 365(l) of the Bankruptcy Code provides, in pertinent part:

> If an unexpired lease under which the debtor is lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

26. In the ordinary course of business, Landlords require security deposits, letters of credit, or guaranties when leasing (or assessing an assignment of a lease) to certain companies based on their financial information and history, particularly from entities which are formed for the sole purpose of acquiring leases from a bankrupt entity. In connection with the potential assumption and assignment of the Leases, Landlords hereby demand such security in one of those forms as required by section 365(l) of the Bankruptcy Code. Until the exact financials of any proposed assignee are known to Landlords, Landlords reserve their right to specify the exact form and amount of such security; however, Landlords would typically require a security deposit equal to twelve (12) months of gross rent and a parent or personal guaranty in connection with leasing to a new tenant.

## V. DEBTORS MUST BE RESPONSIBLE FOR TIMELY PAYMENT OF ALL POST-PETITION RENT AND ADDITIONAL RENT DUE UNDER THE LEASES UNTIL THEY ARE ASSUMED, ASSUMED AND ASSIGNED, OR REJECTED

27. Section 365(d)(3) of the Bankruptcy provides, in pertinent part:

> The [debtor] shall timely perform all the obligations of the debtor…arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of [the Bankruptcy Code].

11 U.S.C. § 365(d)(3).

28. Landlords request that the assumption or assumption and assignment of the Leases be conditioned upon Debtors' timely performance of all obligation arising under the Leases before the Leases are assumed, assumed and assigned, or rejected pursuant to section 365(d)(3) of the Bankruptcy Code, including, without limitation, the payment in full of rent on the first day of each month.

## VI. ASSIGNMENT/REJECTION ORDERS MUST BE ENTERED TO ENSURE THAT LANDLORDS HAVE CERTAINTY REGARDING THE TREATMENT OF THEIR LEASES

29. The Assumption Notice provides that leases will be deemed assigned as of the date listed in Schedule 1 attached to the Assumption Notice (defined in the Assumption Notice as the "Assumption Date") unless a party in interest objects.[6] However, Schedule 1 to the Assumption Notice does not list any assumption dates.[7] Furthermore, the Asset Purchase Agreement provides the Purchaser the ability to remove leases from the list of leases being assumed up to two business days before the closing date of the Sale.[8] If there are any leases as of the Sale closing that the Purchaser wants more time to consider whether to acquire, the Asset Purchase Agreement allows them until the earlier of (i) the effective date of any plan of reorganization, and (ii) sixty (60) days after the Sale closing (the "Rejection Deadline Date").[9]

30. Landlords need certainty regarding the treatment of their Leases. Whether or not an objection is filed, Debtors should be required to submit a proposed assignment or rejection order, as applicable, for entry by the Court. In addition, within one (1) business day of the Closing, Debtors should be required to file schedules all of leases assumed, assumed and assigned, or rejected

---

[6] Assumption Notice, at 1-2.
[7] Assumption Notice, Schedule 1.
[8] Asset Purchase Agreement, § 1.5(b)(ii).
[9] *Id.*

pursuant to the sale of Debtors' assets. Likewise, within one (1) business day of the Rejection Deadline Date, Debtors should be required to file a summary schedule listing all leases that have been assumed, assumed and assigned, or rejected following the Closing.

### **JOINDER IN OBJECTIONS OF OTHER LANDLORDS**

31. To the extent not inconsistent with this Limited Objection, Landlords join in the objections to the Assumption Notice and Sale Motion asserted by other landlords and contract counterparties.

### **RESERVATION OF RIGHTS**

32. Landlords reserve their rights to amend and/or supplement this Limited Objection and to raise any additional objections to the Assumption Notice and Sale Motion at any hearings to consider same.

**CONCLUSION**

**WHEREFORE**, Landlords respectfully request that the Court enter an order (i) modifying the relief requested in the Assumption Notice and the Sale Motion as requested herein; and (ii) granting such other and further relief as this Court deems just and proper.

Dated: August 29, 2025

**LAW OFFICE OF SUSAN E. KAUFMAN, LLC**

*/s/ Susan E. Kaufman*
Susan E. Kaufman, (DSB# 3381)
919 North Market Street, Suite 460
Wilmington, DE 19801
(302) 472-7420
(302) 792-7420 Fax
skaufman@skaufmanlaw.com

-and-

Robert L. LeHane
Jennifer D. Raviele
Katherine Cavins
**KELLEY DRYE & WARREN LLP**
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: 212-808-7800
Fax: 212-808-7897
E-mail:  rlehane@kelleydrye.com
              jraviele@kelleydrye.com
              kcavins@kelleydrye.com

*Counsel for 5Rivers CRE LLC, Brixmor Property Group, Brookfield Properties Retail, Inc., Hines Global REIT, Jones Lang LaSalle, Kite Realty Group, Inc., Regency Centers, L.P., SITE Centers Corp., and Turnberry Associates*