**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CLAIRE'S HOLDINGS LLC, *et al.,*[1] | ) Case No. 25-11454 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**DEBTORS' APPLICATION FOR ENTRY**
**OF AN ORDER AUTHORIZING THE RETENTION**
**AND EMPLOYMENT OF KATTEN MUCHIN ROSENMAN**
**LLP AS COUNSEL TO THE DEBTORS AT THE SOLE DIRECTION**
**OF THE INDEPENDENT MANAGERS EFFECTIVE AS OF THE PETITION DATE**

Claire's Holdings LLC ("<u>Claire's</u>") and certain of its affiliates and subsidiaries as debtors

and debtors-in-possession in the above-captioned chapter 11 cases (collectively, the "<u>Debtors</u>")[2]

respectfully state the following in support of this application:[3]

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are:  Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343).  The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2]     As used herein, "<u>Debtors</u>" refers to the following debtor entities in the above-captioned chapter 11 cases: Claires; Claire's Stores, Inc, Claire's Puerto Rico Corp, CBI Distributing Corp, Claire's Boutiques, Inc., Claire's Canada Corp., BMS Distributing Corp., CSI Canada LLC, CLSIP Holdings LLC, CLSIP LLC, Claire's Swiss Holdings LLC, and Claire's Swiss Holdings II LLC.

[3]     A detailed description of the Debtors and their business, including the facts and circumstances supporting the application, is set forth in the *Declaration of Chris Cramer, Chief Executive Officer, Chief Operating Officer, and Chief Financial Officer of Claire's Holdings LLC and Certain of Its Affiliates, in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Docket No. 27] (the "<u>First Day Declaration</u>").  Capitalized terms used but not defined in this application shall have the meanings ascribed to them in the First Day Declaration.

**Relief Requested**

1.      The Debtors seek entry of an order, substantially in the form attached hereto (the "Order"):  (a) authorizing the retention and employment of Katten Muchin Rosenman LLP ("Katten") as counsel to the Debtors at the sole direction of David Barse and William Transier in their capacity as independent managers (the "Independent Managers") and members of the special committees (collectively, the "Special Committee") of the boards (collectively, the "Board") of the Debtors, effective as of August 6, 2025; and (b) granting related relief.

2.      In support of this application, the Debtors submit the declaration of Steven J. Reisman, a partner of Katten (the "Reisman Declaration"), which is attached hereto as **Exhibit A**, and the declaration of William Transier, Independent Manager (the "Transier Declaration"), which is attached hereto as **Exhibit B**.

**Jurisdiction and Venue**

3.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

4.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The statutory bases for the relief requested herein are sections 327(e), 328(a), and 1107(b) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016(b)

2

of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), rules 2014-1 and 2016-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

### <u>Background</u>

6.      On August 6, 2025 (the "<u>Petition Date</u>"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On August 7, 2025, the Court entered an order [Docket No. 79] authorizing the procedural consolidation and the joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  On August 15, 2025, the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>") appointed an official committee of unsecured creditors [Docket No. 154], as subsequently amended on August 21, 2025 [Docket No. 216] (the "<u>Committee</u>").  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

7.      On May 14, 2025, Claire's appointed the Independent Managers as independent and disinterested managers to assist the Claire's Board with exploring, negotiating, evaluating, and executing potential strategic and value-maximizing transactions.  Contemporaneously with the appointment of the Independent Managers, the Claire's Board formed the Special Committee consisting solely of the Independent Managers and delegated to it, among other things: (a) the authority to, on behalf of the entire Claire's Board and as it deems appropriate or desirable in its discretion, take any action with respect to conflicts matters; and (b) without limiting the authority

of the Board other than with respect to conflicts matters, the authority to review, discuss, consider, negotiate, approve, and authorize the Company's entry into and consummation of a transaction.[4]

8.      Pursuant to the Engagement Letter dated as of July 23, 2025 (the "Engagement Letter"), the Debtors retained Katten to render independent legal services at the sole direction of the Independent Managers to assist in, among other things, conducting an independent investigation (the "Special Investigation") into any and all potential estate claims and causes of action against various related parties arising from the Company's prepetition transactions.  A copy of the Engagement Letter is attached as Annex 1 to the Proposed Order and incorporated herein by reference.

9.      The Independent Managers, with the assistance of Katten, have begun conducting the Special Investigation, which began prior to the Petition Date and is ongoing during the Chapter 11 Cases.

### Katten's Qualifications

10.      The Debtors seek to retain Katten to render independent legal services at the sole direction of the Independent Managers because of Katten's recognized expertise and extensive experience in, among other areas, bankruptcy and restructuring, litigation, corporate governance, corporate finance, and independent investigations in the context of chapter 11 cases.  Since its engagement effective as of July 23, 2025, Katten has been assisting the Independent Managers in connection with fulfilling their duties, including by assisting in conducting the Special

---

[4]      On June 1, 2025, the Independent Managers were appointed to the boards of the following Debtor entities and were appointed to special committees of such boards:  (i) Claire's Stores, Inc.; (ii) Claire's Puerto Rico Corp.; (iii) CBI Distributing Corp.; (iv) Claire's Boutiques, Inc.; (v) Claire's Canada Corp.; (vi) BMS Distributing Corp.; (vii) CSI Canada LLC; (viii) CLSIP Holdings LLC; and (ix) CLSIP LLC.  Further on June 1, 2025, the Independent Managers were appointed to the special committee of Claire's Swiss Holdings LLC, which entity is member-manager of Claire's Swiss Holdings II LLC.  On August 5, 2025, the Independent Managers were appointed to the board and special committee of the board of Claire's (Gibraltar) Holdings Limited, which entity is member-manager of Claire's Intellectual LLC.

work on behalf of the Independent Managers and has become familiar with the Debtors and various aspects of their financial affairs, operations, and history.  As such, the Debtors believe that Katten is well qualified to continue to provide independent legal services to the Debtors at the sole direction of the Independent Managers in an efficient and timely manner.

11.    Katten has significant experience representing and advising independent managers or disinterested directors in connection with chapter 11 cases.

12.    Given Katten's prior experience, the Debtors and the Independent Managers believe Katten is well-qualified and able to represent the Debtors at the sole direction of the Independent Managers in these Chapter 11 Cases in an efficient and cost-effective manner.

13.    The Debtors have filed or intend to file an application to approve the retention of Kirkland & Ellis LLP ("Kirkland") and Richards, Layton & Finger, P.A. ("RLF") as their primary co-counsel in connection with these Chapter 11 Cases.  The services of Katten shall complement, and not duplicate, the services to be rendered by Kirkland and RLF.  Moreover, the responsibilities of Katten shall be confined to discrete legal matters as described herein that are distinct from the matters handled by Kirkland and RLF.  Katten shall act on its own and will not act under the supervision of Kirkland or RLF.  Indeed, the Debtors are mindful of the need to avoid duplication of services and appropriate procedures will be implemented to ensure that there is no such duplication.

### Services to be Provided

14.    Prior to the Petition Date, Katten provided various legal services relating to the fulfillment of the Independent Managers' fiduciary duties. The Independent Managers, with the assistance of Katten, are continuing to conduct the Special Investigation. As explained herein, Katten's work in connection with the Special Investigation remains open and will continue during

the Chapter 11 Cases.  In addition, Katten will perform other duties, as directed by the Independent Managers, in connection with their delegated authority during the Chapter 11 Cases.

15.     The Debtors have determined that the retention of independent counsel at the sole direction of the Independent Managers is necessary to assist the Independent Managers in fulfilling their duties in these Chapter 11 Cases, and that the employment of Katten is in the best interests of the Debtors' estates.

### Professional Compensation

16.     Subject to the Court's approval and in accordance with sections 330 and 331 of the Bankruptcy Code, the applicable Bankruptcy Rules, the Local Rules, and other procedures that may be ordered by the Court, the Debtors request that Katten be compensated on an hourly basis and that Katten receive reimbursement of actual and necessary expenses incurred in connection with its representation of the Debtors at the sole direction of the Independent Managers in these Chapter 11 Cases.  Katten intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court.  In accordance with the terms of the Engagement Letter, the Debtors have agreed to compensate Katten for the work performed on behalf of and at the sole direction of the Independent Managers.

17.     The hourly rates and corresponding rate structure Katten will use in these Chapter 11 Cases are the same as the hourly rates and corresponding rate structure that Katten uses in other chapter 11 matters, as well as similar complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required.  These rates and the rate

structure reflect that such chapter 11 and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

18.     Katten operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

19.     Katten will charge the following hourly rates set forth in the table below for services rendered in these Chapter 11 Cases:

| Billing Category[5] | U.S. Range |
|---|---|
| Partner | $1,205 - $2,380 |
| Of Counsel | $1,110 - $2,100 |
| Counsel and Special Staff | $610 - $1,615 |
| Associate | $715 - $1,210 |
| Paralegal | $230 - $860 |

20.     Katten's hourly rates are set at a level designed to compensate Katten fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses.  Hourly rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[6]  Katten will provide ten business

---

[5]  Although Katten does not anticipate using contract attorneys during these Chapter 11 Cases, in the unlikely event that it becomes necessary to use contract attorneys, Katten will not charge a markup to the Debtors with respect to fees billed by such attorneys.  Moreover, any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by Katten will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.  While the rate ranges provided for in this Application may change if an individual leaves or joins Katten, and if any such individual's billing rate falls outside the ranges disclosed above, Katten does not intend to update the ranges for such circumstances.

[6]  For example, like many of its peer law firms, Katten typically increases the hourly billing rate of attorneys and paraprofessionals once a year in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority.  The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013).  As set forth in the Proposed Order, Katten will provide ten business-days' notice to the Debtors, the UCC, and the U.S. Trustee before implementing any periodic increases.

7

days' notice to the Debtors, counsel to the UCC, and the U.S. Trustee in connection with any increase of Katten's hourly billing rates that are set forth in this application.

21.     Katten rendered independent legal services to the Debtors at the sole direction of the Independent Managers before the Petition Date, using the hourly rates listed above and in the Reisman Declaration.  Moreover, these hourly rates are consistent with the rates that Katten charges other comparable chapter 11 clients, regardless of the location of the chapter 11 cases.

22.     The rate structure provided by Katten is appropriate and not significantly different from (a) the rates that Katten charges for other similar types of representations or (b) the rates that other comparable counsel would charge to do work substantially similar to the work Katten will perform in these Chapter 11 Cases.

23.     It is Katten's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client.  It is also Katten's policy to charge its clients only the amount actually incurred by Katten in connection with such items.  Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

24.     To ensure compliance with all applicable deadlines in these Chapter 11 Cases, from time to time Katten utilizes the services of overtime secretaries.  Katten charges fees for these services pursuant to the Engagement Letter, which permits Katten to bill the Debtors for overtime secretarial charges that arise out of business necessity.  In addition, Katten professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices.

25.     Katten currently charges its clients $0.10 per page for standard black and white duplication and $0.25 per page for color duplication.  Katten does not charge its clients for incoming facsimile transmissions.  Computer-assisted legal research is used whenever the researcher determines that it is more cost effective than using other (non-computer assisted legal research) techniques.  Katten will charge for these expenses in a manner and at rates consistent with charges made generally to its other clients, subject to the Local Rules.

### Compensation Received by Katten from the Debtors

26.     Per the terms of the Engagement Letter, on July 31, 2025, the Debtors paid Katten $200,000, which constituted an advance fee deposit (such deposit, the "Retainer").  Prior to the Petition Date, Katten did not receive any payments from the Debtors other than the Retainer.  After applying the Retainer to Katten's prepetition fees and expenses, Katten held, and continues to hold, surplus funds in the amount of $78,934 (the "Remaining Retainer").[7]  Katten has not applied the Remaining Retainer to any fees and expenses incurred after the Petition Date.  The Remaining Retainer will be held on account and applied, to the extent allowed by the Court, to the payment of fees for services rendered and reimbursement of expenses incurred by Katten in connection with these Chapter 11 Cases.

27.     As of the Petition Date, the Debtors did not owe Katten any amounts for legal services rendered before the Petition Date.

28.     Pursuant to Bankruptcy Rule 2016(b), Katten has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with

---

[7]     To the extent there are additional prepetition fees or expenses owed to Katten that are recorded after the Petition Date, Katten will seek relief in its fee applications to apply a portion of the Remaining Retainer to pay those amounts.

the partners, associates, and contract attorneys associated with Katten or (b) any compensation another person or party has received or may receive.

## No Adverse Interest

29.     Pursuant to Bankruptcy Rule 2014(a), the Reisman Declaration sets forth Katten's disclosable connections with the Debtors, their creditors, and other known parties in interest.

30.     To the best of the Debtors' and the Independent Managers' knowledge, the attorneys of Katten do not hold or represent any interest adverse to the Debtors or their estates with respect to matters on which Katten is to be retained by the Debtors at the sole direction of the Independent Managers.  In addition, to the best of the Debtors' and the Independent Managers' knowledge, except as disclosed herein and in the Reisman Declaration, the attorneys of Katten: (a) do not have any disclosable connections with any of the Debtors, their affiliates, their creditors, or any other parties in interest or their respective attorneys and accountants; (b) do not have any disclosable connections with the U.S. Trustee and key staff members of the U.S. Trustee's office; and (c) do not have any disclosable connections with the United States Bankruptcy Judges for the District of Delaware.

31.     Katten will review its files periodically during the pendency of these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, Katten will use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## Supporting Authority

32.     The Debtors seek approval of the retention of Katten as counsel to the Debtors on behalf of and at the sole direction of the Independent Managers, pursuant to sections 327(e), 328(a), and 1107(b) of the Bankruptcy Code. Section 327(e) of the Bankruptcy Code provides:

> [T]he trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

33.    Retention pursuant to section 327(e) of the Bankruptcy Code is appropriate given the specific scope of the proposed retention and Katten's prepetition representation of the Debtors on behalf of the Independent Managers.

34.    Section 1107(b) of the Bankruptcy Code provides that a person is not disqualified for employment under section 327 of the Bankruptcy Code by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.  11 U.S.C. § 1107(b).

35.    Under section 328(a) of the Bankruptcy Code, with the Court's approval, a debtor in possession may employ professional persons under section 327 of the Bankruptcy Code "on any reasonable terms and conditions of employment, including on retainer, on an hourly basis, on a fixed or percentage basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

36.    Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

37.    Retention of an attorney under section 327(e) does not require the same searching inquiry required for a debtor to retain general bankruptcy counsel under section 327(a).  *See*

11

*Meespierson Inc. v. Strategic Telecom Inc.*, 202 B.R. 845, 847 (D. Del. 1996) ("[S]pecial counsel employed under [section] 327(e) need only avoid possessing a conflict of interest concerning the matter at hand.").

38.     Nevertheless, the phrase "does not represent or hold any interest adverse to the debtor or to the estate" requires a factual determination of "all relevant facts surrounding the debtors' case, including, but not limited to, the nature of the debtor's business, all foreseeable employment of special counsel, [and] the expense of replacement counsel . . . ." *In re Woodworkers Warehouse, Inc.*, 323 B.R. 403, 406 (D. Del. 2005).   In general, however, subject to the requirements of sections 327 and 1107, a debtor in possession is entitled to the counsel of its choosing.  *In re Vouzianas*, 259 F.3d 103, 108 (2d Cir. 2001) (observing that "[o]nly in the rarest cases should the trustee be deprived of the privilege of selecting his own counsel").

39.     The Debtors submit that, for all of the reasons stated above and in the Reisman Declaration and the Transier Declaration, the retention and employment of Katten as counsel to the Debtors at the sole direction of the Independent Managers is warranted.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

40.     The Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

### Notice

43.     The Debtors will provide notice of this application to the following parties or their respective counsel, as applicable:  (a)  the U.S. Trustee; (b) the Committee; (c) the Priority Term Loan Agent; (d) the Existing Term Loan Agent; (e) the Agent under the ABL Facility; (f) the United States Attorney for the District of Delaware; (g) the Internal Revenue Service; (h) the state attorneys general for states in which the Debtors conduct business; and (i) any party that is entitled

to notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").  In light of the
nature of the relief requested, no other or further notice need be given.

**<u>No Prior Request</u>**

44.    No prior request for the relief sought in this application has been made to this or
any other court.

WHEREFORE, the Debtors request that the Court enter the Order (a) granting the relief requested herein and (b) granting such other relief as the Court deems appropriate under the circumstances.

Dated: August 29, 2025
Wilmington, Delaware

/s/ William L. Transier
William L. Transier
Independent Manager
Claire's Holdings LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) Case No. 25-11454 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## ORDER AUTHORIZING THE RETENTION AND
## EMPLOYMENT OF KATTEN MUCHIN ROSENMAN
## LLP AS COUNSEL TO THE DEBTORS AT THE SOLE DIRECTION
## OF THE INDEPENDENT MANAGERS EFFECTIVE AS OF THE PETITION DATE

Upon the application (the "Application")[2] of Claire's Holdings LLC ("Claire's") and
certain of its affiliates and subsidiaries as debtors and debtors-in-possession in the above-captioned
chapter 11 cases (collectively, the "Debtors")[3] for entry of an order (this "Order") (a) authorizing
the Debtors to retain and employ Katten Muchin Rosenman LLP ("Katten") as counsel to the
Debtors at the sole direction of David Barse and William Transier in their capacity as Independent
Mangers and members of the Special Committee of the Board of the Debtors effective as of the
Petition Date and (b) granting related relief, pursuant to sections 327(e), 328(a), and 1107(b) of
title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016(b) of the

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers,
to the extent applicable, are:  Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing
Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada
Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416);
Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950);
CLSIP LLC (9769); and CSI Canada LLC (2343).  The Debtors' mailing address is 2400 West Central Road,
Hoffman Estates, IL 60192.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Application.

[3]  As used herein, "Debtors" refers to the following debtor entities in the above-captioned chapter 11 cases: Claires;
Claire's Stores, Inc, Claire's Puerto Rico Corp, CBI Distributing Corp, Claire's Boutiques, Inc., Claire's Canada
Corp., BMS Distributing Corp., CSI Canada LLC, CLSIP Holdings LLC, CLSIP LLC, Claire's Swiss Holdings
LLC, and Claire's Swiss Holdings II LLC.

Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and rules 2014-1 and 2016-1 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>"); and upon the Court having reviewed the Application, the Reisman Declaration, and the Transier Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found based on the representations made in the Application, in the Reisman Declaration, and in the Transier Declaration that: Katten does not hold or represent an interest adverse to the Debtors or their estates with respect to the matters for which Katten is retained at the sole direction of the Independent Managers; and this Court having found that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Application and opportunity for a hearing on the Application were appropriate and no other notice need be provided; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein, at a hearing before this Court (the "<u>Hearing</u>"), if any; and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing, if any, establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted on a final basis as set forth herein.

2.      The Debtors are authorized, pursuant to sections 327(e), 328(a), and 1107(b) of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(b), and Local Rules 2014-1 and 2016-1, to

retain and employ Katten effective as of the Petition Date as counsel to the Debtors at the sole direction of the Independent Managers and members of the Special Committee to render independent services at the Independent Managers' sole direction in accordance with the terms of the Application and the Engagement Letter attached hereto as **Annex 1**.

3.      Retention pursuant to section 327(e) of the Bankruptcy Code is appropriate given the specific scope of Katten's retention and Katten's prepetition representation of the Debtors at the sole direction of the Independent Managers.

4.      Katten is authorized to render independent legal services to the Debtors at the sole direction of the Independent Managers as described in the Application and the Engagement Letter.

5.      Katten shall file fee applications for allowance of its compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' Chapter 11 Cases in compliance with sections 330 and 331 of the Bankruptcy Code, and applicable provisions of the Bankruptcy Rules, the Local Rules, and any fee and expense guidelines of this Court. Katten shall also make a reasonable effort to comply with the U.S. Trustee's request for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases,* effective November 1, 2013 (the "Revised UST Guidelines"), both in connection with the Application and the interim and final fee applications to be filed by Katten in these Chapter 11 Cases.

6.      Notwithstanding anything in the Application, the Reisman Declaration, the Engagement Letter, or the Transier Declaration to the contrary, Katten shall apply any remaining amounts of its prepetition retainer as a credit towards post-petition fees and expenses, after such post-petition fees and expenses are approved pursuant to the first order of the Court awarding fees

3

and expenses to Katten.  At the conclusion of Katten's engagement, if the amount of any advance payment retainer held by Katten is in excess of the amount of Katten's outstanding and estimated fees, expenses, and costs, Katten will pay to the Debtors the amount by which any advance payment retainer exceeds such fees, expenses, and costs, in each case in accordance with the Engagement Letter.

7.      Katten shall include in its fee applications, among other things, contemporaneous time records setting forth a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Independent Managers in one-tenth (.10) hour increments.

8.      Katten shall use its reasonable efforts to avoid any duplication of services provided by any of the Debtors' other retained professionals in these Chapter 11 Cases.

9.      To the extent further increases in rates set forth in the Application occur after entry of this Order, Katten shall file a notice with the Court and give the Debtors, the U.S. Trustee, and counsel to the UCC notice of any increases in the rates set forth in the Application.  The notice shall explain the basis for the requested rate increases in accordance with Bankruptcy Code section 330(a)(3)(F) and state whether the Debtors have consented to the rate increase.  The U.S. Trustee retains all rights to object to any hourly rate increases on all grounds, including the reasonableness standard set forth in Bankruptcy Code section 330, and the Court may review any rate increase pursuant to Bankruptcy Code section 330.

10.     No agreement or understanding exists between Katten and any other person, other than as permitted by section 504 of the Bankruptcy Code, to share compensation received for services rendered in connection with these cases, nor shall Katten share or agree to share compensation received for services rendered in connection with these cases with any other person

4

other than as permitted by section 504 of the Bankruptcy Code.

11.     Katten shall review its files periodically during the pendency of these Chapter 11 Cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, Katten shall use reasonable efforts to identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

12.     Katten shall not charge a markup to the Debtors with respect to fees billed by contract attorneys who are hired by Katten to provide services on behalf of the Independent Managers, and Katten shall ensure that any such contract attorneys are subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

13.     To the extent the Application, the Reisman Declaration, or the Transier Declaration is inconsistent with this Order, the terms of this Order shall govern.

14.     The notice requirements of Bankruptcy Rule 6004(a) are deemed waived.

15.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Application.

16.     Notice of the Application as provided therein shall be deemed to be good and sufficient notice of such Application, and the requirements of the Bankruptcy Rules and Local Rules are satisfied by such notice.

17.     Notwithstanding any Bankruptcy Rule to the contrary, the terms and conditions of this Order are immediately effective and enforceable upon its entry.

18.     The Court retains jurisdiction with respect to all matters arising from or relating to the implementation, interpretation, or enforcement of this Order.

**<u>Annex 1</u>**

**Engagement Letter**



**50 Rockefeller Plaza**
**New York, NY 10020-1605**
**+1.212.940.8800 tel**
**katten.com**

STEVEN J. REISMAN
sreisman@katten.com
+1.212.940.8700 direct
+1.212.940.8776 fax

Dated as of July 23, 2025

**_VIA EMAIL: dbarse@dmbholdings.com; bill@transieradvisors.com_**

David Barse and William Transier
Disinterested Directors of the Board of Managers of
Claire's Holdings LLC
c/o Claire's Holdings LLC
2400 West Central Road
Hoffman Estates, IL 60192

Re:    **Engagement Agreement**

Dear Messrs. Barse and Transier:

Katten Muchin Rosenman LLP (the "Firm") is pleased to have the opportunity to be retained by Claire's Holdings LLC (the "Company" or the "Client")[1] to render independent legal services at the sole direction of David Barse and William Transier (together, the "Disinterested Directors") in their capacity as Disinterested Directors of the Company, including with respect to conducting an independent investigation, and such other matters as the Client, acting at the direction of the Disinterested Directors, may request and the Firm may agree to handle (collectively, the "Matter"). This letter and the enclosed Terms of Engagement, which contains a provision on conflicts of interest, describe the basis on which the Firm provides legal services.

The Company has agreed to be responsible to the Firm for all reasonable and documented legal fees and all reasonable and documented expenses incurred by the Firm in connection with this Matter as described in this engagement agreement, including the fee deposit described below. This undertaking by the Company is made with the express understanding that the sole professional obligation of myself and the Firm is to render independent legal services at the sole direction of the Disinterested Directors. The Firm is not required to disclose any legal strategy, theory, plan of action, findings, or the like to the Company's officers and directors, except as directed by the Disinterested Directors, and the payment of legal fees by the Company to the Firm in no way depends upon such disclosure.

---

[1] "Company" shall include Claire's Holdings LLC and the other boards of the subsidiaries of Claire's Holdings LLC at which the Disinterested Directors sit and a special committee has been established.

KATTEN MUCHIN ROSENMAN LLP
CHARLOTTE    CHICAGO    DALLAS    LOS ANGELES    NEW YORK
ORANGE COUNTY    SHANGHAI    WASHINGTON, DC
A limited liability partnership including professional corporations
LONDON: KATTEN MUCHIN ROSENMAN UK LLP

**Katten**

David Barse and William Transier
Dated as of July 23, 2025
Page 2

The Disinterested Directors shall control any attorney-client work product or privilege belonging to the Company in connection with the Firm's work or privileged communications on the Matter. Notwithstanding the foregoing, the Firm shall (i) maintain the confidentiality of, and shall not disclose, any confidential information provided by the Company to the Firm (except to the Disinterested Directors or as required by law or regulation), and (ii) use such confidential information only in connection with the Matter.

As soon as reasonably practicable at the end of each month, the Firm will send a detailed invoice to the Disinterested Directors providing a complete and detailed description for all timekeeper entries and a summary of work performed during the billing period. Following approval by the Disinterested Directors, the Firm will send a summary bill (the "Summary Bill") for such billing period to the Company. The Summary Bill provided to the Company will include an overview of work performed during the billing period but, in order to maintain confidentiality and privilege, will not include individual timekeeper entries with detailed descriptions.

Nevertheless, certain confidential communications between the Firm and counsel for the Company may, with the Disinterested Directors' consent, occur. These confidential communications will be subject to any and all applicable privileges, to the extent provided under law and agreed upon by the Firm and counsel for the Company. Once again, however, the payment of legal fees and expenses under this agreement is neither conditioned upon nor dependent upon the Firm's cooperation with counsel for the Company or any other party.

The Company and the Disinterested Directors agree and acknowledge that the Company and the Disinterested Directors share a common interest in conducting an independent investigation on behalf of the Company; that the Company and the Disinterested Directors are engaged in a joint effort to conduct and facilitate that investigation; and that communications and information provided by the Company to the Disinterested Directors, and/or by the Disinterested Directors to the Company, to facilitate that investigation are confidential, privileged and shall not be shared with third parties.

I will be the lawyer at the Firm with the primary responsibility for the Matter and understand that it is your expectation, as well as my own intention, that I be involved in managing all aspects of this engagement. I will be assisted by my partner Cindi Giglio, and such other partners, associates, and other members of the Firm as appropriate. As indicated in the Terms of Engagement, our fees are based upon our hourly rates unless otherwise noted herein.

Please review the Terms of Engagement (which immediately follow the signature page), with the assistance of independent counsel if you wish, and let me know if you have any questions about them. If all the terms are satisfactory, please indicate your consent by signing this letter and returning it to me. However, your continuing instructions in the matter will amount to your acceptance of the terms in this letter, including the Terms of Engagement (collectively, the "Terms"). All parties to this agreement agree that a digital signature shall be effective to prove

**Katten**

David Barse and William Transier
Dated as of July 23, 2025
Page 3

each party's agreement to the Terms. Furthermore, the parties agree that the Terms may be proven through an electronic copy in digital format, and that no "original" hard-copy document need be retained to prove the Terms.

To retain the services of the Firm for this Matter, the Firm is requesting that the Company, on behalf of the Disinterested Directors, pay us a fee deposit of $200,000 specific to the Matter. Notwithstanding anything to the contrary in the Terms of Engagement, this fee deposit will either be offset against outstanding fees and expenses or held until the conclusion of the engagement, at which point the fee deposit will be returned to the Company. The Company shall pay the Firm's fees and expenses promptly upon receipt of the Summary Bill. The Company further acknowledges and understands that the use of fee deposits is an integral condition of this engagement, and is necessary to ensure that: the Client, at the sole direction of the Disinterested Directors, continues to have access to the Firm's services; the Firm is compensated for its representation of the Company at the sole direction of the Disinterested Directors; the Firm is not a prepetition creditor of the Company in the event of a bankruptcy case; and that in light of the foregoing, the provision of advance fee deposits is in the Client's best interests.

You agree that the Firm in the future may represent any existing or future client in any matter (including transactions and counseling, as well as litigation or other dispute resolutions) that is directly adverse to you, provided that (1) during the course of the Matter, the Firm will not represent another client adverse to you in a matter that is in any way related to this Matter, and (2) the Firm will continue to maintain the confidentiality of the confidential information you provide to us in the course of the Firm's engagement by you, and will not use such information for any purpose except for the benefit of, and on behalf of, you without your written consent. The waivers provided for in this paragraph include, without limitation, representing a debtor, creditor, or other client in restructurings, recapitalizations, reorganizations or liquidations in- and out-of-court, including, without limitation, in a judicial proceeding under the Bankruptcy Code or similar laws, including in any matter that is adverse to you during the course of the Matter. You also confirm that your agreement to this prospective waiver is voluntary and that you intend for it to be effective and enforceable and for the Firm to rely upon it.

A schedule of the Firm's standard hourly rates is attached as **Exhibit A**. The Firm's disbursements that are billed on a per-unit basis are attached as **Exhibit B**. The Firm's wiring instructions are attached as **Exhibit C**, and the Firm's W-9 Taxpayer Certification is attached as **Exhibit D**.

**Katten**

David Barse and William Transier
Dated as of July 23, 2025
Page 4


Thank you for allowing us the privilege of this representation. We value and appreciate the trust and confidence you have placed in us and we assure you we will do our best to see that your expectations are satisfied.

My best.

Sincerely,

Steven J. Reisman

w/ attachments

cc:     Cindi M. Giglio, Esq. (w/attachments: cgiglio@katten.com)
             (Katten Muchin Rosenman LLP)
        Allyson B. Smith, Esq. (w/attachments: allyson.smith@kirkland.com)
             (Kirkland & Ellis LLP)

# Katten

David Barse and William Transier
Dated as of July 23, 2025
Page 5

This letter and the Terms of Engagement are agreed to:

**CLAIRE'S HOLDINGS LLC**

By: *Brendan Mckeough*
  B4E115F01C484CD...
Name:
Title:   Authorized Signatory
    Dated as of July 23, 2025

**DAVID BARSE,**
**DISINTERESTED DIRECTOR OF**
**CLAIRE'S HOLDINGS LLC**

By: *DAVID BARSE*
  08ED8395E1724B9...
Name: David Barse, solely in his capacity as Disinterested Director of
    Claire's Holdings LLC
Title:   Disinterested Director
    Dated as of July 23, 2025

**WILLIAM TRANSIER,**
**DISINTERESTED DIRECTOR OF**
**CLAIRE'S HOLDINGS LLC**

By: *William L. Transier*
  0420BD6DF7074DD...
Name: William Transier, solely in his capacity as Disinterested Director of
    Claire's Holdings LLC
Title:   Disinterested Director
    Dated as of July 23, 2025

# KATTEN MUCHIN ROSENMAN LLP
## TERMS OF ENGAGEMENT

The information below describes the terms that apply to the legal services provided for you by Katten Muchin Rosenman LLP (the "Firm" or "we").  We encourage you to discuss any of these terms with us at any time.  If modifications to the terms are needed, you should discuss that with us so that agreement on changes can be reached and reduced to writing.  All references to "you" or "your" means only the client or clients identified in our engagement letter.  **Individuals or entities that are related to or affiliated with you, such as partners, officers, directors, stockholders, parent companies, related companies, or family members, are not clients, unless we otherwise agree in writing.**

I.      <u>**Scope of Representation**</u>.  The scope of the work we will do for you is limited to the description stated in our engagement letter.  Any changes or additions to the scope of our work, which we would be pleased to consider, must be agreed to and memorialized by letter or email.  Unless that description states otherwise, **our engagement does not include responsibility for:** (1) review of your insurance policies to determine the possibility of coverage for our fees and costs or for the claim asserted against you, (2) notification of your insurance carriers about a matter, (3) advice to you about your disclosure obligations concerning a matter under the federal securities laws or any other applicable law, (4) advice to you about tax issues that relate to a matter, or (5) advice to you about compliance with, or obligations under, the U.S. Corporate Transparency Act (and the regulations promulgated thereunder).  If we agree to represent you in additional matters, we will do so in writing by letter or email, and the terms of our engagement will remain the same for these additional matters unless changed by agreement in writing.

Additionally, if in response to your request or by requirement of lawful process we: testify; gather and/or produce documents; respond to document hold or production requests; or respond to any other requests in connection with possible, threatened or actual proceedings commenced by third parties that relate to our representation of you, you agree to pay us our reasonable fees and costs incurred.

II.     <u>**Staffing**</u>.  Steven J. Reisman will have the primary responsibility for our relationship. We assign additional lawyers and other personnel when needed based upon the type of work and the appropriate experience level required.

III.    <u>**Client Responsibilities**</u>.  You agree to provide us with all information that we believe is necessary or appropriate to fulfill our professional responsibilities in this matter and to cooperate with us in matters such as fact investigation, preparation of pleadings, discovery responses, settlement conferences, etc.  You will designate one or more persons to give us instructions and authority to receive our requests and inquiries.  You further agree that without our express written consent, you will not use our name or the fact of your engagement of us in any form of advertising or solicitation of business.

**IV.**    **Financial Arrangements**.

      A.    Fees and Expenses.  Our fees are based primarily upon the hourly rates of our lawyers and other personnel in effect when the services are performed.  These rates change periodically based upon economic factors and the experience level of our personnel.  We are affiliated with Katten Muchin Rosenman UK LLP of London, England, and if we obtain advice or services on your behalf from that firm, we will include their time and expenses on our bill.

      Expenses include items such as consultants, experts, filing fees, court reporting fees, travel costs, overnight or other special mail services, messenger services, photocopies, long distance telephone, outgoing faxes, research service charges (e.g., LEXIS), secretarial and other staff overtime charges (when required to meet the needs of the matter), and other special services such as document imaging.  Certain of these charges are adjusted to include administrative and overhead expenses incurred by the Firm to provide the billed service.  With respect to costs incurred and payable to third parties, such as court reporters or experts, it is our usual policy to forward those bills to you for payment directly to the third party, and you agree to pay those fees directly to the provider.  As an accommodation to you, however, we may advance those costs on your behalf and include them in our monthly bills.  Some large disbursements may be forwarded to you for direct payment.  Some charges may not be in the system at the time of monthly billing and will appear on a later bill.

      B.    Fee Deposits.  The amount of any fee deposit required in this engagement is set forth in the engagement letter, which is not an estimate of the total costs of the representation, nor is it a maximum fee.  This fee deposit will be deposited in the Firm's client retainer trust account and will be used to pay our fees and expenses when they come due.  We will pay our monthly invoices using the fee deposit when earned, unless you already have paid the invoice or dispute the amount of our invoice before that time.  You agree that you will maintain the fee deposit balance at the amount agreed in the engagement letter.  Accordingly, while we will pay our invoices from the fee deposit as set forth above, you agree to maintain the agreed balance by either paying each invoice within 20 days of mailing or by replenishing the fee deposit in a like amount.  In the event our fees and expenses exceed the retainer deposited with us, we will bill you for the excess.  We may, as an accommodation to you, agree to waive the fee deposit if our invoices are timely paid.  In the event we do so, however, you agree that we may request replenishment of the fee deposit at any time, should we determine that to be necessary, in our sole discretion.  We may also request, and you agree to provide, additional fee advances from time to time based on our estimates of future work to be undertaken.  If you fail to maintain the balance of the fee deposit when requested or to pay promptly any additional fees requested, we reserve the right to cease performing further work and withdraw from the representation.

C.    <u>Billing and Payment</u>.    We generally forward our statements monthly.    The statements will include a brief description of the work performed, the date the work was performed, the time required to do the work, and the expenses incurred.    Payment is due promptly upon receipt of our statement.    We reserve the right to terminate our representation of clients who do not pay promptly.    We do not and cannot guarantee the outcome of any matter, and payment of our fees and disbursements is not conditioned on any particular outcome.

**V.    <u>Electronic Communication</u>.**    The use of email can be an efficient means of communication, and we use it often in communicating with clients.    Some clients also use instant messaging as a means of communication.    However, these electronic communications can be delayed or blocked (for example, by anti-spam software) or otherwise not transmitted.    You must not assume that an email or instant message sent to us was actually opened and read by us unless you receive a non-automated reply message indicating that we have read your message.

**VI.    <u>Responses to Auditors' Inquiries</u>.**    We are frequently asked to provide information to auditing firms regarding client legal matters and we respond to those inquiries with the same level of care and professionalism used to handle the client's other legal work.    We will accordingly charge for those services at the same rates.    When you make a written request that we provide information to an auditing firm, we will deem your request to be your consent for us to disclose the requested information on your behalf.    Additionally, when an auditing firm makes a written request for information on your behalf, that request will be deemed to be your consent for us to disclose that information to the auditing firm.

**VII.    <u>Conflicts of Interest Issues</u>.**    As you know, we are a large general services law firm with many clients and with offices located in Charlotte, North Carolina; Chicago, Illinois; Dallas, Texas; Los Angeles, California (Century City and Downtown); New York, New York; Orange County, California; Washington D.C.; and Shanghai, China, and we have an affiliate in London, England.    It is possible that, during the course of our engagement, an existing or future client may seek to hire the Firm in connection with an actual or potential transaction or pending or potential litigation or other dispute resolution proceeding in which such other client's interests are or potentially may become adverse to your interests.

During the term of this engagement, we agree that we will not accept representation of another client in a legal matter that is directly adverse to you unless and until we have made disclosure to you of the relevant facts and circumstances of our undertaking the two representations and you have consented to our representation of the other client.    You agree that you will be reasonable in evaluating such circumstances and that you will give your consent if we can confirm to you in good faith that the following criteria are met: (i) there is no substantial relationship between any matter in which we are representing or have represented you and the matter for the other client; (ii) our representation of the other client will not implicate any confidential information we have received from you; (iii) our effective representation of you and the discharge of our professional responsibilities to you will not be prejudiced by our representation of the other client; and (iv) the other client has also consented based on our disclosure of the relevant facts and circumstances of our undertaking the two representations.

3

Further, in the course of our representation of you, it may be necessary for our lawyers to analyze or address their professional duties or responsibilities or those of the Firm, and to consult with the Firm's General Counsel, Deputy General Counsel, Conflicts Counsel, or other lawyers in doing so.  To the extent we are addressing our duties, obligations or responsibilities to you in those consultations, it is possible that a conflict of interest might be deemed to exist as between our Firm and you.  As a condition of this engagement, you waive any conflict of interest that might be deemed to arise out of any such consultations.  You further agree that these consultations are protected from disclosure by the Firm's attorney-client privilege.  Nothing in the foregoing shall diminish or otherwise affect our obligation to keep you informed of material developments in your representation, including any conclusions arising out of such consultations to the extent that they affect your interests.

**VIII.    Arbitration of Disputes.**  You acknowledge having reviewed a copy of Part 137 of the Rules of the Chief Administrator of the Courts of New York (available at http://ww2.nycourts.gov/admin/feedispute/part137.shtml or upon request from us) which provides a mechanism for resolution of fee disputes between us using a particular arbitration procedure and forum; you have a right to select this mechanism for the resolution of fee disputes between us under this letter agreement unless you waive that right.  You hereby waive that right, and you and we instead agree upon the following:  If any dispute, controversy or claim directly or indirectly relating to or arising out of this agreement, work we perform for you or the fees charged by us or your failure to pay such fees you agree that such dispute shall be submitted to binding arbitration with JAMS in New York, New York under the JAMS Comprehensive Arbitration Rules and Procedures.  The arbitrator shall have no authority to award punitive damages or to treble or otherwise multiply actual damages.  The award in the arbitration shall be final and binding and judgment thereon may be entered and enforced in any court of competent jurisdiction.  The costs and expenses (including reasonable attorney's fees of the prevailing party) shall be borne and paid by the party that the arbitrator, or arbitrators, determine is the non-prevailing party.  You agree and consent to personal jurisdiction, service of process and venue in any federal or state court within the State of New York in connection with any action brought to enforce an award in arbitration.  You further agree that service of process may be made upon you by Katten Muchin Rosenman LLP by causing process to be delivered to you at the above address (or such other address of which you hereafter shall advise us in writing) by registered or certified mail, return receipt requested.

**IX.    Conclusion of Representation.**  Our representation of you will terminate when we send you our final statement for services rendered in this matter.  We may also terminate our representation for any reason consistent with rules of professional responsibility, including conflicts of interest or your failure to pay our fees and expenses.  Our representation may also be terminated upon your request.  Following termination, any nonpublic information you have supplied to us which is retained by us will be kept confidential in accordance with applicable rules of professional responsibility.  Once our representation is concluded, we will not be obligated to take any steps such as keeping track of deadlines, filing papers, pursuing appeals, or monitoring or advising you about changes in the law or circumstances that might bear upon the concluded matter.

**X.**    **<u>Disposition of Client Files</u>.**    Upon conclusion of your representation, we may return to you your original papers, documents and/or other property that you provided to the Firm during our engagement. You agree to accept the return of such documents and/or property.  If you so request, we will also provide to you, at your expense, copies or originals of your complete file.  We reserve the right to make, at our expense, copies of all documents generated or received by us in the course of our representation of you.  The Firm will not provide copies or originals of the Firm Administrative or Matter Administration files pertaining to the matter, which will be retained by the Firm.  All such documents retained by the Firm, including client files (including any original documents and/or property that we attempted unsuccessfully to return to you) and Firm Administrative or Matter Administration files, will be transferred to the person responsible for administering our records retention program.  For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any documents or other materials retained by us within a reasonable time, but not less than seven (7) years after the matter is closed.

**EXHIBIT A**

**RATES**

| **PROFESSIONALS** | **STANDARD RANGE** |
|---|---|
| Partner | $1,205 - $2,380 |
| Of Counsel | $1,110 - $2,100 |
| Counsel and Special Staff | $610 - $1,615 |
| Associate | $715 - $1,210 |
| Paralegal | $230 - $860 |

### EXHIBIT B

### PER UNIT EXPENSES

| Description | Cost per page |
|---|---|
| Fax | $1.60 |
| Photocopy Costs | $ .10 |
| Photocopy – Wide Format | $1.00 |
| Color Printing / Copies | $ .25 |

**<u>Exhibit C</u>**

**<u>Katten Muchin Rosenman LLP</u>**

**<u>WIRE INSTRUCTIONS</u>**

Withheld

## Exhibit D

## Katten Muchin Rosenman LLP

## IRS FORM W-9

Withheld