IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------X
In re:                                            :       Chapter 11
                                                  :
CLAIRE'S HOLDINGS LLC, *et al.*,[1]               :       Case No. 25-11454 (BLS)
                                                  :
                                                  :       (Jointly Administered)
        Debtors.                                  :
                                                  :       Re: Docket Nos. 190 and 209
                                                  :       Hearing Date: September 9, 2025, 10:00 a.m.
                                                  :       Objection Deadline:  September 3, 2025[2]
--------------------------------------------------------X

**BROOKS SHOPPING CENTERS, LLC, DLC MANAGEMENT CORPORATION, INLAND COMMERCIAL REAL ESTATE SERVICES LLC, PYRAMID MANAGEMENT GROUP, LLC, THE STERLING ORGANIZATION, URBAN EDGE PROPERTIES, AND WESTFIELD, LLC AND CERTAIN OF THEIR LANDLORD AFFILIATES' (A) OBJECTION TO NOTICE OF POTENTIAL ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS OR LEASES AND (B) LIMITED OBJECTION TO MOTION OF DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING AND APPROVING THE SALE OF GOING-CONCERN ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND (II) GRANTING RELATE RELIEF**

Brooks Shopping Centers, LLC, DLC Management Corporation, Inland Commercial Real Estate Services LLC, Pyramid Management Group, LLC, The Sterling Organization, Urban Edge Properties, and Westfield, LLC and certain of their landlord affiliates listed on Exhibit 1 hereto (collectively, the "Landlords"), by and through their attorneys, respectfully submit this (i) objection to the *Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases* [D.I. 209] (the "Assumption/Assignment Notice") and (ii) limited objection

---

[1] The Debtors in these cases chapter 11 cases, along with the last four digits of each Debtor's federal tax identification numbers, to the extent applicable, are: Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (04160; Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343).  The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2] Extended by consent of Debtors' counsel as it relates to the Assumption/Assignment Notice.

to the *Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Sale of Going-Concern Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests and (II) Granting Related Relief* [D.I. 190] (the "Sale Motion") (collectively, the "Objection").[3]  In support of this Objection, the Landlords respectfully state as follows:

## JURISDICTION

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (N).

## BACKGROUND

2. On August 6, 2025 (the "Petition Date"), each of the above-referenced debtors (the "Debtors") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Court.

3. Upon information and belief, the Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4. The Landlords are parties to unexpired leases of nonresidential real property (each, a "Lease" and collectively, the "Leases") of the premises (the "Premises") identified on Exhibit 1 hereto.

5. The Premises are located within "shopping centers" as that term is used in § 365(b)(3) of the Bankruptcy Code.  *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

---

[3] Capitalized terms that are otherwise undefined shall have the meaning given to such terms in the Assumption/Assignment Notice or Sale Motion.

6. On August 6, 2025, the Debtors filed the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Assume the Agency Agreement, (II) Authorizing and Approving Conduct of Store Closing Sales, with Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances, (III) Modifying Customer Programs at the Closing Stores, and (IV) Granting Related Relief* [D.I. 16] (the "Store Closing Motion").

7. On August 8, 2025, the Court entered an order granting the Store Closing Motion on an interim basis [D.I. 98].

8. On August 20, 2025, the Debtors filed the Sale Motion, which proposes a sale of substantially all of the Debtors' assets to AWS Claire's, LLC ("Purchaser"), an affiliate of Ames Watson.

9. Also on August 20, 2025, the Debtors filed the Assumption/Assignment Notice, which included the amounts the Debtors believed are necessary to cure defaults under various executory contracts and unexpired leases, including the Leases (the "Proposed Cure Amounts") as it relates to the proposed sale to Purchaser.

10. On August 25, 2025, the Court entered an order modifying the Interim Store Closing Order [D.I. 228].

11. On August 25, 2025, the Debtors filed the *Notice of Filing Revised Lists of Closing Stores and Non-Closing Stores* [D.I. 240], which included the leases for the Debtors' stores, including the Leases, that are no longer subject to store closing sales.

12. The Sale Motion states that the Debtors would provide information in support of adequate assurance of future performance ("Adequate Assurance Information") to the affected counterparties to the Assigned Contracts. Following a request made after the filing of the Sale Motion, on August 25, 2025, Debtors' counsel sent a one-page letter from Ames Watson dated

August 25, 2025 which generally speaks to Ames Watson's business and states that Purchaser will have the liquidity necessary to run the business.

13. Since that time, the undersigned counsel has requested additional Adequate Assurance Information including confirmation of the specific assignee entity and its opening balance sheet, cash flow projections and income statement for the next three (3) years and the identify and experience of management, but no further Adequate Assurance Information has been provided. The Landlords intend to continue discussions with the Debtors and Purchaser on Purchaser's Adequate Assurance Information in the coming days.

**OBJECTION**

A. *The Proposed Cure Amounts Are Not Correct and Are Subject to Change*[4]

14. As a condition of any assumption and assignment of the Leases, the Landlords are entitled to have all defaults cured. 11 U.S.C. § 365(b)(1)(A). The Debtors are currently in default under the Leases for failure to pay rent and other charges currently due and owing.

15. The Landlords object to the Proposed Cure Amounts to the extent that they do not reflect the correct cure amounts for the Leases as of the date of assumption (the "Correct Cure Amounts"). The Proposed Cure Amounts and the Correct Cure Amounts, exclusive of (i) attorneys' fees and (ii) accrued rent and charges and indemnity obligations, are as listed on Exhibit 1 hereto. The Correct Cure Amounts are accurate as of the dates listed in Exhibit 1 hereto, and Exhibit 1 also includes detailed statements of the Correct Cure Amounts (exclusive of attorneys' fees).

---

[4] Some of the Leases are subject to lease amendment negotiations, which may impact the ultimate cure amounts.

B. *The Proposed Cure Amounts Do Not Include Attorneys' Fees*

16. The Landlords further object to the Proposed Cure Amounts because they do not include attorneys' fees. The Leases entitle the Landlords to attorneys' fees. Therefore, attorneys' fees must be included as part of the Landlords' cure amounts as pecuniary losses suffered as a result of the Debtors' defaults, under section 365(b)(1)(B). *See In re Crown Books Corp.*, 269 B.R. 12, 18 (Bankr. D. Del. 2001); *In re Williams*, Case No. 10-11108, 2011 Bankr. LEXIS 2463, at *3 (Bankr. D. Del. June 24, 2011); *see also In re French*, 131 B.R. 138, 141 (Bankr. E.D. Miss. 1991); *Urban Retail Props. v. Loews Cineplex Entm't Corp.*, Case No. 01 Civ. 8946, 2002 U.S. Dist. LEXIS 6186, at *25-28 (S.D.N.Y. Apr. 8, 2002); *In re Shangra-La, Inc.*, 167 F.3d 843, 849 (4th Cir. 1999); *In re Entertainment, Inc.*, 223 B.R. 141, 152-53 (Bankr. N.D. Ill. 1998).

17. Attorneys' fees have been accruing and will continue to increase through any assumption and assignment of the Leases, and the Landlords may seek to supplement this Objection by the time of any proposed assumption and assignment with the current amount of accrued attorneys' fees.

C. *Any Assumption and Assignment Must Be Cum Onere, And Any Assignee Must Assume Liability for All Obligations for Accrued, But Unbilled or Not Due Rent and Charges and Indemnity Obligations*

18. It is well settled that a debtor seeking to assume a lease must do so *cum onere*, accepting both its benefits and burdens. *See In re Fleming Cos.,* 499 F.3d 300, 308 (3d Cir. 2007) (quoting *In re Italian Cook Oil Corp.*, 190 F.2d 994, 997 (3d Cir. 1951). The requirement that lease assumption be *cum onere* applies equally to assignment, as assumption of an unexpired lease "is a necessary prerequisite to its assignment under § 365." *In re Sunterra Corp.*, 361 F.3d 257, 266 (4th Cir. 2004) (citing 11 U.S.C. § 365(f)(2)).

5

19. Therefore, in the event that the Debtors seek to assume and assign the Leases, the Debtors are first obligated to cure all outstanding defaults under the Leases, including the payment of the Correct Cure Amounts, plus attorneys' fees, that accrued at the time of assumption and assignment.

20. Further, the Debtors have a continuing obligation to pay additional rent and charges, including, but not limited to, adjustments and reconciliations for the Debtors' proportionate share of certain common area maintenance, real property taxes, water, insurance premiums, and any percentage rent which has accrued, or will accrue under the Leases through any assumption and assignment of the Leases and are not yet due.

21. Additionally, the Proposed Cure Amounts do not include contractual obligations to indemnify the Landlords for events occurring prior to any assumption and assignment of the Leases. The Leases obligate the Debtors to indemnify and hold the Landlords harmless from and against various claims, liabilities and expenses. Any assignee must assume liability for such obligations.

22. The Debtors' obligations to pay this additional rent and charges and to satisfy their indemnity obligations are essential to the Landlords' entitlement pursuant to section 365(b)(1) of the Bankruptcy Code to adequate assurance of future performance, and must be assumed by any assignee *cum onere*. *See In re Interstate Bakeries Corp.*, 167 F.3d 843, 961 (8th Cir. 2014).

23. Therefore, all of these obligations must be assumed by any assignee as part of any assumption and assignment of the Leases in accordance with the requirement that the Landlords receive adequate assurance of future performance under the Leases.

D. *Any Assumption and Assignment Must Be Supported by Adequate Assurance of Future Performance*

24. Before assuming an unexpired lease that is in default such as the Lease, a debtor must provide adequate assurance of future performance to the landlord. 11 U.S.C. § 365(b)(1).[5]

25. Bankruptcy Code section 365(b)(3) sets forth additional, heightened requirements for adequate assurance of future performance under a shopping center lease such as the Lease, and states:

> 3) For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—
>
> (A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
>
> (B) that any percentage rent due under such lease will not decline substantially;
>
> (C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and
>
> (D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

11 U.S.C. § 365(b)(3).

---

[5] Bankruptcy Code section 365(b)(1) provides that "[i]f there has been a default in an . . . unexpired lease of the debtor, the trustee may not assume such . . . lease unless, at the time of assumption of such . . . lease, the trustee - (A) cures, or provides adequate assurance that the trustee will promptly cure such default . . . (B) compensates, or provides adequate assurance that it will promptly compensate . . . [the landlord] for any actual pecuniary loss . . . resulting from such default, and (C) provides adequate assurance of future performance under such . . . lease." 11 U.S.C. § 365(b)(1).

26. Pursuant to section 365 of the Bankruptcy Code, assumption and assignment requires adequate assurance that an assignee has the ability to perform under the terms of the Lease and satisfies the requirements of sections 365(b)(1) and 365(l) of the Bankruptcy Code. 11 U.S.C. §§ 365(b)(1), (f)(2) and (l). Adequate assurance of future performance is determined by the existing factual conditions, and the Court may look to many factors in determining what is necessary to provide adequate assurance of future performance under § 365(b) of the Bankruptcy Code, including, but not limited to, sufficient economic backing, economic conditions, certificates, credit reports, escrow deposits, or other similar forms of security or guarantee. *In re Tama Beef Packing, Inc.*, 277 B.R. 407, 411-12 (Bankr. N.D. Iowa 2002); *In re Alipat, Inc.*, 36 B.R. 274, 277-78 (Bankr. E.D. Mo. 1984); *In re Lafayette Radio Electronics Corp.*, 9 B.R. 993, 998 (Bankr. E.D.N.Y. 1981). Courts also look to the operating experience of the proposed assignee. *In re Casual Male Corp.*, 120 B.R. 256, 265 (Bankr. D. Mass. 1990); *In re Bygaph, Inc.* 56 B.R. 596, 605 (Bankr. S.D.N.Y. 1986); *In re Alipat, Inc.*, 36 B.R. at 277.

27. The provision of adequate assurance of future performance is an affirmative duty of the Debtors, and the Debtors bear the ultimate burden of proof as to all issues under section 365. *See In re Rachels Indus., Inc.*, 109 B.R. 797, 802 (Bankr. W.D. Tenn. 1990); *see also Richmond Leasing, Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985). The Debtors bear the burden of proving the requirements of section 365(b) as to all issues by a preponderance of the evidence. *See In re PRK Enterprises, Inc.*, 235 B.R. 597, 602 (Bankr. E.D. Tex. 1999); *see also In re Prestige Motorcar Gallery, Inc.*, 456 B.R. 541, 544 (Bankr. N.D. Fla. 2011) ("the threshold requirement and burden of the trustee is to produce credible evidence that his decision to assume or reject would benefit the estate or result in a successful reorganization."); *In re Widmier*, Case No. 00-40244, 2003 Bankr. LEXIS 2220, at *8 (Bankr. D. Idaho Nov. 18, 2003) ("When the Court

granted approval of Debtors' request to assume Creditor's lease under § 365(a), a determination was made by the Court that the assumption benefitted the bankruptcy estate . . . .").

28. It does not suffice to show that a proposed assignee of an unexpired lease of non-residential real property has a "good" or "sufficient" financial condition in a vacuum. Instead, the Debtors must prove that Purchaser's (to the extent it is the proposed assignee) financial condition and operating performance – and not that of Ames Watson, for example – is "similar to the financial condition and operating performance of the debtor . . . as of the time the debtor became the lessee under the lease." 11 U.S.C. § 365(b)(3)(A); *see MOAC Mall Holdings LLC v. Transform Holdco LLC (In re Sears Holdings Corp.)*, 613 B.R. 51, 77-78 (S.D.N.Y. 2020).[6]

29. Courts require a specific factual showing through competent evidence to determine whether adequate assurance of future performance has been provided. *See Matter of Haute Cuisine, Inc.*, 58 B.R. 390 (Bankr. M.D. Fla. 1986).

30. Further, section 365(l) of the Bankruptcy Code provides:

> If an unexpired lease under which the debtor is the lessee is assigned pursuant to this section, the lessor of the property may require a deposit or other security for the performance of the debtor's obligations under the lease substantially the same as would have been required by the landlord upon the initial leasing to a similar tenant.

11 U.S.C. § 365(l).

---

6 "Congress concluded that if a shopping center landlord were dragged into bankruptcy court, it should not have a new tenant imposed on it unless the proposed assignee 'looked,' in terms of its financial condition and operating performance, like the party that was vacating the premises. Moreover, Congress selected a particular moment in time for making the comparison between the wherewithal of debtor and assignee: the assignee today versus the debtor as it was at the commencement of the lease, when its financial condition and operating performance were such as to make it an attractive tenant to the landlord. Congress in its wisdom decided that only an assignee with a financial condition and operating performance that resembled the debtor's *ab initio* would provide a shopping center landlord with 'adequate assurance' that the bargain originally struck would be performed by the lease's assignee. Congress may have been wrong to think so, but that was for Congress to decide."

31. The asset purchase agreement attached to the Sale Motion (the "APA") provides that the Purchaser will provide

> adequate assurance of future performance as required under Section 365 of the Bankruptcy Code and/or its equivalent under the CCAA for the Assigned Contracts. Purchaser will take all actions reasonably required to assist in obtaining a Bankruptcy Court and/or Canadian Court finding that there has been a sufficient demonstration of adequate assurance of future performance under the Assigned Contracts, such as furnishing affidavits, non-confidential financial information and other documents . . . .

Sale Motion, APA, p. 107.

32. The APA also provides that within two (2) business days of the Closing, Purchaser may designate one or more Affiliates to purchase the Acquired Assets, assume the Assumed Liabilities, or take title to any Acquired Asset. Sale Motion, APA, p. 129.

33. It is unclear how much of the Adequate Assurance Information is relevant since the Landlords do not know who the ultimate proposed assignee(s) of the Leases might be and do not have any knowledge of the proposed corporate structure. To the extent the proposed assignee for any of the Leases is an entity other than Purchaser, the Landlords do not have any information for such an entity including financials, projections, the intended use or a contact person but even if the proposed assignee for all the Leases is Purchaser, the Landlords do not have any concrete financial information that could serve as evidence of adequate assurance of future performance.

34. The Landlords reserve their rights to object to any proposed assumption and assignment of the Leases to the Purchaser absent identification of the proposed assignee, strict compliance with the adequate assurance of future performance requirements of § 365 of the Bankruptcy Code, and the Landlords having sufficient notice and opportunity to be heard regarding any proposed assumption and assignment. The Landlords also reserve rights to request a guaranty and/or other security from an appropriate entity under § 365(l) of the Bankruptcy Code

pending further Adequate Assurance Information. The Debtors must sustain their burden with respect to adequate assurance of future performance under the Sale Motion and section 365 of the Bankruptcy Code at the time of the proposed assumption and assignment of the Leases since the proposed assignee's financial condition and operating performance may change between the sale hearing and any proposed assumption and assignment, particularly given the proposed designation rights component.

### E. The Landlords Object to the Proposed Sale Order

35. As of the filing of this Objection, the Landlords have the following concerns with the proposed form of sale order attached to the Sale Motion (the "Proposed Sale Order"):[7]

a. <u>Free and Clear Must Exclude Interests that Run with the Land</u>

  i. The sale is proposed to be free and clear of encumbrances including easements except easements and restrictive covenants that do not adversely affect the operation of the assets and in the case of acquired leased real property, that do not adversely affect the use or occupancy of the leased real property as it relates to the operation of the business (Sale Motion, APA, p. 111). However, the assumption and assignment of the Leases should be subject to all easements, Reciprocal Easement Agreements, Construction Operation and Reciprocal Easement Agreements, rights of way, restrictive covenants, ground or master leases, applicable local laws, and any other interests that run with the land, without equivocation.

b. <u>Assumption of All Lease Obligations</u>

  i. Any assignee of the Leases must assume liability for all accrued but unbilled or not due obligations under the Leases, including indemnity obligations (absent adequate

---

[7] The Landlords reserve rights to object to any provisions of the Proposed Sale Order as it may be amended.

11

insurance coverage) as part of satisfying the adequate assurance of future performance requirement for lease assumptions and assignments.

c. <u>Bill of Sale</u>

   i. The APA provides for the Debtors' delivery of a bill of sale and assumption and assignment agreement in a form that is referenced as Exhibit A to the APA but not included with the APA, which the Landlords should have an opportunity to review.

d. <u>Other Comments</u>

   i. The Proposed Sale Order (¶ S) states that the provision of adequate assurance of future performance is only "to the extent necessary."

   ii. The Proposed Sale Order (¶ S) provides that Purchaser's obligations to pay cure costs and perform its obligations under the Assigned Contracts, without more, constitute adequate assurance of future performance under the Bankruptcy Code. The Proposed Sale Order should require the payment of undisputed cure costs within seven (7) days of assumption and assignment with any disputed cure costs held in escrow pending resolution by agreement or adjudication by Bankruptcy Court order and any additional cure costs to be paid within seven (7) days following resolution or adjudication.

   iii. The Proposed Sale Order (¶ 13) would deem filed claims first arising from and after the closing, or relating to or first arising from the going concern assets after closing, disallowed without the need for any filed objection and Bankruptcy Court order disallowing the claims. The Landlords must be put on notice of any proposed treatment of their claims with a fair opportunity to respond and be heard.

   iv. Upon information and belief, Purchaser may be seeking to establish designation rights for leases that are not assumed and assigned upon closing. To the extent designation rights are proposed, it must be clear that (a) the Debtors remain fully liable under the

12

       Leases through assumption, (b) the Premises are not operated by unauthorized parties absent agreement and the requisite insurance coverage, (c) fair procedures are established for the disposition of those leases including objection deadlines and hearing dates, and (d) the time by which the Debtors must make lease decisions under Bankruptcy Code section 365(d)(4) is not impacted.

  v.  The Proposed Sale Order must be revised to incorporate the concepts set forth in this Objection and any other of the Landlords' issues that impact the assumption and assignment of the Leases.

## **RESERVATION OF RIGHTS AND JOINDER**

36.    The Landlords reserve their rights with respect to the APA or any other asset purchase agreement governing the ultimate successful purchaser.

37.    The Landlords reserve their rights to supplement this Objection and to make such other and further objections as they may deem necessary or appropriate, including, but not limited to, objecting to assumption and assignment of the Leases on any grounds.

38.    The Landlords join in the objections of other landlords of the Debtors to the extent not inconsistent herewith.

**WHEREFORE**, the Landlords respectfully request that the Court enter an order consistent with this Objection, and grant the Landlords any additional and further relief the Court deems just and proper.

| | |
|---|---|
| Dated:  September 3, 2025<br>Wilmington, Delaware | By:  */s/ Laurel D. Roglen*<br>Leslie C. Heilman, Esq. (DE No. 4716)<br>Laurel D. Roglen, Esq. (DE No. 5759)<br>**BALLARD SPAHR LLP**<br>919 North Market Street, 11th Floor<br>Wilmington, DE 19801<br>Telephone:  (302) 252-4465<br>E-mail:  heilmanl@ballardspahr.com<br>E-mail:  roglenl@ballardspahr.com<br><br>-and-<br><br>**BARCLAY DAMON LLP**<br>Kevin M. Newman<br>Barclay Damon Tower<br>125 East Jefferson Street<br>Syracuse, New York 13202<br>Telephone:  (315) 413-7115<br>knewman@barclaydamon.com<br><br>Niclas A. Ferland<br>555 Long Wharf Drive, Sixth Floor<br>New Haven, CT 06511<br>Telephone:  (203) 672-2667<br>nferland@barclaydamon.com<br><br>Scott L. Fleischer<br>1270 Avenue of the Americas, Suite 2310<br>New York, NY 10020<br>Telephone:  (212) 784-5810<br>sfleischer@barclaydamon.com<br><br>*Attorneys for Brooks Shopping Centers, LLC, DLC Management Corporation, Inland Commercial Real Estate Services LLC, Pyramid Management Group, LLC, The Sterling Organization, Urban Edge Properties, Westfield, LLC, and certain of their landlord affiliates listed on <u>Exhibit 1</u> hereto* |