IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CLAIRE'S HOLDINGS LLC, *et al.*, | ) | Case No. 25-11454 (BLS) |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors.¹ | ) | |
| | ) | |

**DECLARATION OF WILLIAM L.
TRANSIER IN SUPPORT OF MOTION OF
DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING
AND APPROVING THE SALE OF GOING-CONCERN ASSETS
FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES
AND OTHER INTERESTS AND (II) GRANTING RELATED RELIEF**

I, William L. Transier, hereby declare under penalty of perjury that the following statements are true and correct to the best of my knowledge, information, and belief.

**Summary of Declaration**

1. As a member of the board of directors (the "Board") of Claire's Holdings, LLC ("Claire's Holdings" and, together with its affiliated debtor and debtor-in-possession, collectively, the "Company" or the "Debtors") and the Board's Special Committee, I submit this declaration ("Declaration") in support of the *Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Sale of Going-Concern Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests and (II) Granting Related Relief* [Dkt. No. 190] (the "Sale Motion") including the Proposed Sale Release contained therein.²

---

¹ A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Claires. The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

² Capitalized terms used but not defined herein have the meanings ascribed to them in the Sale Motion.

2. In particular, I offer this Declaration to (a) advise the Bankruptcy Court that, following an investigation and due deliberation, the Special Committee has unanimously concluded that the Debtors' release of the Sale Release Parties in connection with the proposed Going-Concern Sale is reasonable under the circumstances, appropriate, and in the best interests of the Debtors, their estates, and their stakeholders, (b) describe the process the Special Committee undertook in reaching its conclusion, and (c) explain the reasoning behind the Special Committee's conclusion.

## Professional Background and Qualifications

3. Since May 14, 2025, I have served as an independent and disinterested manager (an "Independent Manager" and together with David Barse, the "Independent Managers") on the Board.

4. In 2015, I founded, and currently serve as Chief Executive Officer of, Transier Advisors, LLC, an independent advisory firm providing services to companies facing financial distress, suboptimal operational situations, turnaround, restructuring or in need of interim executive or board leadership.

5. I served from September 2006 until December 2014 as Chairman, Chief Executive Officer and President of Endeavour International Company an international oil and gas exploration and production company, and as its Founder, Chairman and Co-Chief Executive Officer from its formation in February 2004 through September 2006. Prior to that, I served as Executive Vice President and Chief Financial Officer of Ocean Energy, Inc. and its predecessor, Seagull Energy Corporation from May 1996 to April 2003. Prior to that I was an audit partner and leader of KPMG's global energy practice from 1986 to 1996.

6. I have served on the board of numerous private and public companies and served as a CFO and Chairman and CEO of publicly traded companies. Prior roles include being the co-

founder, chairman, and CEO of Endeavour International Corp., an international oil and gas company with dual public listings on NYSE and London Stock Exchanges, and the executive vice president and chief financial officer of Ocean Energy, a NYSE listed international oil and gas company. I have extensive management and board leadership experience, including serving as an independent director in roles such as non-executive chairman, lead director, and audit and compensation committee chairman, as well as on special committees.

7. I have held management and leadership roles for a variety of corporations, including debtors in large, complex chapter 11 cases. These roles include, by way of example, serving as an independent director of: (a) Tupperware Brands Corporation, where I served as chair of the audit committee and as a member of the Transformation Committee; (b) Waypoint Leasing Holdings Ltd.; (c) Westinghouse Electric Company, LLC, where I also served as chair of the compensation and audit committees and as a member of the special committee of the company's board of directors; (d) Altera Infrastructure Holdings LLC, where I served as chair of the audit committee and member of the restructuring committee; (e) Emerge Energy Services LP, where I served as chair of the audit committee and member of special restructuring committee; (f) Paragon Offshore PLC; (g) Chisholm Oil and Gas Holdings, LLC; (h) Salt Creek Midstream, LLC, where I also served as a member of the special committee of the company's board of directors; (i) Sears Holdings Corporation, where I also served as a member of the special committee of the company's board of directors; (j) Exide Holdings, Inc., where I also served as a member of the special committee of the company's board of directors; and (k) Air Methods Corporation, where I also served as a member of the special committee of the company's board of directors.

8. I currently serve as Chairman of the Board of Directors of Helix Energy Solutions Group, Inc., a NYSE listed company, and a member of the Board of Directors of GoHealth, Inc.,

a NASDAQ listed company. I also serve as chair of the Nominating and Corporate Governance Committee and a member of the Audit Committee and Transformation Committee of GoHealth, Inc. I have previously served on the public company boards of Tupperware Corporation, Express Inc., Battalion Oil Corporation, M3-Brigade Acquisition III Corp, Exela Technologies, Sears Holding Corporation, Teekay Offshore Partners L.P., Gastar Exploration, Inc., CHC Group Ltd., and Paragon Offshore plc.

9. I received my undergraduate degree from University of Texas at Austin and obtained a Master of Business Administration degree from Regis University and an M.A. in Theological Studies from Dallas Baptist University.

10. I am over the age of 18 and authorized to submit this Declaration in support of the Sale Motion. If I were called upon to testify, I could and would testify competently to the facts set forth herein. Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, my discussions with members of the Debtors' management team, the Debtors' legal counsel, other advisors, and Katten Muchin Rosenman LLP ("Katten"), serving as independent counsel to the Debtors at the sole discretion of the Independent Managers, and my review of relevant documents and information concerning the Sale Investigation (as defined herein).

11. For the avoidance of doubt, I do not, and do not intend to, waive the attorney-client privilege or any other applicable privilege or protection by submitting this Declaration.

**Appointment to the Board and Special Committee**

12. On May 14, 2025, the Company appointed the Independent Managers to serve as independent and disinterested managers to assist the Board with exploring, negotiating, evaluating, and executing potential strategic and value-maximizing transactions.

13. Contemporaneously with the appointment of the Independent Managers, the Board, as well as the boards of the Company's other subsidiaries, unanimously adopted resolutions forming a Special Committee consisting solely of the Independent Managers, and delegating to it certain powers and authorities including, among other things, authority to: (i) investigate matters in which a conflict of interest exists or is reasonably likely to exist between the Companies, on the one hand, and any of their affiliates, subsidiaries, directors, managers, and officers, or other stakeholders, on the other hand (each such matter, a "Conflict Matter"); and (ii) review, discuss, consider, negotiate, approve, and authorize the Company's entry into and consummation of a Transaction. A "Transaction" is defined as a potential financing transaction, including certain amendments or modifications to the Company's existing funded debt obligations, a financial restructuring and/or restructuring process and/or merger, acquisition, or other corporate transaction involving the Company, in each case to address the liquidity needs of the Company.

14. In accordance with this authority, and prior to the commencement of the chapter 11 cases, the Special Committee initiated a privileged and confidential independent investigation to determine whether the Debtors or their estates hold any potentially viable claims or causes of action (collectively, "Claims") that are worthy of pursuit or maintenance in the context of the chapter 11 cases, against the Debtors' current or former directors, officers, shareholders, insiders, affiliates, lenders, and any other parties (including third parties) (the "Independent Investigation").

15. On July 23, 2025, the Debtors retained Katten to render independent legal services at the sole discretion of the Independent Managers, to conduct the Independent Investigation and to provide advice and legal services in connection with the exercise of the Independent Managers' fiduciary duties. The Special Committee selected Katten as independent special counsel based on the firm's prior engagements and expertise representing disinterested directors in complex chapter

11 cases, and in particular the lead attorneys from Katten working on this matter, including Steven J. Reisman and Cindi M. Giglio. In hiring Katten, the Special Committee relied on the fact that the lead attorneys from Katten working on this matter are widely regarded as market leaders in the representation of independent directors and advisors and, in recent years, have represented independent directors and advisors in some of the largest and most complex chapter 11 cases throughout the United States and in confidential out-of-court restructuring matters.

### The Going-Concern Sale

16. On August 6, 2025, the Debtors commenced these chapter 11 cases and sought and obtained relief from the Bankruptcy Court to immediately begin closing all their brick-and-mortar stores. However, the Debtors maintained flexibility to stop store closings in their business judgment with the consent of the ABL Agent. On August 16, 2025, the Debtors exercised their right to stop the store closing and liquidation, and on August 18, 2025 executed an asset purchase agreement with AWS Claire's, LLC, an entity owned by a buyer group led by Ames Watson, LLC (collectively "Ames"), pursuant to which Ames agreed to purchase substantially all of the Debtors' assets as part of a going-concern sale transaction (the "Going-Concern Sale").

17. On August 20, 2025, the Debtors filed the Sale Motion with the Bankruptcy Court seeking approval of the Going-Concern Sale. As described in the Sale Motion, the Going-Concern Sale represents the only viable transaction available to the Debtors that will allow their business to continue as a going concern.

18. As part of the Going-Concern Sale, the Debtors have agreed to a settlement, pursuant to which the Debtors would provide releases to the Sale Release Parties (as defined herein) in exchange for the value those parties provided to the Debtors' estates in connection with the Going-Concern Sale.

19. Specifically, paragraph 43 of the proposed order attached to the Sale Motion, provides for releases, effective upon entry of the sale order, by, among others, the Debtors and their estates (the "Proposed Sale Release") of any and all claims and causes of action, including any derivative claims the Debtors could assert, against the following parties: (i) the lenders under the Debtors' ABL Facility, (ii) lenders holding a majority of the Priority Term Loans, (iii) lenders holding a majority of the Existing Term Loans, and (iv) each of the foregoing's related parties ((i) – (iv) collectively, the "Sale Release Parties").

20. The Proposed Sale Release is subject to Bankruptcy Court approval via Rule 9019 of the Federal Rules of Bankruptcy Procedure and the completion of the Special Committee's investigation into whether the Company holds any viable and valuable claims or causes of action against the Sale Release Parties (the "Sale Investigation").

**Independent Investigation**

21. Since Katten's engagement on July 23, 2025, the Independent Managers, with the assistance of Katten, have conducted the Independent Investigation. Following the Debtors' agreement to proceed with the Going-Concern Sale, the Independent Investigation has focused on the Sale Investigation.

22. The scope of the Sale Investigation was broad. At the Special Committee's direction, Katten submitted more than 50 categories of diligence requests to the Company, seeking documents and information relevant to the Sale Investigation. These requests covered a broad range of materials, including board materials and minutes, corporate formation and governance documents, transaction documents, debt documents, and financial information. In response, Katten received and reviewed more than 1,000 documents from the Company. At the Special Committee's direction, Katten also interviewed seven parties including current and former

directors, officers, and advisors of the Company. It is my understanding that the Company, its management team, and its advisors fully cooperated with Katten's requests and inquiries.

23. The Independent Managers maintained regular communications with Katten to direct the Sale Investigation and to obtain updates on its workstreams, progress, and findings. During meetings of the Special Committee regarding the Sale Investigation, the Independent Managers were actively engaged, drawing on their experience to ask questions about the facts being developed and potentially applicable legal theories. These meetings were held in addition to the Independent Managers' participation in separate Board and Special Committee meetings concerning the Debtors' business operations, the Going-Concern Sale and the administration of the Debtor's chapter 11 cases.

24. The Special Committee, with the assistance of Katten, conducted a thorough analysis to determine whether the Debtors possess any colorable and potentially viable Claims against the Sale Release Parties that are worthy of pursuit or maintenance in the context of the chapter 11 cases.

25. After investigation, analysis, and due deliberation, the Special Investigation Committee has concluded that the Debtors' estates do not have any viable and valuable Claims against the Sale Release Parties that would warrant the time, expense, and uncertainty associated with the prosecution or maintenance of such Claims.

### Evaluation of the Proposed Sale Release

26. In my role as an Independent Manager and member of the Special Committee, I have analyzed the reasonableness and appropriateness of the Proposed Sale Release. As set forth more fully below, I believe that the Proposed Sale Release is reasonable under the circumstances, appropriate, and in the best interests of the Debtors, their estates, and stakeholders.

27. ***First***, the Special Committee has concluded that the Debtors do not have viable and valuable Claims against the Sale Release Parties that would warrant the time, expense, and uncertainty associated with the pursuit or maintenance of such Claims. This conclusion is based on the Special Committee's evaluation of the facts and circumstances of relevant transactions, analyses of the merits of any potential estate causes of action, and whether the costs and burdens of litigation justify pursuit of such estate causes of action.

28. ***Second,*** the Sale Release Parties have consented to the Going-Concern Sale in exchange for the Proposed Sale Release. This consent constitutes valuable consideration as the Sale Release Parties constitute the Debtors' secured creditors who would otherwise be able to credit bid their debt to protect/acquire their collateral. A going-concern sale maximizes value for all stakeholders, preserve jobs, provide continued business to many of the Debtors' vendors and landlords, and allow the Claire's brand to obtain a fresh start.

29. ***Third***, the Debtors' stakeholders, including the Official Committee of Unsecured Creditors, who have been conducting their own investigation of the Sale Release Parties, support the Going-Concern Sale and the Proposed Sale Release.

30. After considering all relevant factors, the Special Committee unanimously concluded, and I believe, that (a) it is reasonable under the circumstances for the Debtors to grant the releases of the Sale Release Parties contained in the Proposed Sale Release, (b) the Proposed Sale Release has been provided in exchange for good and valuable consideration from the Sale Release Parties, (c) the Proposed Sale Release is in the best interests of the Debtors, the Estates, and the Debtors' stakeholders, and (d) the Proposed Sale Release is fair, equitable, and reasonable, and is given and made after due notice and opportunity to be heard.

31. Accordingly, I believe that it is well within the range of reasonableness for the Debtors to provide the Proposed Sale Release, which represents a sound exercise of the Debtors' business judgment and is ultimately in the best interest of the Debtors' estates.

32. For these reasons, as an Independent Manager of the Board and member of the Special Committee, I support the approval of the Proposed Sale Release in connection with the approval of the Going-Concern Sale.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: September 8, 2025

*/s/ William L. Transier*
William L. Transier
Independent Manager of Claire's Holdings, LLC