## Exhibit 1

**Disclosure Statement**

[*To Be Filed Separately*]

## Exhibit 2

**Solicitation and Voting Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (BLS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## SOLICITATION AND VOTING PROCEDURES

**PLEASE TAKE NOTICE THAT** on [●], 2025, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. [●]] (the "Conditional Disclosure Statement Order"): (a) authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit votes on the *First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan; and (e) granting related relief.

### A.     The Voting Record Date.

The Court has established **September 8, 2025**, as the record date for purposes of determining which Class 4 (Prepetition Priority Term Loan Claims) and Class 5 (Prepetition Existing Term Loan Claims) (collectively, the "Voting Classes") are entitled to vote on the Plan (the "Voting Record Date").

### B.     The Voting Deadline.

The Court has established **October 14, 2025, at 4:00 p.m., prevailing Eastern Time**, as the voting deadline (the "Voting Deadline") for the Plan. The Debtors may extend the Voting Deadline without further order of the Court. To be counted as votes to accept or reject the Plan,

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are:  Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343).  The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2]     Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan or Disclosure Statement, as applicable.

all ballots (collectively, the "<u>Ballots</u>") must be properly executed, completed, and delivered pursuant to the instructions provided on or with such Ballot.

### C.      Form, Content, and Manner of Notices.

### 1.      The Solicitation Package.

The following materials shall constitute the solicitation packages (each, a "<u>Solicitation Package</u>") to be distributed to the Voting Classes:

a.      a Ballot, together with detailed voting instructions;

b.      the Cover Letter, including instructions to obtain access, free of charge, via https://omniagentsolutions.com/Claires or QR code, to the Plan, Disclosure Statement, and Conditional Disclosure Statement Order (excluding exhibits, except the Solicitation and Voting Procedures), as well as instructions to access, via QR code, and electronically submit a Ballot on the Debtors' restructuring website; and

c.      the notice of hearing to be held by the court to consider the Disclosure Statement and Confirmation of the Plan (the "<u>Combined Hearing</u>" and, the notice thereof, the "<u>Combined Hearing Notice</u>").

### 2.      Distribution of the Solicitation Package.

The Debtors shall serve, or cause to be served, the materials in the Solicitation Package to Holders of Claims in the Voting Classes within four (4) business days after the entry of the Conditional Disclosure Statement Order who are entitled to vote, as described in **<u>Section D</u>** below, by mailing the Cover Letter, which contains QR codes linking to the Debtors' case website (https://omniagentsolutions.com/Claires) where Holders of Claims in the Voting Classes may view and submit materials in the Solicitation Package.  Paper copies are available upon request by contacting Omni Agent Solutions, Inc., the claims and noticing agent retained by the Debtors in these chapter 11 cases (the "<u>Claims and Noticing Agent</u>") by:  (a) writing via first class mail, to Claire's Holdings LLC Ballot Processing Center, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Ste 100, Woodland Hills, CA 91367; (b) writing via electronic mail to ClairesInquiries@OmniAgnt.com (with "Claire's Holdings LLC Solicitation Inquiry" in the subject line); or (c) calling the Debtors' restructuring hotline at (888) 202-5971 (U.S./Canada, toll-free) or +1 (747) 293-0183 (International, toll).

The Debtors shall serve, or cause to be served, by first class mail, (a) the complete Solicitation Package (excluding the Ballots) on the U.S. Trustee (for the avoidance of doubt, the Debtors may serve the U.S. Trustee via email) and (b) the Conditional Disclosure Statement Order and the Combined Hearing Notice on all parties required to be notified under Bankruptcy Rule 2002 and Local Rule 2002-1 (the "<u>2002 List</u>") as of the Voting Record Date.

For purposes of serving the Solicitation Package, the Debtors may rely on the address and email address (as applicable) information for the Voting Classes as compiled, updated, and maintained by the Claims and Noticing Agent as of the Voting Record Date.  The Debtors and the Claims and Noticing Agent are not required to conduct any additional research for updated

2

addresses or email addresses based on any undeliverable Solicitation Package (including any Ballot) or Non-Voting Status Notice.

To avoid duplication and reduce expenses, the Debtors will use commercially reasonable efforts to ensure that each Holder of a Claim entitled to vote on the Plan receives no more than one Solicitation Package (and, therefore, one Ballot per Class) and is only entitled to submit one Ballot on account of such Holder's Claim in a particular Class.

**3.**     <u>**Resolution of Disputed Claims for Voting Purposes; Resolution Event.**</u>

a.     The Debtors shall have until ten (10) days prior to the Voting Deadline to object to Proofs of Claims for purposes of voting on the Plan (the "<u>Voting Claims Objection Deadline</u>"). To the extent the Debtors wish to object to a Proof of Claim that is timely filed following the Voting Claims Objection Deadline but prior to the Voting Deadline, the Debtors shall promptly file such objection. Any such objection that remains pending as of the Combined Hearing Date will be heard on an emergency basis at the Combined Hearing.

b.     If a Claim in a Voting Class is subject to a "reduce and allow" objection that is filed with the Court on or prior to the Voting Claims Objection Deadline or Voting Deadline, as applicable: (i) the Debtors shall notify the applicable Holder of such objection; and (ii) the applicable Holder shall be entitled to vote such Claim in the reduced amount contained in such objection, subject to the Holder's right to file a Rule 3018(a) motion as provided herein.

c.     If a Claim in a Voting Class is subject to an objection other than a "reduce and allow" objection that is filed with the Court on or prior to the to the Voting Claims Objection Deadline or Voting Deadline, as applicable: (i) the Debtors shall notify the applicable Holder of such objection; and (ii) such Claim shall be temporarily allowed, disallowed or reclassified for voting purposes as if the relief requested in the objection were granted, subject to the Holder's right to file a Rule 3018(a) motion as provided herein.

d.     Any Holder of a Claim that is the subject of a claim objection filed prior to the Voting Claims Objection Deadline who wishes to contest such objection must file and serve a motion under Bankruptcy Rule 3018(a) by no later than ten (10) days after the objection is served upon them. Any Holder of a Claim who files a Rule 3018(a) motion in accordance with this paragraph shall be provided with a Solicitation Package by the Claims and Noticing Agent and shall be permitted to cast a provisional vote to accept or reject the Plan. If and to the extent that the Debtors and such Holder are unable to resolve the issues raised by the Rule 3018(a) motion prior to the Voting Deadline, then the Court shall determine whether the provisional ballot should be counted as a vote on the Plan at the Combined Hearing. This procedure is without prejudice to the rights of the Debtors and any affected Holders to resolve a Claim objection through a "<u>Resolution Event</u>," which shall mean the occurrence of one or more of the following at least two (2) business days prior to the Voting Deadline:

i.      an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

ii.     an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

iii.    a stipulation or other agreement is executed between the Holder and the Debtors resolving the objection and allowing such Claim in an agreed upon amount; or

iv.     the pending objection is voluntarily withdrawn by the objecting party.

e.      To the extent an applicable Claim is in a Voting Class, no later than one (1) business day following the occurrence of a Resolution Event, or as soon as reasonably practicable thereafter, the Debtors shall cause the Claims and Noticing Agent to distribute via email, hand delivery, or overnight courier service a Solicitation Package and a pre-addressed, postage pre-paid envelope, if applicable, to the relevant Holder to the extent such Holder has not already received a Solicitation Package.

### 4.      **Non-Voting Status Notices for Unclassified Claims, Unimpaired Classes, Classes Deemed to Reject the Plan, and non-solicited Claims.**

Certain (i) Holders of Claims that are Unimpaired under the Plan and who are, pursuant to section 1126(f) of the Bankruptcy Code, conclusively presumed to accept the Plan, (ii) Holders of Claims that are Impaired under the Plan and who are, pursuant to section 1126(g) of the Bankruptcy Code, conclusively deemed to reject the Plan, and (iii) Holders of Claims or Interests that are subject to a pending objection by the Debtors and who are not entitled to vote the disputed portion of such Claim will receive the applicable *Notice of Non-Voting Status*, substantially in the form annexed as Exhibit 4A, Exhibit 4B, and Exhibit 4C to the Conditional Disclosure Statement Order.  Such notice will instruct these Holders as to how they may obtain copies of the documents contained in the Solicitation Package (*excluding* Ballots).  Such notice will also include a form by which all Holders of Claims can elect to opt in to the Third-Party Release included in the Plan. The Holders of Claims may affirmatively opt in by completing and returning the form (the paper version or electronically via the Opt-In Portal) on or before **October 14, 2025, at 4:00 p.m., prevailing Eastern Time.**

### 5.      **Notices Regarding Executory Contracts and Unexpired Leases Assumed or Assumed and Assigned, Under the Plan.**

Counterparties to Executory Contracts or Unexpired Leases that receive an Assumption Notice, substantially in the form attached as Exhibit 8 to the Conditional Disclosure Statement Order, may file an objection to the Debtors' proposed assumption, assumption and assignment, and/or cure amount, each under the Plan, as applicable.  Any objection by a counterparty to an Executory Contract or Unexpired Lease in connection with a proposed assumption or assumption and assignment or related cure amount (in each case, under the Plan) must be Filed, served, and actually received by the Debtors by no later than fourteen (14) days after actual receipt of the

Assumption Notice, *provided* that, if the Debtors modify the Assumed Executory Contract or Unexpired Lease List (for the avoidance of doubt, under the Plan), any party affected by such modifications shall have fourteen (14) days to object to the proposed modified treatment from the date of their receipt of notice of such modification.

For the avoidance of doubt, the objection deadline(s) as to any proposed assumption or assumption and assignment of an Executory Contract or Unexpired Lease outside of the Plan (including as to related cure amounts) shall be as set forth in the Court order(s) applicable to such proposed assumption or assumption and assignment, as the case may be.

D.    **Voting and Tabulation Procedures.**

1.    **Holders of Claims Entitled to Vote.**

Only the following Holders of Claims in the Voting Classes shall be entitled to vote with regard to such Claims:

a.    Holders of Claims who on or before the Voting Record Date, have filed a Proof of Claim that (i) has not been expunged, disallowed, disqualified, withdrawn, or superseded prior to the Voting Record Date and (ii) subject to the disputed Claim resolution procedures described above, is not the subject of a pending objection, other than a "reduce and allow" objection, filed with the Court prior to the Voting Deadline; *provided* that a Holder of a Claim that is the subject of (i) a pending objection on a "reduce and allow" basis, or (ii) a Rule 3018(a) motion shall receive a Solicitation Package and be entitled to vote such Claim in the reduced amount contained in such objection;

b.    Holders of Claims that are listed in the Schedules;[3] *provided* that Claims that are scheduled as contingent, unliquidated, or disputed (excluding such scheduled disputed, contingent, or unliquidated Claims that have been paid or superseded by a timely Filed Proof of Claim prior to the Voting Record Date) shall be allowed for voting purposes for numerosity only and not for amount (unless the applicable Claims Bar Date has not yet expired, in which case such scheduled claims would be allowed to vote in the amount of $1.00); *provided*, *further*, that if a Holder of a Claim scheduled as contingent, unliquidated, or disputed timely submits a Ballot that would be allowed to vote in the amount of $1.00 and subsequently files a Proof of Claim providing a liquidated amount of the Claim prior to the Voting Deadline and such Proof of Claim is not objected to, such Claim will be allowed to vote in the liquidated amount provided in such Proof of Claim;

c.    Holders of Claims for which a Proof of Claim has been filed and has not been disallowed, but is listed, marked or otherwise referenced on its face as contingent, unliquidated or disputed, either in whole or in part; *provided*, that such Claims shall be temporarily allowed for voting purposes in the amount of $1.00, irrespective of

---

[3]    The "Schedules" shall mean the schedules of assets and liabilities, schedules of current income and expenditures, and statements of financial affairs filed by the Debtors on the consolidated docket for the Debtors' chapter 11 cases.

how such Claims may or may not be set forth on the Schedules; *provided, further*, that any undisputed portion, if any, of such Claims shall be deemed temporarily allowed for voting purposes, subject to the procedures set forth herein;

d.      Holders of Claims that are deemed allowed in accordance with the Plan; *provided* that such Claims will be temporarily allowed for voting purposes in the deemed allowed amount set forth in the Plan;

e.      Holders of Claims that arise (i) pursuant to an agreement or settlement with the Debtors, as reflected in a document filed with the Court, (ii) in an order entered by the Court, or (iii) in a document executed by the Debtors pursuant to authority granted by the Court, in each case regardless of whether a Proof of Claim has been filed;

f.      Holders of Disputed Claims that have been temporarily allowed to vote on the Plan pursuant to Bankruptcy Rule 3018; and

g.      the assignee of any Claim that was transferred on or before the Voting Record Date by any Entity described in subparagraphs (a) through (f) above; *provided* that such transfer or assignment has been fully effectuated pursuant to the procedures set forth in Bankruptcy Rule 3001(e) and such transfer is reflected on the Claims Register on the Voting Record Date.

**2.      <u>Establishing Claim Amounts for Voting Purposes</u>.**

**Claims in Class 4 (Prepetition Priority Term Loan Claims)**.  For voting purposes, claim amounts for Claims in Class 4 (Prepetition Priority Term Loan Claims) will be established by reference to all of the outstanding amounts of the applicable positions held by Holders of Class 4 Claims, as of the Voting Record Date, as evidenced by the applicable records (including any lender list or lender register) provided, or to be provided, by the Prepetition Priority Term Loan Agent to the Debtors or the Claims and Noticing Agent in Microsoft Excel format by no later than one business day following the Voting Record Date.

**Claims in Class 5 (Prepetition Existing Term Loan Claims)**.  For voting purposes, claim amounts for Claims in Class 5 (Prepetition Existing Term Loan Claims) will be established by reference to all of the outstanding amounts of the applicable positions held by Holders of Class 5 Claims, as of the Voting Record Date, as evidenced by the applicable records (including any lender list or lender register) provided, or to be provided, by the Prepetition Existing Term Loan Agent to the Debtors or the Claims and Noticing Agent in Microsoft Excel format by no later than one business day following the Voting Record Date.

**3.      <u>Voting and Ballot Tabulation Procedures</u>.**

The following voting procedures and standard assumptions shall be used in tabulating Ballots, subject to the Debtors' right to waive any of the below specified requirements for

completion and submission of Ballots so long as such requirement is not otherwise required by the Bankruptcy Code, Bankruptcy Rules, or Local Rules.

a. Except as otherwise provided in the Solicitation and Voting Procedures, unless the Ballot being furnished is timely submitted on or prior to the Voting Deadline (as the same may be extended by the Debtors), the Debtors, in their sole discretion, shall be entitled to reject such Ballot as invalid and, therefore, not count it in connection with Confirmation of the Plan.

b. Before the Combined Hearing, the Debtors will file with the Court a voting report (the "Voting Report").  The Voting Report shall, among other things, delineate every Ballot that does not conform to the voting instructions or that contains any form of irregularity including, but not limited to, those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures, or lacking necessary information, received via facsimile, or damaged (in each case, an "Irregular Ballot").  As to each Irregular Ballot, the Voting Report shall (i) indicate the Debtors' intentions or action with respect thereto; and (ii) in the case of any rejected Irregular Ballot, whether the Claims and Noticing Agent later received a valid Ballot for the corresponding Claim.

c. The method of delivery of Ballots to be sent to the Claims and Noticing Agent is at the election and risk of each Holder.  Except as otherwise provided, a Ballot will be deemed delivered only when the Claims and Noticing Agent actually receives the properly executed Ballot.

d. An executed Ballot is required to be submitted by the Entity submitting such Ballot. Delivery of a Ballot to the Claims and Noticing Agent by facsimile, telecopy, electronic mail, or any electronic means other than the Claims and Noticing Agent's E-Ballot Portal will not be valid.

e. No Ballot should be sent to the Debtors, the Debtors' agents (other than the Claims and Noticing Agent), or the Debtors' financial or legal advisors, and if sent, will not be counted.

f. If multiple Ballots are received from the same Holder with respect to the same Claim prior to the Voting Deadline, the last valid Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior received Ballot; *provided however*, that where an ambiguity exists as to which Ballot was the last received, the Claims and Noticing Agent shall have the right to contact the Holder of the Claim and tabulate the vote according to such Holder's stated intent.  This procedure is without prejudice to the Debtors' rights to object to the validity of the superseding Ballot(s) on any basis permitted by law and, if the objection is sustained, to count the first Ballot for all purposes.

g. Holders must vote all of their Claims within a particular Class either to accept or reject the Plan and may not split any votes.  Accordingly, a Ballot that partially rejects and partially accepts the Plan will not be counted.  Further, to the extent there are multiple

Claims within the same Class, the applicable Debtor may, in its discretion, aggregate the Claims of any particular Holder within a Class for the purpose of counting votes.

h. Holders of Claims that may be asserted against multiple Debtors must vote such Claims either to accept or reject the Plan at each such Debtor and may not vote any such Claim to accept at one Debtor and reject at another Debtor. Accordingly, a Ballot that rejects the Plan for a Claim at one Debtor and accepts the Plan for the same Claim at another Debtor will not be counted.

i. A person signing a Ballot in its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity of a Holder of Claims must indicate such capacity when signing, and if so requested by the Debtors or the Claims and Noticing Agent, must submit proper evidence satisfactory to the Debtors of its authority to so act.

j. The Debtors, subject to a contrary order of the Court, may waive any defects or irregularities as to any particular Irregular Ballot at any time, either before or after the close of voting, and any such waivers will be documented in the Voting Report or a supplemental voting report, as applicable.

k. Neither the Debtors, nor any other Entity, will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots other than as provided in the Voting Report, nor will any of them incur any liability for failure to provide such notification.

l. Unless waived or as ordered by the Court, any defects or irregularities in connection with deliveries of Ballots must be cured by the Holder of Claims prior to the Voting Deadline or such Ballots will not be counted.

m. In the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Court will determine whether any vote to accept and/or reject the Plan cast with respect to that Claim will be counted for purposes of determining whether the Plan has been accepted and/or rejected.

n. Subject to any order of the Court, the Debtors reserve the right to reject any and all Ballots not in proper form, the acceptance of which, in the opinion of the Debtors, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; *provided* that any such rejections will be documented in the Voting Report.

o. If a Claim has been estimated or a Claim has otherwise been Allowed only for voting purposes by order of the Court, such Claim shall be temporarily Allowed in the amount so estimated or Allowed by the Court for voting purposes only, and not for purposes of allowance or distribution.

p. If an objection to a Claim is filed, such Claim shall be treated in accordance with the procedures set forth herein.

q.  The following Ballots shall not be counted in determining the acceptance or rejection of the Plan:  (i) any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of such Claim; (ii) any Ballot cast by any Entity that does not hold a Claim in a Voting Class; (iii) any Ballot cast for a Claim scheduled as unliquidated, contingent, or disputed for which no Proof of Claim was timely filed by the Voting Record Date (unless the applicable bar date has not yet passed, in which case such Claim shall be entitled to vote in the amount of $1.00); (iv) any unsigned Ballot; (v) any Ballot not marked to accept or reject the Plan or marked both to accept and reject the Plan; and (vi) any Ballot submitted by any Entity not entitled to vote pursuant to the procedures described herein.

r.  After the Voting Deadline, no Ballot may be withdrawn or modified without the entry of a Final Order pursuant to Bankruptcy Rule 3018(a); *provided* that such withdrawal or modification will be disclosed in the Voting Report.

s.  The Debtors are authorized to enter into stipulations with the Holder of any Claim agreeing to the amount of a Claim for voting purposes.

t.  Where any portion of a single Claim has been transferred to a transferee, all Holders of any portion of such single Claim will be (i) treated as a single creditor for purposes of the numerosity requirements in section 1126(c) of the Bankruptcy Code (and for the other voting and solicitation procedures set forth herein) and (ii) required to vote every portion of such Claim collectively to accept or reject the Plan.  In the event that (i) a Ballot, (ii) a group of Ballots within a Voting Class received from a single creditor, or (iii) a group of Ballots received from the various Holders of multiple portions of a single Claim partially reject and partially accept the Plan, such Ballots shall not be counted.

u.  For purposes of the numerosity requirement of section 1126(c) of the Bankruptcy Code, separate Claims held by a single creditor in a particular Class will be aggregated and treated as if such creditor held one Claim in such Class, and all votes related to such Claim will be treated as a single vote to accept or reject the Plan; *provided* that if separate affiliated entities hold Claims in a particular Class, these Claims will not be aggregated and will not be treated as if such creditor held one Claim in such Class, and the vote of each affiliated entity will be counted separately as a vote to accept or reject the Plan.

**E.    Amendments to the Plan and Solicitation and Voting Procedures.**

The Debtors reserve the right to make non-substantive or immaterial changes to the Disclosure Statement, Plan (including the Plan Supplement), Ballots, Combined Hearing Notice, and any related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors, if any, and to make conforming changes among the Disclosure Statement, the Plan, and any other materials in the Solicitation Package before its distribution.  The Debtors shall notice the U.S. Trustee of any amendments described herein.

## Exhibit 3A

**Form of Ballot for Holders of Class 4 Prepetition Priority Term Loan Claims**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**BALLOT FOR VOTING TO**
**ACCEPT OR REJECT THE FIRST AMENDED JOINT**
**CHAPTER 11 PLAN OF CLAIRE'S HOLDINGS LLC AND ITS DEBTOR AFFILIATES**

**BALLOT FOR HOLDERS OF CLASS 4 PREPETITION PRIORITY TERM LOAN CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE CLAIMS AND NOTICING AGENT BY OCTOBER 14, 2025, AT 4:00 P.M., PREVAILING EASTERN TIME (THE "VOTING DEADLINE") IN ACCORDANCE WITH THE FOLLOWING:**

---

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), are soliciting votes with respect to the *First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No.[●]] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan") as set forth in the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No. [●]] (as may be amended, supplemented, or otherwise modified from time to time, the "Disclosure Statement"). The Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has conditionally approved the Disclosure Statement as containing adequate information pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), by entry of an order on [●], 2025 [Docket No. [●]] (the "Conditional Disclosure Statement Order"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan, a copy of which is available at https://omniagentsolutions.com/Claires.

You are receiving this ballot (this "Ballot") because you are a Holder of a Class 4 Prepetition Priority Term Loan Claim as of **September 8, 2025** (the "Voting Record Date"). Accordingly, you have a right to vote to accept or reject the Plan.

**YOUR VOTE ON THIS BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHICH YOU HAVE A CLAIM.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are: Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343). The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

Your rights are described in the Combined Hearing Notice and the Disclosure Statement, which were included in the package (the "Solicitation Package") you are receiving with this Ballot (as well as certain other materials). If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them by: (a) writing via first class mail, to Claire's Holdings LLC Ballot Processing Center, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Ste 100, Woodland Hills, CA 91367; (b) writing via electronic mail to ClairesInquiries@OmniAgnt.com (with "Claire's Holdings LLC Solicitation Inquiry" in the subject line); or (c) calling the Debtors' restructuring hotline at (888) 202-5971 (U.S./Canada, toll-free) or +1 (747) 293-0183 (International, toll). You may also obtain copies of any pleadings filed in these chapter 11 cases (i) for a fee via PACER at https://www.deb.uscourts.gov or (ii) at no charge from Omni Agent Solutions, Inc. by accessing the Debtors' restructuring website at https://omniagentsolutions.com/Claires. The Plan Supplement will be filed with the Court no later than October 7, 2025, and may be accessed free of charge at the link provided herein. Physical copies of the Plan Supplement may also be requested free of charge as provided herein.

**U.S./Canada Toll Free:  (888) 202-5971**
**International, Toll:  +1 (747) 293-0183**

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe you have received the wrong ballot, please contact the Claims and Noticing Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 4 under the Plan.

**PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:**

**ELECTRONICALLY, VIA E-BALLOT PORTAL**.  **Submit your Ballot and vote through the Claims and Noticing Agent's online portal, by visiting https://omniagentsolutions.com/Claires-Ballots (the "E-Ballot Portal"), Click on the "Balloting" section of the website and follow the instructions to submit your Ballot.**

**The Claims and Noticing Agent's E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.**

*OR*

**VIA PAPER BALLOT (IF APPLICABLE)**.  **Complete, sign, and date this Ballot and return it (with a signature) promptly via first-class mail, overnight courier, or hand delivery to:**

| If by First Class Mail, Hand Delivery, or Overnight Mail: |
| --- |
| Claire's Holdings LLC Ballot Processing Center<br>c/o Omni Agent Solutions, Inc.<br>5955 De Soto Ave., Ste 100<br>Woodland Hills, CA 91367<br><br>To arrange hand delivery of your Ballot, please email the Claims and Noticing Agent at ClairesInquiries@OmniAgnt.com (with "Claire's Holdings LLC Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the Omni address above and provide the anticipated date and time of delivery. |

<u>Item 1</u>.                **Amount of Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of a Class 4 Prepetition Priority Term Loan Claim in the following ***aggregate*** unpaid principal amount:[2]

$$\boxed{\text{\$_____}}$$

<u>Item 2</u>.        **Vote on Plan.**

The Holder of the Class 4 Prepetition Priority Term Loan Claim against the Debtors, the aggregate, principal amount of which is set forth in Item 1, votes to (please check <u>one</u>):

| ☐  **ACCEPT** (vote FOR) the Plan | ☐  **REJECT** (vote AGAINST) the Plan |
|---|---|

**<u>Your vote on the Plan will be applied to each applicable Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.</u>**

<u>Item 3</u>.        **Important information regarding releases under the Plan.**[3]

<u>Article VIII.B</u> of the Plan provides for a release by the Debtors (the "**<u>Debtor Release</u>**"):[4]

**Notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, upon entry of the Confirmation Order and effective as of the Effective Date, to the fullest extent permitted by applicable law, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each and all of the Debtors and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that any such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor or other Entity, or that any Holder of any Claim against or Interest in a Debtor or other Entity could have asserted on behalf of the Debtors, to the extent such Claim or Cause of Action (x) has not been sold pursuant to the Transaction Documents and (y) is based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Debtor, or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan**

---

[2]  For voting purposes only, subject to tabulation rules, which can be found in <u>Section D</u> of the Solicitation and Voting Procedures.

[3]  The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  Please read the Plan carefully before completing this Ballot.

[4]  For the avoidance of doubt, the releases set forth in the Plan of any party, other than a Sale Release Party (as defined in the Disclosure Statement), shall remain subject in all respects to the Plan Investigation (as defined in the Disclosure Statement).

Supplement, the Transaction Documents, any other Definitive Document or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, any of the Wind-Down Transactions, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Sale Transaction, the pursuit of Confirmation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations of any party or Entity under the Plan, the Transaction Documents, the Confirmation Order, any post-Effective Date transaction contemplated by the Plan or the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, the Transaction Documents (including the Asset Purchase Agreement and any documents in connection therewith), or the Wind-Down Transactions; or (2) any matters retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Article VIII.C of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):[5]

Except as otherwise expressly set forth in the Plan or the Confirmation Order, effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each Releasing Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted by the Debtors), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, any of the Wind-Down Transactions, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Sale Transaction, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the Third-Party Release does not release (1) any obligation of any party or Entity arising under the Transaction Documents on or after the date of entry of the Sale Order, (2) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Transaction Documents, the Plan, the Confirmation Order, or any post-Effective Date transaction

---

[5]    For the avoidance of doubt, the releases set forth in the Plan of any party, other than a Sale Release Party (as defined in the Disclosure Statement), shall remain subject in all respects to the Plan Investigation (as defined in the Disclosure Statement).

contemplated by the Plan or the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Wind-Down Transactions, or (3) the rights of any Holder of Allowed Claims to receive distributions under the Plan.

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "**AVOIDANCE ACTIONS**" MEAN ANY AND ALL AVOIDANCE, RECOVERY, OR SUBORDINATION ACTIONS OR REMEDIES THAT MAY BE BROUGHT BY OR ON BEHALF OF THE DEBTORS OR THEIR ESTATES UNDER THE BANKRUPTCY CODE OR APPLICABLE NON-BANKRUPTCY LAW, INCLUDING ACTIONS OR REMEDIES UNDER SECTIONS 544, 547, 548, 549, 550, 551, 552, OR 553 OF THE BANKRUPTCY CODE.

UNDER THE PLAN, "**RELEASED PARTIES**" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE LIQUIDATING TRUSTEE; (C) THE PREPETITION ABL LENDERS; (D) THE PREPETITION PRIORITY TERM LOAN LENDERS; (E) THE PREPETITION EXISTING TERM LOAN LENDERS; (F) THE PREPETITION ABL AGENT; (G) THE PREPETITION PRIORITY TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (H) THE PREPETITION EXISTING TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (I) THE INITIAL TERM LOAN AGENT; (J) THE RELEASING PARTIES; (K) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH CLAUSE (J); AND (L) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH CLAUSE (K); *PROVIDED* THAT, NOTWITHSTANDING THE FOREGOING, THE RELEASED PARTIES SHALL NOT INCLUDE THE FORMER OFFICERS.[6]

UNDER THE PLAN, "**RELEASING PARTIES**" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE LIQUIDATING TRUSTEE; (C) THE PREPETITION ABL LENDERS; (D) THE PREPETITION PRIORITY TERM LOAN LENDERS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (E) THE PREPETITION EXISTING TERM LOAN LENDERS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (F) THE PREPETITION ABL AGENT; (G) THE PREPETITION PRIORITY TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (H) THE PREPETITION EXISTING TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (I) THE PURCHASER; (J) ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (K) ALL HOLDERS OF INTERESTS IN THE DEBTORS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (L) THE INITIAL TERM LOAN AGENT; (M) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (N) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH AFFILIATE TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE NON-BANKRUPTCY LAW; AND (N) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (M) FOR WHICH SUCH AFFILIATE OR ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE NON-BANKRUPTCY LAW.

**The Holder of the Claim identified in Item 1 elects to:**

☐ **OPT IN to the Third-Party Release**

Article VIII.D of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur any liability for, and each such party shall be exculpated from any Cause of Action for any claim related to any act or omission occurring between the Petition Date and the Effective Date in connection

---

[6]   For the avoidance of doubt, the releases set forth in the Plan of any party, other than a Sale Release Party (as defined in the Disclosure Statement), shall remain subject in all respects to the Plan Investigation (as defined in the Disclosure Statement).

with, relating to or arising out of the Chapter 11 Cases prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Transaction Documents, the Plan, the Plan Supplement, any other Definitive Document, or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, any of the Wind-Down Transactions, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the Sale Transaction, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or actual fraud.  Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any obligations arising on or after the Effective Date of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Notwithstanding anything in the Plan to the contrary, nothing in the Plan shall affect, limit, or release in any way any obligations of any party or Entity under the Plan, the Transaction Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Transaction Documents (including the Asset Purchase Agreement and any documents in connection therewith).

Article VIII.E of the Plan establishes an injunction (the "**Injunction**"):

In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors. Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors.  Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims, Interests, or Causes of Action in the Debtors, shall be precluded and permanently enjoined on and after the Effective Date, from taking any of the following actions against the Debtors, the Liquidating Trust (but solely to the extent such action is brought against the Debtors or the Liquidating Trust to directly or indirectly recover upon any property of the Estates, upon the Effective Date), the Exculpated Parties, the Released Parties, and any successors, assigns, or representatives of such Persons or Entities, solely with respect to any Claims, Interests, or Causes of Action that will be or are treated by the Plan:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, compromised, or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Error! Reference source not found. of the Plan.

**Item 4**. **Certifications.**

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)     as of the Voting Record Date, the Entity is the Holder (or authorized signatory for a Holder) of the Claim set forth in Item 1;

(b)     the Entity (or in the case of an authorized signatory, the Holder) has reviewed a copy of the Disclosure Statement, the Plan, and the remainder of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(c)     the Entity has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

(d)     no other Ballots with respect to the amount of the Claim identified in Item 1 has been cast or, if any other Ballots have been cast with respect to such Claim, then any such earlier Ballots are revoked;

(e)     the Entity understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last valid Ballot voting the Claim and received by the Claims and Noticing Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Claims and Noticing Agent; and

(f)     the Entity understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Holder and shall not be affected by, and shall survive, the death or incapacity of the Holder.

Name of Holder: _____
(Print or Type)

Signature: _____

Name of Signatory: _____
(If other than the Holder)

Title: _____

Address: _____

_____

Telephone Number: _____

Email: _____

Date Completed: _____

**IF THE CLAIMS AND NOTICING AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON OR BEFORE OCTOBER 14, 2025, AT 4:00 P.M., PREVAILING EASTERN TIME, AND IF THE VOTING**

**DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

1.  The Debtors are soliciting the votes of Holders of Class 4 Prepetition Priority Term Loan Claims with respect to the Plan referred to in the Disclosure Statement.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.  The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.  To ensure that your Ballot is counted, you *must* complete and submit this Ballot as instructed herein.  **Ballots will not be accepted by electronic mail or facsimile.**

4.  **Use of Ballot**.  To ensure that your Ballot is counted, you must:  (a) complete your Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) clearly sign and submit your Ballot as instructed herein.

5.  Your Ballot *must* be returned to the Claims and Noticing Agent so as to be *actually received* by the Claims and Noticing Agent on or before the Voting Deadline.  **The Voting Deadline is October 14, 2025, at 4:00 p.m., prevailing Eastern Time.**

6.  If a Ballot is received after the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the sole and absolute discretion of the Debtors.  Additionally, **the following Ballots will *not* be counted**:

    (a)  any Ballot that partially rejects and partially accepts the Plan;

    (b)  Ballots sent to the Debtors, the Debtors' agents (other than the Claims and Noticing Agent), the Debtors' financial or legal advisors or any other person (other than the Claims and Noticing Agent);

    (c)  Ballots sent by electronic mail or facsimile;

    (d)  any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;

    (e)  any Ballot cast by an Entity that does not hold a Claim in the Voting Classes;

    (f)  any Ballot submitted by a Holder not entitled to vote pursuant to the Plan;

    (g)  any unsigned Ballot; and/or

    (i)  any Ballot not marked to accept or reject the Plan or any Ballot marked both to accept and reject the Plan.

7.  The method of delivery of Ballots to the Claims and Noticing Agent is at the election and risk of each Holder of Claim.  Except as otherwise provided herein, such delivery will be deemed made only when the Claims and Noticing Agent *actually receives* the Ballot.  In all cases, Holders should allow sufficient time to assure timely delivery.

8.      If multiple Ballots are received from the same Holder with respect to the same Claim prior to the Voting Deadline, the latest dated, timely received, and valid Ballot will supersede and revoke any earlier received Ballots.

9.      You must vote all of your Claims within your respective class either to accept or reject the Plan and may **not** split your vote.

10.     This Ballot does **not** constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

11.     **Please be sure to sign and date your Ballot**.  If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the ballot.

### PLEASE SUBMIT YOUR BALLOT PROMPTLY

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE CALL THE RESTRUCTURING HOTLINE AT:**

**U.S./CANADA TOLL FREE:  (888) 202-5971**
**INTERNATIONAL, TOLL:  +1 (747) 293-0183**

**OR BY EMAILING CLAIRESINQUIRIES@OMNIAGNT.COM (WITH "CLAIRE'S HOLDINGS LLC SOLICITATION INQUIRY" IN THE SUBJECT LINE)**

**IF THE CLAIMS AND NOTICING AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON OR BEFORE THE VOTING DEADLINE, WHICH IS OCTOBER 14, 2025, AT 4:00 P.M., PREVAILING EASTERN TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED HEREBY MAY BE COUNTED ONLY IN THE DISCRETION OF THE DEBTORS.**

**<u>Exhibit 3B</u>**

**Form of Ballot for Holders of Class 5 Prepetition Existing Term Loan Claims**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**BALLOT FOR VOTING TO**
**ACCEPT OR REJECT THE FIRST AMENDED JOINT**
**CHAPTER 11 PLAN OF CLAIRE'S HOLDINGS LLC AND ITS DEBTOR AFFILIATES**

**BALLOT FOR HOLDERS OF CLASS 5 PREPETITION EXISTING TERM LOAN CLAIMS**

---

**PLEASE READ AND FOLLOW THE ENCLOSED INSTRUCTIONS FOR COMPLETING BALLOTS CAREFULLY *BEFORE* COMPLETING THIS BALLOT.**

**IN ORDER FOR YOUR VOTE TO BE COUNTED, THIS BALLOT MUST BE COMPLETED, EXECUTED, AND RETURNED SO AS TO BE *ACTUALLY RECEIVED* BY THE CLAIMS AND NOTICING AGENT BY OCTOBER 14, 2025, AT 4:00 P.M., PREVAILING EASTERN TIME (THE "<u>VOTING DEADLINE</u>") IN ACCORDANCE WITH THE FOLLOWING:**

---

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), are soliciting votes with respect to the *First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No.[●]] (as may be amended, supplemented, or otherwise modified from time to time, the "<u>Plan</u>") as set forth in the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No. [●]] (as may be amended, supplemented, or otherwise modified from time to time, the "<u>Disclosure Statement</u>"). The Bankruptcy Court for the District of Delaware (the "<u>Bankruptcy Court</u>") has conditionally approved the Disclosure Statement as containing adequate information pursuant to section 1125 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), by entry of an order on [●], 2025 [Docket No. [●]] (the "<u>Conditional Disclosure Statement Order</u>"). Bankruptcy Court approval of the Disclosure Statement does not indicate approval of the Plan by the Bankruptcy Court. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan, a copy of which is available at https://omniagentsolutions.com/Claires.

You are receiving this ballot (this "<u>Ballot</u>") because you are a Holder of a Class 5 Prepetition Existing Term Loan Claims as of **<u>September 8, 2025</u>** (the "<u>Voting Record Date</u>"). Accordingly, you have a right to vote to accept or reject the Plan.

**YOUR VOTE ON THIS BALLOT WILL BE APPLIED TO EACH DEBTOR AGAINST WHICH YOU HAVE A CLAIM.**

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are: Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343). The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

Your rights are described in the Combined Hearing Notice and the Disclosure Statement, which were included in the package (the "Solicitation Package") you are receiving with this Ballot (as well as certain other materials). If you received Solicitation Package materials in electronic format and desire paper copies, or if you need to obtain additional Solicitation Packages, you may obtain them by: (a) writing via first class mail, to Claire's Holdings LLC Ballot Processing Center, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Ste 100, Woodland Hills, CA 91367; (b) writing via electronic mail to ClairesInquiries@OmniAgnt.com (with "Claire's Holdings LLC Solicitation Inquiry" in the subject line); or (c) calling the Debtors' restructuring hotline at (888) 202-5971 (U.S./Canada, toll-free) or +1 (747) 293-0183 (International, toll). You may also obtain copies of any pleadings filed in these chapter 11 cases (i) for a fee via PACER at https://www.deb.uscourts.gov or (ii) at no charge from Omni Agent Solutions, Inc. by accessing the Debtors' restructuring website at https://omniagentsolutions.com/Claires. The Plan Supplement will be filed with the Court no later than October 7, 2025, and may be accessed free of charge at the link provided herein. Physical copies of the Plan Supplement may also be requested free of charge as provided herein.

**U.S./Canada Toll Free: (888) 202-5971**
**International, Toll: +1 (747) 293-0183**

This Ballot may not be used for any purpose other than for casting votes to accept or reject the Plan and making certain certifications with respect to the Plan. If you believe you have received this Ballot in error, or if you believe you have received the wrong ballot, please contact the Claims and Noticing Agent *immediately* at the address, telephone number, or email address set forth above.

You should review the Disclosure Statement, the Plan, and the instructions contained herein before you vote. You may wish to seek legal advice concerning the Plan and the Plan's classification and treatment of your Claim. Your Claim has been placed in Class 5 under the Plan.

**PLEASE SUBMIT YOUR BALLOT BY ONE OF THE FOLLOWING TWO METHODS:**

**ELECTRONICALLY, VIA E-BALLOT PORTAL. Submit your Ballot and vote through the Claims and Noticing Agent's online portal, by visiting https://omniagentsolutions.com/Claires-Ballots (the "E-Ballot Portal"), Click on the "Balloting" section of the website and follow the instructions to submit your Ballot.**

**The Claims and Noticing Agent's E-Ballot Portal is the sole manner in which Ballots will be accepted via electronic or online transmission. Ballots submitted by facsimile, email, or other means of electronic transmission will not be counted.**

*OR*

**VIA PAPER BALLOT (IF APPLICABLE). Complete, sign, and date this Ballot and return it (with a signature) promptly via first-class mail, overnight courier, or hand delivery to:**

| If by First Class Mail, Hand Delivery, or Overnight Mail: |
|---|
| Claire's Holdings LLC Ballot Processing Center<br>c/o Omni Agent Solutions, Inc.<br>5955 De Soto Ave., Ste 100<br>Woodland Hills, CA 91367<br><br>To arrange hand delivery of your Ballot, please email the Claims and Noticing Agent at ClairesInquiries@OmniAgnt.com (with "Claire's Holdings LLC Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the Omni address above and provide the anticipated date and time of delivery. |

<u>__Item 1__</u>.                   **Amount of Claim.**

The undersigned hereby certifies that as of the Voting Record Date, the undersigned was the Holder of a Class 5 Prepetition Existing Term Loan Claim in the following **_aggregate_** unpaid principal amount:[2]

$$\boxed{\$\underline{\hspace{3cm}}}$$

<u>__Item 2__</u>.                   **Vote on Plan.**

The Holder of the Class 5 Prepetition Existing Term Loan Claim against the Debtors, the aggregate, principal amount of which is set forth in Item 1, votes to (please check <u>one</u>):

| ☐ **__ACCEPT__** (vote FOR) the Plan | ☐ **__REJECT__** (vote AGAINST) the Plan |
| --- | --- |

**<u>Your vote on the Plan will be applied to the Debtor in the same manner and in the same amount as indicated in Item 1 and Item 2 above.</u>**

<u>__Item 3__</u>.                   **Important information regarding releases under the Plan.**[3]

<u>Article VIII.B</u> of the Plan provides for a release by the Debtors (the "**<u>__Debtor Release__</u>**"):[4]

   **Notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, upon entry of the Confirmation Order and effective as of the Effective Date, to the fullest extent permitted by applicable law, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each and all of the Debtors and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that any such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor or other Entity, or that any Holder of any Claim against or Interest in a Debtor or other Entity could have asserted on behalf of the Debtors, to the extent such Claim or Cause of Action (x) has not been sold pursuant to the Transaction Documents and (y) is based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Debtor, or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document or any Wind-Down Transaction, or**

---

[2] For voting purposes only, subject to tabulation rules, which can be found in <u>Section D</u> of the Solicitation and Voting Procedures.

[3] The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.  Please read the Plan carefully before completing this Ballot.

[4] For the avoidance of doubt, the releases set forth in the Plan of any party (other than a Sale Release Party) shall remain subject in all respects to the Plan Investigation.

any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, any of the Wind-Down Transactions, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Sale Transaction, the pursuit of Confirmation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations of any party or Entity under the Plan, the Transaction Documents, the Confirmation Order, any post-Effective Date transaction contemplated by the Plan or the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, the Transaction Documents (including the Asset Purchase Agreement and any documents in connection therewith), or the Wind-Down Transactions; or (2) any matters retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Article VIII.C of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):[5]

Except as otherwise expressly set forth in the Plan or the Confirmation Order, effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each Releasing Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted by the Debtors), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, any of the Wind-Down Transactions, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Sale Transaction, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the Third-Party Release does not release (1) any obligation of any party or Entity arising under the Transaction Documents on or after the date of entry of the Sale Order, (2) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Transaction Documents, the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan or the Wind-Down Transactions, or any document, instrument, or agreement

---

[5] For the avoidance of doubt, the releases set forth in the Plan of any party, other than a Sale Release Party (as defined in the Disclosure Statement), shall remain subject in all respects to the Plan Investigation (as defined in the Disclosure Statement).

**(including those set forth in the Plan Supplement) executed to implement the Plan or the Wind-Down Transactions, or (3) the rights of any Holder of Allowed Claims to receive distributions under the Plan.**

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "***AVOIDANCE ACTIONS***" MEAN ANY AND ALL AVOIDANCE, RECOVERY, OR SUBORDINATION ACTIONS OR REMEDIES THAT MAY BE BROUGHT BY OR ON BEHALF OF THE DEBTORS OR THEIR ESTATES UNDER THE BANKRUPTCY CODE OR APPLICABLE NON-BANKRUPTCY LAW, INCLUDING ACTIONS OR REMEDIES UNDER SECTIONS 544, 547, 548, 549, 550, 551, 552, OR 553 OF THE BANKRUPTCY CODE.

UNDER THE PLAN, "***RELEASED PARTIES***" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE LIQUIDATING TRUSTEE; (C) THE PREPETITION ABL LENDERS; (D) THE PREPETITION PRIORITY TERM LOAN LENDERS; (E) THE PREPETITION EXISTING TERM LOAN LENDERS; (F) THE PREPETITION ABL AGENT; (G) THE PREPETITION PRIORITY TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (H) THE PREPETITION EXISTING TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (I) THE INITIAL TERM LOAN AGENT; (J) THE RELEASING PARTIES; (K) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH CLAUSE (J); AND (L) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH CLAUSE (K); *PROVIDED* THAT, NOTWITHSTANDING THE FOREGOING, THE RELEASED PARTIES SHALL NOT INCLUDE THE FORMER OFFICERS.[6]

UNDER THE PLAN, "***RELEASING PARTIES***" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) THE LIQUIDATING TRUSTEE; (C) THE PREPETITION ABL LENDERS; (D) THE PREPETITION PRIORITY TERM LOAN LENDERS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (E) THE PREPETITION EXISTING TERM LOAN LENDERS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (F) THE PREPETITION ABL AGENT; (G) THE PREPETITION PRIORITY TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (H) THE PREPETITION EXISTING TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (I) THE PURCHASER; (J) ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (K) ALL HOLDERS OF INTERESTS IN THE DEBTORS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (L) THE INITIAL TERM LOAN AGENT; (M) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (N) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH AFFILIATE TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE NON-BANKRUPTCY LAW; AND (N) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (M) FOR WHICH SUCH AFFILIATE OR ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE NON-BANKRUPTCY LAW.

**The Holder of the Claim identified in Item 1 elects to:**

☐  **OPT IN to the Third-Party Release**

Article VIII.D of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):

> Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur any liability for, and each such party shall be exculpated from any Cause of Action for any claim related to any act or omission occurring between the Petition Date and the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases prior to the Effective Date, the formulation, preparation,

---

[6]     For the avoidance of doubt, the releases set forth in the Plan of any party, other than a Sale Release Party (as defined in the Disclosure Statement), shall remain subject in all respects to the Plan Investigation (as defined in the Disclosure Statement).

dissemination, negotiation, or filing of the Disclosure Statement, the Transaction Documents, the Plan, the Plan Supplement, any other Definitive Document, or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, any of the Wind-Down Transactions, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the Sale Transaction, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or actual fraud.  Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any obligations arising on or after the Effective Date of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Notwithstanding anything in the Plan to the contrary, nothing in the Plan shall affect, limit, or release in any way any obligations of any party or Entity under the Plan, the Transaction Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Transaction Documents (including the Asset Purchase Agreement and any documents in connection therewith).

Article VIII.E of the Plan establishes an injunction (the "**Injunction**"):

In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors. Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors.  Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims, Interests, or Causes of Action in the Debtors, shall be precluded and permanently enjoined on and after the Effective Date, from taking any of the following actions against the Debtors, the Liquidating Trust (but solely to the extent such action is brought against the Debtors or the Liquidating Trust to directly or indirectly recover upon any property of the Estates, upon the Effective Date), the Exculpated Parties, the Released Parties, and any successors, assigns, or representatives of such Persons or Entities, solely with respect to any Claims, Interests, or Causes of Action that will be or are treated by the Plan:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, compromised, or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Error! Reference source not found. of the Plan.

Item 4.        Certifications.

By signing this Ballot, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)      as of the Voting Record Date, the Entity is the Holder (or authorized signatory for a Holder) of the Claim set forth in Item 1;

(b)      the Entity (or in the case of an authorized signatory, the Holder) has reviewed a copy of the Disclosure Statement, the Plan, and the remainder of the Solicitation Package and acknowledges that the solicitation is being made pursuant to the terms and conditions set forth therein;

(c)      the Entity has not relied on any statement made or other information received from any person with respect to the Plan other than the information contained in the Solicitation Package or other publicly available materials;

(d)      no other Ballots with respect to the amount of the Claim identified in Item 1 has been cast or, if any other Ballots have been cast with respect to such Claim, then any such earlier Ballots are revoked;

(e)      the Entity understands and acknowledges that if multiple Ballots are submitted voting the Claim set forth in Item 1, only the last valid Ballot voting the Claim and received by the Claims and Noticing Agent before the Voting Deadline shall be deemed to reflect the voter's intent and thus to supersede and revoke any prior Ballots received by the Claims and Noticing Agent; and

(f)      the Entity understands and acknowledges that all authority conferred or agreed to be conferred pursuant to this Ballot, and every obligation of the Holder hereunder, shall be binding upon the transferees, successors, assigns, heirs, executors, administrators, and legal representatives of the Holder and shall not be affected by, and shall survive, the death or incapacity of the Holder.

| | |
|---|---|
| Name of Holder: | _____ |
| | (Print or Type) |
| Signature: | _____ |
| Name of Signatory: | _____ |
| | (If other than the Holder) |
| Title: | _____ |
| Address: | _____ |
| | _____ |
| | _____ |
| Telephone Number: | _____ |
| Email: | _____ |
| Date Completed: | _____ |

**IF THE CLAIMS AND NOTICING AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON OR BEFORE OCTOBER 14, 2025, AT 4:00 P.M., PREVAILING EASTERN TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED BY THIS BALLOT MAY BE COUNTED TOWARD CONFIRMATION OF THE PLAN ONLY IN THE DISCRETION OF THE DEBTORS.**

## INSTRUCTIONS FOR COMPLETING THIS BALLOT

1.　　The Debtors are soliciting the votes of Holders of Class 5 Prepetition Existing Term Loan Claims with respect to the Plan referred to in the Disclosure Statement.  **PLEASE READ THE PLAN AND DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2.　　The Plan can be confirmed by the Bankruptcy Court and thereby made binding upon you if it is accepted by the Holders of at least two-thirds in amount and more than one-half in number of Claims or at least two-thirds in amount of Interests in at least one class that votes on the Plan and if the Plan otherwise satisfies the requirements for confirmation provided by section 1129(a) of the Bankruptcy Code.  Please review the Disclosure Statement for more information.

3.　　To ensure that your Ballot is counted, you ***must*** complete and submit this Ballot as instructed herein.  **Ballots will not be accepted by electronic mail or facsimile.**

4.　　**Use of Ballot**.  To ensure that your Ballot is counted, you must:  (a) complete your Ballot in accordance with these instructions; (b) clearly indicate your decision either to accept or reject the Plan in the boxes provided in Item 2 of the Ballot; and (c) clearly sign and submit your Ballot as instructed herein.

5.　　Your Ballot ***must*** be returned to the Claims and Noticing Agent so as to be ***actually received*** by the Claims and Noticing Agent on or before the Voting Deadline.  **The Voting Deadline is October 14, 2025, at 4:00 p.m., prevailing Eastern Time.**

6.　　If a Ballot is received after the Voting Deadline and if the Voting Deadline is not extended, it may be counted only in the sole and absolute discretion of the Debtors.  Additionally, **the following Ballots will *not* be counted**:

　　　(a)　　any Ballot that partially rejects and partially accepts the Plan;

　　　(b)　　Ballots sent to the Debtors, the Debtors' agents (other than the Claims and Noticing Agent), the Debtors' financial or legal advisors or any other person (other than the Claims and Noticing Agent);

　　　(c)　　Ballots sent by electronic mail or facsimile;

　　　(d)　　any Ballot that is illegible or contains insufficient information to permit the identification of the Holder of the Claim;

　　　(e)　　any Ballot cast by an Entity that does not hold a Claim in the Voting Classes;

　　　(f)　　any Ballot submitted by a Holder not entitled to vote pursuant to the Plan;

　　　(g)　　any unsigned Ballot; and/or

　　　(i)　　any Ballot not marked to accept or reject the Plan or any Ballot marked both to accept and reject the Plan.

7.　　The method of delivery of Ballots to the Claims and Noticing Agent is at the election and risk of each Holder of Claim.  Except as otherwise provided herein, such delivery will be deemed made only when the Claims and Noticing Agent ***actually receives*** the Ballot.  In all cases, Holders should allow sufficient time to assure timely delivery.

8.　　If multiple Ballots are received from the same Holder with respect to the same Claim prior to the Voting Deadline, the latest dated, timely received, and valid Ballot will supersede and revoke any earlier received Ballots.

9.      You must vote all of your Claims within your respective class either to accept or reject the Plan and may **not** split your vote.

10.     This Ballot does **not** constitute, and shall not be deemed to be, (a) a Proof of Claim or (b) an assertion or admission of a Claim.

11.     **Please be sure to sign and date your Ballot**.  If you are signing a Ballot in your capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity, you must indicate such capacity when signing and, if required or requested by the Claims and Noticing Agent, the Debtors, or the Bankruptcy Court, must submit proper evidence to the requesting party to so act on behalf of such Holder.  In addition, please provide your name and mailing address if it is different from that set forth on the attached mailing label or if no such mailing label is attached to the ballot.

### PLEASE SUBMIT YOUR BALLOT PROMPTLY

**IF YOU HAVE ANY QUESTIONS REGARDING THIS BALLOT, THESE VOTING INSTRUCTIONS, OR THE PROCEDURES FOR VOTING, PLEASE CALL THE RESTRUCTURING HOTLINE AT:**

**U.S./CANADA TOLL FREE:  (888) 202-5971**
**INTERNATIONAL, TOLL:  +1 (747) 293-0183**

**OR BY EMAILING CLAIRESINQUIRIES@OMNIAGNT.COM (WITH "CLAIRE'S HOLDINGS LLC SOLICITATION INQUIRY" IN THE SUBJECT LINE)**

**IF THE CLAIMS AND NOTICING AGENT DOES NOT *ACTUALLY RECEIVE* THIS BALLOT ON OR BEFORE THE VOTING DEADLINE, WHICH IS OCTOBER 14, 2025, AT 4:00 P.M., PREVAILING EASTERN TIME, AND IF THE VOTING DEADLINE IS NOT EXTENDED, YOUR VOTE TRANSMITTED HEREBY MAY BE COUNTED ONLY IN THE DISCRETION OF THE DEBTORS.**

## Exhibit 4A

**Form of Non-Voting Status Notice (Unimpaired)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) Case No. 25-11454 (BLS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## NOTICE OF NON-VOTING STATUS
## REGARDING RELEASES TO HOLDERS OF UNIMPAIRED
## CLAIMS OR INTERESTS CONCLUSIVELY PRESUMED TO ACCEPT THE PLAN

PLEASE TAKE NOTICE THAT on [●], 2025, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. [●]] (the "Conditional Disclosure Statement Order"): (a) authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit votes on the *First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No. [●]] (the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan; and (e) granting related relief.

PLEASE TAKE FURTHER NOTICE THAT because of the nature and treatment of your Claim under the Plan, *you are not entitled to vote on the Plan*. Specifically, as a Holder of a Claim (as currently asserted against the Debtors) in one of the below Classes that is *not* Impaired and conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, you are *not* entitled to vote on the Plan. Your treatment under the Plan will be consistent with the other Holders of Claims in one of the below Classes:

| Class | Treatment |
|---|---|
| Other Secured Claims | To the extent that either a Holder of an Allowed Other Secured Claim was not paid during the Chapter 11 Cases or a Holder's Allowed Other Secured Claim was not an Assumed Liability under the Transaction Documents, unless such Holder agrees to less favorable treatment, in exchange for such Allowed Other Secured Claim, on or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Other Secured Claim shall receive, at the option of the Debtors or Liquidating Trustee, as applicable: (i) payment in full in Cash of such Holder's Allowed Other Secured Claim; (ii) the collateral securing such Holder's Allowed Other Secured Claim; or (iii) such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code. |

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are: Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343). The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

| Other Priority Claims | To the extent that either a Holder of an Allowed Other Priority Claim was not paid during the Chapter 11 Cases or a Holder's Allowed Other Priority Claim was not an Assumed Liability under the Transaction Documents, unless such Holder agrees to less favorable treatment, in exchange for such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Other Priority Claim or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code. |
|---|---|
| Prepetition ABL Claims | Except to the extent that a Holder of an Allowed Prepetition ABL Claim agrees to less favorable treatment, in full and final satisfaction of such Claim, on or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Prepetition ABL Claim shall receive its Pro Rata share of the Distributable Proceeds pursuant to the Waterfall Recovery. |

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan and final approval of the Disclosure Statement (the "Combined Hearing") will commence on **October 29, 2025, at 2:00 p.m., prevailing Eastern Time**, before the Honorable Judge Brendan L. Shannon, in the United States Bankruptcy Court for the District of Delaware, located at 824 North Market Street, 6th Floor, Wilmington, DE 19801.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan and final approval of the Disclosure Statement is **October 14, 2025, at 4:00 p.m., prevailing Eastern Time** (the "Plan Objection Deadline"). All objections to the relief sought at the Combined Hearing *must*: (a) be in writing; (b) conform to the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan or Disclosure Statement and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on or before the Plan Objection Deadline.

**PLEASE TAKE FURTHER NOTICE THAT** ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.C CONTAINS A THIRD PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER. Not consenting to the releases contained in Article VIII.C of the Plan is at your discretion. If you submit your notice with the below opt-in box checked, you will consent to the releases contained in Article VIII.C of the Plan to the maximum extent permitted by applicable law. If you do not submit the Opt-In Form, you will not be deemed to consent to the Releases contained in Article VIII.C of the Plan.

| THE DISCLOSURE STATEMENT, THE PLAN, THE PLAN SUPPLEMENT, AND OTHER RELATED DOCUMENTS MAY BE ACCESSED FREE OF CHARGE BY SCANNING THE QR CODE BELOW USING THE CAMERA ON YOUR SMART PHONE, TABLET, OR OTHER DEVICE. | THE OPT-IN FORM MAY BE ACCESSED FREE OF CHARGE BY SCANNING THE QR CODE BELOW USING THE CAMERA ON YOUR SMART PHONE, TABLET, OR OTHER DEVICE. |
|---|---|
|  |  |

The Claims and Noticing Agent will accept Opt-In Forms if properly completed through the Opt-In Portal. To submit your Opt-In Form, please visit https://omniagentsolutions.com/Claires-Ballots (the "Opt-In Portal"), **click on the "Balloting" section of the website and follow the instructions to submit your** Opt-In Form.

Creditors who submit an Opt-In Form using the Opt-In Portal should NOT also submit a paper Opt-In Form.

**The Claims and Noticing Agent's Opt-In Portal is the sole manner in which Opt-In Forms will be accepted via electronic or online transmission. Opt-In Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a physical copy of the Disclosure Statement, the Plan, the Plan Supplement, the Opt-In Form, or related documents, you should contact Omni Agent Solutions, Inc., the claims and noticing agent retained by the Debtors in these chapter 11 cases (the "Claims and Noticing Agent"), by: (a) writing via first class mail, to Claire's Holdings LLC Ballot Processing Center, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Ste 100, Woodland Hills, CA 91367; (b) writing via electronic mail to ClairesInquiries@OmniAgnt.com (with "Claire's Holdings LLC Solicitation Inquiry" in the subject line); or (c) calling the Debtors' restructuring hotline at (888) 202-5971 (U.S./Canada, toll-free) or +1 (747) 293-0183 (International, toll). You may also obtain copies of any pleadings filed in these chapter 11 cases (i) for a fee via PACER at https://www.deb.uscourts.gov or (ii) at no charge from Omni Agent Solutions, Inc. by accessing the Debtors' restructuring website at https://omniagentsolutions.com/Claires. The Plan Supplement will be filed with the Court no later than October 7, 2025.

Dated:  [●], 2025
Wilmington, Delaware

/s/ DRAFT
-----------------------------------

**RICHARDS, LAYTON & FINGER, P.A.**
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Clint M. Carlisle (No. 7313)
Colin A. Meehan (No. 7237)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:           defranceschi@rlf.com
                 heath@rlf.com
                 shapiro@rlf.com
                 carlisle@rlf.com
                 meehan@rlf.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:           joshua.sussberg@kirkland.com
                 allyson.smith@kirkland.com

- and -

Alexandra F. Schwarzman, P.C. (admitted *pro hac vice*)
Robert A. Jacobson (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:           alexandra.schwarzman@kirkland.com
                 rob.jacobson@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**OPTIONAL: RELEASE OPT-IN FORM**

You are receiving this optional opt-in form (the "Opt-In Form") because you are or may be a Holder of a Claim or Interest that is not entitled to vote on the *First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No.[●]] (as may be amended, supplemented, or otherwise modified from time to time, the "**Plan**"). Holders of Claims or Interests may opt in to the Third-Party Release set forth in the Plan by completing and submitting this form by **October 14, 2025, at 4:00 p.m., prevailing Eastern Time** (the "Opt-In Deadline"). Holders of Claims or Interests may affirmatively opt in by, no later than the Opt-In Deadline, submitting this form in accordance with the directions herein.

**If you believe you are a Holder of a Claim or Interest with respect to the Debtors and choose to opt in to the Third-Party Release set forth in Article VIII.C of the Plan, please either** (i) promptly complete, sign, and date this Opt-In Form and return it via first class mail, overnight courier, or hand delivery to Omni Agent Solutions, Inc. (the "Claims and Noticing Agent") at the address set forth below or (ii) submit your Opt-In Form through the Claims and Noticing Agent's online portal (the "Opt-In Portal") in accordance with the directions provided below. Parties that submit their Opt-In Form using the Opt-In Portal should NOT also submit a paper Opt-In Form.

**THIS OPT-IN FORM MUST BE ACTUALLY RECEIVED (WHETHER A PHYSICAL COPY IS RETURNED OR THE OPT-IN FORM IS COMPLETED ONLINE) BY THE CLAIMS AND NOTICING AGENT BY THE OPT-IN DEADLINE. IF THE OPT-IN FORM IS RECEIVED AFTER THE OPT-IN DEADLINE, IT WILL NOT BE COUNTED.**

<u>**Item 1.**</u>          **Important information regarding releases under the Plan.**[1]

<u>Article VIII.B</u> of the Plan provides for a release by the Debtors (the "**Debtor Release**"):[2]

       **Notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, upon entry of the Confirmation Order and effective as of the Effective Date, to the fullest extent permitted by applicable law, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each and all of the Debtors and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that any such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor or other Entity, or that any Holder of any Claim against or Interest in a Debtor or other Entity could have asserted on behalf of the Debtors, to the extent such Claim or Cause of Action (x) has not been sold pursuant to the Transaction Documents and (y) is based on or relating to, or in any manner arising from, in whole or in part, including the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Debtor, or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation,**

---

[1]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs. Please read the Plan carefully before completing this Opt-In Form. Defined terms used but not defined herein shall have the meaning ascribed to such term as in the Plan.

[2]    For the avoidance of doubt, the releases set forth in the Plan of any party, other than a Sale Release Party (as defined in the Disclosure Statement), shall remain subject in all respects to the Plan Investigation (as defined in the Disclosure Statement).

dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, any of the Wind-Down Transactions, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Sale Transaction, the pursuit of Confirmation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations of any party or Entity under the Plan, the Transaction Documents, the Confirmation Order, any post-Effective Date transaction contemplated by the Plan or the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, the Transaction Documents (including the Asset Purchase Agreement and any documents in connection therewith), or the Wind-Down Transactions; or (2) any matters retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Article VIII.C of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):[3]

Except as otherwise expressly set forth in the Plan or the Confirmation Order, effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each Releasing Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted by the Debtors), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, any of the Wind-Down Transactions, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Sale Transaction, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the Third-Party Release does not release (1) any obligation of any party or Entity arising under the Transaction Documents on or after the date of entry of the Sale Order, (2) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the

---

[3]    For the avoidance of doubt, the releases set forth in the Plan of any party, other than a Sale Release Party (as defined in the Disclosure Statement), shall remain subject in all respects to the Plan Investigation (as defined in the Disclosure Statement).

**Transaction Documents, the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan or the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Wind-Down Transactions, or (3) the rights of any Holder of Allowed Claims to receive distributions under the Plan.**

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "*AVOIDANCE ACTIONS*" MEAN ANY AND ALL AVOIDANCE, RECOVERY, OR SUBORDINATION ACTIONS OR REMEDIES THAT MAY BE BROUGHT BY OR ON BEHALF OF THE DEBTORS OR THEIR ESTATES UNDER THE BANKRUPTCY CODE OR APPLICABLE NON-BANKRUPTCY LAW, INCLUDING ACTIONS OR REMEDIES UNDER SECTIONS 544, 547, 548, 549, 550, 551, 552, OR 553 OF THE BANKRUPTCY CODE.

UNDER THE PLAN, "*RELEASED PARTIES*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE LIQUIDATING TRUSTEE; (C) THE PREPETITION ABL LENDERS; (D) THE PREPETITION PRIORITY TERM LOAN LENDERS; (E) THE PREPETITION EXISTING TERM LOAN LENDERS; (F) THE PREPETITION ABL AGENT; (G) THE PREPETITION PRIORITY TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (H) THE PREPETITION EXISTING TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (I) THE INITIAL TERM LOAN AGENT; (J) THE RELEASING PARTIES; (K) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH CLAUSE (J); AND (L) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH CLAUSE (K); *PROVIDED* THAT, NOTWITHSTANDING THE FOREGOING, THE RELEASED PARTIES SHALL NOT INCLUDE THE FORMER OFFICERS.[4]

UNDER THE PLAN, "*RELEASING PARTIES*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) THE LIQUIDATING TRUSTEE; (C) THE PREPETITION ABL LENDERS; (D) THE PREPETITION PRIORITY TERM LOAN LENDERS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (E) THE PREPETITION EXISTING TERM LOAN LENDERS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (F) THE PREPETITION ABL AGENT; (G) THE PREPETITION PRIORITY TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (H) THE PREPETITION EXISTING TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (I) THE PURCHASER; (J) ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (K) ALL HOLDERS OF INTERESTS IN THE DEBTORS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (L) THE INITIAL TERM LOAN AGENT; (M) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (N) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH AFFILIATE TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE NON-BANKRUPTCY LAW; AND (N) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (M) FOR WHICH SUCH AFFILIATE OR ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE NON-BANKRUPTCY LAW.

**OPTIONAL RELEASE ELECTION**.  **YOU MAY ELECT TO OPT IN TO THE RELEASE CONTAINED IN ARTICLE VIII.C OF THE PLAN ONLY IF YOU CHECK THE BOX BELOW:**

☐     **The Undersigned Holder of Claims or Interests elects to <u>OPT IN to the Third-Party Release</u>**

Article VIII.D of the Plan provides for an exculpation of certain parties (the "**<u>Exculpation</u>**"):

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur any liability for, and each such party shall be exculpated from any Cause of Action for any

---

[4]    For the avoidance of doubt, the releases set forth in the Plan of any party, other than a Sale Release Party (as defined in the Disclosure Statement), shall remain subject in all respects to the Plan Investigation (as defined in the Disclosure Statement).

claim related to any act or omission occurring between the Petition Date and the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Transaction Documents, the Plan, the Plan Supplement, any other Definitive Document, or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, any of the Wind-Down Transactions, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the Sale Transaction, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or actual fraud.  Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any obligations arising on or after the Effective Date of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Notwithstanding anything in the Plan to the contrary, nothing in the Plan shall affect, limit, or release in any way any obligations of any party or Entity under the Plan, the Transaction Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Transaction Documents (including the Asset Purchase Agreement and any documents in connection therewith).

Article VIII.E of the Plan establishes an injunction (the "**Injunction**"):

In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors. Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors.  Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims, Interests, or Causes of Action in the Debtors, shall be precluded and permanently enjoined on and after the Effective Date, from taking any of the following actions against the Debtors, the Liquidating Trust (but solely to the extent such action is brought against the Debtors or the Liquidating Trust to directly or indirectly recover upon any property of the Estates, upon the Effective Date), the Exculpated Parties, the Released Parties, and any successors, assigns, or representatives of such Persons or Entities, solely with respect to any Claims, Interests, or Causes of Action that will be or are treated by the Plan:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, compromised, or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Error! Reference source not found. of the Plan.

**Item 2**.        **Certifications.**

By signing this Opt-In Form, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)        as of the Voting Record Date, either: (i) the Entity is the Holder of a Claim or Interest; or (ii) the Entity is an authorized signatory for the Entity that is a Holder of a Claim or Interest;

(b)        the Entity (or in the case of an authorized signatory, the Holder) has received a copy of the *Notice of Non-Voting Status Regarding Releases to Holders of Unimpaired Claims or Interests Conclusively Presumed to Accept the Plan* and that this Opt-In Form is made pursuant to the terms and conditions set forth therein;

(c)        the Entity has submitted the same respective election concerning the releases with respect to all Claims or Interests in a single Class; and

(d)        no other Opt-In Form has been submitted or, if any other Opt-In Forms have been submitted with respect to such Claims or Interests, then any such earlier Opt-In Forms are hereby revoked.

Name of Holder:_____
                                                                        (*print or type*)

Signature:_____


Name of Signatory:_____
                                                                        (*if other than Holder*)

Title: _____

Address:_____

          _____

          _____

Telephone Number:_____

Email:_____

Date Completed:_____

**IF YOU HAVE MADE THE OPTIONAL OPT-IN ELECTION, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-IN FORM AND RETURN IT PROMPTLY BY ONLY ONE OF THE METHODS BELOW.**

**By regular mail, overnight mail, or hand delivery at:**

**Claire's Holdings LLC Ballot Processing Center**
**c/o Omni Agent Solutions, Inc.**
**5955 De Soto Ave., Ste 100**
**Woodland Hills, CA 91367**

**OR**

> **By electronic, online submission:**
>
> The Claims and Noticing Agent will accept Opt-In Forms if properly completed through the Opt-In Portal.  To submit your Opt-In Form, please visit https://omniagentsolutions.com/Claires-Ballots.  **Click on the "Balloting" section of the website and follow the instructions to submit your Opt-In Form.**
>
> Creditors who submit an Opt-In Form using the Opt-In Portal should NOT also submit a paper Opt-In Form.
>
> **The Claims and Noticing Agent's Opt-In Portal is the sole manner in which Opt-In Forms will be accepted via electronic or online transmission.  Opt-In Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.**

Parties that submit their Opt-In Form using the Opt-In Portal should **NOT** also submit a paper Opt-In Form.

> **THE OPT-IN DEADLINE IS OCTOBER 14, 2025, AT 4:00 P.M., PREVAILING EASTERN TIME.**
>
> THE CLAIMS AND NOTICING AGENT MUST ACTUALLY RECEIVE YOUR OPT IN ELECTION ON OR BEFORE THE VOTING DEADLINE.  IF YOU HAVE ANY QUESTIONS REGARDING THIS OPT-IN FORM, PLEASE CONTACT: CLAIRESINQUIRIES@OMNIAGNT.COM (WITH "CLAIRE'S SOLICITATION INQUIRY" IN THE SUBJECT LINE) FOR FURTHER ASSISTANCE.

**Exhibit 4B**

**Form of Non-Voting Status Notice (Impaired)**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (BLS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## NOTICE OF NON-VOTING STATUS
## REGARDING RELEASES TO HOLDERS OF IMPAIRED
## CLAIMS OR INTERESTS CONCLUSIVELY DEEMED TO REJECT THE PLAN

**PLEASE TAKE NOTICE THAT** on [●], 2025, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. [●]] (the "Conditional Disclosure Statement Order"): (a) authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit votes on the *First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No. [●]] (the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan; and (e) granting related relief.

**PLEASE TAKE FURTHER NOTICE THAT** because of the nature and treatment of your Claim under the Plan, *you are not entitled to vote on the Plan*. Specifically, under the terms of the Plan, as a Holder of a Claim (as currently asserted against the Debtors) that is Impaired and conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, you are *not* entitled to vote on the Plan. Your treatment under the Plan will be consistent with the other Holders of Claims in one of the below Classes:

| Class | Treatment |
|---|---|
| General Unsecured Claims | Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, on or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of (a) Distributable Proceeds pursuant to the Waterfall Recovery; and (b) the Trust GUC Assets after all Allowed Prepetition ABL Claims have been paid in full. |
| Equity Interests in Claire's | Equity Interests in Claire's shall be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Equity Interests in Claire's will not receive any distribution on account of such Interests. |

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are: Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343). The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

| Section 510(b) Claims | Allowed Section 510(b) Claims, if any, shall be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Allowed Section 510(b) Claims will not receive any distribution on account of such Allowed Section 510(b) Claims. |
|---|---|

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan and final approval of the Disclosure Statement (the "Combined Hearing") will commence on **October 29, 2025, at 2:00 p.m., prevailing Eastern Time**, before the Honorable Judge Brendan L. Shannon, in the United States Bankruptcy Court for the District of Delaware, located at 824 North Market Street, 6th Floor, Wilmington, DE 19801.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan and final approval of the Disclosure Statement is **October 14, 2025, at 4:00 p.m., prevailing Eastern Time** (the "Plan Objection Deadline"). All objections to the relief sought at the Combined Hearing **must**: (a) be in writing; (b) conform to the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan or Disclosure Statement and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on or before the Plan Objection Deadline.

**PLEASE TAKE FURTHER NOTICE THAT** ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.C CONTAINS A THIRD PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER. Not consenting to the releases contained in Article VIII.C of the Plan is at your discretion. If you submit your notice with the below opt-in box checked, you will consent to the releases contained in Article VIII.C of the Plan to the maximum extent permitted by applicable law. If you do not submit the Opt-In Form, you will not be deemed to consent to the Releases contained in Article VIII.C the Plan.

| THE DISCLOSURE STATEMENT, THE PLAN, THE PLAN SUPPLEMENT, AND OTHER RELATED DOCUMENTS MAY BE ACCESSED FREE OF CHARGE BY SCANNING THE QR CODE BELOW USING THE CAMERA ON YOUR SMART PHONE, TABLET, OR OTHER DEVICE. | THE OPT-IN FORM MAY BE ACCESSED FREE OF CHARGE BY SCANNING THE QR CODE BELOW USING THE CAMERA ON YOUR SMART PHONE, TABLET, OR OTHER DEVICE. |
|---|---|
|  |  |

The Claims and Noticing Agent will accept Opt-In Forms if properly completed through the Opt-In Portal. To submit your Opt-In Form, please visit https://omniagentsolutions.com/Claires-Ballots (the "Opt-In Portal"), **click on the "Balloting" section of the website and follow the instructions to submit your** Opt-In Form.

Creditors who submit an Opt-In Form using the Opt-In Portal should NOT also submit a paper Opt-In Form.

**The Claims and Noticing Agent's E-Ballot Portal is the sole manner in which Opt-In Forms will be accepted via electronic or online transmission. Opt-In Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.**

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a physical copy of the Disclosure Statement, the Plan, the Plan Supplement, the Opt-In Form, or related documents, you should contact Omni Agent Solutions, Inc., the claims and noticing agent retained by the Debtors in these chapter 11 cases (the "Claims and Noticing Agent"), by: (a) writing via first class mail, to Claire's Holdings LLC Ballot Processing Center, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Ste 100Woodland Hills, CA 91367; (b) writing via electronic mail to

ClairesInquiries@OmniAgnt.com (with "Claire's Holdings LLC Solicitation Inquiry" in the subject line); or (c) calling the Debtors' restructuring hotline at (888) 202-5971 (U.S./Canada, toll-free) or +1 (747) 293-0183 (International, toll).  You may also obtain copies of any pleadings filed in these chapter 11 cases (i) for a fee via PACER at https://www.deb.uscourts.gov or (ii) at no charge from Omni Agent Solutions, Inc. by accessing the Debtors' restructuring website at https://omniagentsolutions.com/Claires.  The Plan Supplement will be filed with the Court no later than October 7, 2025.

Dated:  [●], 2025
Wilmington, Delaware

/s/ DRAFT
_____

**RICHARDS, LAYTON & FINGER, P.A.**
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Clint M. Carlisle (No. 7313)
Colin A. Meehan (No. 7237)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:          defranceschi@rlf.com
                heath@rlf.com
                shapiro@rlf.com
                carlisle@rlf.com
                meehan@rlf.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                allyson.smith@kirkland.com

- and -

Alexandra F. Schwarzman, P.C. (admitted *pro hac vice*)
Robert A. Jacobson (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          alexandra.schwarzman@kirkland.com
                rob.jacobson@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**OPTIONAL: RELEASE OPT-IN FORM**

You are receiving this optional opt-in form (the "Opt-In Form") because you are or may be a Holder of a Claim or Interest that is not entitled to vote on the *First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No.[●]] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"). Holders of Claims or Interests may opt in to the Third-Party Release set forth in the Plan by completing and submitting this form by **October 14, 2025, at 4:00 p.m., prevailing Eastern Time** (the "Opt-In Deadline"). Holders of Claims or Interests may affirmatively opt in by, no later than the Opt-In Deadline, submitting this form in accordance with the directions herein.

**If you believe you are a Holder of a Claim or Interest with respect to the Debtors and choose to opt in to the Third-Party Release set forth in Article VIII.C of the Plan, please either** (i) promptly complete, sign, and date this Opt-In Form and return it via first class mail, overnight courier, or hand delivery to Omni Agent Solutions, Inc. (the "Claims and Noticing Agent") at the address set forth below or (ii) submit your Opt-In Form through the Claims and Noticing Agent's online portal (the "Opt-In Portal") in accordance with the directions provided below. Parties that submit their Opt-In Form using the Opt-In Portal should NOT also submit a paper Opt-In Form.

**THIS OPT-IN FORM MUST BE ACTUALLY RECEIVED (WHETHER A PHYSICAL COPY IS RETURNED OR THE OPT-IN FORM IS COMPLETED ONLINE) BY THE CLAIMS AND NOTICING AGENT BY THE OPT-IN DEADLINE. IF THE OPT-IN FORM IS RECEIVED AFTER THE OPT-IN DEADLINE, IT WILL NOT BE COUNTED.**

<u>**Item 1.**</u>         **Important information regarding releases under the Plan.**[1]

Article VIII.B of the Plan provides for a release by the Debtors (the "**Debtor Release**"):[2]

       **Notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, upon entry of the Confirmation Order and effective as of the Effective Date, to the fullest extent permitted by applicable law, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each and all of the Debtors and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that any such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor or other Entity, or that any Holder of any Claim against or Interest in a Debtor or other Entity could have asserted on behalf of the Debtors, to the extent such Claim or Cause of Action (x) has not been sold pursuant to the Transaction Documents and (y) is based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Debtor, or an Affiliate of a**

---

[1]     The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs. Please read the Plan carefully before completing this Opt-In Form. Defined terms used but not defined herein shall have the meaning ascribed to such term as in the Plan.

[2]     For the avoidance of doubt, the releases set forth in the Plan of any party, other than a Sale Release Party (as defined in the Disclosure Statement), shall remain subject in all respects to the Plan Investigation (as defined in the Disclosure Statement).

Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, any of the Wind-Down Transactions, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Sale Transaction, the pursuit of Confirmation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations of any party or Entity under the Plan, the Transaction Documents, the Confirmation Order, any post-Effective Date transaction contemplated by the Plan or the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, the Transaction Documents (including the Asset Purchase Agreement and any documents in connection therewith), or the Wind-Down Transactions; or (2) any matters retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Article VIII.C of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):[3]

Except as otherwise expressly set forth in the Plan or the Confirmation Order, effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each Releasing Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted by the Debtors), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, any of the Wind-Down Transactions, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Sale Transaction, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the Third-Party Release does not release (1) any obligation of any party or Entity arising under the Transaction Documents on or after the date of entry of the Sale Order, (2) any obligations arising on or after the Effective Date (solely to the extent such obligation

---

[3]    For the avoidance of doubt, the releases set forth in the Plan of any party, other than a Sale Release Party (as defined in the Disclosure Statement), shall remain subject in all respects to the Plan Investigation (as defined in the Disclosure Statement).

**does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Transaction Documents, the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan or the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Wind-Down Transactions, or (3) the rights of any Holder of Allowed Claims to receive distributions under the Plan.**

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "***AVOIDANCE ACTIONS***" MEAN ANY AND ALL AVOIDANCE, RECOVERY, OR SUBORDINATION ACTIONS OR REMEDIES THAT MAY BE BROUGHT BY OR ON BEHALF OF THE DEBTORS OR THEIR ESTATES UNDER THE BANKRUPTCY CODE OR APPLICABLE NON-BANKRUPTCY LAW, INCLUDING ACTIONS OR REMEDIES UNDER SECTIONS 544, 547, 548, 549, 550, 551, 552, OR 553 OF THE BANKRUPTCY CODE.

UNDER THE PLAN, "***RELEASED PARTIES***" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE LIQUIDATING TRUSTEE; (C) THE PREPETITION ABL LENDERS; (D) THE PREPETITION PRIORITY TERM LOAN LENDERS; (E) THE PREPETITION EXISTING TERM LOAN LENDERS; (F) THE PREPETITION ABL AGENT; (G) THE PREPETITION PRIORITY TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (H) THE PREPETITION EXISTING TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (I) THE INITIAL TERM LOAN AGENT; (J) THE RELEASING PARTIES; (K) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH CLAUSE (J); AND (L) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH CLAUSE (K); *PROVIDED* THAT, NOTWITHSTANDING THE FOREGOING, THE RELEASED PARTIES SHALL NOT INCLUDE THE FORMER OFFICERS.[4]

UNDER THE PLAN, "***RELEASING PARTIES***" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) THE LIQUIDATING TRUSTEE; (C) THE PREPETITION ABL LENDERS; (D) THE PREPETITION PRIORITY TERM LOAN LENDERS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (E) THE PREPETITION EXISTING TERM LOAN LENDERS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (F) THE PREPETITION ABL AGENT; (G) THE PREPETITION PRIORITY TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (H) THE PREPETITION EXISTING TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (I) THE PURCHASER; (J) ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (K) ALL HOLDERS OF INTERESTS IN THE DEBTORS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (L) THE INITIAL TERM LOAN AGENT; (M) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (N) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH AFFILIATE TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE NON-BANKRUPTCY LAW; AND (N) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (M) FOR WHICH SUCH AFFILIATE OR ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE NON-BANKRUPTCY LAW.

---

[4]    For the avoidance of doubt, the releases set forth in the Plan of any party, other than a Sale Release Party (as defined in the Disclosure Statement), shall remain subject in all respects to the Plan Investigation (as defined in the Disclosure Statement).

**OPTIONAL RELEASE ELECTION.  YOU MAY ELECT TO OPT IN TO THE RELEASE CONTAINED IN ARTICLE VIII.C OF THE PLAN ONLY IF YOU CHECK THE BOX BELOW:**

☐    **The Undersigned Holder of Claims or Interests elects to <u>OPT IN to the Third-Party Release</u>**

<u>Article VIII.D</u> of the Plan provides for an exculpation of certain parties (the "**<u>Exculpation</u>**"):

        **Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur any liability for, and each such party shall be exculpated from any Cause of Action for any claim related to any act or omission occurring between the Petition Date and the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Transaction Documents, the Plan, the Plan Supplement, any other Definitive Document, or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, any of the Wind-Down Transactions, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the Sale Transaction, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or actual fraud.  Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any obligations arising on or after the Effective Date of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

        **Notwithstanding anything in the Plan to the contrary, nothing in the Plan shall affect, limit, or release in any way any obligations of any party or Entity under the Plan, the Transaction Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Transaction Documents (including the Asset Purchase Agreement and any documents in connection therewith).**

<u>Article VIII.E</u> of the Plan establishes an injunction (the "**<u>Injunction</u>**"):

        **In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors. Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors.  Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims, Interests, or Causes of Action in the Debtors, shall be precluded and permanently enjoined on and after the Effective Date, from taking any of the following actions against the Debtors, the Liquidating Trust (but solely to the extent such action is brought against the Debtors or the Liquidating Trust to directly or indirectly recover upon any property of the Estates, upon the Effective Date), the Exculpated Parties, the Released Parties, and any successors, assigns, or representatives of such Persons or Entities, solely with respect to any Claims, Interests, or Causes of Action that will be or are treated by the Plan:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in**

connection with or with respect to any such Claims or Interests released, compromised, or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Error! Reference source not found. of the Plan.

**Item 2**.        **Certifications.**

By signing this Opt-In Form, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)       as of the Voting Record Date, either: (i) the Entity is the Holder of a Claim or Interest; or (ii) the Entity is an authorized signatory for the Entity that is a Holder of a Claim or Interest;

(b)       the Entity (or in the case of an authorized signatory, the Holder) has received a copy of the *Notice of Non-Voting Status Regarding Releases to Holders of Impaired Claims or Interests Conclusively Deemed to Reject the Plan* and that this Opt-In Form is made pursuant to the terms and conditions set forth therein;

(c)       the Entity has submitted the same respective election concerning the releases with respect to all Claims or Interests in a single Class; and

(d)       no other Opt-In Form has been submitted or, if any other Opt-In Forms have been submitted with respect to such Claims or Interests, then any such earlier Opt-In Forms are hereby revoked.

Name of Holder:_____
(*print or type*)

Signature:_____

Name of Signatory:_____
(*if other than Holder*)

Title: _____

Address:_____

_____

_____

Telephone Number:_____

Email:_____

Date Completed:_____

**IF YOU HAVE MADE THE OPTIONAL OPT-IN ELECTION, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-IN FORM AND RETURN IT PROMPTLY BY ONLY ONE OF THE METHODS BELOW.**

**By regular mail, overnight mail, or hand delivery at:**

**Claire's Holdings LLC Ballot Processing Center**
**c/o Omni Agent Solutions, Inc.**
**5955 De Soto Ave., Ste 100**
**Woodland Hills, CA 91367**

**OR**

**By electronic, online submission:**

The Claims and Noticing Agent will accept Opt-In Forms if properly completed through the Opt-In Portal.  To submit your Opt-In Form, please visit https://omniagentsolutions.com/Claires-Ballots. **Click on the "Balloting" section of the website and follow the instructions to submit your Opt-In Form.**

Creditors who submit an Opt-In Form using the Opt-In Portal should NOT also submit a paper Opt-In Form.

**The Claims and Noticing Agent's Opt-In Portal is the sole manner in which Opt-In Forms will be accepted via electronic or online transmission.  Opt-In Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.**

Parties that submit their Opt-In Form using the Opt-In Portal should **NOT** also submit a paper Opt-In Form.

**THE OPT-IN DEADLINE IS <u>OCTOBER 14, 2025</u>, AT 4:00 P.M., PREVAILING EASTERN TIME.**

THE CLAIMS AND NOTICING AGENT MUST ACTUALLY RECEIVE YOUR OPT IN ELECTION ON OR BEFORE THE VOTING DEADLINE.  IF YOU HAVE ANY QUESTIONS REGARDING THIS OPT-IN FORM, PLEASE CONTACT: CLAIRESINQUIRIES@OMNIAGNT.COM (WITH "CLAIRE'S SOLICITATION INQUIRY" IN THE SUBJECT LINE) FOR FURTHER ASSISTANCE.

**<u>Exhibit 4C</u>**

**Form of Notice of Non-Voting Status (Disputed)**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (BLS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## NOTICE OF NON-VOTING STATUS
## REGARDING RELEASES TO HOLDERS OF DISPUTED CLAIMS

**PLEASE TAKE NOTICE THAT** on [●], 2025, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. [●]] (the "Conditional Disclosure Statement Order"): (a) authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit votes on the *First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No. [●]] (the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages; (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan; and (e) granting related relief.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because you are the Holder of a Claim or Interest that is subject to a pending objection by the Debtors. **You are not entitled to vote any disputed portion of your Claim on the Plan unless one or more of the following events have taken place before the date that is two (2) business days before the Voting Deadline** (each, a "Resolution Event").

   1.   an order of the Court is entered allowing such Claim pursuant to section 502(b) of the Bankruptcy Code, after notice and a hearing;

   2.   an order of the Court is entered temporarily allowing such Claim for voting purposes only pursuant to Bankruptcy Rule 3018(a), after notice and a hearing;

   3.   a stipulation or other agreement is executed between the Holder and the Debtors resolving the objection and allowing such Claim in an agreed upon amount; or

   4.   the pending objection is voluntarily withdrawn by the objecting party.

**PLEASE TAKE FURTHER NOTICE THAT** if a Resolution Event occurs, within one (1) business day, or as soon as reasonably practicable thereafter, the Claims and Noticing Agent shall distribute a Ballot, and a

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are:  Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343).  The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan, the Disclosure Statement, or the Disclosure Statement Order, as applicable.

pre-addressed, postage pre-paid envelope to you, which must be returned to the Claims and Noticing Agent no later than the Voting Deadline, which is on **October 14, 2025, at 4:00 p.m., prevailing Eastern Time.**

      **PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan and final approval of the Disclosure Statement (the "Combined Hearing") will commence on **October 29, 2025, at 2:00 p.m., prevailing Eastern Time**, before the Honorable Judge Brendan L. Shannon, in the United States Bankruptcy Court for the District of Delaware, located at 824 North Market Street, 6th Floor, Wilmington, DE 19801.

      **PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan and final approval of the Disclosure Statement is **October 14, 2025, at 4:00 p.m., prevailing Eastern Time** (the "Plan Objection Deadline"). All objections to the relief sought at the Combined Hearing **_must_**: (a) be in writing; (b) conform to the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan or Disclosure Statement and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on or before the Plan Objection Deadline.

      **PLEASE TAKE FURTHER NOTICE THAT** ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.C CONTAINS A THIRD PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER. Not consenting to the releases contained in Article VIII.C of the Plan is at your discretion. If you submit your notice with the below opt-in box checked, you will consent to the releases contained in Article VIII.C of the Plan to the maximum extent permitted by applicable law. If you do not submit the Opt-In Form, you will not be deemed to consent to the Releases contained in Article VIII.C of the Plan.

| THE DISCLOSURE STATEMENT, THE PLAN, THE PLAN SUPPLEMENT, AND OTHER RELATED DOCUMENTS MAY BE ACCESSED FREE OF CHARGE BY SCANNING THE QR CODE BELOW USING THE CAMERA ON YOUR SMART PHONE, TABLET, OR OTHER DEVICE. | THE OPT-IN FORM MAY BE ACCESSED FREE OF CHARGE BY SCANNING THE QR CODE BELOW USING THE CAMERA ON YOUR SMART PHONE, TABLET, OR OTHER DEVICE. |
|---|---|
|  |  |

      The Claims and Noticing Agent will accept Opt-In Forms if properly completed through the Opt-In Portal. To submit your Opt-In Form, please visit https://omniagentsolutions.com/Claires-Ballots (the "Opt-In Portal"), **click on the "Balloting" section of the website and follow the instructions to submit your** Opt-In Form.

      Creditors who submit an Opt-In Form using the Opt-In Portal should NOT also submit a paper Opt-In Form.

      **The Claims and Noticing Agent's Opt-In Portal is the sole manner in which Opt-In Forms will be accepted via electronic or online transmission. Opt-In Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.**

      **PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a physical copy of the Disclosure Statement, the Plan, the Plan Supplement, the Opt-In Form, or related documents, you should contact Omni Agent Solutions, Inc., the claims and noticing agent retained by the Debtors in these chapter 11 cases (the "Claims and Noticing Agent"), by: (a) writing via first class mail, to Claire's Holdings LLC Ballot Processing Center, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Ste 100, Woodland Hills, CA 91367; (b) writing via electronic mail to ClairesInquiries@OmniAgnt.com (with "Claire's Holdings LLC Solicitation Inquiry" in the subject line); or (c) calling the Debtors' restructuring hotline at (888) 202-5971 (U.S./Canada, toll-free) or +1 (747) 293-0183

(International, toll).  You may also obtain copies of any pleadings filed in these chapter 11 cases (i) for a fee via PACER at https://www.deb.uscourts.gov or (ii) at no charge from Omni Agent Solutions, Inc. by accessing the Debtors' restructuring website at https://omniagentsolutions.com/Claires.  The Plan Supplement will be filed with the Court no later than October 7, 2025.

Dated:  [●], 2025
Wilmington, Delaware

/s/ DRAFT
_____

**RICHARDS, LAYTON & FINGER, P.A.**
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Clint M. Carlisle (No. 7313)
Colin A. Meehan (No. 7237)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:      defranceschi@rlf.com
            heath@rlf.com
            shapiro@rlf.com
            carlisle@rlf.com
            meehan@rlf.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:      joshua.sussberg@kirkland.com
            allyson.smith@kirkland.com

- and -

Alexandra F. Schwarzman, P.C. (admitted *pro hac vice*)
Robert A. Jacobson (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:      alexandra.schwarzman@kirkland.com
            rob.jacobson@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**OPTIONAL: RELEASE OPT-IN FORM**

You are receiving this optional opt-in form (the "Opt-In Form") because you are or may be a Holder of a Claim or Interest that is not entitled to vote on the *First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No.[●]] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan"). Holders of Claims or Interests may opt in to the Third-Party Release set forth in the Plan by completing and submitting this form by **October 14, 2025, at 4:00 p.m., prevailing Eastern Time** (the "Opt-In Deadline"). Holders of Claims or Interests may affirmatively opt in by, no later than the Opt-In Deadline, submitting this form in accordance with the directions herein.

**If you believe you are a Holder of a Claim or Interest with respect to the Debtors and choose to opt in to the Third-Party Release set forth in Article VIII.C of the Plan, please either** (i) promptly complete, sign, and date this Opt-In Form and return it via first class mail, overnight courier, or hand delivery to Omni Agent Solutions, Inc. (the "Claims and Noticing Agent") at the address set forth below or (ii) submit your Opt-In Form through the Claims and Noticing Agent's online portal (the "Opt-In Portal") in accordance with the directions provided below. Parties that submit their Opt-In Form using the Opt-In Portal should NOT also submit a paper Opt-In Form.

**THIS OPT-IN FORM MUST BE ACTUALLY RECEIVED (WHETHER A PHYSICAL COPY IS RETURNED OR THE OPT-IN FORM IS COMPLETED ONLINE) BY THE CLAIMS AND NOTICING AGENT BY THE OPT-IN DEADLINE. IF THE OPT-IN FORM IS RECEIVED AFTER THE OPT-IN DEADLINE, IT WILL NOT BE COUNTED.**

**Item 1.        Important information regarding releases under the Plan.**[1]

Article VIII.B of the Plan provides for a release by the Debtors (the "**Debtor Release**"):[2]

      **Notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, upon entry of the Confirmation Order and effective as of the Effective Date, to the fullest extent permitted by applicable law, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each and all of the Debtors and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that any such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor or other Entity, or that any Holder of any Claim against or Interest in a Debtor or other Entity could have asserted on behalf of the Debtors, to the extent such Claim or Cause of Action (x) has not been sold pursuant to the Transaction Documents and (y) is based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Debtor, or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation,**

---

[1]   The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights. If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs. Please read the Plan carefully before completing this Opt-In Form. Defined terms used but not defined herein shall have the meaning ascribed to such term as in the Plan.

[2]   For the avoidance of doubt, the releases set forth in the Plan of any party, other than a Sale Release Party (as defined in the Disclosure Statement), shall remain subject in all respects to the Plan Investigation (as defined in the Disclosure Statement).

dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, any of the Wind-Down Transactions, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Sale Transaction, the pursuit of Confirmation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations of any party or Entity under the Plan, the Transaction Documents, the Confirmation Order, any post-Effective Date transaction contemplated by the Plan or the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, the Transaction Documents (including the Asset Purchase Agreement and any documents in connection therewith), or the Wind-Down Transactions; or (2) any matters retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Article VIII.C of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):[3]

Except as otherwise expressly set forth in the Plan or the Confirmation Order, effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each Releasing Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted by the Debtors), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, any of the Wind-Down Transactions, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Sale Transaction, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the Third-Party Release does not release (1) any obligation of any party or Entity arising under the Transaction Documents on or after the date of entry of the Sale Order, (2) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the

---

[3]    For the avoidance of doubt, the releases set forth in the Plan of any party, other than a Sale Release Party (as defined in the Disclosure Statement), shall remain subject in all respects to the Plan Investigation (as defined in the Disclosure Statement).

**Transaction Documents, the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan or the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Wind-Down Transactions, or (3) the rights of any Holder of Allowed Claims to receive distributions under the Plan.**

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "***AVOIDANCE ACTIONS***" MEAN ANY AND ALL AVOIDANCE, RECOVERY, OR SUBORDINATION ACTIONS OR REMEDIES THAT MAY BE BROUGHT BY OR ON BEHALF OF THE DEBTORS OR THEIR ESTATES UNDER THE BANKRUPTCY CODE OR APPLICABLE NON-BANKRUPTCY LAW, INCLUDING ACTIONS OR REMEDIES UNDER SECTIONS 544, 547, 548, 549, 550, 551, 552, OR 553 OF THE BANKRUPTCY CODE.

UNDER THE PLAN, "***RELEASED PARTIES***" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE LIQUIDATING TRUSTEE; (C) THE PREPETITION ABL LENDERS; (D) THE PREPETITION PRIORITY TERM LOAN LENDERS; (E) THE PREPETITION EXISTING TERM LOAN LENDERS; (F) THE PREPETITION ABL AGENT; (G) THE PREPETITION PRIORITY TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (H) THE PREPETITION EXISTING TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (I) THE INITIAL TERM LOAN AGENT; (J) THE RELEASING PARTIES; (K) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH CLAUSE (J); AND (L) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH CLAUSE (K); *PROVIDED* THAT, NOTWITHSTANDING THE FOREGOING, THE RELEASED PARTIES SHALL NOT INCLUDE THE FORMER OFFICERS.[4]

UNDER THE PLAN, "***RELEASING PARTIES***" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) THE LIQUIDATING TRUSTEE; (C) THE PREPETITION ABL LENDERS; (D) THE PREPETITION PRIORITY TERM LOAN LENDERS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (E) THE PREPETITION EXISTING TERM LOAN LENDERS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (F) THE PREPETITION ABL AGENT; (G) THE PREPETITION PRIORITY TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (H) THE PREPETITION EXISTING TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (I) THE PURCHASER; (J) ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (K) ALL HOLDERS OF INTERESTS IN THE DEBTORS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (L) THE INITIAL TERM LOAN AGENT; (M) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (N) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH AFFILIATE TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE NON-BANKRUPTCY LAW; AND (N) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (M) FOR WHICH SUCH AFFILIATE OR ENTITY IS LEGALLY ENTITLED TO BIND SUCH RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE NON-BANKRUPTCY LAW.

**OPTIONAL RELEASE ELECTION.  YOU MAY ELECT TO OPT IN TO THE RELEASE CONTAINED IN ARTICLE VIII.C OF THE PLAN ONLY IF YOU CHECK THE BOX BELOW:**

☐     **The Undersigned Holder of Claims or Interests elects to <u>OPT IN to the</u> <u>Third-Party Release</u>**

Article VIII.D of the Plan provides for an exculpation of certain parties (the "**<u>Exculpation</u>**"):

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur any liability for, and each such party shall be exculpated from any Cause of Action for any

---

[4]     For the avoidance of doubt, the releases set forth in the Plan of any party, other than a Sale Release Party (as defined in the Disclosure Statement), shall remain subject in all respects to the Plan Investigation (as defined in the Disclosure Statement).

claim related to any act or omission occurring between the Petition Date and the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Transaction Documents, the Plan, the Plan Supplement, any other Definitive Document, or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, any of the Wind-Down Transactions, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the Sale Transaction, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or actual fraud.  Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any obligations arising on or after the Effective Date of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Notwithstanding anything in the Plan to the contrary, nothing in the Plan shall affect, limit, or release in any way any obligations of any party or Entity under the Plan, the Transaction Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Transaction Documents (including the Asset Purchase Agreement and any documents in connection therewith).

Article VIII.E of the Plan establishes an injunction (the "**Injunction**"):

In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors. Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors.  Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims, Interests, or Causes of Action in the Debtors, shall be precluded and permanently enjoined on and after the Effective Date, from taking any of the following actions against the Debtors, the Liquidating Trust (but solely to the extent such action is brought against the Debtors or the Liquidating Trust to directly or indirectly recover upon any property of the Estates, upon the Effective Date), the Exculpated Parties, the Released Parties, and any successors, assigns, or representatives of such Persons or Entities, solely with respect to any Claims, Interests, or Causes of Action that will be or are treated by the Plan:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, compromised, or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Error! Reference source not found. of the Plan.

**Item 2**.        **Certifications.**

By signing this Opt-In Form, the undersigned certifies to the Bankruptcy Court and the Debtors that:

(a)        as of the Voting Record Date, either: (i) the Entity is the Holder of a Claim or Interest; or (ii) the Entity is an authorized signatory for the Entity that is a Holder of a Claim or Interest;

(b)        the Entity (or in the case of an authorized signatory, the Holder) has received a copy of the *Notice of Non-Voting Status Regarding Releases to Holders of Unimpaired Claims or Interests Conclusively Presumed to Accept the Plan* and that this Opt-In Form is made pursuant to the terms and conditions set forth therein;

(c)        the Entity has submitted the same respective election concerning the releases with respect to all Claims or Interests in a single Class; and

(d)        no other Opt-In Form has been submitted or, if any other Opt-In Forms have been submitted with respect to such Claims or Interests, then any such earlier Opt-In Forms are hereby revoked.

Name of Holder:_____
                                                        (*print or type*)

Signature:_____


Name of Signatory:_____
                                                        (*if other than Holder*)

Title: _____

Address:_____

            _____

            _____

Telephone Number:_____

Email:_____

Date Completed:_____

**IF YOU HAVE MADE THE OPTIONAL OPT-IN ELECTION, PLEASE COMPLETE, SIGN, AND DATE THIS OPT-IN FORM AND RETURN IT PROMPTLY BY ONLY ONE OF THE METHODS BELOW.**

**By regular mail, overnight mail, or hand delivery at:**

**Claire's Holdings LLC Ballot Processing Center**
**c/o Omni Agent Solutions, Inc.**
**5955 De Soto Ave., Ste 100**
**Woodland Hills, CA 91367**

**OR**

**By electronic, online submission:**

The Claims and Noticing Agent will accept Opt-In Forms if properly completed through the Opt-In Portal. To submit your Opt-In Form, please visit https://omniagentsolutions.com/Claires-Ballots. **Click on the "Balloting" section of the website and follow the instructions to submit your Opt-In Form.**

Creditors who submit an Opt-In Form using the Opt-In Portal should NOT also submit a paper Opt-In Form.

**The Claims and Noticing Agent's Opt-In Portal is the sole manner in which Opt-In Forms will be accepted via electronic or online transmission. Opt-In Forms submitted by facsimile, email, or other means of electronic transmission will not be counted.**

Parties that submit their Opt-In Form using the Opt-In Portal should **NOT** also submit a paper Opt-In Form.

**THE OPT-IN DEADLINE IS <u>OCTOBER 14, 2025</u>, AT 4:00 P.M., PREVAILING EASTERN TIME.**

THE CLAIMS AND NOTICING AGENT MUST ACTUALLY RECEIVE YOUR OPT IN ELECTION ON OR BEFORE THE VOTING DEADLINE. IF YOU HAVE ANY QUESTIONS REGARDING THIS OPT-IN FORM, PLEASE CONTACT: CLAIRESINQUIRIES@OMNIAGNT.COM (WITH "CLAIRE'S SOLICITATION INQUIRY" IN THE SUBJECT LINE) FOR FURTHER ASSISTANCE.

**Exhibit 5**

**Form of Cover Letter**



**[●], 2025**

Via First Class Mail / Email

**RE**:    *In re Claire's Holdings LLC, et al.* Chapter 11 Case No. 25-11454 (BLS), Summary of Chapter 11 Plan and Information Regarding Certain Key Dates.

TO ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN:

Claire's Holdings LLC and its affiliated debtors and debtors in possession in the above captioned cases (collectively, the "Debtors")[1] each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court") on August 6, 2025.

You have received this letter and the enclosed materials because you are entitled to vote on the *First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* (as modified, amended, or supplemented from time to time, the "Plan").[2]  On [●], 2025, the Court entered an order  (the "Conditional Disclosure Statement Order") [Docket No. [●]]: (a) authorizing the Debtors to solicit acceptances for the Plan; (b) conditionally approving the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation package (the "Solicitation Package"); (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan; and (e) granting related relief.

> YOU ARE RECEIVING THIS LETTER BECAUSE YOU ARE ENTITLED TO VOTE ON THE PLAN. THEREFORE, YOU SHOULD READ THIS LETTER CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY.  IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.

As a Holder of a Claim entitled to vote on the Plan, you are entitled to receive the Solicitation Package.  The Solicitation Package consists of the following:

    a.  a Ballot, together with detailed voting instructions;

    b.  the Cover Letter, including instructions to obtain access, free of charge, via https://omniagentsolutions.com/Claires or QR code, to the Plan, Disclosure Statement, and

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are:  Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343).  The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2]    Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan.

Conditional Disclosure Statement Order (excluding exhibits, except the Solicitation and Voting Procedures), as well as instructions to access, via QR code, and electronically submit a Ballot on the Debtors' restructuring website; and

c. the Combined Hearing Notice.

| THE DISCLOSURE STATEMENT, THE PLAN, THE PLAN SUPPLEMENT, AND OTHER RELATED DOCUMENTS MAY BE ACCESSED FREE OF CHARGE BY SCANNING THE QR CODE BELOW USING THE CAMERA ON YOUR SMART PHONE, TABLET, OR OTHER DEVICE. | THE OPT-IN FORM MAY BE ACCESSED FREE OF CHARGE BY SCANNING THE QR CODE BELOW USING THE CAMERA ON YOUR SMART PHONE, TABLET, OR OTHER DEVICE. |
| --- | --- |
|  |  |

If you would like to obtain a physical copy of the Ballot, the Disclosure Statement, the Plan, the Plan Supplement, the Opt-In Form, the Combined Hearing Notice, or related documents, you should contact Omni Agent Solutions, Inc., the claims and noticing agent retained by the Debtors in these chapter 11 cases (the "Claims and Noticing Agent"), by: (a) writing via first class mail, to Claire's Holdings LLC Ballot Processing Center, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Ste 100, Woodland Hills, CA 91367; (b) writing via electronic mail to ClairesInquiries@OmniAgnt.com (with "Claire's Holdings LLC Solicitation Inquiry" in the subject line); or (c) calling the Debtors' restructuring hotline at (888) 202-5971 (U.S./Canada, toll-free) or +1 (747) 293-0183 (International, toll). You may also obtain copies of any pleadings filed in these chapter 11 cases (i) for a fee via PACER at https://www.deb.uscourts.gov or (ii) at no charge from Omni Agent Solutions, Inc. by accessing the Debtors' restructuring website at https://omniagentsolutions.com/Claires. The Plan Supplement will be filed with the Court no later than October 7, 2025.

Claire's Holdings LLC (on behalf of itself and each of the other Debtors) has approved the filing of the Plan and the solicitation of votes to accept or reject the Plan. The Debtors believe that the Plan is in the best interests of their estates and all other parties in interest. Moreover, the Debtors believe that any alternative other than Confirmation of the Plan could result in significant delays and increased administrative expenses, which, in turn, likely would result in smaller distributions (or no distributions) or recoveries on account of Claims asserted in these chapter 11 cases.

**THE DEBTORS STRONGLY URGE YOU TO PROPERLY AND TIMELY SUBMIT YOUR BALLOT CASTING A VOTE TO ACCEPT THE PLAN. THE VOTING DEADLINE IS 4:00 P.M., PREVAILING EASTERN TIME, ON OCTOBER 14, 2025.**

The materials in the Solicitation Package are intended to be self-explanatory. If you should have any questions, however, please feel free to contact Omni Agent Solutions, Inc., the notice, claims, and solicitation agent retained by the Debtors in these chapter 11 cases (the "Claims and Noticing Agent"), by calling the Debtors' Claims and Noticing Agent at (888) 202-5971 (U.S./Canada, toll-free) or +1 (747) 293-0183 (International, toll). The Claims and Noticing Agent cannot and will not provide legal advice. If you need legal advice, you should consult an attorney.

Sincerely,

*/s/ DRAFT*

[NAME]
[TITLE]

## Exhibit 6

**Combined Hearing Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (BLS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## NOTICE OF HEARING TO CONSIDER
## (I) FINAL APPROVAL OF THE DISCLOSURE STATEMENT AND
## (II) CONFIRMATION OF THE DEBTORS' JOINT CHAPTER 11 PLAN

**PLEASE TAKE NOTICE OF THE FOLLOWING**:

On [●], 2025, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. [●]] (the "Conditional Disclosure Statement Order"): (a) authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit votes on the *First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation package; (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan; and (e) granting related relief.

The hearing at which the Court will consider Confirmation of the Plan and final approval of the Disclosure Statement (the "Combined Hearing") will commence on **October 29, 2025, at 2:00 p.m., prevailing Eastern Time**, before the Honorable Judge Brendan L. Shannon, in the United States Bankruptcy Court for the District of Delaware, located at 824 North Market St., 6th Floor, Wilmington, DE 19801.

On the Effective Date, except as otherwise provided in the Plan, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are:  Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343).  The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2]  Capitalized terms not otherwise defined herein have the same meaning as set forth in the Plan.

automatically rejected by the applicable Debtor, unless otherwise agreed by the applicable counterparty, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that:  (1) are specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, or are identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (2) have been previously assumed or rejected by the Debtors pursuant to any Bankruptcy Court order; (3) are the subject of a Filed motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with respect thereto) that is pending on the Confirmation Date; (4) are to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, through the Asset Purchase Agreement in connection with any Sale Transaction, including in a Sale Transaction that is pending on the Confirmation Date; (5) are a contract, release, or other agreement or document entered into in connection with the Plan; or (6) are an Insurance Policy (including, for the avoidance of doubt, any D&O Liability Insurance Policies).

---

**PLEASE BE ADVISED**:  THE COMBINED HEARING MAY BE CONTINUED FROM TIME TO TIME BY THE COURT OR THE DEBTORS **WITHOUT FURTHER NOTICE** OTHER THAN BY SUCH ADJOURNMENT BEING ANNOUNCED IN OPEN COURT OR BY A NOTICE OF ADJOURNMENT FILED WITH THE COURT AND SERVED ON ALL PARTIES ENTITLED TO NOTICE.

ANY SUCH NOTICES OF ADJOURNMENT ARE AVAILABLE FREE OF CHARGE ON THE DEBTORS' CASE WEBSITE AT HTTPS://OMNIAGENTSOLUTIONS.COM/CLAIRES.

---

## CRITICAL INFORMATION REGARDING VOTING ON THE PLAN

**Voting Record Date**.  The voting record date is **September 8, 2025**, which was the date for determining which Holders of Claims in Classes 4 and 5 are entitled to vote on the Plan.

**Voting Deadline**.  The deadline for voting on the Plan is **October 14, 2025, at 4:00 p.m., prevailing Eastern Time** (the "Voting Deadline").  If you received a Solicitation Package, including a Ballot and intend to vote on the Plan you *must*:  (a) follow the instructions carefully; (b) complete *all* of the required information on the ballot; and (c) execute and return your completed Ballot according to and as set forth in detail in the voting instructions so that it is *actually received* by the Debtors' claims and noticing agent, Omni Agent Solutions (the "Claims and Noticing Agent") on or before the Voting Deadline.  *A failure to follow such instructions may disqualify your vote*.

## CRITICAL INFORMATION REGARDING OBJECTING TO THE CONFIRMATION OF THE PLAN AND/OR FINAL APPROVAL OF THE DISCLOSURE STATEMENT

---

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.C CONTAINS A THIRD-PARTY RELEASE**.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

---

**Plan Objection Deadline**.  The deadline for filing objections to confirmation of the Plan and/or final approval of the Disclosure Statement, as applicable, is **October 14, 2025, at**

**4:00 p.m., prevailing Eastern Time** (the "Plan Objection Deadline").  All such objections *must*: (a) be in writing; (b) conform to the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan or Disclosure Statement (as applicable) that would resolve such objection; and (d) be filed with the Court (contemporaneously with a proof of service) and served upon the following parties so as to be *actually received* on or before the Plan Objection Deadline:  (a) the Debtors, Claire's Holdings LLC, 2400 West Central Road, Hoffman Estates, Illinois 60192, Attn.: Brendan McKeough, Executive Vice President, Chief Legal Officer, and Secretary (brendan.mckeough@claires.com) and 3 SW 129th Avenue, Pembroke Pines, Florida 33027, Attn: Michele Reilly, Assistant Secretary (michele.reilly@claires.com); (b) proposed co-counsel to the Debtors, (i) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn.: Joshua A. Sussberg, P.C. (joshua.sussberg@kirkland.com) and Allyson B. Smith (allyson.smith@kirkland.com) and 333 West Wolf Point Plaza, Chicago, Illinois 60654, Attn.: Alexandra F. Schwarzman, P.C. (alexandra.schwarzman@kirkland.com) and Robert A. Jacobson (rob.jacobson@kirkland.com) and (ii) Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, Delaware 19801, Attn.: Paul N. Heath (heath@rlf.com) and Zachary I. Shapiro (shapiro@rlf.com); (c) the U.S. Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn.: Benjamin A. Hackman (Benjamin.A.Hackman@usdoj.gov); (d) counsel to the Prepetition Priority Term Loan Agent and Existing Prepetition Term Loan Agent, Ankura Trust Company, LLC, Cahill Gordon & Reindell LLP, Attn.: Joel Moss (JMoss@cahill.com), Amit Trehan (ATrehan@cahill.com), and Sean Tierney (STierney@cahill.com); (e) counsel to the Prepetition ABL Agent, JPMorgan Chase Bank, N.A., Simpson Thacher & Bartlett LLP, Attn.: Elisha D. Graff (egraff@stblaw.com) and Zachary J. Weiner (zachary.weiner@stblaw.com) and Potter Anderson & Corroon LLP, Attn.: L. Katherine Good (kgood@potteranderson.com) and Jeremy Ryan (jryan@potteranderson.com); and (f) any statutory committee appointed in these chapter 11 cases.

**Please be advised that <u>Article VIII</u> of the Plan contains the following release, exculpation, and injunction provisions:[3]**

Article VIII.B of the Plan provides for a release by the Debtors (the "**<u>Debtor Release</u>**"):[4]

      **Notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, upon entry of the Confirmation Order and effective as of the Effective Date, to the fullest extent permitted by applicable law, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each and all of the Debtors and their Estates, in each case on behalf of themselves and their respective successors, assigns, and**

---

[3]    The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

[4]    For the avoidance of doubt, the releases set forth in the Plan of any party, other than a Sale Release Party (as defined in the Disclosure Statement), shall remain subject in all respects to the Plan Investigation (as defined in the Disclosure Statement).

representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that any such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor or other Entity, or that any Holder of any Claim against or Interest in a Debtor or other Entity could have asserted on behalf of the Debtors, to the extent such Claim or Cause of Action (x) has not been sold pursuant to the Transaction Documents and (y) is based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Debtor, or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, any of the Wind-Down Transactions, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Sale Transaction, the pursuit of Confirmation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release:  (1) any obligations of any party or Entity under the Plan, the Transaction Documents, the Confirmation Order, any post-Effective Date transaction contemplated by the Plan or the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, the Transaction Documents (including the Asset Purchase Agreement and any documents in connection therewith), or the Wind-Down Transactions; or (2) any matters retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

<u>Article VIII.C</u> of the Plan provides for a third-party release by the Releasing Parties (the "**Third-Party Release**"):[5]

**Except as otherwise expressly set forth in the Plan or the Confirmation Order, effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each Releasing Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted by the Debtors), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, any of the Wind-Down Transactions, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Sale Transaction, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.**

**Notwithstanding anything to the contrary in the foregoing, the Third-Party Release does not release (1) any obligation of any party or Entity arising under the Transaction Documents on or after the date of entry of the Sale Order, (2) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Transaction Documents, the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan or the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan**

---

[5]  For the avoidance of doubt, the releases set forth in the Plan of any party, other than a Sale Release Party (as defined in the Disclosure Statement), shall remain subject in all respects to the Plan Investigation (as defined in the Disclosure Statement).

**or the Wind-Down Transactions, or (3) the rights of any Holder of Allowed Claims to receive distributions under the Plan.**

Definitions Related to the Debtor Release and the Third-Party Release:

UNDER THE PLAN, "*AVOIDANCE ACTIONS*" MEAN ANY AND ALL AVOIDANCE, RECOVERY, OR SUBORDINATION ACTIONS OR REMEDIES THAT MAY BE BROUGHT BY OR ON BEHALF OF THE DEBTORS OR THEIR ESTATES UNDER THE BANKRUPTCY CODE OR APPLICABLE NON-BANKRUPTCY LAW, INCLUDING ACTIONS OR REMEDIES UNDER SECTIONS 544, 547, 548, 549, 550, 551, 552, OR 553 OF THE BANKRUPTCY CODE.

UNDER THE PLAN, "*RELEASED PARTIES*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH: (A) THE DEBTORS; (B) THE LIQUIDATING TRUSTEE; (C) THE PREPETITION ABL LENDERS; (D) THE PREPETITION PRIORITY TERM LOAN LENDERS; (E) THE PREPETITION EXISTING TERM LOAN LENDERS; (F) THE PREPETITION ABL AGENT; (G) THE PREPETITION PRIORITY TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (H) THE PREPETITION EXISTING TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (I) THE INITIAL TERM LOAN AGENT; (J) THE RELEASING PARTIES; (K) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH CLAUSE (J); AND (L) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH CLAUSE (K); *PROVIDED* THAT, NOTWITHSTANDING THE FOREGOING, THE RELEASED PARTIES SHALL NOT INCLUDE THE FORMER OFFICERS.[6]

UNDER THE PLAN, "*RELEASING PARTIES*" MEANS, EACH OF, AND IN EACH CASE IN ITS CAPACITY AS SUCH:  (A) THE DEBTORS; (B) THE LIQUIDATING TRUSTEE; (C) THE PREPETITION ABL LENDERS; (D) THE PREPETITION PRIORITY TERM LOAN LENDERS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (E) THE PREPETITION EXISTING TERM LOAN LENDERS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (F) THE PREPETITION ABL AGENT; (G) THE PREPETITION PRIORITY TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (H) THE PREPETITION EXISTING TERM LOAN AGENT (INCLUDING ANY PREDECESSOR AGENT); (I) THE PURCHASER; (J) ALL HOLDERS OF CLAIMS AGAINST THE DEBTORS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (K) ALL HOLDERS OF INTERESTS IN THE DEBTORS WHO AFFIRMATIVELY OPT IN TO THE RELEASES PROVIDED BY THE PLAN; (L) THE INITIAL TERM LOAN AGENT; (M) EACH CURRENT AND FORMER AFFILIATE OF EACH ENTITY IN CLAUSE (A) THROUGH (N) FOR WHICH SUCH ENTITY IS LEGALLY ENTITLED TO BIND SUCH AFFILIATE TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE NON-BANKRUPTCY LAW; AND (N) EACH RELATED PARTY OF EACH ENTITY IN CLAUSE (A) THROUGH (M) FOR WHICH SUCH AFFILIATE OR ENTITY IS LEGALLY ENTITLED TO BIND SUCH

---

[6]    For the avoidance of doubt, the releases set forth in the Plan of any party, other than a Sale Release Party (as defined in the Disclosure Statement), shall remain subject in all respects to the Plan Investigation (as defined in the Disclosure Statement).

RELATED PARTY TO THE RELEASES CONTAINED IN THE PLAN UNDER APPLICABLE NON-BANKRUPTCY LAW.

Article VIII.D of the Plan provides for an exculpation of certain parties (the "**Exculpation**"):

**Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur any liability for, and each such party shall be exculpated from any Cause of Action for any claim related to any act or omission occurring between the Petition Date and the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Transaction Documents, the Plan, the Plan Supplement, any other Definitive Document, or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, any of the Wind-Down Transactions, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the Sale Transaction, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or actual fraud.  Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any obligations arising on or after the Effective Date of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Notwithstanding anything in the Plan to the contrary, nothing in the Plan shall affect, limit, or release in any way any obligations of any party or Entity under the Plan, the Transaction Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Transaction Documents (including the Asset Purchase Agreement and any documents in connection therewith).**

Article VIII.E of the Plan establishes an injunction (the "**Injunction**"):

**In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors.  Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors.  Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims, Interests, or Causes of Action in the Debtors, shall be precluded and permanently enjoined on and after the Effective Date, from taking any of the following actions against the Debtors, the Liquidating Trust (but solely to the extent such action is brought against the Debtors or the Liquidating Trust to directly or indirectly recover upon any property of the Estates, upon the Effective Date), the Exculpated Parties, the Released Parties, and any successors, assigns, or representatives of such Persons or Entities, solely with respect to any Claims, Interests, or Causes of Action that will be or are treated by the Plan:  (a) commencing or continuing in any manner any action or other**

7

proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, compromised, or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Each Holder of an Allowed Claim, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in Error! Reference source not found. of the Plan.

## ADDITIONAL INFORMATION

**Obtaining Solicitation Materials**. The materials in the Solicitation Package are intended to be self-explanatory. If you should have any questions or if you would like to obtain additional solicitation materials (or paper copies of solicitation materials), please feel free to contact the Debtors' Claims and Noticing Agent, by: (a) writing via first class mail, to Claire's Holdings LLC Ballot Processing Center, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Ste 100, Woodland Hills, CA 91367; (b) writing via electronic mail to ClairesInquiries@OmniAgnt.com (with "Claire's Holdings LLC Solicitation Inquiry" in the subject line); or (c) calling the Debtors' restructuring hotline at (888) 202-5971 (U.S./Canada, toll-free) or +1 (747) 293-0183 (International, toll). You may also obtain copies of any pleadings filed in these chapter 11 cases (i) for a fee via PACER at https://www.deb.uscourts.gov or (ii) at no charge from Omni Agent Solutions, Inc. by accessing the Debtors' restructuring website at https://omniagentsolutions.com/Claires.

Please be advised that the Claims and Noticing Agent is authorized to answer questions about, and provide additional copies of, solicitation materials, but may ***not*** advise you as to whether you should vote to accept or reject the Plan.

**The Plan Supplement**. The Debtors will file documents constituting the Plan Supplement (as defined in the Plan) on the date that is (a) seven (7) days prior to the earlier of (i) the Voting Deadline or (ii) the deadline to object to Confirmation of the Plan or (b) such later date as may be

approved by the Bankruptcy Court, and will serve notice on all Holders of Claims or Interests entitled to vote on the Plan, which will:  (a) inform parties that the Debtors filed the Plan Supplement; (b) list the information contained in the Plan Supplement; and (c) explain how parties may obtain copies of the Plan Supplement.

---

**BINDING NATURE OF THE PLAN**:

**IF CONFIRMED, THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AND/OR INTERESTS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, WHETHER OR NOT SUCH HOLDER WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, HAS FILED A PROOF OF CLAIM OR INTEREST IN THESE CHAPTER 11 CASES, OR FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.**

---

**<u>Exhibit 7</u>**

**Form of Plan Supplement Notice**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (BLS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## NOTICE OF FILING OF PLAN SUPPLEMENT

**PLEASE TAKE NOTICE THAT** on [●], 2025, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. [●]] (the "Conditional Disclosure Statement Order"):  (a) authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit votes on the *First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation package; (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan; and (e) granting related relief.

**PLEASE TAKE FURTHER NOTICE THAT** as contemplated under the Plan and the Conditional Disclosure Statement Order, the Debtors filed the Plan Supplement on [●], 2025 [Docket No. [●]].  The Plan Supplement, as defined in the Plan, means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed initially by the Debtors no later than the Plan Supplement Filing Date and may include the following, as applicable:  (a) Assumed and Assigned Executory Contracts and Unexpired Leases Schedule, (b) Schedule of Retained Causes of Action; (c) the Wind-Down Transactions Memorandum; and (d) additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are:  Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343).  The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2]    Capitalized terms not otherwise defined herein have the same meaning as set forth in the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan (the "Combined Hearing") will commence on **October 29, 2025, at 2:00 p.m., prevailing Eastern Time** before the Honorable Judge Brendan L. Shannon, in the United States Bankruptcy Court for the District of Delaware, located at 824 North Market St., 6th Floor, Wilmington, DE 19801.

**PLEASE TAKE FURTHER NOTICE THAT** the deadline for filing objections to the Plan and/or final approval of the Disclosure Statement is **October 14, 2025, at 4:00 p.m., prevailing Eastern Time** (the "Plan Objection Deadline"). Any such objections ***must***: (a) be in writing; (b) conform to the Bankruptcy Code, Bankruptcy Rules, the Local Rules, and any orders of the Court; (c) state, with particularity, the basis and nature of any objection to the Plan or Disclosure Statement and, if practicable, a proposed modification to the Plan that would resolve such objection; and (d) be filed with the Court on or before the Plan Objection Deadline.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Conditional Disclosure Statement Order, the Plan, the Plan Supplement, or related documents, you should contact Omni Agent Solutions, Inc., the claims and noticing retained by the Debtors in these chapter 11 cases (the "Claims and Noticing Agent"), by: (a) writing via first class mail, to Claire's Holdings LLC Ballot Processing Center, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Ste 100, Woodland Hills, CA 91367; (b) writing via electronic mail to ClairesInquiries@OmniAgnt.com (with "Claire's Holdings LLC Solicitation Inquiry" in the subject line); or (c) calling the Debtors' restructuring hotline at (888) 202-5971 (U.S./Canada, toll-free) or +1 (747) 293-0183 (International, toll). You may also obtain copies of any pleadings filed in these chapter 11 cases (i) for a fee via PACER at https://www.deb.uscourts.gov or (ii) at no charge from Omni Agent Solutions, Inc. by accessing the Debtors' restructuring website at https://omniagentsolutions.com/Claires.

---

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.C CONTAINS A THIRD-PARTY RELEASE**. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE CLAIMS AND NOTICING AGENT.**

---

Dated:  [●], 2025
Wilmington, Delaware

/s/ DRAFT
_____

**RICHARDS, LAYTON & FINGER, P.A.**
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Clint M. Carlisle (No. 7313)
Colin A. Meehan (No. 7237)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:       (302) 651-7700
Facsimile:       (302) 651-7701
Email:           defranceschi@rlf.com
                 heath@rlf.com
                 shapiro@rlf.com
                 carlisle@rlf.com
                 meehan@rlf.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900
Email:           joshua.sussberg@kirkland.com
                 allyson.smith@kirkland.com

- and -

Alexandra F. Schwarzman, P.C. (admitted *pro hac vice*)
Robert A. Jacobson (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200
Email:           alexandra.schwarzman@kirkland.com
                 rob.jacobson@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

## **Exhibit 8**

**Form of Notice of Assumption of Executory Contracts and Unexpired Leases**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (BLS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## NOTICE OF (A) EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES
## TO BE ASSUMED OR ASSUMED AND ASSIGNED BY
## THE DEBTORS PURSUANT TO THE PLAN, (B) CURE AMOUNTS,
## IF ANY, AND (C) RELATED PROCEDURES IN CONNECTION THEREWITH

**PLEASE TAKE NOTICE THAT** on [●], 2025, the United States Bankruptcy Court for the District of Delaware (the "Court") entered an order [Docket No. [●]] (the "Conditional Disclosure Statement Order"): (a) authorizing the above-captioned debtors and debtors in possession (collectively, the "Debtors") to solicit votes on the *First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Plan");[2] (b) conditionally approving the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No. [●]] (as modified, amended, or supplemented from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation package; (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan; and (e) granting related relief.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors filed the *Assumed Executory Contract and Unexpired Lease List* [Docket No. [●]] (the "Schedule of Assumed Executory Contracts and Unexpired Leases") with the Court as part of the Plan Supplement on [●], 2025 as contemplated under the Plan. The Debtors' determination to assume or assume and assign under the Plan the agreements identified on the Schedule of Assumed Executory Contracts and Unexpired Leases is subject to ongoing review, revision, and further negotiation among the Debtors and interested parties with respect thereto.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are:  Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343).  The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2]    Capitalized terms not otherwise defined herein have the same meaning as set forth in the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan and final approval of the Disclosure Statement (the "Combined Hearing") will commence on **October 29, 2025, at 2:00 p.m., prevailing Eastern Time**, before the Honorable Judge Brendan L. Shannon, in the United States Bankruptcy Court for the District of Delaware, located at 824 North Market St., 6th Floor, Wilmington, DE 19801.

**PLEASE TAKE FURTHER NOTICE THAT** you are receiving this notice because the Debtors' records reflect that you are a party to a contract that is listed on the Schedule of Assumed Executory Contracts and Unexpired Leases.  Therefore, you are advised to carefully review the information contained in this notice and the related provisions of the Plan, including the Schedule of Assumed Executory Contracts and Unexpired Leases.

**PLEASE TAKE FURTHER NOTICE THAT** the Debtors are proposing to assume or assume and assign the Executory Contract(s) and Unexpired Lease(s) listed in **Addendum A** attached hereto to which you are a party.[3]

**PLEASE TAKE FURTHER NOTICE THAT** section 365(b)(1) of the Bankruptcy Code requires a chapter 11 debtor to cure, or provide adequate assurance that it will promptly cure, any defaults under executory contracts and unexpired leases at the time of assumption.  Accordingly, the Debtors have conducted a thorough review of their books and records and have determined the amounts required to cure defaults, if any, under the Executory Contract(s) and Unexpired Lease(s), which amounts are listed in **Addendum A**.  Please note that if no amount is stated for a particular Executory Contract or Unexpired Lease, the Debtors believe that there is no cure amount outstanding for such contract or lease.

**PLEASE TAKE FURTHER NOTICE THAT** any monetary defaults under an Assumed Executory Contract or Unexpired Lease, as reflected on the Cure Notice and identified in **Addendum A**, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date, subject to the limitations described in Article V.D of the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (a) the amount of any payments to cure such a default, (b) the ability of the Debtors or any assignee, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (c) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the

---

[3]  Nothing contained in the Plan or the Plan Supplement shall constitute an admission by the Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder.  Notwithstanding anything to the contrary in the Plan, the Debtors reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases Schedule as identified in Article V of the Plan and in the Plan Supplement.  The Debtors shall provide notice of any amendments to the Assumed Executory Contracts and Unexpired Leases Schedule to the parties to the Executory Contracts or Unexpired Leases affected thereby.  For the avoidance of doubt, Article V of the Plan relates to Executory Contracts or Unexpired Leases other than such agreements assumed, assumed and assigned, or rejected in accordance with the terms of the Approval Orders.

Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.[4]

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to Section C of the *Solicitation and Voting Procedures* approved by the Court pursuant to the Conditional Disclosure Statement Order, any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption or assumption and assignment or related cure amount must be Filed, served, and actually received by the Debtors by no later than fourteen (14) days after actual receipt of this Notice, *provided* that, if the Debtors modify the Assumed Executory Contract or Unexpired Lease List, any party affected by such modifications shall have fourteen (14) days to object to the proposed modified treatment from the date of their receipt of notice of such modification.

**PLEASE TAKE FURTHER NOTICE THAT any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, assumption and assignment, or cure amount will be deemed to have assented to such assumption, assumption and assignment, or cure amount.**

**PLEASE TAKE FURTHER NOTICE THAT ASSUMPTION OR ASSUMPTION AND ASSIGNMENT OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING UNDER ANY ASSUMED OR ASSUMED AND ASSIGNED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE DATE OF THE DEBTORS OR WIND-DOWN DEBTORS ASSUME OR ASSUME AND ASSIGN SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE.  ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED OR ASSUMED AND ASSIGNED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT.**

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Omni Agent Solutions, Inc., the claims and noticing agent retained by the Debtors in these chapter 11 cases (the "Claims and Noticing Agent"), by:  (a) writing via first class mail, to Claire's Holdings LLC Ballot Processing Center, c/o Omni Agent Solutions, Inc., 5955 De Soto Ave., Ste 100, Woodland Hills, CA 91367;  (b) writing via electronic mail to ClairesInquiries@OmniAgnt.com (with "Claire's Holdings LLC Solicitation Inquiry" in the subject line); or (c) calling the Debtors' restructuring hotline at (888) 202-5971 (U.S./Canada, toll-free) or +1 (747) 293-0183 (International, toll).  You may also obtain copies of any pleadings filed in these chapter 11 cases (i) for a fee via PACER at https://www.deb.uscourts.gov or (ii) at no

---

[4]   The Plan provisions referenced herein are for summary purposes only and do not include all provisions of the Plan that may affect your rights.  If there is any inconsistency between the provisions set forth herein and the Plan, the Plan governs.

charge from Omni Agent Solutions, Inc. by accessing the Debtors' restructuring website at https://omniagentsolutions.com/Claires.

---

ARTICLE VIII OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND **ARTICLE VIII.C CONTAINS A THIRD-PARTY RELEASE**.  THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY. IF YOU HAVE QUESTIONS WITH RESPECT TO YOUR RIGHTS UNDER THE PLAN OR ABOUT ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, CONTACT THE CLAIMS AND NOTICING AGENT.**

---

Dated:  [●], 2025
Wilmington, Delaware

/s/ DRAFT

**RICHARDS, LAYTON & FINGER, P.A.**
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Clint M. Carlisle (No. 7313)
Colin A. Meehan (No. 7237)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:      (302) 651-7700
Facsimile:      (302) 651-7701
Email:          defranceschi@rlf.com
                heath@rlf.com
                shapiro@rlf.com
                carlisle@rlf.com
                meehan@rlf.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com
                allyson.smith@kirkland.com

- and -

Alexandra F. Schwarzman, P.C. (admitted *pro hac vice*)
Robert A. Jacobson (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200
Email:          alexandra.schwarzman@kirkland.com
                rob.jacobson@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

*Proposed Co-Counsel for the Debtors and Debtors in Possession*