## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | Case No. 25-11454 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Re: D.I. 375** |

## OBJECTION OF SALESFORCE, INC. TO THE PROPOSED ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND CURE COSTS, IN CONNECTION WITH THE SALE AND RESERVATION OF RIGHTS

Salesforce, Inc. (fka salesforce.com, inc.) ("Salesforce"), by and through their undersigned counsel, hereby files its limited objection and reservation of rights (the "Assumption Objection")[2] to the assumption and/or assumption and assignment of the executory contract (the "Salesforce Contract")[3] identified by Salesforce and/or any other executory contracts to which Salesforce is a counterparty other than the Salesforce Contract(the "Additional Salesforce Contracts")[4] pursuant to: (A) the Sale Motion[5] and/or any other motion seeking entry of an order approving and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are: Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343). The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2] Defined Terms used in this Assumption Objection, but which are not specifically defined herein, shall have the meanings ascribed to them in the Ramirez Declaration filed concurrently herewith.

[3] The Salesforce Contract includes: (A) the agreements and orders identified at ¶8 the Ramirez Declaration filed concurrently herewith; and (B) any and all additional agreements and orders that hereinafter are determined to be executory contracts that must be assumed pursuant to the Sale, the Cure Notice and/or any Assumption Motion in order for the Debtors or their assigns (including any Excluded Contracts as identified in paragraph 26 of this Assumption Objection), as applicable, to realize the same Salesforce Services as currently enjoyed by the Debtors.

[4] The Additional Salesforce Contracts include, without limitation, the "Excluded Contracts" identified in paragraph 26 of this Assumption Objection.

[5] *See, Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Sale of Going-Concern Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests and (II) Granting Related Relief* [D.I. 190].

authorizing the assumption and/or assignment of any Additional Salesforce Contracts (the "Additional Assumption Motions"); (B) the Cure Notice[6] and any other notice(s) filed by the Debtors identifying any executory contracts the Debtors seek to assume and/or assign any executory contract to which Salesforce is a counterparty (the "Additional Cure Notices"); and/or (C) any plan of reorganization (a "Plan") that provides for the potential assumption and/or assumption and assignment of the Salesforce Contract and/or any Additional Salesforce Contracts *unless* the order approving and authorizing the assumption of any or all of the Collective Salesforce Contracts (as defined below) (the "Assumption Order"), any order approving any sale ("Sale") of any Assets (as defined below) and/or any order confirming a Plan (a "Confirmation Order") as applicable, includes the specific provisions and relief substantially as requested in this Assumption Objection.

## RELIEF REQUESTED

Salesforce contends that: (A) the Salesforce Contract includes certain agreements and orders[7], and (B) any and all Additional Salesforce Contracts that hereinafter are determined must be assumed in order for the Debtors or their assigns, as applicable, to realize the same Salesforce Services (as defined below)[8] as currently enjoyed by the Debtors, constitute a single integrated contract that must be assumed *in toto*.

Accordingly, Salesforce seeks entry of the Assumption Order (or the Sale Order or a Confirmation Order, as applicable) protecting its rights and interests that includes the following provisions and relief:

---

[6]    *See, Second Supplemental Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases* [D.I. 375] (the "Cure Notice").

6.  *See* ¶8 of the Ramirez Declaration filed concurrently herewith.

[8]    *See* ¶2 of the Ramirez Declaration filed concurrently herewith.

A.      Findings of fact stating that: (1) the Salesforce Contract and the Additional Salesforce Contracts, as applicable (collectively, the "Collective Salesforce Contracts") includes several related agreements and orders that, taken together, provide the Debtors with the comprehensive Salesforce Services and these agreements and orders and constitute an integrated executory contract for purposes of assumption and assignment of executory contracts pursuant to 11 U.S.C. §365 and §1129, as applicable; (2) the Collective Salesforce Contracts constitute executory contracts subject to assumption and assignment pursuant to (i) 11 U.S.C. §365, (ii) the Sale Motion and the Additional Assumption Motions (collectively, the "Applicable Assumption Motions"), (iii) the Cure Notice and the Additional Cure Notices (collectively, the "Applicable Cure Notices"), and/or (iv) any Plan; (3) an aggregate monetary default (the "Salesforce Cure Amount") exists pursuant to the Salesforce Contract, which includes: (i) not less than **$1,151,054.69** that is due and owing, but unpaid, as of the date of the Ramirez Declaration (the "Current Monetary Default"), and (ii) such further monetary default amounts (the "Future Monetary Default") that may accrue from and after the date of the Ramirez Declaration through the date the assumption of the Salesforce Contract becomes effective (the "Effective Assumption Date"), and (iii) any and all monetary defaults (collectively, the "Additional Salesforce Contract Monetary Default") that may accrue through the Effective Assumption Date, but which remain unpaid as of that date, with respect to any Additional Salesforce Contract or any other executory contract not listed on the Cure Notice (including any and all Excluded Contracts)[9] but which are identified as executory contracts that may be assumed pursuant to the Applicable Assumption Motions, the Applicable Cure Notices and/or a Plan;

B.      The requirement that, as a condition of approving and authorizing the assumption

---

[9] *See* ¶¶25 and 26 of this Assumption Objection with respect to Salesforce's *Reservation of Rights*.

of the Salesforce Contract and/or any Additional Salesforce Contract pursuant to the Applicable Assumption Motions, the Applicable Cure Notices and/or a Plan, the Debtors shall: (1) provide Salesforce with specific information identifying any and all agreements and orders (including the executory contract to which Salesforce is a counterparty that currently is listed in the Cure Notice) that may be assumed pursuant to the Applicable Assumption Motions, the Applicable Cure Notices and/or a Plan;  (2) serve Salesforce with a revised Cure Notice (the "Revised Cure Notice") listing: (i) all agreements and orders constituting the Salesforce Contract and all Additional Salesforce Contracts that the Debtors seek to assume and/or assign, and (ii) the monetary defaults the Debtors contend must be cured with respect to Salesforce Contract and all Additional Salesforce Contracts that the Debtors seek to assume and/or assign; and (3) pay not less than the aggregate Salesforce Cure Amount to cure the monetary defaults with respect to the Salesforce Contract and all Additional Salesforce Contracts that the Debtors seek to assume and/or assign through the Effective Assumption Date;

C.      The requirement that, if the Salesforce Contract is assumed and, thereafter, assigned in connection with the Sale and/or pursuant to any Applicable Assumption Motions or a Plan, the Debtors shall (1) identify the prospective assignee (the "Prospective Assignee") of the Salesforce Contract who will be obligated to perform all terms and conditions of such assigned contract and (2) not later than five (5) business days prior to the initial hearing set to consider approval of the assignment of the Salesforce Contract, provide adequate assurance of the ability of the Prospective Assignee to perform all terms and conditions of the Salesforce Contract (including, without limitation, payment of the Salesforce Cure Amount, the extension period fees (if any), the renewal contract fees (if any) and any and all other amounts due in conjunction with the Salesforce Contract).

D.      The requirement that, in the event the Salesforce Contract is not assumed pursuant to the Applicable Assumption Motions, the Applicable Cure Notices or a Plan, the Court shall enter an order (a "Rejection Order"): (1) approving and authorizing the rejection of the Salesforce Contract and any Additional Salesforce Contract, as applicable; (2) specifying the date such rejection shall be effective (the "Effective Rejection Date"); (3) terminating the automatic stay imposed by 11 U.S.C. §362 (the "Stay") as it pertains to the Salesforce Contract and any Additional Salesforce Contract, as applicable; (4) expressly authorizing, but not requiring, Salesforce to terminate the Salesforce Contract and any Additional Salesforce Contract, as applicable, without further order of the Court; (5) expressly terminating any and all obligations of  Salesforce to provide any Salesforce Services to the Debtors or any Salesforce Transition Services (as referenced in subparagraph F, below), from and after the Effective Rejection Date; and (6) authorizing all such relief shall be effective on the Effective Rejection Date without: (i) Salesforce being required to file a separate motion seeking termination of the Stay, or (ii) the Court entering any other order terminating the Stay;

E.      The requirement that, pursuant 11 U.S.C. §§503 and 507, the Debtors and their respective bankruptcy estates (the "Bankruptcy Estates") shall be obligated to pay all amounts due with respect to all Salesforce Services and/or goods (the "Salesforce Administrative Expense") provided to the Bankruptcy Estates from and after the Petition Date (as defined herein) through the latter of, as applicable: (1) the Effective Assumption Date, or (2) in the event the Salesforce Contract and any Additional Salesforce Contract, as applicable, is rejected, through the Effective Rejection Date.

F.      The requirement that if: (1) pursuant to the Sale, the Debtors sell, convey and/or transfer some or all of their Assets and/or business operation to a third party (the "Buyer") pursuant

to the Sale Motion, or any order entered by the Court and (2) the Debtors and/or Buyer requests that any Salesforce Services (the "Salesforce Transition Services") be provided to the Debtors, their Bankruptcy Estates and/or the Buyer in connection with, or subsequent to approval of, the Sale, pursuant to: (i) an agreement by and between the Debtors or other authorized representative of the Bankruptcy Estates and the Buyer (a "Transition Services Agreement"), or (ii) a Court order (a "Transition Services Order") the Debtors and their Bankruptcy Estates shall be obligated pay any and all amounts that are due and owing (the "Salesforce Transition Services Claim") with respect to the Salesforce Services provided from and after Petition Date to the Effective Rejection Date; *provided that* (3) the Transition Services Agreement and/or Transition Services Order, as applicable, specifically provide (i) Salesforce's obligation to provide the Salesforce Transition Services shall terminate on the Effective Rejection Date applicable to the Salesforce Contract *unless* Salesforce, in its sole discretion, agrees to provide Salesforce Services after the Effective Rejection Date to the Debtors, the Bankruptcy Estates or the Buyer, as applicable, on such terms and conditions as agreed by Salesforce, (ii) the Buyer is responsible for payment of all amounts due and owing for the any Salesforce Services provided after the Effective Rejection Date (the "Post-Rejection Services Obligation"), and (iii) payment of the Post-Rejection Services Obligation does not constitute a waiver or release of Salesforce's rights to payment of the Salesforce Transition Services Claim incurred prior to the Effective Rejection Date pursuant to 11 U.S.C. §503 and 507 or derogate Salesforce's right to assert an administrative expense for all amounts due with respect to any and all Salesforce Services and/or goods (*i.e.*, a Salesforce Administrative Expense) provided to the Bankruptcy Estates from and after the Petition Date through the latter of, as applicable (1) the Effective Assumption Date, or (2) in the event the Salesforce Contract is rejected, through the Effective Rejection Date;

G.      Approval of the Reservation of Rights (as set forth in this Assumption Objection); and

H.      Granting such other relief as may be just and proper under the facts and circumstances of the Bankruptcy Cases.

This Assumption Objection is based on the matters set forth herein, the *Declaration of Kevin Ramirez in Support of the Objection of Salesforce, Inc. to the Proposed Assumption of Certain Executory Contracts and Cure Costs, in Connection with the Sale and Reservation of Rights* (the "Ramirez Declaration") filed in support hereof, the files and the records in this case, and such other and further evidence as may be submitted at or before the hearing on this matter.

Salesforce requests that the Court take judicial notice of the pleadings filed in this case and the facts set forth in the Court's orders, findings of fact and conclusions of law pursuant to Rule 201 of the Federal Rules of Evidence (as incorporated by Rule 9017 of the Federal Rules of Bankruptcy Procedure).

## **BACKGROUND**

1.      Salesforce is a Delaware corporation, and, among other activities, it provides on-demand customer relationship management and software application services (collectively, the "Salesforce Services") to Salesforce's business customers (individually, a "Salesforce Customer" and, collectively, "Salesforce Customers").[10]

2.      Prior to August 6, 2025, (the "Petition Date"), the Debtors entered into those certain order forms listed on the Cure Amount Summary[11] (the "Order Forms"), which are governed by that certain *Master Subscription Agreement* (the "MSA") (the MSA and the Order

---

[10]      *See* Ramirez Declaration at ¶2.
[11]      The Cure Amount Summary is attached to the Ramirez Declaration as Exhibit A and is incorporated by reference here in as if fully set forth.

Forms, collectively, constitute the Salesforce Contract) as identified on the Cure Amount Summary.[12]

3.        Pursuant to the Salesforce Contract: (i) the Debtors ordered certain Salesforce Services and became obligated to pay in full the aggregate amounts due pursuant to this contract with respect to such services; (ii) Salesforce became obligated to provide the Salesforce Services to the Debtors; (iii) Salesforce has provided such services to the Debtors; and (iv) the Debtors accepted and utilized the Salesforce Services provided pursuant to the Salesforce Contract.[13]

4.        On the Petition Date, Claire's Holdings LLC and each of the other Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Court") and, thereby, commenced their individual cases under chapter 11 (collectively, the "Bankruptcy Cases").

5.        On August 6, 2025, the Court entered its order directing the joint administration of the Bankruptcy Cases (but not substantively consolidated consolidating such cases).[14]

6.        On August 20, 2025, the Debtors' filed their motion (the "Sale Motion") seeking entry of an order (the "Sale Order") authorizing and approving: (A) the Sale of the Debtors' assets to the Buyer; (B) the Debtors' entry into that certain Asset Purchase Agreement dated August 18, 2025 between the Debtors as Sellers and AWS Claire's LLC as the Buyer (the "APA") performance thereunder, including consummating the Sale on the terms and conditions provided therein;   (C) the assumption and assignment of certain executory contracts (the "Purchased Contracts") (to be identified by the Debtors) to the Buyer; and (D) the procedures set forth in the

---

[12] Due to the confidentiality provisions of the MSA, a copy of the Salesforce Contract and related invoices (the "Invoices") are not attached to this Declaration. However, subject to appropriate non-disclosure protections, a copy of the Salesforce Contract and the Invoices will be made available in connection with this Assumption Objection, if requested.

[13] *See,* Ramirez Declaration at ¶9.

[14] *See, Order (I) Directing the Joint Administration of Chapter 11 Cases And (II) Granting Related Relief* [D.I. 79].

APA for the assumption and assignment of the Purchased Contracts, and the manner of notice

regarding such assumption and assignment of the Purchased Contracts.[15]

7.      Pursuant to the Sale Motion, on or about September 8, 2025, the Debtors filed the

Cure Notice[16], which identifies: (i) certain executory contracts that may be assumed pursuant to

the Sale Motion (individually, a "Potentially Assumed Contract" and, collectively, the "Potentially

Assumed Contracts"), including an executory contract to which Salesforce is the counterparty (the

"Cure Notice Contract"), and (ii) the cure amount (the "Debtors' Proposed Cure Amount") that

must be cured as a condition of the assumption of the Cure Notice Contract:

*(Chart to follow on next page)*

---

[15] *See, Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Sale of Going-Concern Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests and (II) Granting Related Relief* [D.I. 190] (the "Sale Motion").
[16] *See, Second Supplemental Notice of Potential Assumption or Assumption and Assignment of Certain Contracts or Leases* [D.I. 375] (the "Cure Notice").

| Contract Counterparty | Debtor Entity | Contract Description | Proposed Cure Amount | |
|---|---|---|---|---|
| Salesforce | | | $ | - |
| | Claire's Holdings LLC | Service Agreement | | |
| Salesforce, Inc. | | | $ | - |
| | Claire's Holdings LLC | Service Agreement | | |
| | Claire's Stores, Inc. | Order Form | | |
| Salesforce.com | | | $ | - |
| | Claire's Boutiques, Inc. | Order Form | | |
| Salesforce.com Canada Corporation | | | $ | - |
| | Claire's Stores, Inc. | Data Processing Addendum | | |
| Salesforce.com France S.A.S. | | | $ | - |
| | Claire's Stores, Inc. | Data Processing Addendum | | |
| Salesforce, Inc. | | | $ | 9.35 |
| | Claire's Holdings LLC | ADDITIONAL 5 SERVICE CLOUD LICENSES FOR CONCESSION LEADERSHIP | | |
| | Claire's Holdings LLC | SALESFORCE BOPIS APP - 38 MONTH AGREEMENT | | |
| | Claire's Holdings LLC | SALESFORCE BOPIS APP - 38 MONTH AGREEMENT - SALESFORCE CONTRACT 2577286 | | |
| | Claire's Holdings LLC | SALESFORCE INC - SALESFORCE MARKETING CLOUD | | |
| | Claire's Holdings LLC | SALESFORCE INC - SOW001-CO002 CHANGE ORDER TO CLAIRE'S - OMS PROJECT SOW | | |
| | Claire's Holdings LLC | SALESFORCE INC. PROFESSIONAL SERVICES AGREEMENT | | |
| | Claire's Holdings LLC | SALESFORCE MASTER SERVICE AGREEMENT | | |
| | Claire's Holdings LLC | SALESFORCE OMS & CONTENT MANAGEMENT SYSTEM - 48 MONTH AGREEMENT | | |
| | Claire's Holdings LLC | SALESFORCE SALES CLOUD LICENSES | | |
| | Claire's Holdings LLC | SALESFORCE SUPPORTING DOCUMENT - MULESOFT ACQUISITION | | |
| | Claire's Holdings LLC | SALESFORCE, INC - 250X LICENSES (NEW STORES) | | |
| | Claire's Holdings LLC | SALESFORCE, INC - PROFESSIONAL SERVICES (HEROKU) | | |
| Salesforce.com, Inc. | | | $ | - |
| | CBI Distributing Corp. | Professional Services Agreement | | |
| | Claire's Stores, Inc. | Data Processing Addendum | | |
| | Claire's Stores, Inc. | Order Form | | |

8.      The Cure Notice states that any objection to the proposed assumption and assignment, the lack of adequate assurance of future performance of the Purchaser, or the Cure Cost proposed with respect thereto, must be filed with the Court on or before 4:00 p.m. (ET) on September 18, 2025 (the "Assumption Objection Deadline").

## **THE CURE AMOUNT**

9.      Salesforce's books and records that are pertinent to the Debtors' account show that: (A) the executory contract identified as the Cure Notice Contract on the Cure Notice does not match the description of the Salesforce Contract as listed on Salesforce's records; (B) the Salesforce Contract is correctly identified on Exhibit "A", the Cure Amount Summary, attached to the Ramirez Declaration; and (C) as of the date of the date of the Ramirez Declaration, Salesforce's records show that the Debtors have failed to pay all Fees due and owing pursuant to the Salesforce Contract in an amount not less than **$1,151,054.69** (the "Salesforce Cure Amount") and such amount must be paid by the Debtors as a condition of the assumption of the Salesforce Contract (notably, $1,099,310.34 of the Salesforce Cure Amount does not become past due until October 9, 2025).[17]

10.      To the extent the Cure Notice does not correctly identify all of the Potentially Assignable Contracts (to which Salesforce is a counterparty) that may be assumed and assigned, it is possible that the Salesforce Cure Amount may be increased or decreased once the actual executory contracts to be assumed and assigned are determined.

## **FUTURE PAYMENTS**

11.      If the Salesforce Contract is assumed in connection any of the Sale, the Sale Motion, any Applicable Assumption Motions and/or a Plan, not less than an aggregate amount of $455,000.00 (*i.e.,* the Future Payments) will become due and owing pursuant to the Salesforce Contract.[18]

---

[17] *See* Ramirez Declaration at ¶15.
[18] *See* Ramirez Declaration at ¶16.

50777090v.2

## GROUNDS FOR THE RELIEF REQUESTED

### The Salesforce Contract Constitutes an Integrated Contract
### That Must Be Assumed in Its Entirety

12.     Pursuant to the U.S. Bankruptcy Code, a debtor-in-possession has the power, with court approval, to assume or reject any executory contract or unexpired lease.  11 U.S.C. §365(b)(1)(A).  As a practical matter, a commercial relationship often includes several agreements that, taken together, constitute an integrated contract.  Therefore, a threshold issue for the Court in determining whether to approve the assumption of any executory contract is to identify the agreements that constitute the "executory contract" at issue.  *Lewis Bros. Bakeries, Inc. v. Interstate Brands Corp. (In re Interstate Bakeries Corp.),* 751 F.3d 955, 961 (8th Cir.2014) (To determine the applicability of this provision, the Court "must first identify what constitutes the agreements at issue.")

13.     Where multiple agreements are intended to comprise one contract or transaction, a party may not sever them for purposes of assumption or rejection.  "[A]ll of the contracts that comprise an integrated agreement must be either assumed or rejected, since they all make up one contract."  *In re LG Philips Displays USA, Inc.,* No. 06–10245(BLS), 2006 WL 1748671, at *4 (Bankr. D. Del. June 21, 2006); accord *In re Buffets Holdings, Inc.,* 387 B.R. 115, 120 (Bankr. D. Del. 2008) (holding that two master leases incorporating twenty-one individual leases in twelve states were integrated, signed for the purpose of bundling and monetizing existing leases, were integrated with their subsidiary leases, and each lease group had to be assumed or rejected in its entirety).

14.     In determining whether a series of agreements constitute an integrated contract or separate contracts, the intention of the parties is the first and foremost factor considered by a Court. *Fuentes v. TMCSF, Inc.*, 26 Cal. App. 5th at 548, 237 Cal. Rptr. 3d at 261 *citing Goodman v.*

*Severin* (1969) 274 Cal.App.2d 885, 895, 79 Cal. Rptr. 555; *accord Stewart Title Guar. Co., supra,* 83 F.3d at 739 ("Determination of the issue depends primarily on the intention of the parties, the subject matter of the agreement, and the conduct of the parties".   In addition, the subject matter of the agreement, and the conduct of the parties with respect to entering into the contract are critical factors in determining whether a contract constitutes one, integrated contract or a series of separate agreements.  *Stewart Title Guar. Co. supra,* 83 F.3d at 739; *accord, In re Ferguson,* 183 B.R. 122, 124 (Bankr.N.D.Tex.1995).   Further, in construing a contract, its unambiguous language alone will generally be deemed to express the intent of the parties.  *Norman v. Apache Corp.,* 19 F.3d 1017, 1024 (5th Cir. 1994); *accord, Pirinate Consulting Corp, LLC v. C.R. Meyer & Sons, Co. (In re Newpage Corporation)*, 2017 WL 571478 at * 5.

15.    Here, the terms and conditions applicable to the Salesforce Services that are subject to the Salesforce Orders are set forth in the *Master Subscription Agreement (i.e.,* the MSA) and as noted, the MSA together with the Salesforce Orders, constitute the Salesforce Contract.  The Salesforce Contract (by the terms of the MSA) provides that California law is the governing law of the Salesforce Contract.[19]

16.    Salesforce submits that the Debtors and Salesforce intended the Salesforce Contract – consisting of the Salesforce Orders and the MSA– to provide a range of specific Salesforce Services that, taken together, comprise a comprehensive business solution.  This integrated business solution is embodied in the Salesforce Contract by providing an integrated on-demand customer relationship management and software application package for the Debtors.  Clearly, the

---

[19] Each of the Orders constituting the Salesforce Contract are governed by the terms of an applicable MSA. *See* Ramirez Declaration at ¶8.  The "Governing Law" sections of the MSA applicable to the Salesforce Contract specify California law as the applicable law governing the Salesforce Contract.  [*See* §13.1 of the MSA]. As previously noted, due to the confidentiality provisions of the Salesforce Contract, these agreements have not been filed with the Court but Salesforce will make such agreements available subject to appropriate non-disclosure agreements and/or Court orders.

Debtors and Salesforce intended to create an integrated business solution for the Debtors by creating a comprehensive set of services and software applications and this integrated contract is comprised of the Salesforce Orders and the MSA.  In short, the individual Salesforce Orders and the MSA comprise a single, integrated contract—i.e. the Salesforce Contract.

17.     Further, in order for the Debtors to recreate the business functionality enjoyed by the Debtors, and to utilize any intellectual property or data created pursuant to the Salesforce Contract, Salesforce contends that the Buyer here must have the Salesforce Contract assumed and assigned to it by the Debtors.  Because the MSA is incorporated into each Salesforce Order, these agreements are tied together as one integrated contract that must either be assumed or rejected *in toto*.  Accordingly, Salesforce submits that the entire Salesforce Contract – that is, the MSA *and* all of Salesforce Orders identified on Exhibit "A" to the Ramirez Declaration – constitute a single, integrated executory contract that must be assumed *in toto.*

18.     Ultimately, in order for the Debtors (or any Prospective Assignees in the event of Salesforce Contract is assigned by the Debtors) to utilize the same Salesforce Services after assumption of the Salesforce Contract as the Debtors have utilized until now, the entire Salesforce Contract has to be assumed and assigned to the eventual assignee.

### All Defaults Under an Assumed Contract Must Be Cured

19.     Where (as in the case before the Court) a debtor has defaulted on an executory contract, the Bankruptcy Code prohibits the debtor from assuming the contract unless the debtor:

(A)     cures, or provides adequate assurance that the [debtor] will promptly cure, such default . . . .

(B)     compensates, or provides adequate assurance that the [debtor] will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C)     provides adequate assurance of future performance under such contract or lease.

-14-

*See* 11 U.S.C. §365(b)(1)(A).

20.     "Once an assumption order is entered, the creditor must perform in accordance with the terms of the assumed agreements. . .  In other words, the debtor must cure all defaults, assure future performance, and make the other contracting party whole before it may be permitted to assume the agreement."  *In re Kiwi Intern. Air Lines, Inc.*, 344 F.3d 311, 318 (3rd Cir. 2003); *cf. In re Columbia Gas System Inc.,* 50 F.3d 233, 238–39 (3d Cir.1995) ("the Bankruptcy Code provides that the cost of performing the debtor's obligations is an administrative expense of the estate. . . ."). Here, Salesforce's books and records show that: (A) the Debtors have failed to pay all Fees due and owing pursuant to the Salesforce Contract, and (B) as of the date of the Ramirez Declaration, an amount not less than **$1,151,054.69** (*i.e.,* the Salesforce Cure Amount) is due and owing, but unpaid, pursuant to the Salesforce Contract.[20]

21.     Further, if the Salesforce Contract is assumed, not less than an aggregate amount of $455,000.00 (*i.e.,* the Future Payments) will become due and owing pursuant to the Salesforce Contract.[21]

### Assignment of the Executory Contract and Unexpired Lease

22.     The Bankruptcy Code permits assignment of an unexpired executory contract or unexpired lease only if: (A) the debtor in possession or trustee assumes the contract or lease in accordance with 11 U.S.C. §365(b)(1), and (B) the assignee provides adequate assurance of future performance of such contract or lease, whether or not there has been a default in such contract or lease.  *See* 11 U.S.C. §365(f)(1), (2)(A) and (B); *In re Fleming Companies, Inc*., 499 F.3d 300, 305 (3d Cir. 2007) (assignment denied where the prospective assignee cannot perform a material and significant term of the agreement). Determining whether an assignee has provided adequate

---

[20]  *See* Ramirez Declaration at ¶15 and Exhibit "A".

[21]  *See* Ramirez Declaration at ¶16 and Exhibit "A".

assurance of its ability to perform the contract in the future "must be determined by consideration of the facts of the proposed assumption." *In re Fleming Companies, Inc.,* 499 F.3d at 307. Adequate assurance of future performance must be provided before an assignment may be authorized even if the executory contract at issue is not in default (*e.g.*, a monetary default has been cured as a condition of assumption pursuant to 11 U.S.C. §365(b)(1)). *Id.*, 499 F.3d at 305).

23.     Additionally, the non-debtor counterparty to the executory contract that may be assumed and assigned (such as Salesforce) is entitled to notice of the identity of the actual assignee and to demand adequate assurance of future performance by that specific assignee. *In re Golden Books Family Entertainment, Inc.*, 269 B.R. 300 (Bankr. D. Del. 2001).

24.     Salesforce submits that, in order to adequately assess whether adequate assurance the Prospective Assignee's ability to perform all terms of the Salesforce Contract, it must be afforded not less than five (5) Business Days prior to the initial hearing set to consider approval of the proposed assignment in which it has the opportunity to review all information that the Debtors contend provides adequate assurance of future performance of the assigned contract by the Prospective Assignee.

### **RESERVATION OF RIGHTS**

25.     Salesforce does not object to assumption of the Salesforce Contract *per se, provided that* the Assumption Order includes the provisions and relief requested by the Assumption Objection.

26.     With respect to any and all other executory contracts and/or unexpired leases to which it is a counterparty (individually, an "Excluded Contract" and, collectively, the "Excluded Contracts") *other than the Salesforce Contract* (*i.e.,* any Additional Salesforce Contract) hereby expressly reserves (the "Reservation of Rights") all rights, interests, claims, counterclaims, rights of setoff and recoupment and/or defenses pertaining to any or all Excluded Contracts including, without limitation:

(a) the right to object to the assumption and/or assignment by the Debtors of any such Excluded Contract, (b) the right to payment of all monetary defaults and the cure of all non-monetary defaults that exist with respect to each such Excluded Contract, (c) the right to assert any Cure Costs due and owing with respect to any Additional Salesforce Contract(s) that hereinafter are designated for assumption and assignment by the Debtors, and/or (d) the right to have the assignment of any such Excluded Contract specifically conditioned on the Court finding, based on competent evidence, that the actual assignee of such contract is capable of performing all terms and conditions of such Excluded Contract including, without limitation, payment of all amounts that will come due and owing subsequent to any such assignment.

WHEREFORE, if the Court determines to approve assumption of the Salesforce Contract pursuant to any Assumption Motions (as defined in this Assumption Objection), Salesforce requests entry of an Assumption Order (and, Sale Order if applicable) protecting Salesforce's rights and interests by including the following findings of facts and relief:

A.      Findings of fact stating that: (1) the Salesforce Contract and the Additional Salesforce Contracts, as applicable (*i.e.*, the Collective Salesforce Contracts) includes several related agreements and orders that, taken together, provide the Debtors with the comprehensive Salesforce Services and these agreements and orders and constitute an integrated executory contract for purposes of assumption and assignment of executory contracts pursuant to 11 U.S.C. §365 and §1129, as applicable; (2) the Collective Salesforce Contracts constitute executory contracts subject to assumption and assignment pursuant to: (i) 11 U.S.C. §365, (ii) the Sale Motion and the Additional Assumption Motions (*i.e.,* Applicable Assumption Motions), (iii) the Cure Notice and the Additional Cure Notices (*i.e.,* the Applicable Cure Notices), and/or (iv) any Plan; (3) the Salesforce Cure Amount with respect to the Salesforce Contract includes: (i) not less

-17-

than **$1,151,054.69** that is due and owing, but unpaid, as of the date of the Ramirez Declaration (*i.e.,* the Current Monetary Default), and (ii) such Future Monetary Default that may accrue from and after the date of the Ramirez Declaration through the date the assumption of the Salesforce Contract becomes effective (*i.e.*, the Effective Assumption Date), and (iii) the Additional Salesforce Contract Monetary Default that may accrue through the Effective Assumption Date, but which remains unpaid as of that date, with respect to any Additional Salesforce Contract not listed on the Cure Notice (including any and all Excluded Contracts) but which are identified as executory contracts that may be assumed pursuant to the Applicable Assumption Motions, the Applicable Cure Notices and/or the Plan;

B.      The requirement that, as a condition of approving and authorizing the assumption of the Salesforce Contract and/or any Additional Salesforce Contract pursuant to Sale, the Sale Motion, anu other Applicable Assumption Motions, the Applicable Cure Notices and/or a Plan, the Debtors shall: (1) provide Salesforce with specific information identifying any and all agreements and orders that may be assumed pursuant to the Applicable Assumption Motions, the Applicable Cure Notices and/or a Plan;  (2) serve Salesforce with a Revised Cure Notice listing: (i) all agreements and orders constituting the Salesforce Contract and all Additional Salesforce Contracts that the Debtors seek to assume and/or assign, and (ii) the monetary defaults the Debtors contend must be cured with respect to Salesforce Contract and all Additional Salesforce Contracts that the Debtors seek to assume and/or assign; and (3) pay not less than the aggregate Salesforce Cure Amount to cure the monetary defaults with respect to the Salesforce Contract plus the Additional Salesforce Contract Monetary Default (if any) that accrues with respect to any and all Additional Salesforce Contracts that the Debtors seek to assume and/or assign through the Effective Assumption Date;

50777090v.2

C.      The requirement that, if the Salesforce Contract is assumed and, thereafter, assigned in connection with the Sale, the Sale Motion, any Applicable Assumption Motions or a Plan, the Debtors shall (1) identify the Prospective Assignee of the Salesforce Contract who will be obligated to perform all terms and conditions of such assigned contract and (2) not later than five (5) Business Days prior to the initial hearing set to consider approval of the assignment of the Salesforce Contract, provide adequate assurance of the ability of the Prospective Assignee to perform all terms and conditions of the Salesforce Contract (including, without limitation, payment of the Salesforce Cure Amount, the extension period fees (if any), the renewal contract fees (if any) and any and all other amounts due in conjunction with the Salesforce Contract);

D.      The requirement that, in the event the Salesforce Contract is not assumed pursuant to the Sale, any Applicable Assumption Motions or a Plan, the Court shall enter an a Rejection Order: (1) approving and authorizing the rejection of the Salesforce Contract and any Additional Salesforce Contracts, as applicable, (2) specifying the Effective Rejection Date (3) terminating the Stay imposed by 11 U.S.C. §362 as it pertains to the Salesforce Contract and any Additional Salesforce Contract, as applicable, (4) expressly authorizing, but not requiring, Salesforce to terminate the Salesforce Contract and any Additional Salesforce Contract, as applicable, without further order of the Court, (5) expressly terminating any and all obligations of Salesforce to provide any Salesforce Services to the Debtors or any Salesforce Transition Services, from and after the Effective Rejection Date, and (6) ordering that all such relief shall be effective on the Effective Rejection Date without (i) Salesforce being required to file a separate motion seeking termination of the Stay, or (ii) the Court entering any other order terminating the Stay;

D.      The requirement that, pursuant 11 U.S.C. §§503 and 507, the Debtors and their respective Bankruptcy Estates shall be obligated to pay all amounts due with respect to all

-19-

Salesforce Services, Transition Services and/or goods provided to the Bankruptcy Estates from and after the Petition Date through the latter of, as applicable: (1) the Effective Assumption Date, or (2) in the event the Salesforce Contract and any Additional Salesforce Contract, as applicable, are rejected, through the Effective Rejection Date.

E.      The requirement that, in the event that: (1) pursuant to the Sale Motion, the Debtors sell, convey and/or transfer some or all of their Assets and/or business operation(s) to any other third party (*i.e.,* the Buyer) or any other order entered by the Court, and (2) the Debtors and/or Buyers request that any Salesforce Transition Services be provided to the Debtors, their Bankruptcy Estates and/or the Buyer in connection with, or subsequent to approval of, the Sale, pursuant to: (i) any Transition Services Agreement, or (ii) a Transition Services Order, the Debtors and their Bankruptcy Estates shall be obligated pay any and all amounts that are due and owing (*i.e.,* the Salesforce Transition Services Claim) with respect to the Transition Services provided from and after Petition Date to the Effective Rejection Date; *provided that,* (3) the Transition Services Agreement and/or Transition Services Order, as applicable, specifically provide that: (i) Salesforce's obligation to provide the Salesforce Transition Services shall terminate on the Effective Rejection Date applicable to the Salesforce Contract *unless* Salesforce, in its sole discretion, agrees to provide Salesforce Services after the Effective Rejection Date to the Debtors, the Bankruptcy Estates or the Buyer, as applicable, on such terms and conditions as agreed by Salesforce, (ii) the Buyer is responsible for payment of all amounts due and owing for the any Salesforce Services provided after the Effective Rejection Date, and (iii) payment of the Post-Rejection Services Obligation does not constitute a waiver or release of Salesforce's rights to payment of the Salesforce Transition Services Claim incurred prior to the Effective Rejection Date pursuant to 11 U.S.C. §503 and 507 or derogate Salesforce's right to assert an administrative

expense for all amounts due with respect to Salesforce Transition Services provided to the Bankruptcy Estates from and after the Petition Date through the latter of, as applicable: (1) the Effective Assumption Date, or (2) in the event the Salesforce Contract is rejected, through the Effective Rejection Date;

F.    Approval of the Reservation of Rights (as set forth in this Assumption Objection); and

G.    Granting such other relief as may be just and proper under the facts and circumstances of the Bankruptcy Cases.

H.

*[Signature page to follow]*

Dated: September 17, 2025                     Respectfully submitted,

                                             **WHITE AND WILLIAMS LLP**


                                             */s/ Michael Ingrassia*
                                             Michael Ingrassia (No. 7068)
                                             600 North King Street, Suite 800
                                             Wilmington, DE 19801
                                             Tel: 302-467-4503
                                             Email: ingrassiam@whiteandwilliams.com


                                              -and-

                                             BIALSON, BERGEN & SCHWAB, PC
                                             Thomas M. Gaa, Esq.
                                             Shelby K. Nace, Esq.
                                             830 Menlo Avenue, Suite 201
                                             Menlo Park, CA 94025
                                             Telephone: (650) 857-9500
                                             Fax: (650) 494-2738
                                             E-mail: Tgaa@bbslaw.com
                                                     Snace@bbslaw.com

                                             *Attorneys for Creditor Salesforce, Inc.*