**EXHIBIT A**

**Master Lease Agreement**

56259973.1



This **Closed-End Master Lease Agreement** (the "Agreement") is entered into by and between Merchants Fleet Management (as defined below), a New Hampshire corporation ("Lessor"), and the undersigned (the "Customer"). If more than one party executes this Agreement as Customer, each shall be jointly and severally liable hereunder.

1. **LEASE; DISCLAIMER.** Lessor hereby agrees to lease to Customer and Customer hereby agrees to lease from Lessor one or more vehicles (each a "Vehicle" and together, the "Vehicles") for use in its business. Customer shall order a Vehicle or Vehicles for lease by placing a noncancelable Vehicle order with Lessor which shall be confirmed by the issuance of a completed order form by Lessor delivered to the Customer and which shall be executed by the Customer and returned to Lessor (a "Vehicle Order"). Customer's Vehicle Order shall authorize Lessor to purchase such Vehicle subject to the then current warranty of the manufacturer. Lessor hereby assigns the manufacturer's warranty to Customer for the Lease Term or the warranty terms whichever first expire. CUSTOMER AGREES THAT LESSOR IS NOT THE MANUFACTURER, DESIGNER OR DISTRIBUTOR OF THE VEHICLES AND THAT EACH VEHICLE (INCLUDING ANY SPECIFIED MODIFICATION OR INSTALLATION OF ACCESSORIES OR EQUIPMENT) IS OF A DESIGN SPECIFIED BY CUSTOMER (OR APPLICABLE LAW) AND SUITABLE FOR ITS PURPOSES.

LESSOR MAKES NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, WITH RESPECT TO a) ANY VEHICLE INCLUDING, BUT NOT LIMITED TO THE MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF A VEHICLE; THE DESIGN, QUALITY OR CAPACITY OF A VEHICLE; OR COMPLIANCE OF A VEHICLE WITH APPLICABLE LAW OR b) THE ACCOUNTING TREATMENT OF THIS AGREEMENT OR THE TIMING OF THE ACCRUALS OF THE RENTALS HEREUNDER FOR FINANCIAL STATEMENT OR TAX PURPOSES. CUSTOMER ACKNOWLEDGES AND AGREES THAT LESSOR IS AN INDEPENDENT CONTRACTOR AND DOES NOT ACT IN THE CAPACITY OF A FIDUCIARY OF CUSTOMER, AND THAT IT WILL OBTAIN TAX AND ACCOUNTING ADVICE FROM ITS OWN PROFESSIONALS.

2. **DELIVERY.** The Lessor understands that if a Vehicle ordered under this agreement is replacing an existing unit in the Customers fleet still under contract terms with Lessor or a third party lessor and acceptance of the unit ordered hereunder would result in two active leased vehicles and so two rental payments for the same driver, then Lessor agrees to delay the delivery of any such units and hold the Vehicle in a secure place at no charge to the Customer until delivery can be made upon the expiration of the existing units lease term at which time lease payments for the newly delivered Vehicle will commence. Customer and Lessor agree that coordination of order placement is critical and must be timed in accordance with the Manufacturers then current order to delivery schedule. Customer agrees to supply Lessor with a schedule of existing vehicles up for replacement which indicates the expiration date of the existing vehicle lease. No replacement order shall be placed hereunder by Customer or accepted by Lessor more than 60 days, or other mutually agreeable time period as meets the then current order to delivery schedule of the Manufacturer, prior to the lease expiration date of the unit being replaced. If the Manufactures order to delivery schedule is expressed as a range in days, then no order will be accepted and placed by Lessor prior to the fewest number of days in such range. If an order is placed hereunder which is not replacing an existing Vehicle or if a Vehicle designated as a replacement unit of an existing Vehicle and the lease term of the unit to be replaced has passed, then the Customer shall take delivery of units placed hereunder within five (5) business days of notice that the Vehicle is available. If Customer fails to do so, Lessor may, for purposes of beginning rental charges, treat such fifth (5th) business day as the date of acceptance. Customer shall inspect a Vehicle at the location of delivery for conformity to the Vehicle Order. Customer's removal of the Vehicle from such location shall constitute acceptance of the Vehicle. Without in any way limiting or modifying Lessors rights or increasing Lessor's liability under this Agreement including, without limitation, the disclaimers in Section 1, if a Customer directs Lessor to acquire one or more vehicles from a specific third party vendor (s) (each a "Vendor"), whether from the Vendor's inventory or a factory order and whether new or previously owned, then Customer assumes all risks of doing business with the Vendor including and without limitation any Vendor's claim as to merchantability or fitness of the acquired vehicle for a particular purpose; the design quality or capacity of the vehicle or its compliance with any applicable law. Further, if Customer requests that Lessor, prior to delivery to Customer, deliver one or more Vehicles to an upfitter, body company, installer or other third party and/or obtain certain equipment or parts from a specific Vendor (each a "Vendor "), then Customer assumes all risks of doing business with the Vendor, including without limitation, the Vendor's creditworthiness. In addition, any vehicle or equipment ordered by Lessor, on behalf of the Customer from such Vendors, which is rejected as unacceptable or no longer needed by the Customer, either prior to or after Lessor has paid the Vendors invoice, then Customer shall arrange for the Vendor to void any unpaid invoice or reimburse Lessor fully for any amounts already paid. If the Vendor fails to reimburse Lessor within ten (10) days Customer agrees it shall reimburse Lessor for such amounts and look solely to the Vendor for settlement.

3. **TERM OF AGREEMENT.** This Agreement shall commence on the Effective Date noted below and continue until canceled or terminated by either party upon thirty (30) days' written notice to the other. Notwithstanding termination, this Agreement shall remain in effect with respect to each Vehicle then leased and each Vehicle Order processed by Lessor until all terms and conditions of this Agreement and the related Schedule A for each Vehicle attached hereto from time to time (each a "Lease Schedule" and together, the "Lease Schedules") are satisfied.

4. **LEASE TERM.** The non-cancelable, non-terminable lease term for each Vehicle is as noted on the related Lease Schedule (a "Lease Term"). Customer acknowledges that it is responsible for its own determination of the proper lease term period for purposes of its FASB13 or similar analysis.

5. **OPERATION.** The Customer shall operate the Vehicles in the United States only and shall operate and maintain the Vehicles in strict conformity with all federal, state, county and municipal statutes, ordinances and regulations and shall not permit the Vehicles to be used for the transportation of hazardous substances or the unlawful transportation of any persons or property including, without limitation, alcoholic beverages or narcotics. When applicable, should the Customer be a "Motor Carrier," the Customer shall ensure compliance with the Vehicle Identification and placarding requirements of said laws, using its own US DOT identification number on the Vehicle. The Customer shall comply and cause all persons operating the Vehicles to comply with all statutes, ordinances and regulations which may be applicable to the registration, leasing, insurance, use and operation of the Vehicles, including operators' licensing requirements, and with all conditions of the policies of insurance on the Vehicles, and shall prepare and furnish to the Lessor all documents, returns or forms legally required thereunder. The Customer agrees that whenever any

statute, ordinance or regulation requires installation of any accessories or equipment, the Customer will comply with all such requirements and will accept such equipment for all new Vehicles at the time such Vehicles are acquired by the Lessor for the Customer. Customer agrees to repair the Vehicles and to maintain them in safe and good mechanical condition all according to the standards and requirements of the manufacturer's warranty. All additions to a Vehicle become the property of Lessor and shall, unless otherwise directed by the Lessor, be surrendered with the Vehicle.

6. TITLING; REGISTRATION; NET LEASE. Unless otherwise required by law, all Vehicles shall be registered in the name of the Lessor during the entire Lease Term, and any certificates of title required shall likewise be in the name of the Lessor. Customer shall provide Lessor prior written notice of any change of address or location of Vehicles or Customer's place of business. Customer covenants that it will pay all costs, expenses, fees, charges, fines, violations and taxes incurred in connection with the Vehicle's titling, registration, delivery, purchase, sale, rental and modification, and arising from the operation or use of the Vehicle during its Lease Term. If Lessor pays any of the foregoing amounts, Customer shall promptly reimburse Lessor and pay the then current administrative charge noted in the Rate Schedule attached hereto.

7. RENTAL CHARGES. Customer will pay monthly rental for each Vehicle in accordance with the terms of the Lease Schedule for such Vehicle, as well as all other charges provided for in this Agreement, the related Lease Schedule, and the Rate Schedule. Monthly rental charges shall begin on the first (1st) day of the calendar month following Customer's acceptance of the Vehicle. Customer agrees that Customer's obligation to pay monthly rental and other amounts shall be unconditional and that Customer shall not be entitled to any reduction of, or setoff against, such amounts.

8. PAYMENT TERMS. Time is of the essence. Monthly rental payments will be due and payable, in advance, on the first (1st) day of each calendar month. Lessor issues monthly invoices to all its customers; however, Customer is responsible for timely making monthly rental payments regardless of whether Lessor sends an invoice to Customer. Payments shall be made in U.S. dollars by Lessor initiated ACH direct debit, electronic transfer from a Customer bank account to an account specified by Lessor or other means expressly permitted by Lessor. Payment credit is subject to final payment by the institution on which the item of payment was drawn. No restrictive endorsements shall be valid or binding. Payments not made when due will be charged in the amount of the lesser of one (1%) percent or the highest legal interest rate per month or fraction thereof. It is the intent of Lessor that it not receive directly or indirectly any amount in excess of that amount which may be legally paid. Any excess charges will be credited to Customer or, upon request of Customer, refunded. Customer agrees to carefully review each invoice or other statement provided by Lessor. If Customer identifies a billing error, Customer will advise Lessor promptly, and in such event, Lessor's sole liability and Customer's exclusive remedy shall be appropriate adjustments in Customer's account. All charges are based upon Lessor's standard operating routines, existing business policy and computer systems capabilities.

9. SURRENDER OF VEHICLES. At the end of the Lease Term, Customer shall, upon ten (10) days' written notice to Lessor, deliver the Vehicle identified in the notice to Lessor at a mutually agreed location. Upon surrender or, if not surrendered, at final disposition, the Vehicle shall be in good, safe and lawful operating condition with any added equipment, if requested by the Lessor, removed and the Vehicle restored to original condition. If the Lessor determines that the Vehicle has been subject to excess wear and tear and use, the Customer shall be liable for the cost of restoring the Vehicle to the required condition. Standards applicable in making the determination that a Vehicle has been subject to excess wear and tear or wear and use are:

a. The manufacturer's warranty and scheduled maintenance schedule has not been met;

b. The Vehicle will not pass any inspection required by law, even if an inspection is not then due;

c. The Vehicle does not have four (4) undamaged matching tires (retread tires are unacceptable) comparable in quality to the original equipment with at least 1/8 inch tread at its lowest point, one (1) spare tire and wheel, jack and wheel wrench (if originally equipped);

d. The Vehicle is not returned with the same or comparable equipment and accessories installed at the time of delivery, in working order;

e. There are rips, tears, burns, soiling or excess wear to the carpet, seats, doors, headliner, dash board, interior or trunk areas;

f. There are scratches, dents, pits, rust areas, mismatched paint or cracks in the fenders, bumpers, grill, hood, trunk, roof or doors, that would collectively cost more than One Hundred Dollars ($100.00) to repair;

g. The Vehicle has been repainted in other than its original color;

h. The engine, drive train or other mechanical, safety or electrical parts, including, but not limited to, the engine, transmission, drive train, transfer cases, air conditioning, power windows, power door locks or audio equipment, do not operate properly or have been altered in any way;

i. There are any special identification markings, decals or lettering appearing anywhere on or in the Vehicle;

j. The windows, lenses or lights are cracked or broken; and

k. Damage has resulted from flood, hail, sand, excessive use, misuse, abuse, negligence or accident.

In addition, Customer shall be responsible for any excess mileage charges as noted in the related Lease Schedule. Surrender of the Vehicle shall not be effective until Lessor or its agent has actual physical possession of the Vehicle and has received all license plates, registration certificates, documents of title, odometer and damage disclosures and other documentation necessary for the sale of the Vehicle. If, upon Customer request, Lessor accepts an offer to purchase a Vehicle from a Customer or a purchaser identified by Customer and Lessor does not take actual physical possession of the Vehicle, neither surrender nor sale shall be deemed to occur until Lessor delivers the certificate of title and receives payment for the Vehicle. Any personal property in a Vehicle upon surrender shall be deemed abandoned and may be disposed of by Lessor without liability to Lessor.

10. INSURANCE. Customer shall maintain the following coverages during the Lease Term of each Vehicle with an insurance company acceptable to Lessor and deliver to Lessor a certificate thereof:

a. Automobile liability insurance with an Additional Insured endorsement as specified by Lessor and with minimum limits of coverage as Lessor may require, but in no event less than $1 million combined single limit per occurrence or $5 million for Vehicles capable of transporting more than sixteen (16) passengers. Lessor permits Customer to maintain $100,000.00 deductible for liability coverage

b. Comprehensive and collision. Lessor approves Customer self-insuring for collision and comp claims. Customer shall

bear all risk of loss, damage or destruction to the Vehicle (which may exceed actual cash value), however caused, from the time of acceptance until surrender to Lessor.

c. Conditions. All insurance policies shall provide for thirty (30) days' prior written notice to Lessor of any cancellation or reduction in coverage. Customer authorizes Lessor to endorse Customer's name to insurance checks related to the Vehicles.

11. **INDEMNITY.** CUSTOMER WILL INDEMNIFY AND DEFEND LESSOR (INCLUDING ANY OF ITS AFFILIATES AND AGENTS) AGAINST ANY LOSS, LIABILITY, OR CLAIM DIRECTLY OR INDIRECTLY RELATING TO THE LEASE, MAINTENANCE, USE, CONDITION, (INCLUDING BUT NOT LIMITED TO PATENT OR LATENT DEFECTS WHETHER OR NOT DISCOVERABLE, PRODUCT LIABILITY CLAIMS OR CONDITION OF THE VEHICLE AT SURRENDER), OR SURRENDER OF ANY VEHICLE BETWEEN THE TIME OF DELIVERY TO CUSTOMER AND THE TIME OF SURRENDER. IF LESSOR SELLS ANY VEHICLE TO CUSTOMER, ANY OF ITS EMPLOYEES OR A PURCHASER FROM WHOM CUSTOMER OBTAINS AN OFFER, CUSTOMER'S COVENANT OF INDEMNITY WITH RESPECT TO SUCH VEHICLE SHALL CONTINUE. THIS INDEMNITY IS ABSOLUTE AND UNCONDITIONAL AND INCLUDES CLAIMS OF NEGLIGENCE, STRICT LIABILITY, AND BREACH OF WARRANTY, BUT DOES NOT EXTEND TO CLAIMS OR LIABILITY ARISING FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF LESSOR OR ITS AGENTS OR EMPLOYEES. THIS INDEMNITY SHALL SURVIVE THE TERMINATION OF THIS AGREEMENT.

12. NATURE OF AGREEMENT. The parties intend the Lease of Vehicles hereunder to be a true lease. Without prejudice to the intention of the parties that this Agreement be a lease, Customer hereby grants Lessor a security interest in the Vehicles and all proceeds, accessions, documents, instruments, accounts, chattel paper, equipment, subleases, security deposits and general intangibles related thereto to secure all obligations of Customer to Lessor under this Agreement (and the related Lease Schedules, Rate Schedule and Vehicles Orders) or any other agreement. Customer further grants Lessor its limited power of attorney to act as agent and attorney-in-fact of Customer in respect to titling and registration of a Vehicle or otherwise noting Lessor's interest. A photocopy or other reproduction of this Agreement shall be sufficient as a financing statement. The Customer shall promptly execute and deliver to the Lessor such further documents and take such further action as the Lessor may require in order to more effectively carry out the intention and purposes of this Agreement.

13. MISCELLANEOUS. Customer has no right, title or interest in and to any Vehicle leased hereunder except as lessee, and unless otherwise noted in the Lease Schedule, Customer has no option to purchase any Vehicle. Lessor has the right to mark the Vehicle at any time stating its interest as owner and to receive and retain rebates, discounts and other compensation directly or indirectly from manufacturers, suppliers and vendors with respect to the Vehicles leased hereunder. Lessor may engage third parties to refer business to Lessor. If this Agreement or any other agreement between Customer and Lessor results from such a referral, Lessor may pay, and shall be solely liable for, payment of any broker fee, commission or other compensation related thereto. Customer agrees that it is not now and will not in the future be listed on any watch list maintained by the U.S. Treasury Department and shall comply with the Patriot Act and international trade control and money laundering laws, as applicable.

If Customer performs work under a prime contract, or any subcontract, with the United States government, and as a result, Executive Order 13658 is applicable to Customer, then Executive Order 13658 establishing a Minimum Wage for Contractors, and its implementing regulations, including the applicable contract clause, are incorporated by reference into this contract (or any subcontracts hereto) as if fully set forth in this contract. See Appendix A to 29 C.F.R. Part 10 (available at http://webapps.dol.gov/FederalRegister/HtmlDisplay.aspx?DocId=27843&Month=10&Year=2014).

14. FINANCIAL INFORMATION; VEHICLE ORDER ACCEPTANCE. The creditworthiness of Customer and any guarantor is a material condition to this Agreement. Customer shall provide Lessor with financial information reasonably requested by and satisfactory to Lessor each year of this Agreement. Nothing herein shall be construed to require Lessor to accept any order for a vehicle from Customer.

15. DEFAULT;REMEDIES.

a. Default. If Customer shall fail to make a monthly rental or other payments within five (5) days of Customer's receipt of written notice of such failure or maintain insurance coverage as herein required or after ten (10) days' written notice shall fail to perform or observe any of its other covenants, conditions or obligations under this Agreement, or Customer or any guarantor shall (i) make an assignment for the benefit of creditors, or suffer a receiver or trustee to be appointed, or file or suffer to be filed any petition under any bankruptcy or insolvency law of any jurisdiction; or (ii) discontinue business; or (iii) cease its corporate, partnership or legal existence or die; or (iv) undergo a change in controlling ownership; or (v) suffer a material adverse change in operating or financial condition which impairs Customer's ability to perform its obligations hereunder or Lessor's title to or rights in the Vehicles; or (vi) make any representation or warranty herein, or in any document delivered to Lessor in connection herewith (including, without limitation, financial information) or filed with any governmental entity and obtained by Lessor in connection herewith, which shall prove to be false or misleading in any material respect; then in such event, Customer shall be in default under this Agreement.

b. Remedies. In the event of default by Customer, Lessor shall have the right to: (i) repossess any or all Vehicles leased hereunder wherever they may be found (and for that purpose Lessor or its agents may enter upon any premises of or under the control of Customer) without canceling this Agreement; (ii) collect the present value of all remaining monthly rental payments for each Vehicle which would have been due if the Vehicle had been retained by the Customer for the full Lease Term noted in the related Lease Schedule; (iii) collect the full rental due for the period prior to any sale of the Vehicle, (iv) recover all expenses incurred to repossess said Vehicle together with reasonable attorneys' fees for enforcement of Lessor's rights; (v) collect mileage charges on the Vehicle prorated in accordance with the mileage allowance set forth in the related Lease Schedule; (vi) collect any charges for excess wear and tear and damage attributed to abuse and neglect; (vii) collect any charges relating to the pick-up and transportation of the Vehicle; (viii) collect any charges relating to the disposition of the Vehicle and (ix) offset any amounts due to Customer against amounts due to Lessor. In addition, Lessor shall have the right to cancel this Agreement and shall retain all rights and remedies available at law or in equity; all such rights and remedies to be cumulative and not exclusive.

16. **LIMITATION OF DAMAGES.** EXCEPT WITH RESPECT TO CUSTOMER'S OBLIGATIONS OF INDEMNITY, EACH PARTY AGREES THAT: ITS SOLE AND EXCLUSIVE REMEDY FOR ANY MATTER OR CAUSE OF ACTION RELATED DIRECTLY OR INDIRECTLY TO ANY CLAIM RELATED TO THE SUBJECT MATTER HEREOF BY THE OTHER PARTY TO THIS AGREEMENT SHALL BE A CONTRACT ACTION; DAMAGES SHALL BE LIMITED TO ACTUAL AND DIRECT DAMAGES INCURRED; AND NO INDIRECT, CONSEQUENTIAL, ENHANCED COMPENSATORY OR PUNITIVE DAMAGES WILL BE CLAIMED. Notwithstanding the foregoing, Lessor shall not be liable for any damages or costs incurred by the Customer due to the Lessor's failure to perform

any provisions hereof resulting from fire or other casualty, riot, strike, or other labor difficulty, governmental regulation or restriction or any other cause beyond the Lessor's control.

17. ASSIGNMENTS. Customer shall not assign, sublet, lien, encumber, or transfer any interest in any of the Vehicles leased hereunder or any interest in this Agreement (or the related Lease Schedules, Rate Schedule and Vehicle Orders) to any party without the written consent of Lessor. Any such consent by Lessor shall not, unless otherwise agreed in writing, relieve Customer of its obligations and liabilities under this Agreement and any related Lease Schedule, Rate Schedule or Vehicle Order. Lessor may assign all or any part of its right, title and interest in this Agreement (including the Lease Schedules, Rate Schedules and Vehicle Orders) or the Vehicles, including all receivables.

18. RELATED ENTITIES. In the event that Customer permits any Vehicles subject to this Agreement to be used or operated by any present or future subsidiary, parent or affiliate of Customer (each a "Related Entity"), Customer agrees that notwithstanding: (a) use or operation by a Related Entity; (b) any direction by Customer to Lessor to invoice a Related Entity; and (c) any payment made by a Related Entity with respect to any Vehicle, all such Vehicles shall at all times remain subject to the terms and conditions of this Agreement and Customer shall at all times remain liable for all of the duties and obligations (for payment or otherwise) under this Agreement. Any use or operation by a Related Entity of any Vehicle shall not, in any way, constitute a sale, assignment or transfer, sublease or other disposition of such Vehicle, or any interest therein, or of any rights granted to or obligations of Customer under this Agreement.

19. REPRESENTATIONS, WARRANTIES AND COVENANTS. The Customer represents and warrants to and covenants with the Lessor that: (a) the Customer has the form of business organization indicated below; (b) the Customer's chief executive office and address for purpose of notices hereunder is as listed below; (c) the Customer is duly organized and existing in good standing under the laws of the state listed below and is qualified to do business wherever necessary to carry on its present business and to own its property; (d) the Customer shall not change its form or state of organization without the Lessor's prior written consent, which consent will not be unreasonably withheld, and shall immediately notify the Lessor of any change of the Customer's organizational identification number issued by its state of organization or its chief executive office or notice address; (e) this Agreement has been duly authorized by all necessary action on the part of the Customer and does not contravene any law binding on the Customer, any provision of its certificate or articles of incorporation or by-laws, or certificate or articles of organization or operating agreement, or partnership certificate or agreement or any other agreement among the shareholders, members or partners of the Customer, or any agreement, indenture, or other instrument to which the Customer is a party or by which it may be bound; (f) this Agreement has been duly executed and delivered by authorized officers, members, managers or partners of the Customer and constitutes a legal, valid and binding obligation of the Customer enforceable in accordance with its terms; (g) the Customer has not and will not create, incur or permit to exist any lien, encumbrance or security interest on or with respect to the Vehicles (except those of persons claiming by, through or under the Lessor); (h) the Vehicles will be used primarily in the conduct of the Customer's business and will remain registered at the location shown on the applicable Lease Schedule unless otherwise agreed in writing by Lessor; (i) there are no pending or threatened actions or proceedings before any court or administrative agency, and no circumstances exist which may lead to such an action, which could materially adversely affect the Customer's financial condition or operations; and (j) all financial and other information provided by the Customer or at the Customer's direction is, and such information hereafter furnished will be, true, correct and complete in all material respects.

20. INFORMATION SHARING. Customer (including any Related Entity) authorizes Lessor to disclose information about Customer that Lessor may at any time possess to any affiliate or third-party vendor from whom the Customer received, directly or indirectly, goods or services, whether such information was supplied by Customer to Lessor or otherwise obtained by Lessor.

21. LEGAL NOTICES. Customer shall give full cooperation in the prosecution and defense of any action brought by or against Lessor or its insurance carrier. If any action is commenced for damages resulting from the use in any way of a Vehicle, Customer shall notify Lessor of the action and forward within ten (10) days after receipt of a copy any summons or other process received in connection with the action. The Customer shall notify the Lessor of every lien, encumbrance, or levy placed against a Vehicle within twenty-four (24) hours after it is placed.

22. EARLY TERMINATION. The Customer may terminate the lease of any Vehicle or Vehicles hereunder by notifying Lessor of its intentions to terminate upon thirty (30) days' prior notice to the Lessor. Prior to the proposed termination, the Customer shall return each Vehicle involved to the Lessor in accordance with the provisions of Paragraph 9. In addition, on or before the date of the termination, the Customer shall pay to Lessor the items noted in subparagraphs a.- g. below. Termination of a lease of a Vehicle is not effective unless and until all requirements of this Paragraph have been fulfilled.

   a. All monthly rental and other charges due up to the later of the proposed termination date or the return of the Vehicle;

   b. Mileage charges on the Vehicle as pro-rated in accordance with the mileage allowance set forth in the related Lease Schedule;

   c. Present value of all remaining monthly rental payments which would have been due if the Vehicle had been retained by the Customer for the full Lease Term set forth in the related Lease Schedule;

   d. Any charges for excess wear and tear and damage using standards noted herein;

   e. Any charges relating to the pick-up and transportation of the Vehicle;

   f. Any charges relating to the disposition of the Vehicle; and

   g. Any and all sales taxes paid by the Lessor multiplied by a fraction, the numerator of which is equal to the number of months remaining on the full Lease Term applicable to the Vehicle and the denominator of which is equal to the total number of months of the original Lease Term.

23. LEASE INTEGRATION. This Agreement, together with each Rate Schedule, Lease Schedule, addendum and Vehicle Order, constitutes a single unitary, non-severable lease agreement between Lessor and Customer for all Vehicles leased by the Customer from Lessor and governed by this Agreement and each Rate Schedule, Lease Schedule and Vehicle Order.

24. WAIVER OF JURY TRIAL. BOTH PARTIES TO THIS AGREEMENT HEREBY WAIVE ANY AND ALL RIGHT TO ANY TRIAL BY JURY IN ANY ACTION OR PROCEEDINGS ARISING DIRECTLY OR INDIRECTLY HEREUNDER.

25. GOVERNING LAW. THIS AGREEMENT SHALL NOT BE EFFECTIVE UNTIL SIGNED BY LESSOR, AND SHALL, UPON SUCH EXECUTION, BE DEEMED EFFECTIVE AS OF THE EFFECTIVE DATE. THE LAWS OF THE STATE OF NEW HAMPSHIRE SHALL GOVERN ALL QUESTIONS OR DISPUTES RELATING TO THE VALIDITY, INTERPRETATION, PERFORMANCE, ENFORCEMENT, OR EFFECT OF THIS AGREEMENT, WITHOUT REGARD TO CHOICE OF LAW

PRINCIPLES. THE CUSTOMER HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF THE COURTS OF THE STATE OF NEW HAMPSHIRE AND THE FEDERAL DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE FOR THE PURPOSES OF ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF ITS OBLIGATIONS HEREUNDER, AND EXPRESSLY WAIVES ANY OBJECTIONS THAT THE CUSTOMER MAY HAVE TO THE VENUE OF SUCH COURTS.

26. ODOMETER DISCLOSURE STATEMENT. Federal law (and State law, if applicable) requires that Customer as lessee disclose, and Customer shall disclose, the mileage of each Vehicle to Lessor in connection with the transfer of ownership of the Vehicle. Failure to complete an odometer disclosure statement or making a false statement may result in fines and/or imprisonment.

27. MODIFICATIONS. This Agreement, its exhibits, Lease Schedules, Rate Schedule, Vehicle Orders, addenda and amendments contain the entire understanding of the parties and merge all oral understandings. Customer may issue purchase orders for administrative convenience, but such purchase orders are subject to the terms and conditions of this Agreement and shall not amend or supplement it. Any modifications, changes, or amendments may be made only in a writing duly signed by Customer and Lessor. Failure of either party to enforce any right shall not be deemed a waiver of such right.

28. "MERCHANTS FLEET MANAGEMENT" shall mean Merchants Automotive Group, Inc., a New Hampshire corporation in its capacity as lessor or as a titling trust servicer and/or Principle Merchants Leasing, Ltd., a Delaware statutory trust, affiliated with Merchants Automotive Group.

**THIS LEASE AGREEMENT AND EACH SCHEDULE HERETO, THE MOTOR VEHICLES OR EQUIPMENT IDENTIFIED IN THIS LEASE AGREEMENT, AND ALL RIGHTS OF MERCHANTS FLEET MANAGEMENT UNDER THIS LEASE AGREEMENT AND EACH SCHEDULE HERETO, CONSTITUTE COLLATERAL GRANTED TO CITIZENS BANK, N.A., AS COLLATERAL AGENT (THE "COLLATERAL AGENT") UNDER THE THIRD AMENDED AND RESTATED PLEDGE AND COLLATERAL ASSIGNMENT OF MOTOR VEHICLE AND EQUIPMENT LEASES DATED AS OF MAY 9, 2018 (AS AMENDED, RESTATED, SUPPLEMENTED OR OTHERWISE MODIFIED FROM TIME TO TIME, THE "ASSIGNMENT") BETWEEN MERCHANTS AUTOMOTIVE GROUP, INC. AND ITS AFFILIATES AND CITIZENS BANK, N.A. (OR, IF APPLICABLE, A SUCCESSOR COLLATERAL AGENT), AS COLLATERAL AGENT FOR THE BENEFIT OF THE SECURED PARTIES (AS DEFINED IN SUCH ASSIGNMENT). THIS LEASE HAS BEEN ASSIGNED TO THE COLLATERAL AGENT AS SECURITY FOR THE SECURED PARTIES.**

(signature on next page)

*IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed by duly authorized representatives.*

**Claire's Stores, Inc.**
By: _[signature]_

Title: Executive VP Stores
*(President, Vice President, Treasurer, or provide certificate of authority)*

*a* Florida Corporation

Notice Address: 2400 West, Hoffman Estates, IL 60192
FEIN: __-_____ (Customer to provide)

**Merchants Fleet Management**
By: _[signature]_

Title: Authorized Signatory

Address: 1278 Hooksett Road, Hooksett, New Hampshire 03106

_____

**EFFECTIVE DATE:** April 19, 2019

In an effort to better service your account, please complete and sign the attached ACH forms included in this package. ACH offers a variety of benefits to you by simplifying the invoice payment processing, saving you money on postage and processing, and payment is reliable, accurate, on time and confidential.

1. Kindly return the executed ORIGINAL ACH FORMS – enclosed herein along with an ORIGINAL VOIDED BLANK CHECK from the checking account you select for regular payments.

2. Mailing address for return of documents:
   Merchants Fleet Management
   PO Box 16415, 1278 Hooksett Road
   Hooksett, NH 03106
   Attention: Michelle Dillman

Please be advised of the following arrangements associated with the ACH process:

- Your lease payment invoices, due on the first day of the month, will be withdrawn on the first business day of the month.

- All other invoices that come due during the month, through the 15th of the month, will be paid via ACH on the first working day of the *following* month, at the same time as the next lease payment is due.

  *For example*: any invoices that are issued prior to June 15th will be withdrawn via ACH on the first business day of July, along with the July lease payment that is due on July 1st. Any invoices issued after June 16th, will be drawn ACH on the first working day of August.

- Please do not send a physical check to pay for the invoices you receive from Merchants Automotive Group. All invoices will be stamped "Do not Pay – Paid via ACH". If you are uncertain what the disposition on an invoice is, please contact me and I will be happy to assist you with more details.

---

**AUTHORIZATION AGREEMENT FOR DIRECT PAYMENTS (ACH DEBITS)**

Company Name _____       Company FEIN Number _____

I (we) hereby authorize _____, hereinafter called COMPANY, to initiate debit entries to my (our) ☐ Checking Account/ ☐ Savings Account (select one) indicated below at the depository financial institution named below, hereafter called DEPOSITORY, and to debit the same to such account. I (we) acknowledge that the origination of ACH transactions to my (our) account must comply with the provisions of U.S. law.

Depository Name _____       Branch _____

City _____       State _____  Zip _____

Routing Number _____       Account Number _____

This authorization is to remain in full force and effect until COMPANY has received written notification from me (or either of us) of its termination in such time and in such manner as to afford COMPANY and DEPOSITORY a reasonable opportunity to act on it.

Name(s) _____       _____
(Please Print)

Date _____       Signature(s) _____

---

**Along with this signed document, please attach an ORIGINAL VOIDED BLANK CHECK and return to the attention of your Client Service Representative. Thank you.**

**Please attach voided check here.**

# RATE SCHEDULE
## TO
## CLOSED-END MASTER LEASE AGREEMENT

This Rate Schedule to Master Lease Agreement dated April 19, 2019 ("Agreement") is made and entered into as of April 19, 2019 (the "Effective Date") by and between the undersigned (the "Rate Schedule") and amends and supplements the Agreement.

**DEDUCTIBLE PERMITTED ON COMPREHENSIVE AND COLLISION INSURANCE:** Lessor acknowledges that Customer self-insures for 100% of any collision and comprehensive claims.

**REGISTRATION, TITLES, AND VIOLATIONS:** During the term of the Agreement Lessor will provide Annual Renewal Registration services and may provide any of the following other services at the Customer's request or as may be necessary as a result of violations issued to the Customer's driver in the operation and use of the Vehicles leased under the Agreement. The fees shown below shall apply on a per occurrence basis each time a listed service is provided by Lessor.

**REGISTRATION:**

| | Per Occurrence Merchants Automotive Administrative Fee |
|---|---|
| Annual Renewals | $35.00 Per occurrence, plus the cost of registration |
| Duplicate Title / Duplicate Registration or Amendment | $25.00 Per occurrence, plus applicable state fees |
| Change of Plate Type/ State to State Changes | $75.00 Per occurrence, plus the cost of plate fees & mailing |

**VIOLATIONS PROCESS**
Parking & Moving Violations
Lessor will pay the fine and invoice the amount of the fine for the violation to the Customer with an added $25.00 administrative fee.

Toll Violation
TollGuard is an electronic toll protection service in which Merchants registers all leased vehicles with several all-electronic toll authorities. If a vehicle passes through a toll booth and a violation occurs the toll charge is immediately assessed to Merchants and rebilled to the Customer with a $5.00 per occurrence fee. If toll is not picked up by Toll Guard and a paper violation is received, customer has the option to have the violation emailed to them or be paid by Merchants and billed back, incurring a $25.00 admin fee.

Snapshot/Camera Violations
For those violation issuing agencies or municipalities that do not allow charges to be assigned to the Customer, Lessor will pay the fine along with any applicable penalties or late fees and invoice that amount to the Customer. For those that allow the fine to be assigned, Lessor will return the violation to the issuing agency or municipality who will then forward the violation directly to the Customer for payment. A $25.00 research fee will be invoiced per violation to the Customer in both cases.

Third Party Vendor Fees
Occasionally, Lessor employs a third-party vendor to facilitate the above services and violations processing. The costs of using these vendors will be passed through to the Customer. Other fees may include: Federal Express, mailing fees, Department of Motor Vehicle Administrative fees, etc.

**UPFITTING:** Lessor will assess a markup of $50.00 or 2%, whichever is higher, on the actual cost paid by the Lessor for all upfitting requirements.

**Claire's Stores, Inc**
By: _[signature]_
Title: Executive Vice President STORES An Authorized Signatory
(President, Vice President, Treasurer, or provide certificate of authority)
Address: 2400 West Central Road, Hoffman Estates, IL 60192

**Merchants Fleet Management**
By:_____
Title: _____, An Authorized Signatory
Address: 1278 Hooksett Road, Hooksett, NH 03106

Page 1 of 1



# FLEET SERVICES MASTER AGREEMENT

This Fleet Services Master Agreement for selected fleet related services together with any addenda is hereby incorporated and made part of the Master Closed End Lease Agreement dated the 19th day of April, 2019 and is made and entered into as of the 19th day of April, 2019, by and between Merchants Fleet Management, a New Hampshire corporation doing business at 1278 Hooksett Road, Hooksett, New Hampshire 03106 (the "Lessor"), and Claire's Stores Inc., a corporation together with its divisions and subsidiaries with a principal office at 2400 West Central Road, Hoffman Estates, IL 60192 (the "Customer").

In consideration of the mutual covenants hereinafter contained, the parties hereto agree for themselves, their heirs, executors, administrators, representatives, successors and assigns, as follows:

1) **Term.** This Agreement shall commence upon signing by an officer of the Lessor. This Agreement along with individual addendum attached hereto shall remain in force for an indefinite period of time. Individual vehicles enrolled in any service however shall have a minimum enrollment term of 12 months or a minimum term as otherwise indicated on the Fee Schedule. This Agreement or addenda may be terminated by either party, or Lessor may revise the fees therein with 60 days written notice.

2) **Invoicing and payment.** Lessor will invoice the Customer in the format and frequency mutually agreed upon. All payments will be due and payable, in advance, on the first (1st) day of each calendar month. Late payments fees will be charged 1.0%, or the highest legal rate whichever is less, per month or applicable portion of a month. Customer shall notify Lessor promptly of any disputed charges and every reasonable effort to resolve such disputes will be made prior to the due date of the invoice. If disputed charges are not resolved prior to the due date the Customer shall pay the entire amount due and Lessor will promptly endeavor to substantiate the charges or credit the Customer's account if the invoice was in error.

3) **Financial Information.** The creditworthiness of Customer and any guarantor is a material condition to this Agreement. Customer shall provide Lessor with financial information reasonably requested by and satisfactory to Lessor each year of this Agreement.

4) **Use and Operation.** During the term of this Agreement: the Customer shall use the vehicle for lawful purposes only; within the United States and Canada; and maintain minimum required liability insurance; and be responsible for any inspections and maintenance required by law.

5) **Disclaimer of Warranties.** THE LESSOR IS NOT THE MANUFACTURER OR DISTRIBUTOR OF THE GOODS AND SERVICES PURCHASED FROM THIRD PARTIES PURSUANT TO THIS AGREEMENT, AND MAKES NO EXPRESS OR IMPLIED REPRESENTATIONS OR WARRANTIES AS TO SUCH GOODS AND SERVICES WHATSOEVER, INCLUDING WITHOUT LIMITATION, THE MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND THE LESSOR HEREBY DISCLAIMS ANY SUCH WARRANTY. THE LESSOR IS NOT RESPONSIBLE FOR ANY REPAIRS OR SERVICE TO THE VEHICLES, DEFECTS THEREIN OR FAILURES IN THE OPERATION THEREOF AND THE CUSTOMER AGREES TO LOOK SOLELY

Page 1 of 3

TO THE MANUFACTURER OR DISTRIBUTOR OF SUCH GOODS AND SERVICES AND HEREBY WAIVES ANY CLAIMS, INCLUDING PRODUCT LIABILITY CLAIMS, AGAINST LESSOR

6) **Limitation of Liability; Customer's Indemnity of Lessor.** CUSTOMER WILL INDEMNIFY, DEFEND AND HOLD HARMLESS LESSOR AGAINST ANY LOSS, LIABILITY, OR CLAIM, DIRECTLY OR INDIRECTLY RELATED TO THE GOODS AND SERVICES OBTAINED FROM THIRD PARTIES PURSUANT TO THIS AGREEMENT. THE INDEMNITY IS UNCONDITIONAL AND ABSOLUTE AND INCLUDES CLAIMS OF GROSS NEGLIGENCE OR WILLFUL MISCONDUCT, STRICT LIABILTY AND BREACH OF WARRANTY. THIS INDEMNITY WILL SURVIVE THE TERMINATION OF THIS AGREEMENT.

7) **Assignment.** Customer may not assign any interest in this Agreement to any party without the prior written consent of the Lessor. This Agreement and all rights of the Lessor hereunder shall be freely assignable by the Lessor, in whole or in part, to any Assignee without notice to the Customer. Any such assignment shall not relieve the Lessor of its obligations hereunder unless specifically assumed by the Assignee, and the Customer agrees the Customer shall not assert any defense, rights of set-off or counterclaim against any Assignees, nor hold or attempt to hold such Assignee liable for any of the Lessor's obligations hereunder. No such assignment shall materially increase the Customer's obligations hereunder.

8) **Enforceability and Governing Law.** Any provisions of this Agreement which are unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such unenforceability without invalidating the remaining provisions hereof, and any such unenforceability in any jurisdiction shall not render unenforceable such provisions in any other jurisdiction. To the extent permitted by applicable law, the Customer hereby waives any provisions of law which render any provision hereof unenforceable in any respect.

THIS AGREEMENT AND THE LEGAL RELATIONS OF THE PARTIES HERETO SHALL IN ALL RESPECTS BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF NEW HAMPSHIRE, WITHOUT REGARD TO PRINCIPLES REGARDING THE CHOICE OF LAW. THE CUSTOMER HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF THE COURTS OF THE STATE OF NEW HAMPSHIRE AND THE FEDERAL DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE FOR THE PURPOSES OF ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF ITS OBLIGATIONS HEREUNDER, AND EXPRESSLY WAIVES ANY OBJECTIONS THAT THE CUSTOMER MAY HAVE TO THE VENUE OF SUCH COURTS. THE CUSTOMER HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION BROUGHT ON OR WITH RESPECT TO THIS AGREEMENT.

Any action by the Customer against the Lessor for any cause of action relating to this Agreement shall be brought within one (1) year after any such cause of action first arises.

**Vehicles covered under this Agreement may be owned by Lessor and leased back to Customer or owned by the Customer or other third party.**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their authorized representatives.

| LESSOR | CUSTOMER |
|---|---|
| MERCHANTS FLEET MANAGEMENT | CLAIRE'S STORES, INC. |
| By: *[signature]* | By: *[signature]* |
| Name: Gary Singer | Name: Colleen Collins |
| Title: Chairman of the Board | Title: Executive VP Stores |
| Date: 4/23/19 | Date: 4/17/19 |

Page 3 of 3



## ADDENDUM TO FLEET SERVICES MASTER AGREEMENT
## ACCIDENT/CLAIMS MANAGEMENT AND/OR SUBROGATION

The Fleet Services Master Agreement (made and entered into as of the 19th day of April, 2019 by and between Merchants Fleet Management, a New Hampshire corporation doing business at 1278 Hooksett Road, Hooksett, New Hampshire 03106 (the "Lessor"), and Claire's Stores, Inc., a corporation (the "Customer") together with its divisions and subsidiaries with a principal office at 2400 West Central Road Hoffman Estates, IL 60192 is hereby amended as follows:

**Whereas** the Lessor, in conjunction with a third party under contract with Lessor, provides services as described below and by checking the box(es) below Customer desires to enroll certain vehicles under such program(s), the parties agree to the following:

☒ ACCIDENT/CLAIMS MANAGEMENT product
☒ SUBROGATION product

In exchange for the mutual promises herein expressed in this Addendum and subsequent attached Schedules, the parties agree to perform in accordance with the following terms:

LESSOR WILL:

(a) **Accident Claims Management and Vehicle Repair**

- Call Center: Lessor will make available a 24-hour, seven day a week toll free client service line, dedicated to the Customer, to handle requests for services, including appraisal reports, auto claims reporting, body repairs, client consultation, claims evaluation and tracking, loss notice preparation, and motor vehicle record checks.

- Provide 24/7 toll free access to claims representatives to process first notice of loss (FNL) accident data

- direct drivers to a convenient network repair facility (under contract with Lessor) for repair estimation

- If needed, Lessor will arrange for towing and a temporary replacement rental vehicle

- Evaluate each repair estimate

- If needed and approved by Customer, assign an independent appraiser

- Track the progress of repairs approved by the Customer

- Expedite the supply of parts

- advise the Customer of any repair delays

Page 1 of 4



- pay vendor negotiated cost of repairs

(b) **Subrogation** – If program is selected, Lessor will process subrogation claims sought by the Customer relating to vehicle accidents seeking reimbursement from involved third parties for the cost of repairs and related costs.

(c) **Vehicle Rental** -Lessor will provide access to rental of vehicles, including pickup trucks, minivans, sport utility vehicles and mid-size and luxury automobiles, at pre-negotiated rental rates through its nationwide network of national, regional and local suppliers.

(d) **Online Services** - Lessor will provide and maintain a certain internet-based claims services ("OLIS"), which will provide Customer real time access to pertinent subrogation claim information. The information may include but not be limited to such items as date of loss, date of incident report, description of damages, requested recovery, and actual recovery. OLIS will also provide a library of digital images including but not limited to the incident report, police report, damage estimate, and photos of damage.

> Grant of License: Fleet Response grants to Merchants Leasing a non-exclusive, non-transferable license to access the Online Services that are accessible through the Customized Sites, which license may be sublicensed to Merchants clients. Such license and any sublicense shall terminate and expire upon the termination or expiration of Merchants Leasing agreement with Fleet Response. Except as specifically provided in this Section, no license under any patents, copyrights, trademarks, trade secrets or any other intellectual property rights, express or implied, is granted by Fleet Response to Merchants Leasing or its clients.
>
> Sublicense: Merchants Leasing acknowledges and agrees that any sublicense to a Merchants Leasing client as contemplated in this Section shall include the following terms:
>
> - The Customer acknowledges its understanding that a third party provider (ie., Fleet Response) either owns or possesses adequate licenses or other rights to use the Online Services and the Customized Sites and all of the components thereof, including without limitation all software, documentation, upgrades, modifications, enhancements, improvements, additions and derivative works.
>
> - The Customer will not copy or reverse engineer or attempt to copy or reverse engineer any of the Online Services or the Customized Sites to which the Customer has access.
>
> - The Customer will not sell, transfer, publish, disclose, display or otherwise make available the Online Services or the Customized Sites to any third-party.
>
> - All applicable rights to patents, copyrights, trademarks and trade secrets included in or constituting a part of the Online Services or the Customized Sites, or any modifications

Page 2 of 4



thereto made at the Customer's request or otherwise, shall remain with the third party provider (i.e., Fleet Response).

- Customer acknowledges any and all copies of any software included as part of the Online Services or the Customized Sites, including translations, compilations, partial copies with modifications and updated works, are the property of the third party provider (i.e., Fleet Response).

- The Customer will grant to Merchants Leasing and the third party provider (i.e., Fleet Response) a non-exclusive, royalty free, non-transferable, limited license to use the Customer's data only in connection with the performance of the Online Services under this Agreement.

(e)  **Vehicle Accident Reporting Packets** - Lessor will provide a packet for all Customers' vehicles that contains instructions on how to report an accident with the Lessor's toll free telephone number included.

(f)  <u>Reports</u>: Lessor will provide the Customer with periodic reports concerning the status of the files.

(g)  <u>Laws and regulations</u>: Lessor will comply with all applicable laws, including state consumer protection statutes and state licensing requirements.

(h)  <u>File access</u>: Lessor will, upon request of Customer, allow Customer access to any of the files of Customer, including any correspondence and copies of other documents.

**CUSTOMER WILL:**

(a)  Provide Lessor with all information concerning their vehicles that is necessary for Lessor to perform its services hereunder in such form and content as is mutually agreed upon by the parties.

(b)  Assign, in Customer's discretion, all relevant files to Lessor for damaged vehicles in its fleet.

(c)  Inform Lessor of any rules, regulations or laws that may affect Lessor's ability to process a file, only to the extent that the Customer is aware of any such rules, regulations or laws.

(d)  Pay all applicable fees for services rendered as outlined in the attached <u>Fee Schedule</u> Addendum.

**Fees and Charges:**

- **Accident claims reporting:** Lessor will be entitled to a fee as outlined on the <u>Fee Schedule,</u> whether the claim is related to liability or physical damage.

- **Vehicle repair:** For repairs by a network repair facility, Lessor will pay the cost of the repair and will be entitled to payment from Client of an amount equal to the Listed Price (as defined below)



of such repair. For repairs by a non-network repair facility, Lessor will pay the cost of the repair and will be entitled to payment from Customer of an amount equal to such cost plus an additional claim fee as outlined on the Fee Schedule for each occurrence.

- **Subrogation fee**: Lessor will be entitled to a fee as outlined on the Fee Schedule. Lessor will also retain all collected administrative fees. Lessor will be entitled to a fee as outlined on the Fee Schedule for each police report ordered on files with subrogation potential.

- **Vehicle rental**: Lessor will pay the cost of the base rental and will be entitled to payment from Customer of an amount equal to the Listed Price of such base rental. A schedule of base rental rates then in effect is available upon request of Customer.

- **Independent appraisal reports**: (when required and approved by Customer), Lessor will be entitled to a fee as outlined on the Fee Schedule. Customer is advised that the cost of obtaining a report will vary based upon geographic area and that additional charges may be incurred for excess travel mileage beyond 25 mile radius, and that additional charges may be incurred if greater than two photos are required.

- **Taxes**: Customer is responsible for all applicable state and local taxes (excluding income taxes of Lessor or its affiliates) which may be payable by reason of the transactions contemplated by this Agreement.

- For purposes of this Agreement, a **"Listed Price"** for a product/service of a third party is the price of the product/service as listed by such third party. Any fees/charges described above that are based upon fees/charges of a third party (including any Listed Price) are subject to change at any time based upon changes effected by such third party.

**Vehicles covered under this Agreement may be owned by Service Provider and leased back to Service User or owned by the Service User or other third party.**

IN WITNESS WHEREOF, this Agreement has been executed by each party by its duly authorized representative.

| LESSOR | CUSTOMER |
|---|---|
| MERCHANTS FLEET MANAGEMENT | CLAIRE'S STORES, INC. |
| By: _[signature]_ | By: _[signature]_ |
| Name: Gary Singer | Name: Colleen Collins |
| Title: Chairman of the Board | Title: Executive VP Stores |
| Date: 4/23/19 | Date: 4/17/19 |

Page 4 of 4



### ADDENDUM TO MASTER FLEET SERVICES AGREEMENT
### MAINTENANCE MANAGEMENT – ADMINISTERED MAINTENANCE

The Fleet Services Master Agreement made and entered into as of the 19th day of April, 2019, by and between Merchants Fleet Management, a New Hampshire corporation doing business at 1278 Hooksett Road, Hooksett, New Hampshire 03106 (the "Lessor"), and Claire's Stores, Inc., a corporation (the "Customer") together with its divisions and subsidiaries with a principal office at 2400 West Central Road Hoffman Estates, IL 60192is hereby amended as follows:

**Whereas** the Lessor provides an ADMINISTERED MAINTENANCE product as described below and Customer desires to enroll certain vehicles under this program, the parties agree to the following:

This program, provided by Lessor, is designed to minimize Customer's vehicle operating cost and reduce administrative expense. In exchange for the mutual promises herein expressed, the parties agree to perform in accordance with the following terms:

LESSOR will: (a) provide written instructions through a Driver Information Package for use of the program to each driver of the Customer, assigned to vehicles expressly enrolled in this program; (b) provide toll-free telephone access to Lessor's call center; (c) authorize and make payment for necessary repairs and mechanical services through the Lessor's participating vendor network (National Accounts as listed in the written instructions provided) or as otherwise verbally directed by Lessor's personnel; (d) audit all vendor invoices for accuracy; (e) invoice Customer without mark up for all authorized purchases from in-network vendors; (f) invoice Customer with a markup as indicated on the Fee Schedule for all authorized purchases for out-of-network vendors; (g) provide assistance in arranging for temporary rentals if requested by the Customer the cost of which will be billed back to the Customer; (h) reimburse drivers for out-of-pocket expenses and bill such costs back to the Customer; and (i) pursue extended warranty (out of written warranty) reimbursements from the vehicle manufacturers for applicable service and repairs while retaining a fee of 10% of any amounts successfully collected.

Lessor will also administer the repair/replacement of glass by providing a nationwide glass program. The Lessor will establish a repair order to record the event and coordinate the repair or replacement with a mutually agreed upon third party vendor. Lessor will issue a purchase order to the vendor and pay the vendor the negotiated rate and close the claim. If the Lessor provides Insurance, the Customer, or its authorized representative, will report the glass loss or claim to the Lessor's Insurance Services Department via telephone (800#), fax or email.

The vendor's actual charges for each repair or replacement of glass will be invoiced to Customer along with a $35.00 per occurrence claims handling fee.

Lessor will provide a driver information package which includes a maintenance brochure containing a description of pre-approved preventative maintenance services at mutually agreed upon mileage intervals for submission as a purchase order to participating service providers, the names of which shall be clearly noted on the driver information package and maintenance brochure. Lessor agrees to audit all charges resulting from the use of the maintenance schedule to ensure only authorized service has been done and that all charges are at pre-negotiated prices from participating service providers.

Page 1 of 2

Each maintenance brochure issued under this agreement will display the Customer's name, the vehicle identification number (VIN), a description of the vehicle including, Year, Make, Model, and exterior color and will be usable within 500 miles before or after the stated odometer interval and serves as authorization to perform the maintenance as indicated. Any additional service or work outside of the mileage limitations must be authorized by the Lessor.

LESSOR will provide a Roadside Assistance program for an amount listed on the Fee Schedule, with the following features:

| Covered |
| --- |
| **Towing** – disabled vehicle will be towed to the nearest qualified service facility or to another location requested by customer. |
| **Battery Service** – jump start |
| **Flat Tire Assistance** – remove flat and replace with spare. |
| **Fuel, Oil, Fluid and Water Delivery Service** – an emergency supply will be delivered to any customer in immediate need when driving a covered vehicle. |
| **Lock-Out Assistance** |

CUSTOMER will: (a) provide written notification, including all information reasonably requested by Lessor, of all vehicles to be enrolled in this program; (b) direct its employees to comply with all instructions provided in the Driver Information Package or as otherwise reasonably instructed by Lessor; (c) pay an administrative fee as indicated on the Fee Schedule; (d) pay all authorized invoices covering goods and services obtained by Lessor on the Customer's behalf pursuant to this agreement including any such charges authorized while a vehicle was actively enrolled in the program but subsequent to a vehicle being terminated from this agreement.

**Vehicles covered under this Agreement may be owned by Lessor and leased back to Customer or owned by the Customer or other third party.**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their authorized representatives.

| LESSOR | CUSTOMER |
| --- | --- |
| MERCHANTS FLEET MANAGEMENT | CLAIRE'S STORES, INC. |
| By: _[signature]_ | By: _[signature]_ |
| Name: Gary Singer | Name: Colleen Collins |
| Title: Chairman of the Board | Title: Executive VP Stores |
| Date: 4/23/19 | Date: 4/17/19 |

Page 2 of 2



# ADDENDUM TO FLEET SERVICES MASTER AGREEMENT
## FEE SCHEDULE

The Fleet Services Master Agreement made and entered into as of the 19th day of April, 2019, by and between Merchants Fleet Management, a New Hampshire corporation doing business at 1278 Hooksett Road, Hooksett, New Hampshire 03106 (the "Lessor"), and Claire's Stores, Inc., a corporation (the "Customer") together with its divisions and subsidiaries with a principal office at 2400 West Central Road Hoffman Estates, IL 60192 is hereby amended as follows:

The following are agreed upon Fees associated with the signed Fleet Services Addendums:

☒ Administered Maintenance Program for Leased Vehicles:

|  | Cars |
|---|---|
| Administrative Fee | $5.00 per vehicle per month |
| Roadside Assistance | $35.00 per occurrence plus the cost of services performed. |
| Glass Repair/Replacement | Cost of repair plus $35.00 Admin fee |
| Non National Account Fee | 10% of invoice |

☒ Accident Management Services for Leased Vehicles:

| First Notice of Loss/Claims processing Fee | $50.00 per occurrence |
|---|---|
| Police Report | $10.00 plus the cost of the report |
| Independent Appraisal Fee | $25.00 plus the cost of the report |
| Out of Network Fee | 10% of invoice, capped at $350.00, per occurrence |
| Subrogation | 20 % of Amounts Recovered |

| LESSOR MERCHANTS FLEET MANAGEMENT | CUSTOMER CLAIRE'S STORES, INC. |
|---|---|
| By: _(signature)_ | By: _(signature)_ |
| Name: Gary Singer | Name: Colleen Collins |
| Title: Chairman of the Board | Title: Executive Vice President Stores |
| Date: 4/23/19 | Date: 4/17/19 |

Page 1 of 1