**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|   |   |   |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (BLS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**DECLARATION OF WILLIAM L. TRANSIER
IN SUPPORT OF CONFIRMATION OF THE FIRST
AMENDED JOINT CHAPTER 11 PLAN OF CLAIRE'S HOLDINGS
LLC AND ITS DEBTOR AFFILIATES (TECHNICAL MODIFICATIONS)**

I, William L. Transier, hereby declare under penalty of perjury that the following statements are true and correct to the best of my knowledge, information, and belief.

**Summary of Declaration**

1. I am a member of the board of directors (the "Board") of Claire's Holdings LLC ("Claire's Holdings" and, together with its affiliated debtor and debtor-in-possession, collectively, the "Company" or the "Debtors") and the Board's Special Committee, I submit this declaration ("Declaration") in support of the *First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and its Debtor Affiliates (Technical Modifications)* [Docket No. 688] (as may be amended, supplemented, or otherwise modified from time to time, the "Plan").[2]

2. In particular, I offer this Declaration to (a) advise the Bankruptcy Court that, following an investigation and due deliberation, the Special Committee has unanimously

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are: Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343). The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan.

1

concluded that the Debtors' release of all Claims and Causes of Actions related to the D&O Release Parties (as defined herein) owned by or belonging to the Debtors is reasonable under the circumstances, appropriate, and in the best interests of the Debtors, their estates, and their stakeholders, (b) describe the process the Special Committee undertook in reaching its conclusion, and (c) explain the reasoning behind the Special Committee's conclusion.

## Professional Background and Qualifications

3. Since May 14, 2025, I have served as an independent and disinterested manager (an "Independent Manager" and together with David Barse, the "Independent Managers") of the Board.

4. In 2015, I founded, and currently serve as Chief Executive Officer of Transier Advisors, LLC, an independent advisory firm providing services to companies facing financial distress, suboptimal operational situations, turnaround, restructuring or in need of interim executive or board leadership.

5. I served from September 2006 until December 2014 as Chairman, Chief Executive Officer and President of Endeavour International Company, an international oil and gas exploration and production company with dual public listings on NYSE and London Stock Exchanges, and as its Founder, Chairman and Co-Chief Executive Officer from its formation in February 2004 through September 2006. Prior to that, I served as Executive Vice President and Chief Financial Officer of Ocean Energy, Inc., a NYSE listed international oil and gas company, and its predecessor, Seagull Energy Corporation from May 1996 to April 2003. Prior to that, I was an audit partner and leader of KPMG's global energy practice from 1986 to 1996.

6. I served on the board of numerous private and public companies and served as a Chief Financial Officer, Chairman, and Chief Executive Officer of various publicly traded

2

companies. I have extensive management and board leadership experience, including serving as an independent director in roles such as non-executive chairman, lead director, and audit and compensation committee chairman, as well as serving on special committees.

7. I held management and leadership roles for a variety of corporations, including debtors in large, complex chapter 11 cases. These roles include, by way of example, serving as an independent director of: (a) Tupperware Brands Corporation, where I served as chair of the audit committee and as a member of the transformation committee; (b) Waypoint Leasing Holdings Ltd.; (c) Westinghouse Electric Company, LLC, where I also served as chair of the compensation and audit committees and as a member of the special committee of the company's board of directors; (d) Altera Infrastructure Holdings LLC, where I served as chair of the audit committee and member of the restructuring committee; (e) Emerge Energy Services LP, where I served as chair of the audit committee and member of special restructuring committee; (f) Paragon Offshore PLC; (g) Chisholm Oil and Gas Holdings, LLC; (h) Salt Creek Midstream, LLC, where I also served as a member of the special committee of the company's board of directors; (i) Sears Holdings Corporation, where I also served as a member of the special committee of the company's board of directors; (j) Exide Holdings, Inc., where I also served as a member of the special committee of the company's board of directors and chair of the audit committee; and (k) Air Methods Corporation, where I also served as a member of the special committee of the company's board of directors and chair of the audit committee.

8. I currently serve as Chairman of the board of directors of Helix Energy Solutions Group, Inc., a NYSE listed company, and a member of the board of directors of GoHealth, Inc., a NASDAQ listed company, where I serve as chair of the nominating and corporate governance committee and a member of the audit committee and transformation committee. I have previously

served on the public company boards of Tupperware Corporation, Express Inc., Battalion Oil Corporation, M3-Brigade Acquisition III Corp, Exela Technologies, Sears Holding Corporation, Teekay Offshore Partners L.P., Gastar Exploration, Inc., CHC Group Ltd., and Paragon Offshore plc.

9. I received my undergraduate degree from University of Texas at Austin and obtained a Master of Business Administration degree from Regis University and an M.A. in Theological Studies from Dallas Baptist University.

10. I am over the age of 18 and authorized to submit this Declaration in support of the Plan. If I were called upon to testify, I could and would testify competently to the facts set forth herein. Except as otherwise indicated, all facts set forth in this Declaration are based on my personal knowledge, my discussions with members of the Debtors' management team, the Debtors' legal counsel, other advisors, and Katten Muchin Rosenman LLP ("Katten"), serving as independent counsel to the Debtors at the sole discretion of the Independent Managers, and my review of relevant documents and information concerning the Investigation (as defined herein).

11. For the avoidance of doubt, I do not, and do not intend to, waive the attorney-client privilege or any other applicable privilege or protection by submitting this Declaration.

**Appointment to the Board and Special Committee**

12. On May 14, 2025, the Company appointed the Independent Managers to serve as independent and disinterested managers to assist the Board with exploring, negotiating, evaluating, and executing potential strategic and value-maximizing transactions.[3]

---

[3] On June 1, 2025, the Independent Managers were appointed to the boards of the following Debtor entities and were appointed to special committees of such boards: (i) Claire's Stores, Inc.; (ii) Claire's Puerto Rico Corp.; (iii) CBI Distributing Corp.; (iv) Claire's Boutiques, Inc.; (v) Claire's Canada Corp., (vi) BMS Distributing Corp.; (vii) CSI Canada LLC; (viii) CLSIP Holdings LLC; (ix) CLSIP LLC; (x) Claire's Swiss Holdings LLC; and (xi) Claire's Swiss Holdings II LLC. On August 5, 2025, the Independent Managers were appointed to the board of Claire's (Gibraltar) Holdings Limited and were appointed to a special committee of such board.

13. Contemporaneously with the appointment of the Independent Managers, the Board, as well as the boards of certain of the Company's other subsidiaries, unanimously adopted resolutions forming a Special Committee consisting solely of the Independent Managers, and delegating to it certain powers and authorities including, among other things, authority to, among other things, investigate matters in which a conflict of interest exists or is reasonably likely to exist between the Companies, on the one hand, and any of their affiliates, subsidiaries, directors, managers, and officers, or other stakeholders, on the other hand.

14. In accordance with this authority, and prior to the commencement of the chapter 11 cases, the Special Committee initiated a privileged and confidential independent investigation to determine whether the Debtors or their estates hold any potentially viable claims or causes of action (collectively, "Claims") that are worthy of pursuit or maintenance in the context of the chapter 11 cases, against the Debtors' current or former directors, officers, shareholders, insiders, affiliates, lenders, and any other parties (including third parties) (the "Independent Investigation").

15. On July 23, 2025, the Debtors retained Katten to render independent legal services at the sole discretion of the Independent Managers, to conduct the Independent Investigation and to provide advice and legal services in connection with the exercise of the Independent Managers' fiduciary duties. The Special Committee selected Katten as independent special counsel based on the firm's prior engagements and expertise representing disinterested directors in complex chapter 11 cases, and in particular the lead attorneys from Katten working on this matter, including Steven J. Reisman, Cindi M. Giglio, and Lucy F. Kweskin. In hiring Katten, the Special Committee relied on the fact that the lead attorneys from Katten working on this matter are widely regarded as market leaders in the representation of independent directors and advisors and, in

recent years, have represented independent directors and advisors in some of the largest and most complex chapter 11 cases throughout the United States and in confidential out-of-court restructuring matters.

16. Since Katten's engagement in July 2025, the Independent Managers, with the assistance of Katten, have been conducting a thorough investigation into potential claims and causes of action against the Sale Release Parties (the "Sale Investigation") and into any viable or valuable claims or causes of action worthy of pursuit against the D&O Release Parties (as defined herein) (the "Plan Investigation," and together with the Sale Investigation, the "Investigation").

## The Sale Investigation

17. On August 20, 2025, the Debtors filed a motion seeking approval of an asset purchase agreement between AWS Claire's, LLC and the Company, pursuant to which AWS Claire's, LLC agreed to purchase certain of the Debtors' assets as part of a going-concern sale transaction (the "Sale").

18. In connection with the Sale, the Debtors agreed, subject to the Special Committee's investigation, to release (i) the lenders under the Debtors' ABL Facility, (ii) lenders holding a majority of the Priority Term Loans, (iii) lenders holding a majority of the Existing Term Loans, and (iv) each of the foregoing's related parties (i) – (iv) (collectively, the "Sale Release Parties").

19. Following the Sale Investigation, the Special Committee concluded that (a) the Debtors did not have viable and valuable Claims against the Sale Release Parties that would warrant the time, expense, and uncertainty associated with the pursuit or maintenance of such Claims, (b) the Sale Release Parties' consent to the sale constituted valuable consideration and supported a value-maximizing going-concern sale, and (c) it supported the approval of the release

6

of the Sale Release Parties. In connection with the Sale, I submitted the *Declaration of William L. Transier in Support of Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Sale of Going-Concern Assets Free and Clear of all Liens, Claims, Encumbrances and Other Interests and (II) Granting Related Relief)* [Docket No. 407].

20.     On September 10, 2025, the Bankruptcy Court entered the *Order (I) Authorizing and Approving the Sale of Going-Concern Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests and (II) Granting Related Relief* [Docket No. 427] (the "Sale Order") approving an asset purchase agreement between AWS Claire's, LLC and the Company. On September 18, 2025, the Sale closed.

**Plan Investigation**

21.     Article VIII.B. of the Plan provides for, subject to the Special Committee's investigation, the release by the Debtors and their Estates (the "Debtor Release") of all current officers and current and former directors of the Debtors (the "D&O Release Parties").[4]  For the avoidance of doubt, the D&O Release Parties do not include Former Officers of the Debtors (in their capacity as such).

22.     In connection with the Plan, the Independent Managers have conducted the Plan Investigation into whether the Debtors hold any viable or valuable claims or causes of action worthy of pursuit against the D&O Release Parties.

23.     The scope of the Investigation is broad. At the Special Committee's direction, Katten submitted more than 50 categories of diligence requests to the Company, seeking documents and information relevant to the Investigation. These requests covered a broad range of

---

[4]     The D&O Release Parties also include certain of the Sale Release Parties who already received releases in connection with the Sale.

materials, including board materials and minutes, corporate formation and governance documents, transaction documents, debt documents, and financial information. In response, Katten received and reviewed more than 1,000 documents from the Company. At the Special Committee's direction, Katten also interviewed seven parties including current and former directors, officers, and advisors of the Company. It is my understanding that the Company, its management team, and its advisors fully cooperated with Katten's requests and inquiries.

24. The Independent Managers maintained regular communications with Katten to direct the Investigation and to obtain updates on its workstreams, progress, and findings. During meetings of the Special Committee regarding the Investigation, the Independent Managers were actively engaged, drawing on their experience to ask questions about the facts being developed and potentially applicable legal theories. These meetings were held in addition to the Independent Managers' participation in separate Board and Special Committee meetings concerning the Debtors' business operations, the Sale, and the administration of the Debtors' chapter 11 cases.

25. The Special Committee, with the assistance of Katten, conducted a thorough analysis to determine whether the Debtors possess any colorable and potentially viable Claims against the D&O Release Parties that are worthy of pursuit or maintenance in the context of the chapter 11 cases.

26. After investigation, analysis, and due deliberation, the Special Committee has concluded that the Debtors' estates do not have any viable and valuable Claims against the D&O Release Parties that would warrant the time, expense, and uncertainty associated with the prosecution or maintenance of such Claims.

**Evaluation of the D&O Release Parties**

27. In my role as an Independent Manager, I have reviewed the reasonableness and appropriateness of the Debtor Release. As set forth more fully below, I have concluded that the Debtor Release is reasonable under the circumstances, appropriate, justified, in the best interests of the Debtors, their Estates, and all of the Debtors' stakeholders, and an integral part of the Plan.

28. *First*, the Special Committee has concluded that the Debtors do not have viable and valuable Claims against the D&O Release Parties that would warrant the time, expense, and uncertainty associated with the pursuit or maintenance of such Claims. This conclusion is based on the Special Committee's evaluation of the facts and circumstances of relevant transactions, analyses of the merits of any potential estate causes of action, and whether the costs and burdens of litigation justify pursuit of such estate causes of action.

29. *Second*, the Debtors' stakeholders, including the Committee, who have been conducting their own investigation of the D&O Release Parties, support the Debtor Release.

30. *Third*, I believe that the Debtor Release is given in exchange for valuable consideration provided by the D&O Release Parties, including those current directors and officers who have provided critical contributions including facilitating the Sale and the Debtors' chapter 11 process, as described further in the *Declaration of William C. Kosturos in Support of (I) Final Approval of the Disclosure Statement and (II) Confirmation of the First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates (Technical Modifications)* filed contemporaneously herewith.

31. *Fourth*, I believe that the Debtor Release is appropriately tailored in light of, among other things, the value provided by the D&O Release Parties to the Debtors' Estates, the critical

nature of the Debtor Release to the Plan, the carve-out of actual fraud and willful misconduct, and the exclusion of the Former Officers (in their capacity as such).

32. Based on the foregoing, I believe that entry into the Debtor Release constitutes a valid exercise of the Debtors' reasonable business judgment and represents a valid and good-faith settlement and compromise of the Claims and Causes of Action released by the Debtors and should be approved.

33. After considering all relevant factors, the Independent Mangers, unanimously concluded that (a) it is reasonable under the circumstances for the Debtors to grant the releases of D&O Release Parties contained in the Debtor Release, (b) the Debtor Release has been provided in exchange for good and valuable consideration from the D&O Release Parties, (c) the Debtor Release is in the best interests of the Debtors, the Estates, and Holders of Claims and Interests, and (d) the Debtor Release is fair, equitable, and reasonable.

34. For these reasons, as an Independent Manager of the Board and member of the Special Committee, I support the approval of the Debtor Release as part of confirmation of the Plan.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: October 21, 2025
                                           */s/ William L. Transier*
                                           William L. Transier
                                           Independent Manager of Claire's Holdings, LLC