**Exhibit A**

**Revised Confirmation Order**

RLF1 34083877V.1

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (BLS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
|  | ) | **Re: Docket No. 185, 408, 412, 429, 688** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER APPROVING THE DEBTORS' DISCLOSURE STATEMENT FOR, AND CONFIRMING THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF CLAIRE'S HOLDINGS LLC AND ITS DEBTOR AFFILIATES (TECHNICAL MODIFICATIONS)

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), having:[2]

    a. commenced, on August 6, 2025 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

    b. continued to operate and manage their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

    c. filed, on August 19, 2025, (a) the *Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No. 185], (b) the *Disclosure Statement for the Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No. 186], and (c) the *Motion of Debtors for Entry of an Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving (A) the Solicitation and Voting*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are: Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343). The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

[2] All capitalized terms used but otherwise not defined in these findings of fact, conclusions of law, and order (collectively, this "Confirmation Order") have the meanings given to them in the *First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates (Technical Modifications)*, attached hereto as **Exhibit A** (the "Plan") or the Conditional Disclosure Statement Order (as defined below), as applicable. The rules of interpretation set forth in Article I.B of the Plan shall apply to this Confirmation Order.

*Procedures and (B) the Forms of Ballots and Notices In Connection Therewith, (III) Scheduling a Combined Hearing and Setting Related Dates and Deadlines, and (IV) Granting Related Relief* [Docket No. 187] (the "Disclosure Statement Motion");

d. filed, on August 20, 2025, the *Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Sale of Going-Concern Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests and (II) Granting Related Relief* [Docket No. 190] (the "Sale Motion");

e. obtained, on September 8, 2025, entry of (a) the *Final Order (I) Authorizing the Debtors to Assume the Agency Agreement, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances, (III) Modifying Customer Programs at the Closing Stores, and (IV) Granting Related Relief* [Docket No. 373] (the "Final Store Closing Order") and (b) the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(B)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(B)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof* [Docket No. 367] (the "Bar Date Order");

f. filed, on September 8, 2025, the *First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No. 408];

g. filed, on September 9, 2025, the *Disclosure Statement for the First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* (the "Disclosure Statement") [Docket No. 412];

h. obtained, on September 9, 2025, entry of the *Order (I) Conditionally Approving the Adequacy of the Disclosure Statement, (II) Approving  (A) the Solicitation and Voting Procedures and (B) the Forms Of Ballots and Notices In Connection Therewith, (III) Scheduling a Combined Hearing and Setting Related Dates and Deadlines, and (IV) Granting Related Relief* [Docket No. 416] (the "Conditional Disclosure Statement Order"), approving on an interim basis, among other things, solicitation procedures and related notices (the "Solicitation and Voting Procedures"), forms, and the Ballots (collectively, the "Solicitation Packages");

i. obtained, on September 9, 2025, entry of the *Final Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Utilize Cash Collateral, (II) Granting Liens and Superpriority Administrative Expense Claims, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 419] (the "Final DIP Order");

j. filed, on September 10, 2025, the *Notice of Hearing to Consider (I) Final Approval of the Disclosure Statement and (II) Confirmation of the Debtors' Joint Chapter 11 Plan* [Docket No. 426] (the "Combined Hearing Notice");

k. obtained, on September 10, 2025, entry of the *Order (I) Authorizing and Approving the Sale of Going-Concern Assets Free and Clear of All Liens, Claims, Encumbrances and Other Interests and (II) Granting Related Relief* [Docket No. 427] (the "Sale Order");

l.  caused the Combined Hearing Notice to be published in *The New York Times* on September 11, 2025, as evidenced by, among other things, the *Proof of Publication* [Docket No. 438] (the "Publication Affidavit");

m.  caused the Solicitation Packages, the Non-Voting Status Notices (as defined in the Conditional Disclosure Statement Order), and the Combined Hearing Notice to be distributed on or before September 15, 2025, in accordance with the Conditional Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service of Solicitation Materials* [Docket No. 527] (the "Solicitation Affidavit" and together with the Publication Affidavit, the "Affidavits") and the Voting Report (as defined below);

n.  filed, on October 7, 2025, the initial plan supplement [Docket No. 618] (as amended, modified, or supplemented from time to time, the "Plan Supplement") and the *Notice of Filing of Plan Supplement* [Docket No. 618];

o.  filed, on October 13, 2025, the *Second Plan Supplement for the First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates* [Docket No. 629] and the *Notice of Filing of Second Plan Supplement* [Docket No. 629];

p.  filed, on October 21, 2025, the *First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates (Technical Modifications)* [Docket No. 688];

q.  filed, on October 21, 2025, the *Third Plan Supplement for the First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates (Technical Modifications)* [Docket No. 690] and the *Notice of Filing of Third Plan Supplement* [Docket No. 690];

r.  caused to be filed, on October 21, 2025, the *Declaration of Jeriad R. Paul with Respect to the Tabulation of Votes on the First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates (Technical Modifications)* [Docket No. 691] (as may be amended, modified, or supplemented, the "Voting Report");

s.  filed, on October 21, 2025, the *Declaration of William C. Kosturos, Managing Director of Alvarez & Marsal North America LLC, in Support of (I) Final Approval of the Disclosure Statement and (II) Confirmation of the First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates (Technical Modifications)* [Docket No. 692] (the "Kosturos Declaration");

t.  filed, on October 21, 2025, the *Declaration of William L. Transier in Support of Confirmation of the First Amended Joint Chapter 11 Plan of Claire's Holdings LLC and Its Debtor Affiliates (Technical Modifications)* [Docket No. 693] (the "Transier Declaration);

u.  filed, on October 21, 2025, the *Debtors' Memorandum of Law in Support of an Order (I) Approving the Debtors' Disclosure Statement on a Final Basis and (II) Confirming the Debtors' First Amended Joint Chapter 11 Plan (Technical Modifications)* [Docket No. 694] (the "Confirmation Brief"); and

This Bankruptcy Court having:

    a.   entered, on September 9, 2025, the Conditional Disclosure Statement Order;

    b.   set October 14, 2025, at 4:00 p.m., prevailing Eastern Time, as the deadline for filing objections to the Disclosure Statement and the Plan (the "Objection Deadline");

    c.   set October 14, 2025, at 4:00 p.m., prevailing Eastern Time, as the deadline by which all Ballots and Opt-In Forms must be properly executed, completed, and submitted so that they are actually received (the "Voting Deadline") by Omni Agent Solutions (the "Solicitation Agent");

    d.   set October 29, 2025, at 2:00 p.m., prevailing Eastern Time, as the date and time for the Combined Hearing pursuant to rules 3017 and 3018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and sections 1126, 1128, and 1129 of the Bankruptcy Code;

    e.   considered the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Brief, the Kosturos Declaration, the Transier Declaration, the Voting Report, the Combined Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

    f.   held the Combined Hearing;

    g.   heard the statements and arguments made by counsel in respect of final approval of the Disclosure Statement and Confirmation of the Plan and the objections thereto;

    h.   considered all oral representations, affidavits, testimony, documents, filings, and other evidence regarding approval of the Disclosure Statement and Confirmation of the Plan and having admitted the same into evidence at the Combined Hearing;

    i.   overruled any and all objections to the final approval of the Disclosure Statement and to Confirmation of the Plan and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein; and

    j.   considered the pleadings and other documents filed and all evidence and arguments proffered or otherwise presented with respect to the final approval of the Disclosure Statement and the Confirmation of the Plan.

NOW, THEREFORE, the Bankruptcy Court having found that notice of the Combined Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and Confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the

Bankruptcy Court having found that the record of these Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and Confirmation of the Plan and all evidence proffered or adduced establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact and conclusions of law, and orders:

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

IT IS HEREBY DETERMINED FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.    Findings of Fact and Conclusions of Law**

1.    The findings of fact and the conclusions of law set forth and incorporated in this Confirmation Order and on the record of the Combined Hearing (which are incorporated into this Confirmation Order by this reference) constitute the Bankruptcy Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.   Each finding of fact set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.   Each conclusion of law set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

**B.    Jurisdiction, Venue, Core Proceeding**

2.    The Bankruptcy Court has subject matter jurisdiction over this matter under sections 157 and 1334 of title 28 of the United States Code, 28 U.S.C. §§ 1–4881 (the "<u>Judicial Code</u>"), and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.   The Bankruptcy Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed,

respectively.  Venue is proper before the Bankruptcy Court pursuant to sections 1408 and 1409 of the Judicial Code.  Approval of the Disclosure Statement and Confirmation of the Plan are core proceedings within the meaning of section 157(b)(2) of the Judicial Code.

**C.      Eligibility for Relief**

3.      The Debtors were at all times during these Chapter 11 Cases and continue to be entities eligible for relief under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

**D.      Commencement and Joint Administration of these Chapter 11 Cases**

4.      On the Petition Date, each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  On August 7, 2025, the Bankruptcy Court entered an order [Docket No. 79] authorizing the procedural consolidation and the joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  Since the Petition Date, the Debtors have operated their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

**E.      Committee Appointment**

5.      On August 15, 2025, the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 154], as subsequently amended on August 21, 2025 [Docket No. 216], (the "Committee").

**F.      Objections**

6.      This Bankruptcy Court takes judicial notice of the docket of these Chapter 11 Cases maintained by the clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed and orders entered thereon.  The Bankruptcy Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the

Bankruptcy Court during the pendency of these Chapter 11 Cases.  Any resolution of objections to Confirmation explained on the record in these Chapter 11 Cases is hereby incorporated by reference.  All unresolved objections, statements, informal objections, and reservations of rights (except with respect to unresolved cure amounts), if any, related to the Disclosure Statement or Confirmation of the Plan are overruled on the merits.

**G.    Plan Supplement**

7.    The documents identified in the Plan Supplement were filed as required and notice of such documents was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was in compliance with the provisions of the Plan, the Conditional Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.  All parties required to be given notice of the documents identified in the Plan Supplement have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  The transmittal and notice of the Plan Supplement (and all documents identified in the Plan Supplement) was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was conducted in good faith.  No other or further notice with respect to the Plan Supplement (and all documents identified in the Plan Supplement) is necessary or shall be required.  All documents included in the Plan Supplement are integral to, part of, and incorporated into the Plan.  Subject to the terms of the Plan (including the review and consent rights of certain parties as set forth in the Plan), the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement in accordance with the terms of Article X of the Plan, this Confirmation Order, the Bankruptcy Code, and the Bankruptcy Rules.

**H.    Conditional Disclosure Statement Order**

8.    On September 9, 2025, the Bankruptcy Court entered the Conditional Disclosure Statement Order, which, among other things, (a) approved, on an interim basis (i) the Disclosure

Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (ii) the Solicitation and Voting Procedures, and (iii) the Solicitation Packages; (b) set October 14, 2025 at 4:00 p.m., prevailing Eastern Time, as the Objection Deadline, (c) set October 14, 2025 at 4:00 p.m., prevailing Eastern Time, as the Voting Deadline, and (d) set October 29, 2025 at 2:00 p.m., prevailing Eastern Time, as the date and time for the Combined Hearing. The period during which the Debtors solicited acceptances to the Plan is a reasonable and adequate period of time for Holders of Claims in the Voting Classes to have made an informed decision to accept or reject the Plan.

**I.    Adequacy of the Disclosure Statement**

9.    The Disclosure Statement contains extensive material information regarding the Debtors so that parties entitled to vote on the Plan could make informed decisions regarding the Plan. The Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code and complies with any additional applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and non-bankruptcy law. The Debtors' solicitation of acceptances and rejections of the Plan via transmittal of the Disclosure Statement and the other materials in the Solicitation Packages was authorized by and complied with the Conditional Disclosure Statement Order and was appropriate under the circumstances.

**J.    Solicitation and Notice**

10.    The Plan was solicited in good faith and in compliance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

11.    As described in the Voting Report, the Solicitation Packages were transmitted and served in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Conditional Disclosure Statement Order. The solicitation of votes on the Plan complied with

the Solicitation and Voting Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, was conducted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code, and was in compliance with sections 1125, 1126, and all other applicable sections of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

12.    As described in the Voting Report and the Affidavits, all parties required to be given notice of the Combined Hearing (including the deadline for filing and serving objections to approval of the Disclosure Statement and Confirmation of the Plan) have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.    Such notice was adequate and sufficient pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

**K.    Voting Report**

13.    Prior to the Combined Hearing, the Debtors filed the Voting Report.    As set forth in the Voting Report, the procedures used to tabulate the Ballots were fair, in good faith, and conducted in accordance with the Conditional Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

14.    As set forth in the Plan, Holders of Claims in Class 3 and Class 4 (the "Voting Classes") for each of the Debtors were eligible to vote on the Plan pursuant to the Solicitation and Voting Procedures.    In addition, Holders of Claims in Classes 1 and 2 are Unimpaired and conclusively presumed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan.    Depending on their ultimate treatment by the Debtors, Holders of Claims and Interests in Classes 6 and 7 are either Unimpaired or Impaired and will be either conclusively presumed to accept or conclusively deemed to reject the Plan, and in either scenario are not entitled to vote on

the Plan. Holders of Claims and Interests in Classes 5, 8, and 9 are Impaired under the Plan and are conclusively deemed to have rejected the Plan.

15.     As evidenced by the Voting Report, the Voting Classes voted to accept the Plan.

**L.      Bankruptcy Rule 3016**

16.     The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The Debtors appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).

**M.      Burden of Proof**

17.     The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.

**N.      Plan Modifications**

18.     Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan after solicitation of the Plan, as reflected in the Plan or in this Confirmation Order (including any modifications announced on the record of the Combined Hearing) (the "Plan Modifications"), constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims or their authorized representatives, or modifications that do not otherwise materially or adversely affect or change the treatment of any other Claim under the Plan. Subsequent to filing the solicitation version of the Plan [Docket No. 429] on September 10, 2025, the Debtors made certain Plan Modifications, which are reflected in the version of the Plan attached hereto as **Exhibit A**. The Plan Modifications were made to address objections and informal comments received from various parties in interest and to reflect the full satisfaction of certain Claims following the closing of the Sale Transaction. The Plan Modifications do not materially or adversely affect the treatment of any Claim against or Interest in any of the Debtors under the

Plan. After giving effect to the Plan Modifications, the Plan continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code, and notice of the Plan Modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases. In accordance with Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims be afforded an opportunity to cast new votes on the Plan or change previously cast acceptances or rejections of the Plan.

19.     No Holder of a Claim who has voted to accept the Plan shall be permitted to change its vote as a consequence of the Plan Modifications. Accordingly, the Plan is properly before the Bankruptcy Court and all votes cast with respect to the Plan prior to such Plan Modifications shall be binding and shall apply with respect to the Plan. All Holders of Claims who voted to accept the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan as modified, revised, supplemented, or otherwise amended, and all Holders of Claims and Interests who are conclusively deemed to have rejected the Plan are deemed to have rejected the Plan as modified, revised, supplemented, or otherwise amended.

**O.     Compliance with the Bankruptcy Code (11 U.S.C. §§ 1125 and 1127)**

20.     The Debtors have complied with section 1125 of the Bankruptcy Code with respect to the Disclosure Statement and the Plan. The requirements of section 1127 of the Bankruptcy Code have been satisfied.

**P.     Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129)**

21.     The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code.

a) **Compliance with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

22.     The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code.  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

   i.     **Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).**

23.     The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code, and the classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. Article III of the Plan provides for the separate classification of Claims and Interests into nine (9) Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, Priority Tax Claims, Professional Fee Claims, and payment of U.S. Trustee statutory fees, which are addressed in Article II and Article XII.C of the Plan and which are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan.  The classifications were not promulgated for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests.  In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  The Plan, therefore, satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

   ii.     **Specified Unimpaired and Impaired Classes (11 U.S.C. §§ 1123(a)(2) and 1123(a)(3)).**

24.     The Plan satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims in Classes 1 and 2 are Unimpaired.  Article III of the

Plan also specifies the treatment of the Impaired Classes entitled to vote on the Plan, which are Classes 3 and 4. Holders of Claims and Interests in Classes 6 and 7 are presumed to accept or deemed to reject the Plan depending on whether such Claims or Interests are reinstated or canceled and released without any Plan Distribution on account of such Claims or Interests. Holders of Claims and Interests in Classes 5, 8, and 9 are Impaired under the Plan and are conclusively deemed to have rejected the Plan.

### iii.    No Discrimination (11 U.S.C. § 1123(a)(4)).

25.    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. Article III of the Plan provides the same treatment for each Claim or Interest within a particular Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.

### iv.    Implementation of the Plan (11 U.S.C. § 1123(a)(5)).

26.    The Plan and the various documents included in the Plan Supplement (collectively, the "Plan Documents") satisfy the requirements of section 1123(a)(5) of the Bankruptcy Code. The Plan and the Plan Documents provide adequate and proper means for the Plan's implementation, including by providing for, among other things, consummation of the Wind-Down Transactions, the creation of the Liquidating Trust, and the appointment of the Liquidating Trustee.

### v.    Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).

27.    The Plan does not provide for the issuance of equity or other securities by the Debtors or the Liquidating Trust. Accordingly, the requirements of section 1123(a)(6) of the Bankruptcy Code are inapplicable in these Chapter 11 Cases.

### vi.    Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).

28.    The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. Article IV of the Plan provides that, on the Effective Date and upon the Debtors causing the Liquidating Trust Assets to be transferred to the Liquidating Trust, the Debtors' existing directors and officers shall be deemed to have resigned, and the Liquidating Trustee shall act as the exclusive representative of the Estates for all purposes and as the sole officer and director of each of the post-Effective Date Debtors.  The Plan further provides that the Liquidating Trustee shall have the sole authority to act on behalf of the Liquidating Trust in accordance with its fiduciary duties.

### vii.    Discretionary Contents of the Plan (11 U.S.C. § 1123(b)).

29.    The Plan satisfies the requirements of section 1123(b) of the Bankruptcy Code.  The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code.

### (a)    Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).

30.    Upon the occurrence of the Effective Date, Article V.A of the Plan provides that, except as otherwise provided in the Plan, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected by the applicable Debtor, unless otherwise agreed by the applicable counterparty, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that:  (a) are specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, or are identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (b) have been previously assumed, assumed and assigned (including to another third party, as applicable, through the Asset Purchase Agreement in connection with any Sale Transaction), or rejected by the Debtors pursuant to any Bankruptcy Court order; (c) are the subject of a Filed motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or

of a Filed objection with respect thereto) that is pending on the Confirmation Date; (d) are the subject of a pending notice to assume (or assume and assign) by the Debtors pursuant to the procedures established by the *Order (I) Authorizing and Approving Procedures to Reject or Assume Executory Contracts and Unexpired Leases and (II) Granting Related Relief* [Docket No. 363] (the "Assumption/Rejection Order"); or (e) are an Insurance Policy (including, for the avoidance of doubt, any D&O Liability Insurance Policies).

31.     Neither the Plan nor this Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Sale Order to assume and assign Executory Contracts and Unexpired Leases.  Notwithstanding anything to the contrary in the Plan, this Confirmation Order, or any other Final Order, the Debtors may amend or otherwise modify the Schedule of Assumed Executory Contracts and Unexpired Leases prior to the Effective Date to (a) designate an Executory Contract previously not included on the Schedule of Assumed Executory Contracts and Unexpired Leases for assumption or assumption and assignment or (b) remove an Executory Contract previously included on the Schedule of Assumed Executory Contracts and Unexpired Leases for assumption and assignment; *provided* that, solely with respect to Unexpired Leases of nonresidential real property, the Debtors shall provide notice of such designation or removal prior to the Confirmation Date or such later date as the applicable counterparty to an Unexpired Lease of nonresidential real property consents in writing; *provided*, *further*, that, notwithstanding anything to the contrary in the Plan, this Confirmation Order, or any other Final Order, no Unexpired Lease of nonresidential real property shall be assumed and assigned under the Plan and the terms of any proposed assumptions and assignments of such leases shall be governed by the Sale Order.

32.    Notwithstanding the foregoing, with respect to the Executory Contracts of Workday, Inc. and its affiliates (collectively, "Workday" and such contracts, the "Workday Contracts"), (a) nothing in the Plan, Plan Supplements, or this Confirmation Order shall alter or diminish the Debtors' obligation to pay Workday for postpetition services rendered under the Workday Contracts as an Administrative Claim to be paid on the Effective Date, (b) the Debtors and Workday agree that the deadline to assume or reject the Workday Contracts is extended to December 31, 2025, and (c) Workday reserves all rights with respect to the cure amounts for the Workday Contracts.

33.    For the avoidance of doubt, any counterparty to an Unexpired Lease of nonresidential real property that the Debtors designate for rejection after the Voting Deadline shall be permitted to submit an Opt-In Form within fourteen (14) days of notice of the Debtors' rejection of such Unexpired Lease of nonresidential real property and any such Opt-In Form shall be deemed timely submitted.

34.    The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims or Interests, and other parties in interest in these Chapter 11 Cases.

    **(b)**    **Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)).**

35.    **Debtor Release.**  Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Article VIII.B of the Plan (the "Debtor Release").  The Debtor Release is an

essential component of the Plan.  The scope of the Debtor Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases.  The Debtor Release is given and made after due notice and opportunity for hearing.

36.     The Debtor Release represents a valid exercise of the Debtors' business judgment and is the result of a good-faith and arm's-length negotiation between sophisticated parties that had representation from able counsel and advisors.  As described in the Transier Declaration, the Debtor Release appropriately offers protection to parties that participated in the Debtors' chapter 11 process, and such participation in these Chapter 11 Cases is critical to the Debtors' emergence from bankruptcy.  Each of the Released Parties shares a common goal with the Debtors in seeing the Plan succeed and implementing the transactions contemplated in the Plan.  The evidence establishes that the Debtors conducted a thorough analysis of the Debtors' claims and causes of action in determining to grant the Debtor Release and that the Debtors have satisfied the business judgment standard in granting the Debtor Release under the Plan.

37.     Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (a) in exchange for the good and valuable consideration provided by the Released Parties, including, the Released Parties' contribution to facilitating the Wind-Down Transactions and implementing the Plan; (b) a good-faith settlement and compromise of the Claims released by the Debtor Release; (c) in the best interests of the Debtors, their Estates, the Liquidating Trust, and all Holders of Claims and Interests; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for a hearing; and (f) a bar to any of the Debtors, the Liquidating

Trustee, or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release, excluding, for the avoidance of doubt, any Non-Released Former Officer Claims.

38.    **Releases by Holders of Claims and Interests.**    Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Article VIII.C of the Plan (the "Third-Party Release").   The Third-Party Release is given and made after due notice and opportunity for hearing.

39.    The Third-Party Release is consensual with respect to the Releasing Parties. The Ballots sent to all Holders of Claims and Interests entitled to vote, the Notices of Non-Voting Status sent to Holders of Claims and Interests not entitled to vote, and the Combined Hearing Notice sent to parties in interest unambiguously provided in bold letters that the Third-Party Release was contained in the Plan.  Such parties in interest were provided due and adequate notice of these Chapter 11 Cases, the Plan, the Third-Party Release, the deadline to object to Confirmation of the Plan, the opportunity to opt in to the Third-Party Release, and were properly informed that the Holders of Claims against or Interests in the Debtors that voted in favor of the Plan and checked the "Opt In" box on their timely submitted Ballot, voted against the Plan but checked the "Opt In" box on their timely submitted Ballot, or didn't vote on the Plan but checked the "Opt In" box on their timely submitted Opt-In Form, would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release of all Claims and Causes of Action, excluding, for the avoidance of doubt, any Non-Released Former Officer Claims, against the Debtors and the Released Parties to the extent set forth in and consistent with the terms of the Plan.   Additionally, the release provisions of the Plan were conspicuous,

emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, and the Opt-In Form. Thus, the Third-Party Release is consensual as to those Releasing Parties that opted into the Third-Party Release as described above.

40. Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Released Parties; (d) a good-faith settlement and compromise of the Claims and Causes of Action released by the Third-Party Release; (e) in the best interests of the Debtors, the Liquidating Trust, and the Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for a hearing; (h) a sound exercise of the Debtors' business judgment; and (i) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.[3]

41. **Exculpation.** Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and authority to approve the exculpation set forth in Article VIII.D of the Plan (the "Exculpation"). The Exculpation is essential to the Plan. The evidence before the Bankruptcy Court demonstrates that the Exculpated Parties owed and complied with their fiduciary duties to the Debtors and their Estates in their willingness and efforts to support the Debtors' Chapter 11 Cases. The Exculpation appropriately affords protection to the

---

[3] Notwithstanding anything to the contrary in the Plan or in this Confirmation Order, any party who mutually agrees with the Debtors in writing (email to be sufficient) to be a Releasing Party shall also be deemed a Releasing Party under the Plan.

Exculpated Parties who participated in and contributed to the Debtors' chapter 11 process consistent with their fiduciary duties, and it is appropriately tailored to protect the Exculpated Parties from, among other things, inappropriate litigation.

42.     **Injunction.**  Sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code permit issuance of the injunction provisions set forth in Article VIII.E of the Plan (the "Injunction") and are within the jurisdiction of this Bankruptcy Court under sections 1334(a), 1334(b), and 1334(d) of the Judicial Code.  The Injunction is essential to the Plan and is necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third-Party Release, and the Exculpation provisions in Article VIII of the Plan.  Such Injunction is appropriately tailored to achieve those purposes.

43.     Except as otherwise provided in herein, as of the Effective Date, all releases, exculpations, and injunctions set forth in the Plan and this Confirmation Order shall be effective and binding on all Persons.  The Plan and this Confirmation Order shall have res judicata, collateral estoppel, and estoppel (judicial, equitable, or otherwise) effect with respect to all matters provided for in, or resolved pursuant to, the Plan and this Confirmation Order, including the release, injunction, and exculpation provisions contained in the Plan and this Confirmation Order. Accordingly, the Plan is consistent with section 1123(b)(3) of the Bankruptcy Code.

44.     **Retention of Retained Causes of Action**.  The Retained Causes of Action, set forth in the Plan Supplement, including, for the avoidance of doubt, any Non-Released Former Officer Claims, are essential to the Plan and appropriate under the facts and circumstances of these Chapter 11 Cases.  Additionally, and in accordance with section 1123(b) of the Bankruptcy Code, the Retained Causes of Action are preserved and transferred to the Liquidating Trust on the Effective Date.

viii.    **Cure of Defaults (11 U.S.C. § 1123(d)).**

45.    Article V.D of the Plan provides for the satisfaction of Cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code.  Any monetary defaults under each Assumed Executory Contract or Unexpired Lease pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date, subject to the limitations described in Article V.D of the Plan, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  Any disputed proposed assumption or cure amount will be determined in accordance with the procedures set forth in Article V.D of the Plan and applicable bankruptcy and non-bankruptcy law.  The assumption and assignment of the Executory Contracts or Unexpired Leases in connection with the Sale Transaction pursuant to the Asset Purchase Agreement is authorized and governed by the Sale Order.  Accordingly, the Plan provides that the Debtors or the Liquidating Trustee will cure defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code.  Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

b)  **The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**

46.    The Debtors, as Plan proponents, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

47.    The Debtors and their agents solicited votes to accept or reject the Plan after the Bankruptcy Court entered the Conditional Disclosure Statement Order approving the Solicitation Packages and Solicitation and Voting Procedures.

48.     The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Conditional Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provision set forth in Article VIII.D of the Plan.

**c)  Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).**

49.     The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan and the Plan Documents in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, the process leading to its formulation, and the transactions to be implemented pursuant thereto.  Consistent with the overriding purpose of chapter 11, these Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to maximize the value of the Debtors' Estates and providing for the creation of the Liquidating Trust on the Effective Date to administer the Liquidating Trust Assets.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, and all the proceedings held in these Chapter 11 Cases and before the Bankruptcy Court.

50.     The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful chapter 11 proceeding for the Debtors. The Plan was the product of extensive negotiations conducted at arm's length among the Debtors and certain of their key stakeholders including, but not limited to, the Committee and the Prepetition Secured Parties.  Further, the Plan's classification, settlement, exculpation, release, and

injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1125(e), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors to consummate a value-maximizing conclusion to these Chapter 11 Cases.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**d)  Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

51.     Payments made or to be made by the Debtors for services or for costs and expenses incurred in or in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, have been approved by, or are subject to the approval of, the Bankruptcy Court as reasonable.   The Plan, therefore, satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

**e)  Directors, Officers, and Insiders (11. U.S.C. § 1129(a)(5)).**

52.     Because the Plan provides for the orderly wind down of the Debtors and resignation of the Debtors' officers, directors, and managers, section 1129(a)(5) of the Bankruptcy Code does not apply.  To the extent section 1129(a)(5) of the Bankruptcy Code applies to the Liquidating Trust, the Debtors have satisfied the requirements of this provision by, among other things, disclosing the identity of the Liquidating Trustee.

**f)  No Rate Changes (11 U.S.C. § 1129(a)(6)).**

53.     The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**g)  Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).**

54.     The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing

establishes that each Holder of Allowed Claims or Interests in each Class will recover as much or more value under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.  The Liquidation Analysis (as attached to the Disclosure Statement as Exhibit B), and the other evidence related thereto, as supplemented by any evidence proffered or adduced at or prior to the Confirmation Hearing, are persuasive and credible.  The Liquidation Analysis demonstrates that recoveries under the Plan are at least as high as they would be in a hypothetical liquidation.  The methodology used and assumptions made in the Liquidation Analysis, as supplemented by any evidence proffered or adduced at or prior to the Confirmation Hearing, are reasonable.  Therefore, Holders of Allowed Claims or Interests will receive or retain under the Plan property of a value that, as of the Effective Date, is not less than the amount they would receive or retain if the Debtors liquidated under chapter 7, thus satisfying the requirements of section 1129(a)(7) of the Bankruptcy Code.

**h) Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**

55.    The Plan satisfies section 1129(a)(8) of the Bankruptcy Code.  Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) are Unimpaired Classes of Claims, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  Class 3 (Prepetition Priority Term Loan Claims) voted to accept the Plan, and Class 4 (Prepetition Existing Term Loan Claims) voted to accept the Plan.  Class 6 (Intercompany Claims) and Class 7 (Intercompany Interests) are not entitled to vote on the Plan, because they are either Unimpaired by the Plan and conclusively presumed to have accepted the Plan or Impaired and deemed to have rejected the Plan.  Class 5 (General Unsecured Claims), Class 8 (Equity Interests in Claire's), and Class 9 (Section 510(b) Claims) are Impaired Classes that are not entitled to vote on the Plan, and are deemed to reject the Plan (together with Classes 6

and 7, the "Deemed Rejecting Classes").  To the extent a Class contains Claims or Interests eligible to vote and no Holder of Claims or Interests eligible to vote in such Class votes to accept or reject the Plan, such Class shall be deemed to have accepted the Plan in accordance with Article III.F of the Plan.  Nevertheless, as set forth below, the Debtors satisfy the requirements under section 1129(b) of the Bankruptcy Code with respect to the Claims that have rejected or are deemed to reject the Plan.

    **i)  Deemed Rejecting Classes (11 U.S.C. § 1129(b)).**

56.     Because the Plan has not been accepted by the Deemed Rejecting Classes, the Debtors seek Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code.  Thus, although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes, as described further below.

    **j)  Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9)).**

57.     The treatment of Administrative Claims, Priority Tax Claims, Other Priority Claims, Professional Fee Claims, and payment of U.S. Trustee statutory fees under Article II, Article III, and Article XII.C of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

    **k)  Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).**

58.     As set forth in the Voting Report, the Voting Classes are Impaired, and the requisite number and amount of Claims specified under the Bankruptcy Code in both of the Voting Classes voted to accept the Plan, determined without including any acceptance of the Plan by any insider

(as that term is defined in section 101(31) of the Bankruptcy Code). As such, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

**l)   Feasibility of the Plan (11 U.S.C. § 1129(a)(11)).**

59.    The evidence proffered or adduced in these Chapter 11 Cases and in the Kosturos Declaration and the Confirmation Brief: (a) is reasonable, persuasive, and credible as of the dates such evidence was prepared, presented, and/or proffered; (b) has not been controverted by other evidence; (c) establishes that the Plan is feasible; and (d) establishes that the Debtors or the Liquidating Trust will have sufficient funds available to meet their obligations under the Plan. The Plan, therefore, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code, to the extent applicable.

**m) Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)).**

60.    Article II and Article XII.C of the Plan provide for the payment of all fees payable by the Debtors under section 1930(a) of the Judicial Code. The Plan, therefore, satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**n)   Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(13), (14), (15), and (16)).**

61.    The Debtors do not owe retiree benefit obligations, any domestic support obligations, are not individuals, and are not nonprofit corporations. Therefore, sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

**o)   Only One Plan (11 U.S.C. § 1129(c)).**

62.    Other than the Plan (including previous versions thereof), no other plan has been filed for the Debtors in these Chapter 11 Cases. The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

**p) Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**

63.     The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, 15 U.S.C. § 77e.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**q) Not a Small Business Case (11 U.S.C. § 1129(e)).**

64.     These Chapter 11 Cases are not small business cases, and accordingly section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**r) Satisfaction of Confirmation Requirements.**

65.     Based upon the foregoing, the Plan satisfies the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

**B.    Implementation**

66.     The Plan, the Plan Documents, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, are in the best interests of the Debtors, their Estates, and the Liquidating Trust, and shall, upon completion of documentation and execution in accordance with the terms and conditions of the Plan, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  The documents and agreements are essential elements of the Plan, and the Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.

**C.    Good Faith Solicitation (11 U.S.C. § 1125(e))**

67.     The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders.  The Plan accomplishes this goal.  Accordingly, the Debtors, the Released Parties, and the Exculpated

Parties have been, are, and will continue to be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, transactions, transfers, and other actions contemplated thereby, regardless of whether such agreements, transactions, transfers, and other actions are expressly stated in this Confirmation Order; and (b) take any actions authorized and directed or contemplated by this Confirmation Order. Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code and the aforementioned parties have also acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provision set forth in Article VIII.D of the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and Plan Distributions and, therefore, are not, and on account of such Plan Distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such Plan Distributions.

**D.    Disclosure:  Agreements and Other Documents**

68.    The Debtors have disclosed all material facts regarding:    (a) the Plan; (b) the sources and Plan Distributions; (c) the adoption, execution, and delivery of all contracts, leases, instruments, releases, and other agreements related to any of the foregoing; (d) the various releases set forth in Article VIII of the Plan; and (e) the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the post-Effective Date Debtors or the Liquidating Trust.

## ORDER

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, JUDGED, AND DECREED THAT:

**A.    Findings of Fact and Conclusions of Law**

69.    The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth in this Confirmation Order and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

**B.    Final Approval of the Disclosure Statement**

70.    The Disclosure Statement is hereby approved on a final basis as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and sufficient information of a kind necessary to satisfy the disclosure requirements of any applicable non-bankruptcy laws, rules, and regulations.

**C.    Confirmation of the Plan**

71.    The Plan, attached hereto as **Exhibit A**, including all exhibits thereto, is hereby confirmed under section 1129 of the Bankruptcy Code.  The Debtors and the Liquidating Trustee are authorized to enter into, execute, and perform under all documents and agreements related to the Plan (including all exhibits and attachments thereto and documents referred to therein, including the Plan Supplement), and the execution, delivery, and performance thereafter by the Debtors, the Liquidating Trustee, and the Liquidating Trust, as applicable, are hereby approved and authorized.  The Debtors, the Liquidating Trustee, and the Liquidating Trust, as applicable, are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or

documents created in connection with the Plan, including, without limitation, entry into any agreements contained in the Plan Supplement, as applicable, as may be modified by the Debtors in their business judgment subject to the terms and conditions of the Plan.  The terms of the Plan (including the Plan Supplement) shall be effective and binding as of the Effective Date.

72.    The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Bankruptcy Court that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

**D.    Objections**

73.    To the extent that any objections (including any reservations of rights contained therein) to Confirmation of the Plan or approval of the Disclosure Statement have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record at the Combined Hearing, all such objections (including any reservation of rights contained therein) are hereby overruled in their entirety and on the merits in all respects.

**E.    The Releases, Injunction, Exculpation, and Related Provisions Under the Plan**

74.    The release, exculpation, injunction, and related provisions set forth in Article VIII of the Plan, subject to the conditions of Article IV.T of the Plan, are incorporated herein in their entirety, are hereby approved and authorized in their entirety, are so ordered, and shall be immediately effective and binding upon the Effective Date without further action or notice by this Bankruptcy Court, any of the Parties subject to such provisions, or any other party, including, but not limited to:

a. **Liens**.  The release of liens provisions set forth in Article VIII.A of the Plan are hereby approved.

b. **Releases by the Debtors**.  The Debtor Release provisions set forth in Article VIII.B of the Plan are hereby approved.

c. **Third-Party Releases**.  The Third-Party Release provisions set forth in Article VIII.C of the Plan are hereby approved.

d. **Exculpation**.  The Exculpation provisions set forth in Article VIII.D of the Plan are hereby approved.

e. **Injunction**.  The Injunction provisions set forth in Article VIII.E of the Plan are hereby approved.

**F.    Classifications of Claims and Interests**

75.    The terms of the Plan shall govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

**G.    Plan Supplement**

76.    The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors (including all exhibits and attachments thereto and documents referred to in the Plan Supplement), and the execution, delivery, and performance thereof by the Debtors, the Liquidating Trustee, the Liquidating Trust, and their successors are authorized as of the Effective

Date.  Without further order or authorization of this Bankruptcy Court, the Debtors, the Liquidating

Trustee, the Liquidating Trust, and their successors are authorized and empowered to make all

modifications to all documents included as part of the Plan Supplement that are consistent with

the Plan.  Execution versions of the documents comprising or contemplated by the Plan

Supplement shall constitute legal, valid, binding, and authorized obligations of the respective

parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create

all mortgages, Liens, deeds of trust, pledges, and security interests purported to be created thereby

to the extent set forth in this Confirmation Order.

## H.    Wind-Down Transactions

77.    On or before the Effective Date, the Debtors or the Liquidating Trustee, as

applicable, shall take all actions as may be necessary or appropriate to effectuate the Wind-Down

Transactions, including the steps set forth in the Wind-Down Transactions Memorandum, and any

transaction described in, approved by, contemplated by, or necessary to effectuate the Wind-Down

Transactions that are consistent with and pursuant to the terms and conditions of the Plan.

78.    On and after the Effective Date, the Liquidating Trustee will be authorized to

implement the Plan (including the steps set forth in the Wind-Down Transactions Memorandum)

and any applicable orders of the Bankruptcy Court, and the Liquidating Trustee shall have the

power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.

Any certificate of dissolution or equivalent document may be executed by the Liquidating Trustee

without need for any action or approval by the shareholders or board of directors or managers of

any Debtor.

79.    This Confirmation Order authorizes, and shall be deemed to authorize, pursuant to

sections 363 and 1123 of the Bankruptcy Code, among other things, all actions as may be necessary

or appropriate to effect any transaction described in, approved by, contemplated by, or necessary

to effectuate the Plan, including the Wind-Down Transactions, including, for the avoidance of doubt, any and all actions required to be taken under applicable nonbankruptcy law.

## I.      Sources of Consideration for Plan Distribution

80.      On or after the Effective Date, the Debtors shall fund the Plan Distributions, as applicable, with the Distributable Proceeds on account of Allowed Claims in accordance with the Waterfall Recovery and Article III.B of the Plan.  The Distributable Proceeds shall be allocated and paid to the Holders of Allowed Claims, other than Allowed Professional Fee Claims, as applicable, until paid in full, in each case, on a Pro Rata basis, and subject in all respects to the terms of the Final DIP Order, except as otherwise agreed to by such Holders of Claims or Interests, as follows:  (a) *first*, on account of Allowed Administrative Claims and Priority Tax Claims; (b) *second*, on account of Allowed Other Secured Claims (solely to the extent such proceeds are collateral of such Allowed Other Secured Claim), if any; (c) *third*, on account of Allowed Other Priority Claims, if any; (d) *fourth*, on account of Allowed Prepetition Priority Term Loan Claims; (e) *fifth*, on account of Allowed Prepetition Existing Term Loan Claims (which Claims, for the avoidance of doubt and pursuant to the Prepetition Term Loan Intercreditor Agreement, shall not be entitled to receive any distribution or recovery until the Allowed Prepetition Priority Term Loan Claims are paid in full); and (f) *sixth*, on account of Allowed General Unsecured Claims (collectively, the "Waterfall Recovery").  In addition, each Holder of Allowed General Unsecured Claims in Class 5 shall receive its Pro Rata share of the Trust GUC Assets in accordance with Article III.B of the Plan.  On or after the Effective Date, the Disbursing Agent shall be responsible for making Plan Distributions on account of Allowed Claims.  For the avoidance of doubt, any Plan Distribution made on account of an Allowed Administrative Claim that is a 507(b) Claim shall be subject in all respects to the Prepetition Term Loan Intercreditor Agreement, the ABL Intercreditor Agreement, and the Final DIP Order.

81.     Each Plan Distribution and issuance referred to in the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving the Plan Distribution or issuance.

**J.     Liquidating Trust**

82.     On the Effective Date, the Debtors, on their own behalf and on behalf of the Liquidating Trust beneficiaries (the "Beneficiaries"), will establish the Liquidating Trust pursuant to the Liquidating Trust Agreement.  Upon establishment of the Liquidating Trust, title to the Liquidating Trust Assets shall be deemed transferred to the Liquidating Trust without any further action of the Debtors or any managers, employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtors.

83.     Pursuant to section 1141 of the Bankruptcy Code, all property transferred to the Liquidating Trust shall be made free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as may be otherwise provided for in the Plan.  For the avoidance of doubt, any distributions to be made from the Liquidating Trust shall be governed by the terms and conditions set forth in the Plan and subject in all respects to the Waterfall Recovery; *provided*, *however*, that each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the Trust GUC Assets in accordance with Article III.B notwithstanding the Waterfall Recovery. Upon completion of the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors will have no further interest in, or with respect to, the Liquidating Trust Assets or the Liquidating Trust.

84.     The Liquidating Trust Assets shall be distributed by the Liquidating Trust as set forth in the Plan and Liquidating Trust Agreement.

85.    On the Effective Date, the Debtors shall execute the Liquidating Trust Agreement in substantially the same form as set forth in the Plan Supplement.  Any nonmaterial modifications to the Liquidating Trust Agreement made by the Debtors or the Liquidating Trustee (as applicable) will be automatically ratified if made in accordance with the terms of the Liquidating Trust Agreement.  The Liquidating Trust Agreement will contain provisions permitting the amendment or modification of the Liquidating Trust Agreement necessary to implement the provisions of the Plan.

86.    The Liquidating Trust shall be established for, among other purposes, the purpose of (a) receiving and holding the Liquidating Trust Assets; (b) administering, disputing, objecting to, compromising, or otherwise resolving all Claims and Interests; (c) making distributions in accordance with the Plan and the Liquidating Trust Agreement; (d) maximizing recoveries for the Beneficiaries; (e) performing all actions reasonably requested by the Purchaser to complete all of the Debtors' outstanding obligations under the Transaction Documents as successor to the Debtors; and (f) investigating, and if necessary, pursuing, prosecuting, resolving, compromising, and/or settling any Retained Causes of Action and managing and administering any proceeds thereof, in each case, with no objective to continue or engage in the conduct of a trade or business.  The Liquidating Trust is intended to qualify as a "liquidating trust" under Treas. Reg. § 301.7701-4(d) and a grantor trust under section 671 of the IRS and, to the extent permitted by applicable law, for state and local income tax purposes, with the Beneficiaries treated as the grantors and deemed owners of the Liquidating Trust.  To the extent permitted by applicable law, all parties, including the Liquidating Trustee and the Beneficiaries, shall report consistently with the foregoing for all applicable tax reporting purposes (including consistent reporting for valuation purposes).

87.     Upon the occurrence of the Effective Date, the Liquidating Trustee shall be deemed appointed to serve as the trustee and administrator of the Liquidating Trust established pursuant to the Plan and the Liquidating Trust Agreement.  The Liquidating Trustee shall have each of the rights, responsibilities, powers, and authority that are set forth in Article IV.G of the Plan and the Liquidating Trust Agreement.  The Liquidating Trustee may obtain, at the expense of the Debtors, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Debtors.  This application must be filed with the Bankruptcy Court no earlier than six (6) months before the termination date of the Liquidating Trust.

88.     The Liquidating Trust shall be dissolved upon the earlier of (a) the distribution of all of the Liquidating Trust Assets to the Beneficiaries; and (b) the fifth anniversary of the creation of the Liquidating Trust; *provided* that, if warranted by the facts and circumstances involved in resolving or monetizing any Liquidating Trust Assets, upon application to, and if approved by, the Bankruptcy Court after notice and an opportunity for hearing, and upon a finding that such extension is necessary or appropriate for purposes of resolving or monetizing such Liquidating Trust Assets and distributing the proceeds to the applicable Beneficiaries, the term of the Liquidating Trust may be extended by the Liquidating Trustee for a specified term in accordance with applicable tax laws and regulations.

## K.     Post-Effective Date Debtors

89.     After the Effective Date, the Debtors will continue to exist solely with respect to (i) any applications for Professional Fee Claims or expense reimbursements for their Professionals, including preparing, objecting to, defending, and attending any hearing with respect to the same; (ii) any motions or other actions seeking enforcement or implementation of the provisions of the Plan or Confirmation Order; and (iii) any appeal pending as of the Effective Date or filed thereafter, the outcome of which could reasonably be expected to affect in any material way any

cases, controversies, suits or disputes arising in connection with the Consummation, interpretation, implementation or enforcement of the Plan or this Confirmation Order.

**L.      Cancellation of Securities and Agreements**

90.      Except as otherwise set forth in the Plan, the Plan Supplement, or this Confirmation Order, on the Effective Date, and with respect to any obligations of the Debtors under the Prepetition Loan Documents (as defined in the Final DIP Order) that have not been Paid in Full prior to the Effective Date:   (1) the obligations of the Debtors under the Prepetition Loan Documents and any other certificate, Security (including any preferred stock, common stock or other capital stock), share, note, bond, indenture, purchase right, option, warrant, restricted stock, restricted stock units (or any other incentive Equity Interest) or other instrument or document (including any indenture or credit agreement) directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except, and only to the extent, such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be canceled as to the Debtors and their affiliates, and the Debtors shall not have any continuing obligations thereunder; (2) the obligations of the Debtors and their affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing any Securities (including any preferred stock, common stock or other capital stock), shares, certificates, notes, bonds (but not including any surety bonds issued on behalf of any of the Debtors), indentures, credit agreement, purchase rights, options, warrants, restricted stock, restricted stock units (or any other incentive Equity Interest) or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except, and only to the extent, such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of

or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and canceled of no force or effect and the rights of the Holders thereof and obligations of the Debtors thereunder shall be deemed satisfied in full, canceled, and of no force or effect; and (3) the Prepetition Term Loan Agents will be released and discharged from any further responsibility under the Prepetition Term Loan Documents; *provided* that notwithstanding the release set forth in Article VIII.C of the Plan, Confirmation, or the occurrence of the Effective Date, any agreement that governs the rights, claims, or remedies of the Holder of a Claim or Interest shall continue in effect solely for purposes of: (1) enabling Holders of Allowed Claims to receive distributions under the Plan as provided therein and subject to the terms and conditions of the applicable governing document or instrument as set forth therein; (2) allowing and preserving the rights of the Prepetition Term Loan Agents and the Prepetition ABL Agent to (a) make or direct the distributions in accordance with the Plan as provided therein or any other order of the Bankruptcy Court providing for distributions of consideration and (b) assert or maintain any rights for indemnification or contribution they may have against the Debtors or the applicable Prepetition Secured Lenders solely to the extent arising under, and due pursuant to the terms of, the applicable governing document or instrument; (3) preserving the Prepetition Term Loan Agents' and the Prepetition ABL Agent's exercise of their rights, claims, causes of action, and interests as against any money or property distributable to the holders of the applicable Allowed Prepetition Secured Lender Claims, including permitting the Prepetition Term Loan Agents and the Prepetition ABL Agent to enforce their payment priority rights with respect to any such distributions; (4) permitting the Prepetition Term Loan Agents and the Prepetition ABL Agent to enforce any obligation owed to them under the Plan; (5) permitting the Prepetition Term Loan Agents and the Prepetition ABL Agent to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other

court relating to the Prepetition Loan Documents in furtherance of the foregoing; and (6) permitting the Prepetition Term Loan Agents and the Prepetition ABL Agent to perform any functions that are necessary to effectuate the foregoing. Holders of (including any beneficial owners) or parties to any of the foregoing canceled instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, securities and other documentation, or the cancellation thereof, except the rights, distributions, and treatment provided for pursuant to the Plan or this Confirmation Order, as applicable. For the avoidance of doubt, nothing contained in the Plan shall in any way discharge, impair, or otherwise affect the rights or obligations owed by any Prepetition Secured Lender to another Prepetition Secured Lender, including, without limitation, pursuant to the Prepetition Term Loan Intercreditor Agreement, the ABL Intercreditor Agreement, and any related documents. Notwithstanding the foregoing, no executory contract or unexpired lease that (i) has been, or will be, assumed or assumed and assigned pursuant to section 365 of the Bankruptcy Code, or (ii) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or canceled on the Effective Date.

### M.    Corporate Action

91.    Upon the Effective Date, all actions contemplated under the Plan (including the steps set forth in the Wind-Down Transactions Memorandum), regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, the Liquidating Trustee, or any other Entity or Person in all respects. All matters provided for in the Plan (including the steps set forth in the Wind-Down Transactions Memorandum) or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Liquidating Trust, and any corporate action required by the Debtors or the Liquidating Trust in connection with the Plan or corporate

structure of the Debtors or Liquidating Trust shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors.

92.     Before, on, or after the Effective Date, the appropriate directors, managers, officers, Governing Bodies or other similarly authorized Persons of the Debtors or the Liquidating Trust, as applicable, shall be authorized to issue, execute, file (including File), record and/or deliver any agreements and documents, securities, and instruments contemplated under the Plan (including the steps set forth in the Wind-Down Transactions Memorandum) (or necessary, appropriate or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Debtors.  The authorizations and approvals contemplated by Article IV.N of the Plan shall be effective notwithstanding any requirements under non-bankruptcy law (including any non-U.S. law to the fullest extent available).

**N.     Effectuating Documents; Further Transactions**

93.     On and after the Effective Date, the Liquidating Trustee may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, this Confirmation Order, and the Wind-Down Transactions (including the steps set forth in the Wind-Down Transactions Memorandum), without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan or this Confirmation Order.

**O.     Exemption from Certain Taxes and Fees**

94.     To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether to the Liquidating Trust, the Purchaser, or to any other Entity) of property under the Plan or pursuant to:  (1) the issuance, distribution, transfer, or exchange of any debt, equity

security, property, or other interest in the Debtors or the Liquidating Trust; (2) the Wind-Down Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate or bulk transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax, fee, or governmental assessment.

95.     Upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents, including all filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax, fee, or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.  Such exemption specifically applies, without limitation, to the transfer of the Liquidating Trust Assets to the Liquidating Trust.

**P.    Compliance with Tax Requirements**

96.     In connection with the Plan, to the extent applicable, the Debtors, the Liquidating Trustee, the Disbursing Agent, and any applicable withholding agent, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit,

and all Plan Distributions shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Plan Distributions to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors, the Liquidating Trustee, the Disbursing Agent, and any applicable withholding agent, as applicable, reserve the right to allocate all Plan Distributions in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

**Q.    Sale Order.**

97.    Notwithstanding anything to the contrary therein, nothing in the Plan, the Plan Supplement, the Liquidating Trust Agreement, or this Confirmation Order, shall affect, impair, or supersede the Sale Order, which remains in full force and effect and governs in the event of any contradiction with the Plan, the Plan Supplement, the Liquidating Trust Agreement, or the Confirmation Order.

**R.    Director and Officer Liability Insurance Policies; Other Insurance Policies**

98.    Each of the Debtors' Insurance Policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, (a) the Debtors shall be deemed to have assumed all Insurance Policies and any agreements, documents, and instruments relating to coverage of all insured Claims, including all D&O Liability Insurance Policies, and (b) all such Insurance Policies and any agreements, documents, or instruments relating thereto, including all D&O Liability Insurance Policies, shall revest, unaltered and in their entireties, in the Liquidating Trust. Nothing

in the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any other order of the Bankruptcy Court (including any other provision that purports to be preemptory or supervening), (i) alters, modifies, or otherwise amends the terms and conditions of (or any coverage or benefits provided under) any Insurance Policies or (ii) alters or modifies the duty, if any, that the Insurers or third party administrators have to pay claims covered by such Insurance Policies and their right to seek payment or reimbursement from the Debtors or the Liquidating Trustee, as applicable, or draw on any collateral or security therefor.

99.     If a Claim may be covered by an Insurance Policy that is a self-insured retention ("SIR"), the Allowed amount of such Claim that is within the applicable SIR shall constitute an Allowed General Unsecured Claim against the applicable Debtor's Estate.  Such SIR shall be considered satisfied pursuant to the Plan through allowance of such General Unsecured Claim solely in the amount of the applicable SIR; *provided*, *however*, that nothing herein obligates the Debtors or Liquidating Trustee, as applicable, to otherwise satisfy or pay in cash any SIR under any Insurance Policy.  Any recovery on account of an Allowed Claim covered by a SIR in excess of the SIR established upon the liquidation of such Claim shall be recovered solely from the Debtors' insurance coverage in excess of the SIR, if any, and only to the extent of available insurance coverage and proceeds therefrom.  Nothing in the Plan shall be (i) construed to limit, extinguish, diminish, or expand the insurance coverage pursuant to an Insurance Policy, or (ii) a determination that any Insurance Policy is an executory contract or is capable of assumption and rejection.  In no event shall the Debtors, Liquidating Trustee, or the Liquidating Trust, as applicable, be required to pay any amounts within a self-insured retention, including defense costs, other than through the allowance of a General Unsecured Claim up to the amount of the applicable SIR.

100.    After the Effective Date, the Debtors and the Liquidating Trustee shall not terminate or otherwise reduce the coverage under any of the D&O Liability Insurance Policies in effect on or after the Petition Date (including any "tail policy"), with respect to conduct or events occurring prior to the Effective Date, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such D&O Liability Insurance Policy for the full term of such D&O Liability Insurance Policy, to the extent set forth therein and in accordance with and subject in all respects to the terms and conditions of such D&O Liability Insurance Policy, which shall not be altered, regardless of whether such directors and officers remain in such positions after the Effective Date. Notwithstanding anything in the Plan to the contrary, the Debtors shall retain the ability to supplement the D&O Liability Insurance Policies as the Debtors deem necessary, including purchasing any tail coverage. On the Effective Date, any and all D&O Liability Insurance Policies shall be assumed by the Debtors and shall vest in the Liquidating Trust pursuant to sections 105 and 365 of the Bankruptcy Code, and nothing shall alter, modify, amend, expand or otherwise affect any coverage for defense and indemnity under any applicable D&O Liability Insurance Policy available to any individuals and/or entities under such D&O Liability Insurance Policy in accordance with and subject in all respects to the terms and conditions of such D&O Liability Insurance Policy, which shall not be altered.  Coverage for defense and indemnity under the D&O Liability Insurance Policies shall remain available to all individuals insured thereunder.

**S.      Preservation of Causes of Action**

101.    Except as otherwise provided in the Plan, this Confirmation Order, or the Sale Order, in accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article VIII of the Plan, all Retained Causes of Action are preserved and transferred to the Liquidating Trust on the Effective Date.  The Liquidating Trustee shall retain and may enforce all

rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions arising from a Non-Released Officer Claim and any actions specifically enumerated in the Schedule of Retained Causes of Action, and the rights of the Debtors or the Liquidating Trustee to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action (a) acquired by the Purchaser in accordance with the Transaction Documents, as applicable, or (b) released or exculpated pursuant to the releases and exculpations contained in the Plan, including in Article VIII thereof, which shall be deemed released and waived by the Debtors as of the Effective Date.

102.    The Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Debtors.  **No Person or Entity (other than the Released Parties) may rely on the absence of a specific reference in the Schedule of Retained Causes of Action, the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors will not pursue any and all available Causes of Action against it.  The Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan**.  Unless any Causes of Action against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

103.     Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

## T.     Abandonment of Non-Debtor Equity Interests

104.     On or after the Effective Date, the Debtors and the Liquidating Trustee may abandon any Non-Debtor Equity Interests pursuant to section 554 of the Bankruptcy Code without further order of the Bankruptcy Court or further notice to any Entity.

## U.     Non-Released Former Officer Claims

105.     Any Claims or Causes of Action held by the Debtors or their respective estates against any of the Debtors' former officers solely in his or her capacity as such as of the Petition Date who were appointed as such by express board resolution, but excluding any Released Parties (as defined in the Sale Order), (collectively, the "Former Officers") are not released pursuant to the Plan (collectively, the "Non-Released Former Officer Claims"), and shall be assigned and transferred to the Liquidating Trust to be pursued, settled, or resolved by the Liquidating Trust in accordance with the terms of the Plan.  The Liquidating Trust shall be a successor to the Debtors' rights, title, and interest in any Non-Released Former Officer Claims and the Liquidating Trust shall have standing to pursue the Non-Released Former Officer Claims in accordance with the terms of the Plan; *provided* that:  (a) any recovery by the Liquidating Trust on account of any Non-Released Former Officer Claim, including by way of settlement or judgment, shall be satisfied solely by and to the extent of the proceeds of the Debtors' available D&O Liability Insurance Policies after payment from such D&O Liability Insurance Policies of any and all covered costs

and expenses incurred in connection with the defense of the Non-Released Former Officer Claims; (b) any attempt to collect on any settlement of or judgment (if any) shall be solely from available insurance coverage from the Debtors' available D&O Liability Insurance Policies; (c) the Liquidating Trust shall not (i) record any judgment against the Former Officers, or (ii) otherwise attempt to collect, directly or indirectly, from the personal assets of the Former Officers with respect to the Non-Released Former Officer Claims; (d) in no event shall the Non-Released Former Officer Claims include any claims against any Released Parties (as defined in the Sale Order); and (e) the Liquidating Trust may not pursue any Non-Released Former Officer Claim in any circumstance in which any insurance carrier or other third party may assert subrogation claims against any Released Parties (as defined in the Sale Order).  Only upon the occurrence of the earlier of (x) a release being given as part of any later settlement of the Non-Released Former Officer Claims; (y) final resolution of any coverage claims asserted against the Debtors' available D&O Liability Insurance Policies on account of the Non-Released Former Officer Claims; or (z) exhaustion of the available insurance coverage under the D&O Liability Insurance Policies, the Non-Released Former Officer Claims shall be released and discharged by the Liquidating Trust without the need for further action or Bankruptcy Court order. For the avoidance of doubt, any release of the Non-Released Former Officer Claims shall not become effective until one of the three conditions stated in the preceding sentence above has been met.

## V.    Treatment of Executory Contracts and Unexpired Leases

106.    The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding any and all disputes concerning the assumption, assumption and assignment, or rejection, as applicable, of such Executory Contracts and Unexpired Leases) are hereby approved in their entirety.

107.    On the Effective Date, except as otherwise provided in the Plan, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected by the applicable Debtor, unless otherwise agreed by the applicable counterparty, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that:  (1) are specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, or are identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (2) have been previously assumed or rejected by the Debtors pursuant to any Bankruptcy Court order; (3) are the subject of a Filed motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with respect thereto) that is pending on the Confirmation Date; (4) are to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, through the Asset Purchase Agreement in connection with any Sale Transaction, including in a Sale Transaction that is pending on the Confirmation Date; (5) are the subject of a pending notice to assume or assume and assign by the Debtors pursuant to the procedures established by the Assumption/Rejection Order; (6) are a contract, release, or other agreement or document entered into in connection with the Plan; or (7) are an Insurance Policy (including, for the avoidance of doubt, any D&O Liability Insurance Policies).

108.    For any Unexpired Lease that is not assumed on the Effective Date pursuant to Article V.A of the Plan, the effective date of rejection of such Unexpired Leases shall be the later of:  (A) the Effective Date, except if agreed by the applicable counterparty, and (B) the date upon which the Debtors notify the landlord in writing (e-mail being sufficient) that they have surrendered the premises to the landlord and returned the keys, key codes, or security codes, as applicable; *provided* that on the date the Debtors surrender the premises as set forth in subsection

(B) above, all property remaining in the premises will be deemed abandoned and landlords may dispose of such property without further notice or court order, unless otherwise agreed by the applicable lessor or pursuant to an order of the Bankruptcy Court.

109.    Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving, subject to and upon the occurrence of the Effective Date, the assumptions, assumptions and assignments, or rejections of the Executory Contracts and Unexpired Leases as set forth in the Plan or the Assumed Executory Contracts and Unexpired Leases Schedule, pursuant to sections 365(a) and 1123 of the Bankruptcy Code; *provided* that neither the Plan nor the Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Sale Order to assume and assign Executory Contracts and Unexpired Leases to the Purchaser pursuant to the Asset Purchase Agreement.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Confirmation Date shall be subject to a Final Order on or after the Confirmation Date but may be withdrawn, settled, or otherwise prosecuted by the applicable Debtor or the Liquidating Trustee, as applicable.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall revest in the applicable Debtor or the Liquidating Trust, as applicable, and be fully enforceable by the applicable Debtor or the Liquidating Trustee, as applicable, in accordance with its terms, except as such terms may have been modified by agreement of the parties thereto, subject to Article V.A. of the Plan.

110.    The Debtors may amend or otherwise modify the Assumed Executory Contracts and Unexpired Leases Schedule prior to the Effective Date to designate an Executory Contract previously included on the Assumed Executory Contracts and Unexpired Leases Schedule for assumption and assignment.  Any motions to assume Executory Contracts or Unexpired Leases

pending on the Confirmation Date shall be subject to a Final Order on or after the Confirmation Date but may be withdrawn, settled, or otherwise prosecuted by the applicable Debtor or the Liquidating Trustee, as applicable.

**W.    Provisions Governing Distributions**

111.    The procedures governing Plan Distributions contained in Article VI of the Plan are hereby approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Plan Distributions shall be made by the applicable Disbursing Agent.  No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties.

**X.    Procedures for Resolving Contingent, Unliquidated, and Disputed Claims or Interests**

112.    The procedures for resolving Contingent, Unliquidated, and Disputed Claims or Interests contained in Article VII of the Plan are hereby approved in their entirety.

**Y.    Conditions to Effective Date and Authorization to Consummate**

113.    The provisions governing the conditions precedent to the Effective Date set forth in Article IX of the Plan are hereby approved in their entirety.  The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to satisfaction or waiver of such provisions pursuant to their terms to the extent waivable.

**Z.    Retention of Jurisdiction**

114.    The provisions governing the retention of jurisdiction set forth in Article XI of the Plan are hereby approved in their entirety.  This Bankruptcy Court may, and upon the Effective Date shall, retain jurisdiction over the matters arising in and out of, and related to, these Chapter 11 Cases, as set forth in Article XI of the Plan.

## AA.    Immediate Binding Effect

115.    Subject to Article IX.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Liquidating Trustee, and any and all Holders of Claims against or Interests in the Debtors (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

## BB.    Additional Documents

116.    On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or Liquidating Trustee, as applicable, and all Holders receiving Plan Distributions and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

## CC.    Payment of Statutory Fees

117.    Quarterly Fees due and payable prior to the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date.  After the Effective Date, the Liquidating Trustee shall pay any and all Quarterly Fees in full in Cash when due and payable.  Promptly after the Effective Date, the Debtors or the Liquidating Trustee and any other authorized parties who have been charged with administering the Plan, shall file a Notice of Occurrence of the Effective Date, identifying the Effective Date and indicating that it has occurred.  The Debtors shall file all monthly operating reports relating to the time period prior to the Effective Date when they become

due, using UST Form 11-MOR.  After the Effective Date, the Liquidating Trustee shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  The Liquidating Trustee shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.  The U.S. Trustee shall not be required to file any Proof of Claim in the case and shall not be treated as providing any release under the Plan.

**DD.    Provisions Regarding Certain Government Matters**

118.    Except as explicitly set forth herein, notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Debtors and the Liquidating Trust, as applicable, shall pay any Allowed Priority Tax Claims consistent with section 1129(a)(9)(C) of the Bankruptcy Code.

119.    Pursuant to sections 511 and 1129(a)(9)(C) of the Bankruptcy Code, the Internal Revenue Service ("IRS") shall be paid in full in Cash on account of any Allowed Priority Tax Claim on or as soon as practicable after the Effective Date (or, if Allowed after the Effective Date, when such claim is Allowed or as soon as practicable thereafter).  The IRS shall be paid in full in Cash on account of any tax claim under section 503(b) of the Bankruptcy Code constituting an Allowed Administrative Claim on or as soon as reasonably practicable after the Effective Date or when such claim is Allowed (or as soon as reasonably practicable thereafter).  The Cash paid to the IRS for any Allowed Administrative Tax Claim and any Allowed Priority Tax Claim shall include interest from the Effective Date to the date of payment, calculated at the rate determined under 26 U.S.C. §§ 6621-6622 as of the calendar month in which the Plan is confirmed.

120.    Nothing discharges or releases the Debtors or any non-Debtor from any right, claim, liability, defense, or Cause of Action of the United States or any State, or impairs the ability of the United States or any State to pursue any right, claim, liability, defense, or Cause of Action against any Debtor or non-debtor.  Contracts, purchase orders, agreements, leases, covenants,

guaranties, indemnifications, operating rights agreements, or other interests of or with the United States or any State shall be, subject to any applicable legal or equitable rights or defenses of the Debtors, under applicable non-bankruptcy law, paid, treated, determined, and administered in the ordinary course of business as if the Debtors' bankruptcy cases were never filed, and the Debtors shall comply with all applicable non-bankruptcy law.

121.    As to the United States, nothing in the Plan or this Confirmation Order, shall: (a) discharge, release, enjoin, bar, impair or otherwise preclude any Claim of the United States not subject to the Governmental Bar Date; (b) affect or impair the exercise of the United States' or any State's police and regulatory powers against the Debtors, the Liquidating Trust, or any non-Debtor; (c) be interpreted to set Cure Costs or to require the United States or any State to novate or otherwise consent to the transfer of any federal or state contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests; (d) affect or impair the United States' or any State's rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the Debtors or the Liquidating Trust, and such rights and defenses are expressly preserved, subject to section 553 of the Bankruptcy Code; (e) constitute an approval or consent by the United States without compliance with all applicable legal requirements and approvals under non-bankruptcy Law; or (g) relieve any party from compliance with all licenses and permits issued by Governmental Units in accordance with non-bankruptcy Law.  For the avoidance of doubt, nothing in the Plan or this Confirmation Order shall bar the IRS from exercising its nonbankruptcy rights to offset any request for a tax refund for a tax period ending prior to the Petition Date against any prepetition claims of the United States government against any of the Debtors to the extent permitted by the Bankruptcy Code.

**EE.    Provisions Regarding Atlantic Specialty Insurance Company**

122.    Atlantic Specialty Insurance Company ("ASIC") issued certain surety bonds on behalf of the Debtors (collectively, the "Surety Bonds" and, each individually, a "Surety Bond"). ASIC issued the Surety Bonds in connection with the execution by one or more of the Debtors of certain general indemnity agreements (collectively, the "Indemnity Agreements"). The Debtors obligations to ASIC under the Surety Bonds and the Existing Agreement are secured by a letter of credit and cash collateral held by ASIC (the "ASIC Collateral").

123.    Nothing in this Confirmation Order, the Plan (as confirmed by this Confirmation Order), or any document, agreement, or other instrument contemplated by or related to the foregoing shall (i) be construed to authorize or permit the assumption and assignment of any Surety Bonds, any Indemnity Agreements, any collateral agreement in respect of any ASIC Collateral, and/or other agreements between the Debtors and ASIC (collectively, the "Surety Agreements"), or obligate ASIC to replace or renew any Surety Bonds, and/or issue any new surety bond on behalf of any purchaser, (ii) be deemed to provide ASIC's consent to the involuntary substitution of any principal under any Surety Bond and/or any Indemnity Agreements, or (iii) be deemed to alter, limit, modify, release, waive, prime, or prejudice any rights, remedies, and/or defenses that ASIC has or may have (i) in any ASIC Collateral, (ii) under the Surety Bonds, Indemnity Agreements, agreements in respect of any ASIC Collateral, or related agreements, or (iii) against any non-Debtor or third party. For the avoidance of doubt, ASIC has not opted into the Third-Party Release contained in the Plan and shall not be deemed a Releasing Party or Released Party under the Plan or this Confirmation Order.

**FF.    Provisions Regarding the Texas Comptroller**

124.    Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, the following provisions will govern the treatment of the claims of the Texas Comptroller

of Public Accounts (the "Texas Comptroller"):    (a) nothing provided in the Plan or this Confirmation Order shall affect or impair any statutory or common law setoff rights of the Texas Comptroller in accordance with 11 U.S.C. § 553; (b) nothing provided in the Plan or this Confirmation Order shall affect or impair any rights of the Texas Comptroller to pursue any non-Debtor third parties for tax debts or claims; (c) nothing provided in the Plan or this Confirmation Order shall be construed to preclude the payment of interest on the Texas Comptroller's administrative expense tax claims; and (d) the Texas Comptroller's administrative expense claims are allowed upon filing without application or motion for payment, subject to any party's objection on substantive grounds. In no event shall the Texas Comptroller be paid in a payment schedule that extends past sixty (60) months of the Petition Date.  The Texas Comptroller may amend its tax claims to reflect the results of the actual assessment of tax liabilities without the consent of the Bankruptcy Court, the Debtors, or the Liquidating Trustee; *provided*, *however*, the Debtors reserve any and all rights to object to any Claim by the Texas Comptroller.

## GG.    Provisions Regarding the Texas Taxing Authorities

125.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, any allowed claims of the Texas Taxing Authorities (the "Texas Tax Claims") that were not assumed by the Purchaser pursuant to the Sale Order, shall be paid in full prior to delinquency or as soon as practical thereafter.  Texas Tax Claims not paid prior to February 1, 2026, shall include all accrued interest properly charged under applicable non-bankruptcy law through the date of payment.  The Texas Taxing Authorities shall retain their liens on the funds formerly contained within the Texas Tax Reserve established pursuant to the DIP Order, until the Texas Tax Claims are paid in full.  The Liquidating Trustee shall continue to preserve such funds, which are currently held in the account ending 3961, and (i) shall be maintained for the payment of the Texas Tax Claims to the extent the Texas Tax Claims are Allowed Claims and (ii) shall not be paid to any

other creditor without further order of the Bankruptcy Court or until all Texas Tax Claims are deemed satisfied. The Texas Taxing Authorities may amend their Claims after the Effective Date to reflect the certified tax amounts for tax year 2025 without having to receive prior authorization to do so; *provided* that the rights and defenses of the Debtors with respect to the Texas Tax Claims are preserved.

**HH.    Reservation of Rights**

126.    Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters this Confirmation Order, and this Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

**II.    Notices**

127.    After the Effective Date, the Liquidating Trustee may notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Liquidating Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to (i) those Entities who have Filed such renewed requests; and (ii) those Entities whose rights are materially affected by such documents.

**JJ.    Non-Severability of Plan Provisions**

128.    The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable. This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it

may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors, consistent with the terms set forth therein; and (3) non-severable and mutually dependent.

## KK.    Applicable Non-Bankruptcy Law

129.    The provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law or any requirements related thereto.

## LL.    Substantial Consummation

130.    On the Effective Date, the Plan shall be deemed to be substantially consummated (within the meaning set forth in section 1101 of the Bankruptcy Code) pursuant to section 1127(b) of the Bankruptcy Code.

## MM.    Post-Confirmation Modifications

131.    Following the entry of this Confirmation Order, the Debtors or the Liquidating Trustee may, upon order of this Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

## NN.    Governmental Approvals Not Required

132.    This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and the Wind-Down Transactions, including any actions necessary or appropriate for such purposes.

## OO.    Recording

133.    The Debtors or the Liquidating Trustee, as applicable, are hereby authorized to deliver a notice or short form of this Confirmation Order, with the Plan attached, to any state or local recording officer, and such officer must accept for filing such documents or instruments without charging any stamp tax, recording tax, personal property transfer tax, mortgage, or other similar tax.  Such notice (a) shall have the effect of an order of this Bankruptcy Court, and (b) shall constitute sufficient notice of the entry of this Confirmation Order to such filing and recording officers.  The Bankruptcy Court specifically retains jurisdiction to enforce the foregoing direction, by contempt or otherwise.

## PP.    Effect of Conflict between Plan and Confirmation Order

134.    In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement (other than the Liquidating Trust Agreement), the terms of the relevant provision in the Plan shall control (unless stated otherwise in such Plan Supplement document or in this Confirmation Order).  In the event of an inconsistency between this Confirmation Order and the Plan or Plan Supplement, this Confirmation Order shall control (unless expressly stated otherwise in the Plan).  In the event of any inconsistency between the Plan, this Confirmation Order, and the Sale Order concerning the assumption and assignment of such Executory Contracts or Unexpired Leases and related Cure Claims, the terms of the Sale Order shall govern and control.

## QQ.    Implementing Documents

135.    Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized and directed to accept any and all documents necessary or appropriate to effectuate, implement, or consummate the Plan, including the Wind-Down Transactions, and this Confirmation Order.

**RR.    Debtors' Actions Post-Confirmation Through the Effective Date**

136.    During the period from entry of this Confirmation Order through and until the Effective Date, each of the Debtors shall continue to operate their business as a debtor in possession, subject to the oversight of this Bankruptcy Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of this Bankruptcy Court that is in full force and effect.  During such period, the Debtors and all other parties in interest under the Plan are authorized to execute such documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement, or the Wind-Down Transactions without any further order of this Bankruptcy Court or corporate action, and to take any actions necessary or advisable or appropriate to implement the documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement, or the Wind-Down Transactions, in each case subject to the terms and conditions of the Plan.  Notwithstanding anything to the contrary herein or in the Plan, upon entry of this Confirmation Order, the Debtors shall be released from any and all reporting obligations arising under any order of the Bankruptcy Court entered in connection with any of the First Day Pleadings.

**SS.    Notices of Confirmation and Effective Date**

137.    As soon as reasonably practicable after the Effective Date, the Liquidating Trustee shall file notice of the Effective Date and shall serve a copy of the same on the Bankruptcy Rule 2002 service list.  The Liquidating Trustee may serve the notice of the Effective Date via email; *provided* that no notice of the Effective Date shall be required to be served upon any Entity for which the Debtors (or Liquidating Trustee) do not have a street address or e-mail address that is confirmed to be accurate and current.

138.    The above-referenced notice is adequate under the circumstances of these Chapter 11 Cases, and no other or further notice is necessary.

**TT.    Return of Deposits**

139.    All utilities, including, but not limited to, any Person or Entity that received a deposit or other form of adequate assurance of performance under section 366 of the Bankruptcy Code during the Chapter 11 Cases, must return such deposit or other form of adequate assurance of performance to the Liquidating Trustee promptly following the occurrence of the Effective Date, if not returned or applied earlier.

**UU.    Dissolution of Statutory Committees**

140.    On the Effective Date, any statutory committee appointed in the Chapter 11 Cases, including the Committee, shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases, except in connection with applications for compensation and objections thereto.  The Debtors and the Liquidating Trustee, as applicable, shall no longer be responsible for paying any fees or expenses incurred by any statutory committee, including the Committee, after the Effective Date, except in connection with any fees or expenses for services rendered prior to the Effective Date that are Allowed by the Bankruptcy Court.

**VV.    Setoff Rights**

141.    Notwithstanding anything to the contrary in the Plan, Plan Supplement, this Confirmation Order, or any other documents related to the foregoing, nothing shall modify or restrict the rights, if any, of any counterparty related to an Unexpired Lease of non-residential real property to assert any right of setoff or recoupment that such party may have under the terms of the Unexpired Lease or applicable bankruptcy or non-bankruptcy law, including, but not limited to, (i) the ability, if any, of such party to setoff or recoup a security deposit held pursuant to the terms of an Unexpired Lease with the Debtors, (ii) assertion of rights of setoff or recoupment, if any, in connection with claims reconciliation, (iii) assertion of setoff or recoupment as a defense,

if any, to any claim or action by the Debtors, the Liquidating Trustee, or any successors thereto, or (iv) assertion of setoff and/or recoupment in connection with periodic reconciliations in accordance with the terms of an assumed Unexpired Lease.

## WW.  Headings

142.    Headings utilized in this Confirmation Order are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

## XX.    Final Order and Waiver of Stay

143.    For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by this Bankruptcy Court.  This Confirmation Order is a Final Order and shall take effect immediately, be effective and enforceable immediately upon entry, and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof.  In the absence of any Person obtaining a stay pending appeal, the Debtors are authorized to consummate the Plan.

**Exhibit A**

**Plan**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CLAIRE'S HOLDINGS LLC, *et al.*,[1] | ) | Case No. 25-11454 (BLS) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**FIRST AMENDED JOINT CHAPTER 11 PLAN
OF CLAIRE'S HOLDINGS LLC AND ITS DEBTOR AFFILIATES (TECHNICAL MODIFICATIONS)**

NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES. YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.

**RICHARDS, LAYTON & FINGER, P.A.**
Daniel J. DeFranceschi (No. 2732)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Clint M. Carlisle (No. 7313)
Colin A. Meehan (No. 7237)
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Telephone:     (302) 651-7700
Facsimile:      (302) 651-7701

**KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
Allyson B. Smith (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:          joshua.sussberg@kirkland.com
               allyson.smith@kirkland.com

- and -

Alexandra F. Schwarzman, P.C. (admitted *pro hac vice*)
Robert A. Jacobson (admitted *pro hac vice*)
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:          alexandra.schwarzman@kirkland.com
               rob.jacobson@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*          *Co-Counsel for the Debtors and Debtors in Possession*

Dated:  October 21, 2025

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of their federal tax identification numbers, to the extent applicable, are: Claire's Holdings LLC (9619); BMS Distributing Corp. (4117); CBI Distributing Corp. (5574); Claire's (Gibraltar) Holdings Limited (4273); Claire's Boutiques, Inc. (5307); Claire's Canada Corp. (7936); Claire's Intellectual LLC (5274); Claire's Puerto Rico Corp. (6113); Claire's Stores, Inc. (0416); Claire's Swiss Holdings II LLC (7980); Claire's Swiss Holdings LLC (2299); CLSIP Holdings LLC (1950); CLSIP LLC (9769); and CSI Canada LLC (2343).  The Debtors' mailing address is 2400 West Central Road, Hoffman Estates, IL 60192.

## TABLE OF CONTENTS

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
GOVERNING LAW ...................................................................................................................1

    A.      Defined Terms ........................................................................................................1
    B.      Rules of Interpretation ..........................................................................................14
    C.      Computation of Time ............................................................................................15
    D.      Governing Law ......................................................................................................15
    E.      Reference to Monetary Figures .............................................................................15
    F.      Rights of Required Consenting Stakeholders ........................................................15
    G.      No Substantive Consolidation ...............................................................................15

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS........................16

    A.      General Administrative Claims ..............................................................................16
    B.      Professional Fee Claims........................................................................................17
    C.      Priority Tax Claims ...............................................................................................18

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...................18

    A.      Classification of Claims and Interests....................................................................18
    B.      Treatment of Claims and Interests .........................................................................19
    C.      Special Provision Governing Unimpaired Claims .................................................22
    D.      Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code .................22
    E.      Subordinated Claims .............................................................................................22
    F.      Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes............................22
    G.      Controversy Concerning Impairment .....................................................................22

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN........................................22

    A.      Settlement of Claims and Interests.........................................................................22
    B.      Sale Transaction ...................................................................................................23
    C.      Transition Services Agreement ..............................................................................23
    D.      Liquidating Trust ..................................................................................................23
    E.      Wind-Down Transactions ......................................................................................24
    F.      Sources of Consideration for Plan Distributions and Waterfall Recovery ................24
    G.      Liquidating Trustee ...............................................................................................25
    H.      Vesting of Assets ..................................................................................................28
    I.      Post-Effective Date Debtors..................................................................................28
    J.      Exculpation, Indemnification, Insurance, and Liability Limitation ........................28
    K.      Tax Returns ..........................................................................................................29
    L.      Statutory Committee and Cessation of Fee and Expense Payment ..........................29
    M.      Cancellation of Securities and Agreements ...........................................................29
    N.      Corporate Action...................................................................................................30
    O.      Effectuating Documents; Further Transactions......................................................30
    P.      Section 1146 Exemption .......................................................................................31
    Q.      D&O Liability Insurance Policies ..........................................................................31
    R.      Preservation of Causes of Action ..........................................................................31
    S.      Abandonment of Non-Debtor Equity Interests ......................................................32
    T.      Non-Released Former Officer Claims....................................................................32

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............33

    A.      Assumption and Rejection of Executory Contracts and Unexpired Leases ....................33
    B.      Indemnification Obligations...................................................................................35
    C.      Claims Based on Rejection of Executory Contracts or Unexpired Leases.......................35

D.     Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ..................................35
E.     Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases ..........36
F.     Insurance Policies ...........................................................................................................................36
G.     Modifications, Amendments, Supplements, Restatements, or Other Agreements ........................37
H.     Reservation of Rights ......................................................................................................................37
I.     Nonoccurrence of Effective Date ....................................................................................................37

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ...............................................................37

A.     Timing and Calculation of Amounts to Be Distributed ..................................................................37
B.     Disbursing Agent ............................................................................................................................38
C.     Rights and Powers of Disbursing Agent .........................................................................................38
D.     Delivery of Distributions and Undeliverable or Unclaimed Distributions.....................................38
E.     Compliance with Tax Requirements ...............................................................................................39
F.     Allocations ......................................................................................................................................40
G.     No Postpetition or Default Interest on Claims ................................................................................40
H.     Setoffs and Recoupment .................................................................................................................40
I.     No Double Payment of Claims ........................................................................................................40
J.     Claims Paid or Payable by Third Parties.........................................................................................41

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
DISPUTED CLAIMS ..................................................................................................................................41

A.     Allowance of Claims........................................................................................................................41
B.     Claims Administration Responsibilities..........................................................................................42
C.     Estimation of Claims .......................................................................................................................42
D.     Adjustment to Claims or Interests Without Objection ....................................................................42
E.     Time to File Objections to Claims ..................................................................................................42
F.     Disallowance of Claims or Interests ...............................................................................................43
G.     Amendments to Proofs of Claims or Interests ................................................................................43
H.     No Distributions Pending Allowance ..............................................................................................43
I.     Distributions After Allowance ........................................................................................................43

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ...........................43

A.     **Release of Liens** .............................................................................................................................43
B.     **Releases by the Debtors** ................................................................................................................44
C.     **Releases by the Releasing Parties** ................................................................................................45
D.     **Exculpation** ...................................................................................................................................45
E.     **Injunction**......................................................................................................................................46
F.     Protections Against Discriminatory Treatment ..............................................................................46
G.     Document Retention ........................................................................................................................47
H.     Reimbursement or Contribution ......................................................................................................47
I.     Term of Injunctions or Stays...........................................................................................................47
J.     Good Faith Solicitation ...................................................................................................................47

ARTICLE IX. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE
PLAN...........................................................................................................................................................47

A.     Conditions Precedent to the Effective Date ...................................................................................47
B.     Waiver of Conditions ......................................................................................................................48
C.     Substantial Consummation .............................................................................................................48
D.     Effect of Failure of Conditions ......................................................................................................48

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ......................................48

A.     Modification and Amendments........................................................................................................48
B.     Effect of Confirmation on Modifications........................................................................................49

C.        Revocation or Withdrawal of Plan .................................................................................................49

ARTICLE XI. RETENTION OF JURISDICTION .................................................................................................49

ARTICLE XII. MISCELLANEOUS PROVISIONS .................................................................................................51

A.        Immediate Binding Effect .................................................................................................51
B.        Additional Documents .................................................................................................51
C.        Payment of Statutory Fees .................................................................................................51
D.        Reservation of Rights .................................................................................................51
E.        Successors and Assigns .................................................................................................52
F.        Notices .................................................................................................52
G.        Entire Agreement .................................................................................................54
H.        Exhibits .................................................................................................54
I.        Non-Severability of Plan Provisions .................................................................................................55
J.        Closing of Chapter 11 Cases .................................................................................................55
K.        Waiver or Estoppel .................................................................................................55
L.        Conflicts .................................................................................................55
M.        Sale Order .................................................................................................55

**INTRODUCTION**

Claire's Holdings LLC and the other above-captioned debtors and debtors in possession (each, a "<u>Debtor</u>" and collectively, the "<u>Debtors</u>") propose this joint chapter 11 plan (as may be amended, supplemented, or otherwise modified from time to time, the "<u>Plan</u>") for the resolution of the outstanding Claims against, and Interests in, the Debtors.  This Plan constitutes a separate chapter 11 plan for each Debtor and, unless otherwise set forth herein, the classifications and treatment of Claims and Interests apply to each individual Debtor. Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in Article I.A of the Plan.

Holders of Claims against and Interests in the Debtors should refer to the Disclosure Statement for a discussion of the Debtors' history, business, assets, results of operations, and historical financial information, projections, and future operations, as well as a summary and description of this Plan and certain related matters.  Each Debtor is a proponent of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

A.    *Defined Terms*

As used in this Plan, capitalized terms have the meanings given to them below.

1.    "***507(b) Claims***" shall have the meaning ascribed to it in the DIP Order.

2.    "***ABL Intercreditor Agreement***" means that certain ABL Intercreditor Agreement, dated as of December 18, 2019 (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, including as supplemented by that certain Lien Sharing and Priority Confirmation Joinder, dated as of December 18, 2019, that certain Lien Sharing and Priority Confirmation Joinder, dated as of September 23, 2024 and that certain Notice of Successor Original First Lien Term Loan Agent, dated as of June 25, 2025) among, inter alios, the Prepetition ABL agent and the Prepetition Term Loan Agents.

3.    "***Acquired Assets***" means the assets of the Debtors acquired by a Purchaser pursuant to a Sale Transaction, if any.

4.    "***Administrative Claim***" means a Claim against a Debtor arising on or after the Petition Date and before the Effective Date for the costs and expenses of administration of the Chapter 11 Cases under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses of preserving the Estates and operating the business of the Debtors incurred on or after the Petition Date and through the Effective Date; (b) Allowed Professional Fee Claims in the Chapter 11 Cases; (c) the 507(b) Claims; (d) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code; and (e) Independent Manager Fee Claims; *provided* that any Administrative Claim that is an Assumed Liability under any Transaction Documents shall be satisfied solely pursuant to the applicable Transaction Documents and shall not (i) be an obligation of the Debtors, and/or (ii) constitute an Administrative Claim pursuant to this Plan.

5.    "***Administrative Claims Bar Date***" means the applicable deadline for Filing requests for payment of Administrative Claims, which shall be 45 days after the Effective Date for Administrative Claims that may have arisen, accrued, or otherwise become due and payable at any time on and subsequent to the Petition Date, except as specifically set forth in the Plan or a Final Order.

6.        "***Administrative Claims Objection Bar Date***" means the deadline for Filing objections to requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims and fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code), which shall be the later of (a) 90 days after the Effective Date and (b) 90 days after the Filing of the applicable request for payment of the Administrative Claims, except as specifically set forth in the Plan or a Final Order; *provided* that the Administrative Claims Objection Bar Date may be extended by the Bankruptcy Court after notice and a hearing.

7.        "***Affiliate***" has the meaning set forth in section 101(2) of the Bankruptcy Code.  With respect to any Entity that is not a Debtor, the term "Affiliate" shall apply to such Entity as if the Entity were a Debtor.

8.        "***Allowed***" means, with respect to any Claim against or Interest in a Debtor, except as otherwise provided herein:  (a) a Claim that is evidenced by a Proof of Claim timely Filed by the Claims Bar Date or a request for payment of an Administrative Claim timely Filed by the Administrative Claims Bar Date (or for which Claim a Proof of Claim or request for payment of Administrative Claim is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, or pursuant to a Final Order); (b) a Claim or Interest that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no contrary or superseding Proof of Claim, as applicable, has been timely Filed; or (c) a Claim or Interest allowed, or stipulated to, pursuant to the Plan or a Final Order; *provided* that with respect to a Claim described in clause (a) above, such Claim or Interest shall be considered Allowed only if and to the extent that, with respect to such Claim or Interest, no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest has been allowed by a Final Order.  Except as otherwise specified in the Plan or any Final Order including the DIP Order, and except as provided in sections 506(b) or 511 of the Bankruptcy Code, an Allowed Claim shall not, for purposes of computing Plan Distributions, include interest on such Claim from and after the Petition Date.  Notwithstanding anything to the contrary herein, no Claim of any Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code, following an objection to a claim filed on such grounds.  For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date, or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, shall not be Allowed for any purposes whatsoever absent (i) entry of a Final Order allowing such late Filed Claim or (ii) agreement in writing by the Debtors or the Liquidating Trustee and the Holder of such late Filed Claim.  "Allow," "Allowing," and "Allowance" shall have correlative meanings.  For the avoidance of doubt, the Prepetition Priority Term Loan Claims, the Prepetition Existing Term Loan Claims, and any Claims provided for pursuant to the terms of the DIP Order shall constitute Allowed Claims under the Plan.

9.        "***Asset Purchase Agreement***" means that certain asset purchase agreement entered into on August 18, 2025 by and between the Debtors, non-Debtor Claire's Store Canada Corp., and AWS Claire's, LLC for the sale of certain assets of the Debtors, together with all exhibits, appendices, supplements, documents, and agreements ancillary thereto, in each case as amended, modified, or supplemented from time to time in accordance with the terms therein.

10.        "***Assumed Executory Contracts and Unexpired Leases Schedule***" means the schedule of Executory Contracts and Unexpired Leases to be assumed and assigned by the Debtors pursuant to the Plan, if any, which shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time by the Debtors, and solely with respect to Unexpired Leases of nonresidential real property, prior to the deadline established by section 365(d)(4) of the Bankruptcy Code (as such date may be extended by the Bankruptcy Court in accordance with section 365(d)(4) of the Bankruptcy Code).

11.        "***Assumed Liabilities***" means, in any Sale Transaction, the liabilities assumed by the Purchaser pursuant to the terms of the applicable Transaction Documents.  For the avoidance of doubt, the Debtors shall not be liable for any Assumed Liabilities and shall not be obligated to satisfy any such liabilities under the Plan.

12.        "***Avoidance Actions***" mean any and all avoidance, recovery, or subordination actions or remedies that may be brought by or on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable

2

non-bankruptcy law, including actions or remedies under sections 544, 547, 548, 549, 550, 551, 552, or 553 of the Bankruptcy Code.

13.     "***Bankruptcy Code***" means title 11 of the United States Code, 11 U.S.C. §§ 100–1532, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

14.     "***Bankruptcy Court***" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of reference under section 157 of the Judicial Code, the United States District Court for the District of Delaware.

15.     "***Bankruptcy Rules***" means the Federal Rules of Bankruptcy Procedure, promulgated under section 2075 of the Judicial Code and the general and chambers rules of the Bankruptcy Court.

16.     "***Bar Date Order***" means the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof* [Docket No. 367] (as the same may be amended, supplemented, or modified from time to time after entry thereof).

17.     "***Business Day***" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

18.     "***Carve-Out Reserves***" shall have the meaning ascribed to it in the DIP Order.

19.     "***Cash***" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

20.     "***Cause of Action***" or "***Causes of Action***" means any actions, Avoidance Actions, Claims, cross claims, third-party claims, interests, damages, controversies, remedies, causes of action, debts, judgments, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law or otherwise. Causes of Action also include: (a) any rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests and any Claim Objections; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

21.     "***Chapter 11 Cases***" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

22.     "***Claim***" means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor or a Debtor's Estate.

23.      "*Claim Objection*" means an objection to the Allowance of a Claim as set forth in section 502 of the Bankruptcy Code, Bankruptcy Rule 3007, and/or any order of the Bankruptcy Court regarding any claim objections.

24.     "***Claims and Noticing Agent***" means Omni Agent Solutions, Inc., in its capacity as claims and noticing agent for the Debtors and any successor.

25.      "***Claims Bar Date***" means the date established by the Bankruptcy Court in the Bar Date Order by which Proofs of Claim must be Filed with respect to such Claims, other than Administrative Claims, Claims held by Governmental Units, or other Claims for which the Bankruptcy Court entered an order excluding the Holders of such Claims from the requirement of Filing Proofs of Claim.

26.      "***Claims Register***" means the official register of Claims maintained by the Claims and Noticing Agent.

27.      "***Claire's***" means Claire's Holdings LLC, a limited liability company formed under the laws of Delaware.

28.      "***Class***" means a class of Claims or Interests as set forth in Article III of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

29.      "***Committee***" means any statutory committee of unsecured creditors of the Debtors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee.

30.      "***Confirmation***" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

31.      "***Confirmation Date***" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

32.      "***Confirmation Hearing***" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code.

33.      "***Confirmation Order***" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

34.      "***Consulting Agreement***" means that certain agreement dated as of July 24, 2025 (as amended and supplemented from time to time), a copy of which is attached as Exhibit 1 to the Store Closing Order, made by and between Claire's Holding LLC and Hilco Merchant Resources, LLC.

35.      "***Consummation***" means the occurrence of the Effective Date as to the applicable Debtor.

36.      "***Cure Claim***" means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtors' defaults on an Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is assumed by the Debtors (and/or assumed and assigned by the Debtors to a Purchaser pursuant to the Transaction Documents, which Cure Claim shall be, for the avoidance of doubt, subject to any allocation of liability as set forth in the applicable Sale Order, the Asset Purchase Agreement, and Article V.D of this Plan) pursuant to section 365 of the Bankruptcy Code, other than with respect to a default that is not required to be cured under section 365(b)(2) of the Bankruptcy Code.

37.      "***Cure Cost***" means all amounts, including an amount of $0.00, required to cure any monetary defaults and other non-monetary defaults to the extent required by section 365 of the Bankruptcy Code, under any Executory Contract or Unexpired Lease (or such other amount as may be agreed upon by the parties under an Executory Contract or Unexpired Lease) that is to be assumed by the Debtors (and/or assumed and assigned by the Debtors pursuant to the Sale Order or the Confirmation Order) pursuant to sections 365 or 1123 of the Bankruptcy Code.

38.      "***Cure Notice***" means, with respect to an Executory Contract or Unexpired Lease to be assumed under the Plan, any notice (including the Assumed Executory Contracts and Unexpired Leases Schedule filed with the Plan Supplement) that: (a) sets forth the proposed amount to be paid on account of a Cure Claim in connection with the assumption of such Executory Contract or Unexpired Lease; (b) notifies the counterparty to such Executory Contract or Unexpired Lease that such party's Executory Contract or Unexpired Lease may be assumed under the

Plan; (c) sets forth the procedures for objecting to the proposed assumption or assumption and assignment of Executory Contracts and Unexpired Leases, including the proposed objection deadline, and for the resolution by the Bankruptcy Court of any such disputes; and (d) states that the proposed assignee (if applicable) has demonstrated its ability to comply with the requirements of adequate assurance of future performance of the Executory Contract(s) to be assigned, including the assignee's financial wherewithal and willingness to perform under such Executory Contract or Unexpired Lease.

39.     "***D&O Liability Insurance Policies***" means all insurance policies (including any "tail policy") issued or providing coverage at any time to any of the Debtors or any of their predecessors for current or former directors', officers', managers', and/or employees' liability and all agreements, documents, or instruments relating thereto.

40.     "***Definitive Document***" means:   (a) the Confirmation Order; (b) the DIP Order(s); (c) any Transaction Documents; (d) all material pleadings filed by the Debtors in connection with the Chapter 11 Cases (or related order), including the First Day Pleadings and all orders sought pursuant thereto; (e) the Plan and any Plan Supplement (including the documents contained therein); (f) the Disclosure Statement and the Solicitation Materials; (g) the Disclosure Statement Order; (h) the Store Closing Order (including any exhibits and attachments thereto including the Consulting Agreement); (i) any and all filings with or requests for regulatory or other approvals from any governmental Entity or unit, other than ordinary course filings and requests, necessary or desirable to implement the Wind-Down Transactions; (j) such other agreements and documentation contemplated in, or necessary or advisable to, consummate and implement the Wind-Down Transactions; (k) any and all other documents reasonably necessary or desirable to consummate and document any other transactions contemplated by the Plan (including any exhibits, amendments, modifications, or supplements from time to time); and (l) any amendments or modifications to each of the Definitive Documents in clauses (a) through (k).

41.     "***DIP Order***" means the interim or final order, as applicable, entered by the Bankruptcy Court authorizing the Debtors to obtain postpetition financing, use cash collateral, granting liens and superpriority claims to the DIP Lender (as defined in the DIP Order), granting adequate protection to the Prepetition Secured Parties (as defined in the DIP Order), modifying the automatic stay, and granting related relief.

42.     "***Disbursing Agent***" means the Debtors or the Liquidating Trustee, as applicable, or the Entity or Entities selected by the Debtors or the Liquidating Trustee, as applicable, to make or facilitate distributions contemplated under the Plan.

43.     "***Disclosure Statement***" means the forthcoming *Disclosure Statement for the Joint Chapter 11 Plan of Claire's Holdings LLC. and Its Debtor Affiliates*, as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and approved by the Bankruptcy Court pursuant to the Disclosure Statement Order.

44.     "***Disclosure Statement Order***" means the final order (and all exhibits and schedules thereto), entered by the Bankruptcy Court approving the Disclosure Statement and establishing procedures for the solicitation of votes on the Plan.

45.     "***Disputed***" means, with respect to any Claim or Interest, any Claim or Interest (or any portion thereof):  (a) that is not Allowed; (b) that is not disallowed by the Plan, the Bankruptcy Code, or a Final Order, as applicable; and (c) with respect to which a party in interest has Filed a Proof of Claim or Proof of Interest or otherwise made a written request to a Debtor for payment.

46.     "***Distributable Proceeds***" means all Cash of the Debtors, on or after the Effective Date, including any Cash comprising the Sale Proceeds, Store Closing Proceeds, or Residual Cash, that have not otherwise been used or disposed of in connection with and pursuant to the DIP Order, after (a) payment of Administrative Claims, Professional Fee Claims, and Disinterested Director Fee Claims (if applicable), and (b) funding the Wind-Down Reserve (including the 503(b)(9) Claims Reserve, the Stub Rent Reserve, and the Trust GUC Assets).

47. "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims or Allowed Interests are eligible to receive Plan Distributions, which date shall be the Effective Date, or such other date as is announced by the Debtors or as is designated in a Final Order of the Bankruptcy Court.

48. "*Effective Date*" means, as to the applicable Debtor, the date that is the first Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been satisfied or waived pursuant to Article IX.A and Article IX.B of the Plan and (b) no stay of the Confirmation Order is in effect. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

49. "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

50. "*Estate*" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired by the Debtors after the Petition Date through the Effective Date.

51. "*Exculpated Parties*" means, collectively, (a) each of the Debtors; (b) each of their respective current officers and their respective current and former directors, managers, attorneys, financial advisors, consultants, or other professionals or advisors that served in such capacity between the Petition Date and Effective Date and (c) the Committee, its Professionals, and its members. For the avoidance of doubt, the Former Officers shall not be Exculpated Parties.

52. "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

53. "*Equity Interest*" means, collectively, the shares (or any class thereof), common stock, preferred stock, capital stock, limited liability company interests (including any common units or preferred units, such as the Series A Preferred Units), contingent value rights (which shall be deemed equity interests for the purposes of the Plan), and any other equity, ownership, or profits interests of any Debtor, and options, warrants, rights, or other securities or agreements to acquire or subscribe for, or which are convertible into the shares (or any class thereof) common stock, preferred stock, limited liability company interests (including any common units or preferred units), or other equity, ownership, or profits interests of any Debtor (in each case whether or not arising under or in connection with any employment agreement) and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claims against any Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

54. "*Equity Security*" means any equity security, as defined in section 101(16) of the Bankruptcy Code, in a Debtor.

55. "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

56. "*File*" or "*Filed*" or "*Filing*" means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases, or, with respect to the filing of a Proof of Claim, the Claims and Noticing Agent.

57. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or Filed, or as to which any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

58.    "***First Day Pleadings***" means the first-day pleadings that the Debtors Filed with the Bankruptcy Court upon the commencement of the Chapter 11 Cases.

59.    "***Former Officers***" has the meaning set forth in Article IV.T of the Plan.

60.    "***General Unsecured Claim***" means any Claim that is:  (a) neither Secured nor entitled to priority under the Bankruptcy Code or an order of the Bankruptcy Court and (b) not an Administrative Claim, a Priority Tax Claim, a Professional Fee Claim, an Other Priority Claim, an Other Secured Claim, a Prepetition Priority Term Loan Claim, a Prepetition Existing Term Loan Claim, an Intercompany Claim, or a Section 510(b) Claim; *provided* that any General Unsecured Claim that is an Assumed Liability under any Transaction Documents shall be satisfied solely pursuant to the applicable Transaction Documents and shall not (i) be an obligation of the Debtors, and/or (ii) constitute a General Unsecured Claim pursuant to this Plan.  For the avoidance of doubt, any General Unsecured Claims resulting from the Debtors' rejection of any Unexpired Lease of nonresidential real property (including pre-petition claims under that Unexpired Lease) shall remain an obligation of the Debtors and/or constitute a General Unsecured Claim pursuant to this Plan.

61.    "***Governing Body***" means, in each case in its capacity as such, the board of directors, board of managers, manager, general partner, investment committee, special committee, or such similar governing body of any of the Debtors.

62.    "***Governmental Bar Date***" means the date by which Proofs of Claim must be Filed with respect to such Claims held by Governmental Units pursuant to the Bar Date Order.

63.    "***Governmental Unit***" has the meaning set forth in section 101(27) of the Bankruptcy Code.

64.    "***Holder***" means an Entity holding a Claim against or an Interest in any Debtor.

65.    "***Impaired***" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

66.    "***Independent Managers***" means, collectively, David Barse and William Transier in their capacity as independent and disinterested managers on the boards of Claire's, Claire's Stores, Inc, Claire's Puerto Rico Corp, CBI Distributing Corp, Claire's Boutiques, Inc., Claire's Canada Corp., BMS Distributing Corp., CSI Canada LLC, CLSIP Holdings LLC, CLSIP LLC, Claire's Swiss Holdings LLC, and Claire's Swiss Holdings II LLC.

67.    "***Independent Manager Fee Claims***" means all unpaid fees and expenses as of the Effective Date due to the Independent Managers pursuant to their respective manager agreements with the Debtors.  On the Effective Date, the Independent Manager Fee Claims shall be deemed Allowed Administrative Claims against the Debtors.

68.    "***Insurance Policies***" means all insurance policies issued or providing coverage at any time to any of the Debtors or any of their predecessors and all agreements, documents, or instruments relating thereto, including, without limitation, the D&O Liability Insurance Policies, but, for the avoidance of doubt, does not include any insurance policy, nor any agreement, document, or instrument relating thereto, that has been or will be transferred and/or assumed and assigned to a Purchaser pursuant to the Transaction Documents.

69.    "***Insurer***" means any insurance company or third-party administrator that issued or entered into an Insurance Policy and any respective predecessors and/or affiliates thereof.

70.    "***Intercompany Claim***" means any Claim held by a Debtor or a Subsidiary of a Debtor against any Debtor arising before the Petition Date.

71.    "***Intercompany Interest***" means an Interest in a Debtor held by a Debtor or a Subsidiary of a Debtor.

72.    "***Interest***" means collectively, (a) any Equity Security in any Debtor and (b) any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption rights, or

repurchase rights; convertible, exercisable, or exchangeable securities; or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor.

73. "*Interim Compensation Order*" means the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Docket No. 366] (as the same may be amended, supplemented, or modified from time to time after entry thereof).

74. "*IRS*" means the U.S. Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder.

75. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

76. "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

77. "*Liquidating Trust*" means the liquidating trust established on the Effective Date pursuant to Article IV of the Plan and the Liquidating Trust Agreement.

78. "*Liquidating Trust Assets*" means, collectively, (a) the Distributable Proceeds, (b) the Wind-Down Reserve, and (c) all other remaining assets of the Debtors' Estates on the Effective Date, excluding, for the avoidance of doubt, the Professional Fee Escrow Amount held in the Professional Fee Escrow Account, the Seller Note, and the Acquired Assets.

79. "*Liquidating Trust Agreement*" means the agreement, filed with the Plan Supplement and executed on the Effective Date, that establishes and governs the Liquidating Trust.

80. "*Liquidating Trustee*" means META Advisors, LLC.

81. "*Local Rules*" means the local rules of the Bankruptcy Court.

82. "*Non-Debtor Equity Interests*" means, collectively, any equity interests held by any Debtor in any Entity that is not a Debtor.

83. "*Non-Released Former Officer Claims*" has the meaning set forth in Article IV.T of the Plan.

84. "*Other Priority Claim*" means any Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code; *provided* that any Other Priority Claim that is an Assumed Liability under any Transaction Documents shall be satisfied solely pursuant to the applicable Transaction Documents and shall not (a) be an obligation of the Debtors, and/or (b) constitute an Other Priority Claim pursuant to this Plan.

85. "*Other Secured Claim*" means any Secured Claim, other than claims arising under the Prepetition Loan Documents, that is secured by a Lien senior to the Lien securing Adequate Protection Liens (as defined in the DIP Order); *provided* that any Other Secured Claim that is an Assumed Liability under any Transaction Documents shall be satisfied solely pursuant to the applicable Transaction Documents and shall not (a) be an obligation of the Debtors, and/or (b) constitute an Other Secured Claim pursuant to this Plan.

86. "*Person*" means a person as such term as defined in section 101(41) of the Bankruptcy Code.

87. "*Petition Date*" means the date on which each of the Debtors commenced the Chapter 11 Cases.

88. "*Plan Distribution*" means a payment or distribution to Holders of Allowed Claims in accordance with the Plan.

89.    "***Plan Supplement***" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed initially by the Debtors no later than the Plan Supplement Filing Date and may include the following, as applicable: (a) Assumed Executory Contracts and Unexpired Leases Schedule, (b) Schedule of Retained Causes of Action; (c) the Wind-Down Transactions Memorandum; (d) identity of the Liquidating Trustee; (e) the Liquidating Trust Agreement; and (f) additional documents Filed with the Bankruptcy Court prior to the Effective Date as amendments to the Plan Supplement.

90.    "***Prepetition ABL Credit Agreement***" means that certain ABL Credit Agreement, dated as of September 30, 2022, as amended, restated, amended and restated, supplemented, or modified from time to time, by and among Claire's Stores, Inc. as a U.S. borrower and borrower, Claire's (Gibraltar) Holdings Limited, as a U.K. borrower, Claire's as holdings, the other U.S. borrowers party thereto from time to time, the other U.K. borrowers party thereto from time to time, the Prepetition ABL Lenders, and the Prepetition ABL Agent.

91.    "***Prepetition ABL Lenders***" means, collectively, the "Lenders," as such term is defined in the Prepetition ABL Credit Agreement.

92.    "***Plan Supplement Filing Date***" means, the date that is (a) seven days prior to the earlier of (i) the Voting Deadline or (ii) the deadline to object to Confirmation of the Plan or (b) such later date as may be approved by the Bankruptcy Court.

93.    "***Prepetition ABL Agent***" means JPMorgan Chase, N.A., in its capacities as administrative agent and collateral agent under the Prepetition ABL Credit Agreement, or any successor administrative agent or collateral agent as permitted by the terms set forth in the Prepetition ABL Credit Agreement.

94.    "***Prepetition Existing Term Loan Agent***" means Ankura Trust Company, LLC, (as successor to JPMorgan Chase Bank, N.A., the "Initial Term Loan Agent") in its capacities as administrative agent and collateral agent under the Prepetition Existing Term Loan Credit Agreement, or any successor administrative agent or collateral agent as permitted by the terms set forth in the Prepetition Existing Term Loan Credit Agreement.

95.    "***Prepetition Existing Term Loan Claims***" means any Claims arising under, derived from, or based upon the Prepetition Existing Term Loans.

96.    "***Prepetition Existing Term Loan Credit Agreement***" means that certain Term Loan Credit Agreement, dated as of December 18, 2019, as amended, restated, amended and restated, supplemented, or modified from time to time, by and among Claire's Stores, Inc., as borrower, Claire's Holdings LLC, as holdings, the Prepetition Existing Term Loan Lenders, and the Prepetition Existing Term Loan Agent.

97.    "***Prepetition Existing Term Loan Lenders***" means, collectively, the "Lenders," as such term is defined in the Prepetition Existing Term Loan Credit Agreement.

98.    "***Prepetition Existing Term Loans***" means, collectively, each "Loan," as such term is defined in the Prepetition Existing Term Loan Credit Agreement.

99.    "***Prepetition Loan Documents***" means the Prepetition ABL Credit Agreement, Prepetition Term Loan Documents, the Prepetition Term Loan Intercreditor Agreement, the ABL Intercreditor Agreement, and all other agreements, documents, and instruments executed or delivered in connection therewith or related thereto, including any guaranty agreements, pledge and collateral agreements, intercreditor agreements, and other security agreements, each as may be amended, restated, amended and restated, supplemented, waived, and/or otherwise modified from time to time.

100.    "***Prepetition Priority Term Loan Agent***" means Ankura Trust Company, LLC, in its capacities as administrative agent and collateral agent under the Prepetition Priority Term Loan Credit Agreement, as such term is

defined in the Prepetition Priority Term Loan Credit Agreement, or any successor administrative agent or collateral agent as permitted by the terms set forth in the Prepetition Priority Term Loan Credit Agreement.

101.     "***Prepetition Priority Term Loan Claims***" means any Claims arising under, derived from, or based upon the Prepetition Priority Term Loans.

102.     "***Prepetition Priority Term Loan Credit Agreement***" means that certain Priority Term Loan Credit Agreement, dated as of September 23, 2024, as amended, restated, amended and restated, supplemented, or modified from time to time, by and among Claire's Boutiques, Inc. as borrower, Claire's Holdings LLC as holdings, the Prepetition Priority Term Loan Lenders, and the Prepetition Priority Term Loan Agent.

103.     "***Prepetition Priority Term Loan Lenders***" means, collectively, each "Lender," as such term is defined in the Prepetition Priority Term Loan Credit Agreement.

104.     "***Prepetition Priority Term Loans***" means, collectively, each "Loan," as such term is defined in the Prepetition Priority Term Loan Credit Agreement.

105.     "***Prepetition Secured Lenders***" means, collectively, the Prepetition Priority Term Loan Lenders and the Prepetition Existing Term Loan Lenders.

106.     "***Prepetition Secured Lender Claims***" means, collectively, the Prepetition Priority Term Loan Claims and the Prepetition Existing Term Loan Claims.

107.     "***Prepetition Term Loan Agents***" means, collectively, the Prepetition Existing Term Loan Agent and the Prepetition Priority Term Loan Agent.

108.     "***Prepetition Term Loan Documents***" means, collectively, the Prepetition Priority Term Loan Credit Agreement and the Prepetition Existing Term Loan Credit Agreement.

109.     "***Prepetition Term Loan Intercreditor Agreement***" means that certain Priority First Lien Intercreditor Agreement, dated as of September 23, 2024, as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, between, *inter alios*, the Prepetition Term Loan Agents, which provides that the Prepetition Priority Term Loans shall be senior in right of any payment, distribution, proceeds, consideration, or value of any kind or in any form collateral to the Prepetition Existing Term Loans.

110.     "***Priority Tax Claim***" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code; *provided* that any Priority Tax Claim that is an Assumed Liability under any Transaction Documents shall be satisfied solely pursuant to the applicable Transaction Documents and shall not (a) be an obligation of the Debtors, and/or (b) constitute a Priority Tax Claim pursuant to this Plan.

111.     "***Pro Rata***" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, unless otherwise indicated.

112.     "***Professional***" means an Entity:  (a) retained pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

113.     "***Professional Fee Claim***" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

114.     "***Professional Fee Escrow Account***" means an interest-bearing account funded by the Debtors with Cash on or before the Effective Date in an amount equal to the Professional Fee Escrow Amount.

115.    "***Professional Fee Escrow Amount***" means the aggregate amount of Professional Fee Claims and other unpaid fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors or the Committee as set forth in Article II.B.3 of the Plan; *provided* that the Professional Fee Escrow Amount shall be funded as follows: *first*, with amounts remaining in the Carve Out Reserves, if any (provided no amounts from the Carve Out Reserves shall be funded into the Professional Fee Escrow Account prior to the Effective Date); and *second*, by Cash on hand.

116.    "***Proof of Claim***" means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the Claims Bar Date, the Administrative Claims Bar Date, or the Governmental Bar Date, as applicable.

117.    "***Purchaser***" means AWS Claire's, LLC or its designee.

118.    "***Quarterly Fees***" means any and all fees due and payable pursuant to section 1930 of title 28 of the U.S. Code, together with the statutory rate of interest set forth in section 3717 of title 31 of the U.S. Code to the extent applicable.

119.    "***Reinstate***," "***Reinstated***," or "***Reinstatement***" means with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

120.    "***Related Party***" means, each of, and in each case in its capacity as such, such Person's or such Entity's current and former directors, managers, officers, investment committee members, special committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, and Professionals.

121.    "***Released Parties***" means, each of, and in each case in its capacity as such: (a) the Debtors; (b) the Liquidating Trustee; (c) the Prepetition ABL Lenders; (d) the Prepetition Priority Term Loan Lenders; (e) the Prepetition Existing Term Loan Lenders; (f) the Prepetition ABL Agent; (g) the Prepetition Priority Term Loan Agent (including any predecessor agent); (h) the Prepetition Existing Term Loan Agent (including any predecessor agent); (i) the Initial Term Loan Agent; (j) the Releasing Parties; (k) each current and former Affiliate of each Entity in clause (a) through clause (j); and (l) each Related Party of each Entity in clause (a) through clause (k); *provided* that, notwithstanding the foregoing, the Released Parties shall not include the Former Officers.[2]

122.    "***Releasing Parties***" means, each of, and in each case in its capacity as such: (a) the Debtors; (b) the Liquidating Trustee; (c) the Prepetition ABL Lenders; (d) the Prepetition Priority Term Loan Lenders who affirmatively opt in to the releases provided by the Plan; (e) the Prepetition Existing Term Loan Lenders who affirmatively opt in to the releases provided by the Plan; (f) the Prepetition ABL Agent; (g) the Prepetition Priority Term Loan Agent (including any predecessor agent); (h) the Prepetition Existing Term Loan Agent (including any predecessor agent); (i) the Purchaser; (j) all Holders of Claims against the Debtors who affirmatively opt in to the releases provided by the Plan; (k) all Holders of Interests in the Debtors who affirmatively opt in to the releases provided by the Plan; (l) the Initial Term Loan Agent; (m) each current and former Affiliate of each Entity in clause (a) through (n) for which such Entity is legally entitled to bind such Affiliate to the releases contained in the Plan under applicable non-bankruptcy law; and (n) each Related Party of each Entity in clause (a) through (m) for which such Affiliate or Entity is legally entitled to bind such Related Party to the releases contained in the Plan under applicable non-bankruptcy law.

123.    "***Required Consenting Stakeholders***" means, collectively, (a) Prepetition Existing Term Loan Lenders holding at least 50.01% of the aggregate outstanding principal amount of Prepetition Existing Term Loans and (b) the Prepetition Priority Term Loan Lenders holding at least 50.01% of the aggregate outstanding principal amount of Prepetition Priority Term Loans, voting separately; *provided* that upon payment in full or other satisfaction

---

[2]    For the avoidance of doubt, the releases set forth in the Plan of any party, other than a Sale Release Party (as defined in the Disclosure Statement), shall remain subject in all respects to the Plan Investigation (as defined in the Disclosure Statement).

of the Allowed Prepetition Secured Lender Claims held by any such Prepetition Secured Lender, any and all consultation, information, notice, and consent rights of the applicable Prepetition Secured Lender shall terminate.

124.    "***Residual Cash***" means the sum of (a) any amounts remaining in the Professional Fee Escrow Account after payment in full of all Allowed Professional Fee Claims (excluding the Residual Committee Professional Fee Amount), (b) any amounts remaining in the Stub Rent Reserve after payment in full of all Allowed Stub Rent Claims, and (c) any amounts remaining in the 503(b)(9) Claims Reserve after payment in full of all Allowed Section 503(b)(9) Claims.

125.    "***Residual Committee Professional Fee Amount***" means $3.3 million (inclusive of any amounts held in the Professional Fee Escrow Account allocable to the Committee's Professionals), *less* the total amount of Allowed Professional Fee Claims paid to the Committee's Professionals.

126.    "***Retained Causes of Action***" means any Claim or Cause of Action that the Debtors or their Estates may hold as of the Effective Date listed on the Schedule of Retained Causes of Action; *provided* that , for the avoidance of doubt, the Retained Claims or Causes of Action shall not include any Claim or Cause of Action transferred to a Purchaser pursuant to the Transaction Documents; *provided*, *further*, that the Retained Causes of Action shall vest in the Liquidating Trust on the Effective Date.

127.    "***Sale Motion***" means the *Motion of Debtors for Entry of an Order (I) Authorizing and Approving the Sale of Going-Concern Assets Free and Clear of all Liens, Claims, Encumbrances and Other Interests and (II) Granting Related Relief* [Docket No. 190].

128.    "***Sale Order***" means the order of the Bankruptcy Court approving the consummation of the Sale Transaction pursuant to the Sale Motion and the Asset Purchase Agreement.

129.    "***Sale Proceeds***" means all proceeds of the Sale Transaction, including all Cash proceeds and non-Cash proceeds, that the Debtors shall receive in connection with the Sale Transaction pursuant to the Asset Purchase Agreement.

130.    "***Sale Transaction***" means the going concern sale transaction contemplated by the Asset Purchase Agreement.

131.    "***Schedule of Retained Causes of Action***" means the schedule of certain Causes of Action of the Debtors (to be included in the Plan Supplement) that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors.

132.    "***Schedules***" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as such schedules may be amended, modified, or supplemented from time to time [Docket Nos. 378-391].

133.    "***Section 503(b)(9) Claim***" means any Claim under section 503(b)(9) of the Bankruptcy Code.

134.    "***Section 503(b)(9) Claim Reserve***" means the reserve in the amount of $6,154,000, *less* the amount of any Section 503(b)(9) Claims assumed and paid by Purchaser pursuant to the Sale Transaction and Sale Order, established pursuant to the DIP Order to pay all Allowed Section 503(b)(9) Claims; *provided* that any Section 503(b)(9) Claim assumed by Purchaser pursuant to the Sale Transaction and Sale Order shall not be an obligation of the Debtors and shall not be satisfied or paid from the Section 503(b)(9) Claim Reserve.

135.    "***Section 510(b) Claim***" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code; *provided* that a Section 510(b) Claim shall not include any Claim subject to subordination under section 510(b) of the Bankruptcy Code arising from or related to an Interest.

136.    "**Secured**" means when referring to a Claim: (a) secured by a Lien on collateral in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Debtor's interest in such collateral or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) otherwise Allowed pursuant to the Plan as a Secured Claim.

137.    "**Securities Act**" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

138.    "**Seller Note**" shall have the meaning ascribed to it in the Asset Purchase Agreement.

139.    "**Store Closing Order**" means the *Final Order (I) Authorizing the Debtors to Assume the Consulting Agreement, (II) Authorizing and Approving the Conduct of Store Closing Sales, with Such Sales to be Free and Clear of All Liens, Claims, and Encumbrances, (III) Modifying Customer Programs at the Closing Stores, and (IV) Granting Related Relief* [Docket No. 373].

140.    "**Store Closing Proceeds**" means the proceeds from any store closing sales effectuated pursuant to the Store Closing Order.

141.    "**Stub Rent**" means the postpetition, prerejection portion of regularly accruing monthly rent, expenses, and charges under the terms of the Debtors' non-residential real property leases that are due for the period from and including the Petition Date through and including August 31, 2025.

142.    "**Stub Rent Claim**" means any Claim on account of Stub Rent.

143.    "**Stub Rent Reserve**" means a segregated account funded in the amount of $8,100,000 established pursuant to the DIP Order to pay all Allowed Stub Rent Claims and which was funded upon closing of the Sale Transaction with Sale Proceeds.

144.    "**Security**" or "**Securities**" has the meaning set forth in section 2(a)(1) of the Securities Act.

145.    "**Subsidiary**" means any Entity owned or controlled, whether directly or indirectly, by any Debtor.

146.    "**Third-Party Release**" means the release given by the Releasing Parties to the Released Parties as set forth in Article VIII.C of the Plan.

147.    "*Transaction Documents*" means all motions, filings, documents, agreements, and related documents pursuant to which the Debtors will effectuate the Sale Transaction, including, without limitation, the Asset Purchase Agreement, the Sale Motion, and the Sale Order.

148.    "**Transition Services Agreement**" means, collectively, any agreement or agreements by and between the Debtors on the one hand, and certain non-Debtor Affiliates and/or the Purchaser, as applicable, on the other hand, regarding the provision of transition services.

149.    "**Treasury Regulations**" means the tax regulations promulgated under the IRS.

150.    "**Trust GUC Assets**" means, collectively, (a) Cash in an amount equal to $1 million, (b) the Retained Causes of Action and any proceeds thereof, and (c) the Residual Committee Professional Fee Amount.

151.    "**U.S. Trustee**" means the Office of the United States Trustee for the District of Delaware.

152.    "*Unclaimed Distribution*" means any Plan Distribution on account of an Allowed Claim to a Holder that has not:  (a) accepted a particular Plan Distribution or, in the case of Plan Distributions made by check, negotiated such check within ninety calendar days of receipt; (b) given notice to the Debtors of an intent to accept a

particular Plan Distribution within ninety calendar days of receipt; (c) responded to the Debtors' requests for information necessary to facilitate a particular Plan Distribution prior to the deadline included in such request for information; or (d) taken any other action necessary to facilitate such Plan Distribution.

153.    "***Unexpired Lease***" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

154.    "***Unimpaired***" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

155.    "***Voting Deadline***" means 4:00 p.m. (prevailing Eastern Time) on October 14, 2025.

156.    "***Waterfall Recovery***" has the meaning set forth in Article IV.E.

157.    "***Wind-Down Amount***" means Cash in an aggregate amount equal to the:  (a) Stub Rent Reserve *plus* (b) Section 503(b)(9) Claim Reserve *plus* (c) the Trust GUC Assets.

158.    "***Wind-Down Reserve***" means the account to be established and maintained by the Debtors or the Liquidating Trustee, as applicable, and funded with the Wind-Down Amount to fund the Wind-Down Transactions in accordance with the Plan.

159.    "***Wind-Down Transactions***" means the transactions described in Article IV.E of the Plan.

160.    "***Wind-Down Transactions Memorandum***" means that certain memorandum as may be amended, supplemented, or otherwise modified from time to time, describing the steps to be carried out to effectuate the Wind-Down Transactions, the form of which shall be included in the Plan Supplement.

B.    *Rules of Interpretation*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, feminine, and the neutral gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan or Confirmation Order, as applicable; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) any effectuating provisions may be interpreted by the Liquidating Trustee in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, *provided* that the rights of all parties in interest to contest

such interpretation are expressly preserved; (14) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (15) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (16) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (17) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.      *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate or limited liability company governance matters relating to the Debtors or the Liquidating Trust, as applicable, not incorporated in Delaware shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or the Liquidating Trust, as applicable.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Rights of Required Consenting Stakeholders*

For the avoidance of doubt, the Definitive Documents not executed as of the filing of this Plan and every other document, deed, agreement, filing, notification, letter, or instrument related to the transactions described herein shall be in form and substance reasonably acceptable to the Required Consenting Stakeholders. For the avoidance of doubt, any ministerial notices and similar ministerial documents, retention applications, fee applications, fee statements, similar pleadings or motions relating to the retention or fees of any professional, or statements of financial affairs and schedules of assets and liabilities shall not be deemed to be Definitive Documents. Notwithstanding anything to the contrary herein, this Plan may not be modified in a manner adverse to the Prepetition Secured Lenders without the consent of the Required Consenting Stakeholders, which consent shall not be unreasonably withheld.

G.      *No Substantive Consolidation*

Although for purposes of administrative convenience and efficiency the Plan has been Filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.      *General Administrative Claims*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Liquidating Trustee, as applicable, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Allowed Administrative Claim an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative Claim in accordance with the following: (1) if such Administrative Claim is Allowed on or prior to the Effective Date, on the Effective Date (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim (or as soon as reasonably practicable thereafter), without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors or the Liquidating Trustee, as applicable, and in accordance with any applicable Transaction Documents; or (5) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court; *provided* that any Allowed Administrative Claim that is an Assumed Liability under the Transaction Documents shall be an obligation of the Purchaser and shall not be an obligation of the Debtors.  For the avoidance of doubt, the Section 503(b)(9) Claim Reserve and Stub Rent Reserve shall be used solely to satisfy Allowed 503(b)(9) Claims and Allowed Stub Rent Claims, respectively; *provided* that no Allowed 503(b)(9) Claims assumed by Purchaser pursuant to the Sale Transaction shall be paid or satisfied from the Section 503(b)(9) Claim Reserve.  Any remaining funds in the Section 503(b)(9) Claim Reserve or the Stub Rent Reserve after payment in full of all Allowed 503(b)(9) Claims and Allowed Stub Rent Claims, as applicable, shall constitute Residual Cash.

Except with respect to Administrative Claims that are Professional Fee Claims, Independent Manager Claims, or subject to section 503(b)(1)(D) of the Bankruptcy Code, and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Debtors or the Liquidating Trustee, as applicable, no later than the Administrative Claims Bar Date pursuant to the procedures specified in the Bar Date Order.  Objections to such requests must be Filed and served on the requesting party by the Administrative Claims Objection Bar Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order that becomes a Final Order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not File and serve such a request by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, their property, or the Liquidating Trust, and such Administrative Claims shall be deemed released and extinguished as of the Effective Date without the need for any objection from the Debtors or the Liquidating Trustee or any notice to or action, order, or approval of the Bankruptcy Court.  Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with the Bankruptcy Court with respect to an Administrative Claim previously Allowed.

B. *Professional Fee Claims*

1. Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than sixty days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. The Liquidating Trustee shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals, including from funds held in the Professional Fee Escrow Account, when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court.

2. Professional Fee Escrow Account

On or prior to the Effective Date, the Debtors shall establish (if not previously established) and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Amount shall be funded as follows: *first*, with amounts remaining in the Carve Out Reserves, if any (provided no amounts from the Carve Out Reserves shall be funded into the Professional Fee Escrow Account prior to the Effective Date); and *second*, by Cash on hand. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been indefeasibly paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, Claims, or Interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Estates of the Debtors or the Liquidating Trust.

The amount of Allowed Professional Fee Claims owing to the Professionals shall be paid in Cash to each such Professional by the Debtors or the Liquidating Trustee, as applicable, from the funds held in the Professional Fee Escrow Account, as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; *provided* that the Debtors' obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account. When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall promptly be paid to the Liquidating Trustee and constitute Distributable Proceeds without any further notice to or action, order, or approval of the Bankruptcy Court, which amounts shall be distributed to Holders of Allowed Claims in accordance with the Plan (including the Waterfall Recovery). For the avoidance of doubt, the Residual Committee Professional Fee Amount shall not constitute Distributable Proceeds and shall constitute the Trust GUC Assets.

3. Professional Fee Escrow Amount

The Professionals shall provide a reasonable and good-faith estimate of their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtors no later than five days before the anticipated Effective Date; *provided* that such estimate shall not be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of any Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates. If a Professional does not provide a timely estimate, the Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account.

4. Post-Effective Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Liquidating Trustee shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors. If the Liquidating Trustee disputes the

reasonableness of any such invoice, the Liquidating Trustee or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Liquidating Trustee may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.    *Priority Tax Claims*

All Allowed Priority Tax Claims shall either (1) be paid during the Chapter 11 Cases or (2) to the extent an Assumed Liability under the Transaction Documents, satisfied solely under the applicable Transaction Documents and shall not be an obligation of the Debtors or the Liquidating Trust.  To the extent that an Allowed Priority Tax Claim was not otherwise paid during the Chapter 11 Cases or assumed and paid as an Assumed Liability under the applicable Transaction Documents, or a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, discharge, and release of, and in exchange for, such Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code; *provided* that any Allowed Priority Tax Claim that is not an Assumed Liability under any Transaction Documents shall be satisfied solely from the Trust GUC Assets.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

A.    *Classification of Claims and Interests*

Except for the Claims addressed in Article II hereof, all Claims and Interests are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and Plan Distributions and in accordance with sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving Plan Distributions only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth below.  The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.  All of the potential Classes for the Debtors are set forth herein.

| Class | Claim/Interest | Status | Voting Rights |
|-------|----------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Prepetition Priority Term Loan Claims | Impaired | Entitled to Vote |
| 4 | Prepetition Existing Term Loan Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 6 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 7 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 8 | Equity Interests in Claire's | Impaired | Not Entitled to Vote (Deemed to Reject) |

| 9 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

B. *Treatment of Claims and Interests*

Subject to Article VI hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors or the Liquidating Trustee, as applicable, and the Holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

    1.    <u>Class 1 – Other Secured Claims</u>

    (a)    *Classification*:  Class 1 consists of all Other Secured Claims.

    (b)    *Treatment*:  To the extent that either a Holder of an Allowed Other Secured Claim was not paid during the Chapter 11 Cases or a Holder's Allowed Other Secured Claim  was not an Assumed Liability under the Transaction Documents, unless such Holder agrees to less favorable treatment, in exchange for such Allowed Other Secured Claim, on or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Other Secured Claim shall receive, at the option of the Debtors or Liquidating Trustee, as applicable:

    (i)    payment in full in Cash of such Holder's Allowed Other Secured Claim;

    (ii)    the collateral securing such Holder's Allowed Other Secured Claim; or

    (iii)    such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code.

    (c)    *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Allowed Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

    2.    <u>Class 2 – Other Priority Claims</u>

    (a)    *Classification*:  Class 2 consists of all Other Priority Claims.

    (b)    *Treatment*:  To the extent that either a Holder of an Allowed Other Priority Claim was not paid during the Chapter 11 Cases or a Holder's Allowed Other Priority Claim was not an Assumed Liability under the Transaction Documents, unless such Holder agrees to less favorable treatment, in exchange for such Allowed Other Priority Claim, on or as soon as reasonably practicable after the later to occur of (i) the Effective Date and (ii) the date such Claim becomes Allowed (or as otherwise set forth in the Plan), each Holder of an Allowed Other Priority Claim shall receive, in full and final satisfaction of such Claim, Cash in an amount equal to such Allowed Other Priority Claim or such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

    (c)    *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Allowed Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

3.      Class 3 – Prepetition Priority Term Loan Claims

    (a)      *Classification*:  Class 3 consists of all Prepetition Priority Term Loan Claims.

    (b)      *Treatment*:  Except to the extent that each Holder of an Allowed Prepetition Priority Term Loan Claim agrees to less favorable treatment, on or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Prepetition Priority Term Loan Claim shall receive its Pro Rata share of the Distributable Proceeds pursuant to the Waterfall Recovery.

    (c)      *Voting*:  Class 3 is Impaired under the Plan.  Holders of Allowed Prepetition Priority Term Loan Claims are entitled to vote to accept or reject the Plan.

4.      Class 4 – Prepetition Existing Term Loan Claims

    (a)      *Classification*:  Class 4 consists of all Prepetition Existing Term Loan Claims.

    (b)      *Treatment*:  Except to the extent that each Holder of an Allowed Prepetition Existing Term Loan Claim agrees to less favorable treatment, on or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Prepetition Existing Term Loan Claim shall receive its Pro Rata share of the Distributable Proceeds pursuant to the Waterfall Recovery.

    (c)      *Voting*:  Class 4 is Impaired under the Plan.  Holders of Allowed Prepetition Existing Term Loan Claims are entitled to vote to accept or reject the Plan.

5.      Class 5 – General Unsecured Claims

    (a)      *Classification:*  Class 5 consists of all General Unsecured Claims.

    (b)      *Treatment*:  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, on or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of (a) Distributable Proceeds pursuant to the Waterfall Recovery; and (b) the Trust GUC Assets.

    (c)      *Voting:*  Class 5 is Impaired under the Plan.  Holders of Allowed General Unsecured Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

6.      Class 6 – Intercompany Claims

    (a)      *Classification*:  Class 6 consists of all Intercompany Claims.

    (b)      *Treatment*:  Allowed Intercompany Claims, to the extent not assumed pursuant to the terms of the Transaction Documents, shall, at the election of the applicable Debtors or Liquidating Trustee, be either:

        (i)      Reinstated;

        (ii)      converted to equity;

        (iii)      set off, settled, distributed, contributed, canceled, or released; or

        (iv)      otherwise addressed at the option of the Debtors or Liquidating Trustee without any distribution on account of such Claim, in each case, in accordance with the

Wind-Down Transactions Memorandum.

(c)    *Voting*:  Class 6 is Unimpaired if the Class 6 Claims are Reinstated or Impaired if the Class 6 Claims are cancelled.  Holders of Intercompany Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

7.    <u>Class 7 – Intercompany Interests</u>

(a)    *Classification:*  Class 7 consists of all Intercompany Interests.

(b)    *Treatment*:  Allowed Intercompany Interests shall, at the election of the Debtors or Liquidating Trustee, be either:

(i)    Reinstated;

(ii)    set off, settled, distributed, contributed, merged, cancelled, or released; or

(iii)    otherwise addressed at the option of the Debtors or Liquidating Trustee without any distribution on account of such Claim, in each case, in accordance with the Wind-Down Transactions Memorandum.

(c)    *Voting*:  Class 7 is either Unimpaired, and such Holders of Allowed Intercompany Interests are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, or Impaired, and such Holders of Allowed Intercompany Interests are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

8.    <u>Class 8 – Equity Interests in Claire's</u>

(a)    *Classification:*  Class 8 consists of all Equity Interests in Claire's

(b)    *Treatment*:  Equity Interests in Claire's shall be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Equity Interests in Claire's will not receive any distribution on account of such Interests.

(c)    *Voting:*  Class 8 is Impaired under the Plan.  Holders of Equity Interests in Claire's are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

9.    <u>Class 9 – Section 510(b) Claims</u>

(a)    *Classification:*  Class 9 consists of all Section 510(b) Claims.

(b)    *Treatment*:  Allowed Section 510(b) Claims, if any, shall be cancelled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Allowed Section 510(b) Claims will not receive any distribution on account of such Allowed Section 510(b) Claims.

(c)    *Voting:*  Class 9 is Impaired under the Plan.  Holders, if any, of Section 510(b) Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, such Holders, if any, are not entitled to vote to accept or reject the Plan.

*C.*      *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Liquidating Trustee's rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

*D.*      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B herein.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X herein to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

*E.*      *Subordinated Claims*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Liquidating Trustee reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

*F.*      *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtors shall request the Bankruptcy Court to deem the Plan accepted by the Holders of such Claims or Interests in such Class.

*G.*      *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

*A.*      *Settlement of Claims and Interests*

Subject to Article VI hereof, all Plan Distributions made to Holders of Allowed Claims are intended to be and shall be final.

B.      *Sale Transaction*

1.      Sale Transaction

Pursuant to the Sale Transaction, the Acquired Assets shall be transferred to and vest in the Purchaser free and clear of all Liens, Claims, charges, Interests, or other encumbrances (except for those Liens, Claims, charges, Interests, or other encumbrances expressly assumed by the Purchaser pursuant to the terms of the Transaction Documents) pursuant to sections 363 and 1141(c) of the Bankruptcy Code and in accordance with the terms of the Transaction Documents.  In exchange, the Purchaser shall pay to the Debtors the Sale Proceeds in accordance with the terms of the Transaction Documents.

The Debtors and the Purchaser shall be authorized to take all actions as may be deemed necessary or appropriate in furtherance of the Sale Transaction pursuant to the terms of the Asset Purchase Agreement, the Sale Order, and the Plan, as well as to execute, deliver, file, record, and issue any note, documents, or agreements in connection therewith, without further notice to or order of the Bankruptcy Court; act or action under applicable law, regulation, order, rule; or the vote, consent, authorization, or approval of any Entity.  From and after the entry of the Sale Order, except as expressly set forth in the Asset Purchase Agreement, the Sale Order, or other order of the Court, neither the Purchaser nor any of its affiliates shall be liable for any Claims, Administrative Claims, or other liabilities of the Debtors or the Liquidating Trustee (which shall be payable solely in accordance with this Plan) that do not constitute Assumed Liabilities (as defined in the Asset Purchase Agreement) or that were not otherwise transferred or assigned to the Purchaser or any of its affiliates pursuant to the Asset Purchase Agreement, the Sale Order, or other order of the Court.  Upon consummation of the Sale Transaction, except as otherwise provided in the Plan, the Purchaser may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules; provided, that the Bankruptcy Court shall retain jurisdiction to resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with any of the foregoing *provided further*, that the settlement of any derivative actions to which Federal Rule of Civil Procedure 23.1 is applicable shall be subject to approval by the court presiding over such derivative action.

C.      *Transition Services Agreement*

The Debtors and the Liquidating Trustee, as applicable, shall be authorized to implement or otherwise continue adherence with any Transition Services Agreement, including pursuant to any Sale Transaction, if applicable.  The Transition Services Agreement(s) shall help ensure that certain employees and contract counterparties are available to provide transition services to the Purchaser and/or to certain non-Debtor Affiliates, as applicable, and the Debtors or the Liquidating Trustee, as applicable, to wind down the Debtors' Estates.

D.      *Liquidating Trust*

On the Effective Date, the Debtors, on their own behalf and on behalf of the Liquidating Trust beneficiaries (the "Beneficiaries"), will establish the Liquidating Trust pursuant to the Liquidating Trust Agreement.  Upon establishment of the Liquidating Trust, title to the Liquidating Trust Assets shall be deemed transferred to the Liquidating Trust without any further action of the Debtors or any managers, employees, officers, directors, members, partners, shareholders, agents, advisors, or representatives of the Debtors.

Pursuant to section 1141 of the Bankruptcy Code, all property transferred to the Liquidating Trust shall be made free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as may be otherwise provided for in the Plan.  For the avoidance of doubt, any distributions to be made from the Liquidating Trust shall be governed by the terms and conditions set forth in the Plan and subject in all respects to the Waterfall Recovery.  Upon completion of the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors will have no further interest in, or with respect to, the Liquidating Trust Assets or the Liquidating Trust.

On the Effective Date, the Debtors shall execute the Liquidating Trust Agreement in substantially the same form as set forth in the Plan Supplement.  Any nonmaterial modifications to the Liquidating Trust Agreement made by the Debtors or the Liquidating Trustee (as applicable) will be automatically ratified if made in accordance with the terms

23

of the Liquidating Trust Agreement.  The Liquidating Trust Agreement will contain provisions permitting the amendment or modification of the Liquidating Trust Agreement necessary to implement the provisions of the Plan.

E.       *Wind-Down Transactions*

On or before the Effective Date, the Debtors or the Liquidating Trustee, as applicable, shall take all actions as may be necessary or appropriate to effectuate the Wind-Down Transactions, including the steps set forth in the Wind-Down Transactions Memorandum, and any transaction described in, approved by, contemplated by, or necessary to effectuate the Wind-Down Transactions that are consistent with and pursuant to the terms and conditions of the Plan.  The Liquidating Trust shall be established for, among other purposes, the purpose of (a) receiving and holding the Liquidating Trust Assets; (b) administering, disputing, objecting to, compromising, or otherwise resolving all Claims and Interests; (c) making distributions in accordance with the Plan and the Liquidating Trust Agreement; (d) maximizing recoveries for the Beneficiaries; (e) performing all actions reasonably requested by the Purchaser to complete all of the Debtors' outstanding obligations under the Transaction Documents as successor to the Debtors; and (f) commencing and pursuing the Retained Causes of Action and managing and administering any proceeds thereof, in each case, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.  The Liquidating Trust is intended to qualify as a "liquidating trust" under Treas. Reg. § 301.7701-4(d) and a grantor trust under section 671 of the IRS and, to the extent permitted by applicable law, for state and local income tax purposes, with the Beneficiaries treated as the grantors and deemed owners of the Liquidating Trust.  To the extent permitted by applicable law, all parties, including the Liquidating Trustee and the Beneficiaries, shall report consistently with the foregoing for all applicable tax reporting purposes (including consistent reporting for valuation purposes).

On and after the Effective Date, the Liquidating Trustee will be authorized to implement the Plan (including the steps set forth in the Wind-Down Transactions Memorandum) and any applicable orders of the Bankruptcy Court, and the Liquidating Trustee shall have the power and authority to take any action necessary to wind down and dissolve the Debtors' Estates.  Any certificate of dissolution or equivalent document may be executed by the Liquidating Trustee without need for any action or approval by the shareholders or board of directors or managers of any Debtor.

All Holders of Claims and Interests receiving distributions pursuant to the Plan and all other necessary parties in interest, including any and all agents thereof, shall prepare, execute, and deliver any agreements or documents, including any subscription agreements, and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

The Confirmation Order shall and shall be deemed to authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Wind-Down Transactions, including, for the avoidance of doubt, any and all actions required to be taken under applicable nonbankruptcy law.

F.       *Sources of Consideration for Plan Distributions and Waterfall Recovery*

On or after the Effective Date, the Debtors shall fund the Plan Distributions, as applicable, with the Distributable Proceeds on account of Allowed Claims in accordance with the Waterfall Recovery in accordance with Article III.B of this Plan.  The Distributable Proceeds shall be allocated and paid to the Holders of Allowed Claims, other than Allowed Professional Fee Claims, as applicable, until paid in full, in each case, on a Pro Rata basis, and subject in all respects to the terms of the DIP Order, except as otherwise agreed to by such Holders of Claims or Interests, as follows:  (a) *first*, on account of Allowed Administrative Claims and Priority Tax Claims; (b) *second*, on account of Allowed Other Secured Claims (solely to the extent such proceeds are collateral of such Allowed Other Secured Claim), if any; (c) *third*, on account of Allowed Other Priority Claims, if any; (d) *fourth*, on account of Allowed Prepetition Priority Term Loan Claims; (e) *fifth*, on account of Allowed Prepetition Existing Term Loan Claims (which Claims, for the avoidance of doubt and pursuant to the Prepetition Term Loan Intercreditor Agreement, shall not be entitled to receive any distribution or recovery until the Allowed Prepetition Priority Term Loan Claims

are paid in full); and (f) *sixth*, on account of Allowed General Unsecured Claims (collectively, the "Waterfall Recovery").

On or after the Effective Date, the Disbursing Agent shall be responsible for making Plan Distributions on account of Allowed Claims. For the avoidance of doubt, any Plan Distribution made on account of an Allowed Administrative Claim that is a 507(b) Claim shall be subject in all respects to the Prepetition Term Loan Intercreditor Agreement, the ABL Intercreditor Agreement, and the DIP Order.

Each Plan Distribution and issuance referred to in the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving the Plan Distribution or issuance.

G.    *Liquidating Trustee*

1.    Appointment of the Liquidating Trustee

The Committee shall select the Person who will initially serve as the Liquidating Trustee, with the Debtors' consent, whose selection shall be reasonably acceptable to the Debtors. Upon the occurrence of the Effective Date, the Liquidating Trustee shall also be deemed appointed to serve as the trustee and administrator of the Liquidating Trust established pursuant to the Plan and the Liquidating Trust Agreement. The Liquidating Trustee, subject to the terms and conditions of the Plan, the Plan Supplement, the Confirmation Order, and the Liquidating Trust Agreement, shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights, and obligations set forth in the Plan and the Liquidating Trust Agreement, as applicable.

2.    Liquidating Trustee as Representative of the Estates

From and after the Effective Date, the Liquidating Trustee shall act as the exclusive representative of the Estates for all purposes and as the sole officer and director of each of the post-Effective Date Debtors. Any successor Liquidating Trustee appointed pursuant to the Liquidating Trust Agreement shall be bound by and comply with the terms of the Plan, the Confirmation Order, and the Liquidating Trust Agreement.

3.    Responsibilities and Authority of the Liquidating Trustee

The responsibilities and authority of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement, and shall include, among others, the following rights and responsibilities, which shall be the exclusive rights and responsibilities of the Liquidating Trustee: (i) preserving and liquidating the Liquidating Trust Assets; (ii) administering and paying taxes, including, among other things, (1) preparing and filing appropriate tax returns for the Debtors and Liquidating Trust and (2) representing the interests and accounts of the Debtors and Liquidating Trust before any taxing authority in all matters including, without limitation, any action, suit, proceeding, or audit; (iii) retaining and paying, without the need for retention or fee applications, professionals in connection with the Liquidating Trustee's performance of its duties under the Plan and the Liquidating Trust Agreement; (iv) distributing information statements as required for U.S. federal income tax and other applicable tax purposes; (v) preparing and filing all monthly operating reports due after the Effective Date and all post-confirmation reports as required by the U.S. Trustee; (vi) Filing an application for entry by the Bankruptcy Court of a final decree closing the Chapter 11 Cases; (vii) winding down and liquidating the Debtors' Estates; (viii) making distributions to Professionals for Allowed Professional Fee Claims; (ix) paying or otherwise satisfying Allowed Claims in accordance with the Waterfall Recovery; and (x) such other responsibilities as may be vested in the Liquidating Trustee pursuant to the Plan, the Plan Supplement, the Liquidating Trust Agreement, or an order of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions of the Plan.

4.  Powers of the Liquidating Trustee

The Liquidating Trustee shall have the power and authority to perform the acts described in the Liquidating Trust Agreement (subject to the approval of the Court, where applicable), in addition to any powers granted by law or conferred to it by any other provision of the Plan, including without limitation any set forth herein; *provided*, however, that enumeration of the following powers shall not be considered in any way to limit or control the power and authority of the Liquidating Trustee to act as specifically authorized by any other provision of the Plan, the Liquidating Trust Agreement, and/or any applicable law, and to act in such manner as the Liquidating Trustee may deem necessary or appropriate or to take any act deemed appropriate by the Liquidating Trustee to discharge all obligations assumed by the Liquidating Trustee or provided herein and to conserve and protect the Liquidating Trust or to confer on the creditors the benefits intended to be conferred upon them by the Plan.

The powers of, and limitations on, the Liquidating Trustee shall be set forth in the Liquidating Trust Agreement, and such power shall include, among others, the following:  (i) the power to invest funds of the Liquidating Trust, and withdraw, make distributions, and pay taxes and other obligations owed by the Liquidating Trust from such funds in accordance with the Plan and the Liquidating Trust Agreement; (ii) the power to engage and compensate, without prior Bankruptcy Court order or approval, employees and professionals to assist the Liquidating Trustee with respect to its responsibilities; (iii) investigate, and if necessary, pursue, prosecute, resolve, compromise, and/or settle any Retained Causes of Action and manage and administer any proceeds thereof; (iv) the power to object to Claims (other than those Claims deemed to be Allowed on the Effective Date), including, without limitation, the power to seek subordination or recharacterization of such Claims by objection, motion, or adversary proceeding, as applicable; (v) the power and authority to wind-down, liquidate, or otherwise dissolve the post-Effective Date Debtors and their wholly-owned subsidiaries, without the necessity for any other or further actions to be taken by or on behalf of such dissolving Entity or its shareholder or any payments to be made in connection therewith, other than the filing of a certificate of dissolution with the appropriate governmental authorities, pursuant to Section 303 of the Delaware General Corporation Law codified at title 8 of the Delaware Code or other applicable state or foreign law; and (vi) such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to the Plan, the Plan Supplement, the Liquidating Trust Agreement, or by an order of the Bankruptcy Court (including, without limitation, the Confirmation Order), or as may be necessary and proper to carry out the provisions of the Plan.

5.  Compensation of the Liquidating Trustee

The Liquidating Trustee shall be compensated as set forth in the Liquidating Trust Agreement.  The Liquidating Trustee shall fully comply with the terms, conditions and rights set forth in the Plan, the Plan Supplement, the Confirmation Order, and the Liquidating Trust Agreement.  The Liquidating Trustee (and any professionals retained by the Liquidating Trustee) shall not be required to File a fee application to receive compensation.

6.  Termination of the Liquidating Trust

The Liquidating Trust shall be dissolved upon the earlier of (a) the distribution of all of the Liquidating Trust Assets to the Beneficiaries; and (b) the fifth anniversary of the creation of the Liquidating Trust; *provided* that, if warranted by the facts and circumstances involved in resolving or monetizing any Liquidating Trust Assets, upon application to, and if approved by, the Bankruptcy Court after notice with an opportunity for hearing, and upon a finding that such extension is necessary or appropriate for purposes of resolving or monetizing such Liquidating Trust Assets and distributing the proceeds to the applicable Beneficiaries, the term of the Liquidating Trust may be extended by the Liquidating Trustee for a specified term in accordance with applicable tax laws and regulations. This application must be filed with the Bankruptcy Court no earlier than six (6) months before the termination date of the Liquidating Trust.

7.  U.S. Federal Income Tax Treatment and Reporting of Liquidating Trust

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Debtors expect that the Liquidating Trustee shall treat the Liquidating Trust as a "liquidating trust" under section 301.7701-4(d) of the Treasury Regulations and a grantor trust under section 671 of the IRC, and the Liquidating Trustee will take a position on the Liquidating Trust's tax return accordingly.  For U.S. federal income tax purposes, the transfer

of assets to the Liquidating Trust will be deemed to occur as (a) a first-step transfer of the Liquidating Trust Assets to the Beneficiaries, and (b) a second-step transfer by such Beneficiaries to the Liquidating Trust.

No request for a ruling from the IRS will be sought on the classification of the Liquidating Trust. Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust. If the IRS were to successfully challenge the classification of the Liquidating Trust as a grantor trust, the federal income tax consequences to the Liquidating Trust and the Beneficiaries could vary from those discussed in the Plan (including the potential for an entity-level tax). For example, the IRS could characterize the Liquidating Trust as a so-called "complex trust" subject to a separate entity-level tax on its earnings, except to the extent that such earnings are distributed during the taxable year that includes the Effective Date.

As soon as possible after the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Liquidating Trustee shall make a good faith valuation of the Liquidating Trust Assets. This valuation will be made available from time to time, as relevant for tax reporting purposes. Each of the Debtors, the Liquidating Trustee, and the Beneficiaries shall take consistent positions with respect to the valuation of the Liquidating Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes.

Allocations of taxable income of the Liquidating Trust among the Beneficiaries by reference to the manner in which an amount of cash equal to such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value) to the Beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust. Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of the Liquidating Trust Assets shall equal their fair market value on the date of the transfer of the Liquidating Trust Assets to the Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the IRC, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

The Liquidating Trust shall in no event be dissolved later than five (5) years from the creation of such Liquidating Trust unless the Bankruptcy Court, upon motion within the six (6) month period prior to the fifth (5th) anniversary (or within the six (6) month period prior to the end of an extension period), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the trustee(s) of the Liquidating Trust that any further extension would not adversely affect the status of the trust as a liquidating trust for U.S. federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

The Liquidating Trust will file annual information tax returns with the IRS as a grantor trust pursuant to section 1.671-4(a) of the Treasury Regulations that will include information concerning certain items relating to the holding or disposition (or deemed disposition) of the Liquidating Trust Assets (e.g., income, gain, loss, deduction and credit). Each Beneficiary holding interests in the Liquidating Trust will receive a copy of the information returns and must report on its federal income tax return its share of all such items. The information provided by the Liquidating Trust will pertain to Beneficiaries who receive their interests in the Liquidating Trust in connection with the Plan.

With respect to any of the assets of the Liquidating Trust that are subject to potential disputed claims of ownership or uncertain distributions, or to the extent "liquidating trust" treatment is otherwise unavailable or not elected to be applied with respect to the Liquidating Trust, the Debtors intend that such assets will be subject to disputed ownership fund treatment under section 1.468B-9 of the Treasury Regulations, that any appropriate elections with respect to such treatment shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes. Under such treatment, a separate federal income tax return shall be filed with the IRS for any such account. Any taxes (including with respect to interest, if any, earned in the account) imposed on such account shall be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes).

*H.*        *Vesting of Assets*

On the Effective Date, pursuant to sections 1141(b) and 1141(c) of the Bankruptcy Code, (a) the Liquidating Trust Assets shall vest in the Liquidating Trust free and clear of all Claims, Liens, encumbrances, charges, and other interests except as otherwise expressly provided in the Plan and (b) the Liquidating Trust shall assume all obligations of the Debtors under the Plan.

Notwithstanding anything to the contrary in the Plan, on the Effective Date, any Cause of Action not settled, released, discharged, enjoined, or exculpated under the Plan or transferred pursuant to the Transaction Documents on or prior to the Effective Date shall vest in the Liquidating Trust and shall be subject to administration by the Liquidating Trustee and the net proceeds thereof shall constitute Liquidating Trust Assets.

No Liquidating Trust Asset will revest in the Debtors on or after the date such asset is transferred to the Liquidating Trust, but will vest upon such transfer in the Liquidating Trust to be administered by the Liquidating Trustee in accordance with the Plan and the Liquidating Trust Agreement.

*I.*        *Post-Effective Date Debtors*

Without limiting the foregoing, on the Effective Date and upon the Debtors causing the Liquidating Trust Assets to be transferred to the Liquidating Trust, the Debtors shall have no further duties or responsibilities in connection with implementation of the Plan, and the directors and officers of the Debtors as of the Effective Date shall be deemed to have resigned.[3]  From and after the Effective Date, the Liquidating Trustee shall be authorized to act on behalf of the Estates; *provided* that the Liquidating Trustee shall have no duties other than as expressly set forth in the Plan and the Liquidating Trust Agreement (as applicable).

After the Effective Date, the Debtors will continue to exist solely with respect to (i) any applications for Professional Fee Claims or expense reimbursements for their Professionals, including preparing, objecting to, defending, and attending any hearing with respect to the same; (ii) any motions or other actions seeking enforcement or implementation of the provisions of the Plan or Confirmation Order; and (iii) any appeal pending as of the Effective Date or filed thereafter, the outcome of which could reasonably be expected to affect in any material way any cases, controversies, suits or disputes arising in connection with the Consummation, interpretation, implementation or enforcement of the Plan or the Confirmation Order.  Following the Effective Date, the Debtors' Professionals shall be entitled to reasonable compensation for services rendered in connection with the matters identified in clauses (i) through (iii).  Any such payments made in connection therewith shall be made without any further notice to or action, order, or approval of the Bankruptcy Court.

*J.*        *Exculpation, Indemnification, Insurance, and Liability Limitation*

The Liquidating Trustee and all professionals retained by the Liquidating Trustee, each in their capacities as such, shall be held harmless and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by each of the Debtors.  The Liquidating Trustee may obtain, at the expense of the Debtors, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Debtors.  The Liquidating Trustee may rely upon written information previously generated by the Debtors.  Notwithstanding the foregoing, any indemnification claims of the Liquidating Trustee may only be paid from the Trust GUC Assets.

---

[3]    The Independent Managers shall retain their authority following the Effective Date with respect to matters relating to Professional Fee Claim requests by Professionals acting at their authority and direction in accordance with the terms of the Plan.  The Independent Managers shall not have any of their privileged and confidential documents, communications, or information transferred (or deemed transferred) to the Liquidating Trust, Liquidating Trustee, or any other entity without the Independent Managers' prior written consent.  Each Independent Manager retains the right to review, approve, and make decisions, and to file papers and be heard before the Bankruptcy Court, on all matters under their continuing authority.

K.    *Tax Returns*

After the Effective Date, the Liquidating Trustee shall complete and file all final or otherwise required federal, state, local and non-U.S. tax returns for each of the Debtors and the Liquidating Trust, as applicable (and, for the avoidance of doubt, the Liquidating Trustee may pursue any refunds, credits, or other tax benefits to which the Debtors and the Liquidating Trust are entitled and file any tax returns or other filings as are required in connection therewith), and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

L.    *Statutory Committee and Cessation of Fee and Expense Payment*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases, including the Committee, shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases, except in connection with applications for compensation and objections thereto.  The Debtors and the Liquidating Trustee, as applicable, shall no longer be responsible for paying any fees or expenses incurred by any statutory committee, including the Committee, after the Effective Date, except in connection with any fees or expenses for services rendered prior to the Effective Date that are Allowed by the Bankruptcy Court.

M.    *Cancellation of Securities and Agreements*

Except as otherwise set forth in this Plan, the Plan Supplement, or the Confirmation Order, on the Effective Date, and with respect to any obligations of the Debtors under the Prepetition Loan Documents (as defined in the DIP Orders) that have not been Paid in Full prior to the Effective Date:  (1) the obligations of the Debtors under the Prepetition Loan Documents and any other certificate, Security (including any preferred stock, common stock or other capital stock), share, note, bond, indenture, purchase right, option, warrant, restricted stock, restricted stock units (or any other incentive Equity Interest) or other instrument or document (including any indenture or credit agreement) directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except, and only to the extent, such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be cancelled as to the Debtors and their affiliates, and the Debtors shall not have any continuing obligations thereunder; (2) the obligations of the Debtors and their affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing any Securities (including any preferred stock, common stock or other capital stock), shares, certificates, notes, bonds (but not including any surety bonds issued on behalf of any of the Debtors), indentures, credit agreement, purchase rights, options, warrants, restricted stock, restricted stock units (or any other incentive Equity Interest) or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except, and only to the extent, such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and cancelled of no force or effect and the rights of the Holders thereof and obligations of the Debtors thereunder shall be deemed satisfied in full, canceled, and of no force or effect; and (3) the Prepetition Term Loan Agents will be released and discharged from any further responsibility under the Prepetition Term Loan Documents; *provided* that notwithstanding the release set forth in Article VIII.C of the Plan, Confirmation, or the occurrence of the Effective Date, any agreement that governs the rights, claims, or remedies of the Holder of a Claim or Interest shall continue in effect solely for purposes of:  (1) enabling Holders of Allowed Claims to receive distributions under the Plan as provided herein and subject to the terms and conditions of the applicable governing document or instrument as set forth therein; (2) allowing and preserving the rights of the Prepetition Term Loan Agents and the Prepetition ABL Agent to (a) make or direct the distributions in accordance with the Plan as provided herein or any other order of the Court providing for distributions of consideration and (b) assert or maintain any rights for indemnification or contribution they may have against the Debtors or the applicable Prepetition Secured Lenders solely to the extent arising under, and due pursuant to the terms of, the applicable governing document or instrument; (3) preserving the Prepetition Term Loan Agents' and the Prepetition ABL Agent's exercise of their rights, claims, causes of action, and interests as against any money or property distributable to the holders of the applicable Allowed Prepetition Secured Lender Claims, including permitting the Prepetition Term Loan Agents and the Prepetition ABL Agent to enforce their payment priority rights with respect to any such distributions; (4) permitting the Prepetition Term Loan Agents and the Prepetition ABL Agent to enforce any obligation owed to them under the Plan; (5)

29

permitting the Prepetition Term Loan Agents and the Prepetition ABL Agent to appear in the Chapter 11 Cases or in any proceeding in the Bankruptcy Court or any other court relating to the Prepetition Loan Documents in furtherance of the foregoing; and (6) permitting the Prepetition Term Loan Agents and the Prepetition ABL Agent to perform any functions that are necessary to effectuate the foregoing. Holders of (including any beneficial owners) or parties to any of the foregoing cancelled instruments, Securities, and other documentation will have no rights arising from or relating to such instruments, securities and other documentation, or the cancellation thereof, except the rights, distributions, and treatment provided for pursuant to this Plan or the Confirmation Order, as applicable. For the avoidance of doubt, nothing contained in this Article IV.M shall in any way discharge, impair, or otherwise affect the rights or obligations owed by any Prepetition Secured Lender to another Prepetition Secured Lender, including, without limitation, pursuant to the Prepetition Term Loan Intercreditor Agreement, the ABL Intercreditor Agreement, and any related documents. Notwithstanding the foregoing, no executory contract or unexpired lease that has been, or will be, assumed or assumed and assigned pursuant to section 365 of the Bankruptcy Code shall be terminated or cancelled on the Effective Date.

Further, if the record Holder of any Securities (including any Equity Securities) is reflected on the books and records of any transfer agent, the Depository Trust Company, or any nominee (including Cede & Co.), or another securities depository or custodian thereof, and such Securities are represented by a book-entry interest, physical certificate, or global security held through any transfer agent or by or on behalf of the Depository Trust Company or such other securities depository or custodian, in any case, then each such Holder of such Securities shall be deemed to have canceled and surrendered such Holder's book-entry interest, certificate, instrument, or other evidence of such Security upon cancellation of such Security on the Effective Date or otherwise in accordance with the terms of the Plan. Notwithstanding anything to the contrary in the Plan, no Entity (including, for the avoidance of doubt, any transfer agent or the Depository Trust Company) may require a legal opinion regarding the validity of any transaction contemplated by the Plan.

N.    *Corporate Action*

Upon the Effective Date, all actions contemplated under the Plan (including the steps set forth in the Wind-Down Transactions Memorandum), regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by Holders of Claims or Interests, the Debtors, the Liquidating Trustee, or any other Entity or Person in all respects. All matters provided for in the Plan (including the steps set forth in the Wind-Down Transactions Memorandum) or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Liquidating Trust, and any corporate action required by the Debtors or the Liquidating Trust in connection with the Plan or corporate structure of the Debtors or Liquidating Trust shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors. Before, on, or after the Effective Date, the appropriate directors, managers, officers, Governing Bodies or other similarly authorized Persons of the Debtors or the Liquidating Trust, as applicable, shall be authorized to issue, execute, file (including File), record and/or deliver any agreements and documents, securities, and instruments contemplated under the Plan (including the steps set forth in the Wind-Down Transactions Memorandum) (or necessary, appropriate or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Debtors. The authorizations and approvals contemplated by this Article IV.N shall be effective notwithstanding any requirements under non-bankruptcy law (including any non-U.S. law to the fullest extent available). Notwithstanding the foregoing, the indemnification and contribution provisions of any of the Prepetition Loan Documents shall remain in full force and effect against the Prepetition Secured Lenders and the Debtors, and the Liens in respect of Claims under the Prepetition Loan Documents shall remain in full force and effect against the Debtors notwithstanding the termination of the Prepetition Loan Documents hereunder.

O.    *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Liquidating Trustee may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Confirmation Order, and the Wind-Down Transactions (including the steps set forth in the Wind-Down Transactions

Memorandum), without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan or the Confirmation Order.

P.    *Section 1146 Exemption*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether to the Liquidating Trust, the Purchaser, or to any other Entity) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, property, or other interest in the Debtors or the Liquidating Trust; (2) the Wind-Down Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate or bulk transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax, fee, or governmental assessment.  Upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents, including all filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax, fee, or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.  Such exemption specifically applies, without limitation, to the transfer of the Liquidating Trust Assets to the Liquidating Trust.

Q.    *D&O Liability Insurance Policies*

After the Effective Date, the Debtors and the Liquidating Trustee shall not terminate or otherwise reduce the coverage under any of the D&O Liability Insurance Policies in effect on or after the Petition Date (including any "tail policy"), with respect to conduct or events occurring prior to the Effective Date, and all directors and officers of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any such D&O Liability Insurance Policy for the full term of such D&O Liability Insurance Policy, to the extent set forth therein and in accordance with and subject in all respects to the terms and conditions of such D&O Liability Insurance Policy, which shall not be altered, regardless of whether such directors and officers remain in such positions after the Effective Date.  Notwithstanding anything herein to the contrary, the Debtors shall retain the ability to supplement the D&O Liability Insurance Policies as the Debtors deem necessary, including purchasing any tail coverage.

On the Effective Date, any and all D&O Liability Insurance Policies shall be assumed by the Debtors and shall vest in the Liquidating Trust pursuant to sections 105 and 365 of the Bankruptcy Code, and nothing shall alter, modify, amend, expand or otherwise affect any coverage for defense and indemnity under any applicable D&O Liability Insurance Policy available to any individuals and/or entities under such D&O Liability Insurance Policy in accordance with and subject in all respects to the terms and conditions of such D&O Liability Insurance Policy, which shall not be altered.  Coverage for defense and indemnity under the D&O Liability Insurance Policies shall remain available to all individuals insured thereunder.

The Debtors shall maintain tail coverage under any D&O Liability Insurance Policies for the six-year period following the Effective Date on terms no less favorable than under, and with an aggregate limit of liability no less than the aggregate limit of liability under, the D&O Liability Insurance Policies.  In addition to such tail coverage, the D&O Liability Insurance Policies shall remain in place in the ordinary course during the Chapter 11 Cases.

R.    *Preservation of Causes of Action*

Except as otherwise provided herein or in the Sale Order, in accordance with section 1123(b) of the Bankruptcy Code, but subject in all respects to Article VIII hereof, all Retained Causes of Action are preserved and transferred to the Liquidating Trust on the Effective Date.  The Liquidating Trustee shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the

rights of the Debtors or the Liquidating Trustee to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action (a) acquired by the Purchaser in accordance with the Transaction Documents, as applicable, or (b) released or exculpated herein pursuant to the releases and exculpations contained in the Plan, including in Article VIII hereof, which shall be deemed released and waived by the Debtors as of the Effective Date.

The Debtors may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Debtors. **No Person or Entity (other than the Released Parties) may rely on the absence of a specific reference in the Schedule of Retained Causes of Action, the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors will not pursue any and all available Causes of Action against it. The Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Person or Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.** Unless any Causes of Action against a Person or Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Debtors reserve and shall retain such Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Liquidating Trust except as otherwise expressly provided in the Plan, including Article VIII of the Plan. Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trust, through its authorized agents or representatives, including the Liquidating Trustee, shall retain and may exclusively enforce any and all such Causes of Action. Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Liquidating Trustee, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. For the avoidance of doubt, in no instance will any Cause of Action preserved pursuant to this Article IV.R include any Claim or Cause of Action against a Released Party or Exculpated Party.

*S.     Abandonment of Non-Debtor Equity Interests*

On or after the Effective Date, the Debtors and the Liquidating Trustee may abandon any Non-Debtor Equity Interests pursuant to section 554 of the Bankruptcy Code without further order of the Bankruptcy Court or further notice to any Entity.

T.     *Non-Released Former Officer Claims*

Any Claims or Causes of Action held by the Debtors or their respective estates against any of the Debtors' former officers solely in his or her capacity as such as of the Petition Date who were appointed as such by express board resolution, but excluding any Released Parties (as defined in the Sale Order), (collectively, the "Former Officers") are not released pursuant to the Plan (collectively, the "Non-Released Former Officer Claims"), and shall be assigned and transferred to the Liquidating Trust to be pursued, settled, or resolved by the Liquidating Trust in accordance with the terms of this Plan. The Liquidating Trust shall be a successor to the Debtors' rights, title, and interest in any Non-Released Former Officer Claims and the Liquidating Trust shall have standing to pursue the Non-Released Former Officer Claims  in accordance with the terms of this Plan; *provided* that:  (a) any recovery by the Liquidating Trust on account of any Non-Released Former Officer Claim, including by way of settlement or judgment, shall be satisfied solely by and to the extent of the proceeds of the Debtors' available D&O Liability Insurance Policies after payment from such D&O Liability Insurance Policies of any and all covered costs and expenses incurred in connection with the defense of the Non-Released Former Officer Claims; (b) any attempt to collect on any settlement of or judgment (if any) shall be solely from available insurance coverage from the Debtors' available D&O Liability Insurance Policies; (c) the Liquidating Trust shall not (i) record any judgment against the Former Officers, or (ii) otherwise attempt to collect, directly or indirectly, from the personal assets of the Former Officers with respect to the Non-Released Former Officer Claims; (d) in no event shall the Non-Released Former Officer Claims include any claims against any Released Parties (as defined in the Sale Order); and (e) the Liquidating Trust may not pursue any

Non-Released Former Officer Claim in any circumstance in which any insurance carrier or other third party may assert subrogation claims against any Released Parties (as defined in the Sale Order). Only upon the occurrence of the earlier of (x) a release being given as part of any later settlement of the Non-Released Former Officer Claims; (y) final resolution of any coverage claims asserted against the Debtors' available D&O Liability Insurance Policies on account of the Non-Released Former Officer Claims; or (z) exhaustion of the available insurance coverage under the D&O Liability Insurance Policies, the Non-Released Former Officer Claims shall be released and discharged by the Liquidating Trust without the need for further action or Bankruptcy Court order. For the avoidance of doubt, any release of the Non-Released Former Officer Claims shall not become effective until one of the three conditions stated in the preceding sentence above has been met.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*A.      Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected by the applicable Debtor, unless otherwise agreed by the applicable counterparty, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that:  (1) are specifically described in the Plan as to be assumed in connection with Confirmation of the Plan, or are identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (2) have been previously assumed or rejected by the Debtors pursuant to any Bankruptcy Court order; (3) are the subject of a Filed motion to assume, assume and assign, or reject such Executory Contract or Unexpired Lease (or of a Filed objection with respect thereto) that is pending on the Confirmation Date; (4) are to be assumed by the Debtors or assumed by the Debtors and assigned to another third party, as applicable, through the Asset Purchase Agreement in connection with any Sale Transaction, including in a Sale Transaction that is pending on the Confirmation Date; (5) are a contract, release, or other agreement or document entered into in connection with the Plan; or (6) are an Insurance Policy (including, for the avoidance of doubt, any D&O Liability Insurance Policies).

For the avoidance of doubt and notwithstanding anything to the contrary herein, the Debtors shall make all assumption and rejection determinations for their Executory Contracts and Unexpired Leases either through the Filing of a motion or identification in the Plan Supplement, in each case prior to the applicable deadlines set forth in sections 365(d)(2) and 365(d)(4) of the Bankruptcy Code.  To the extent any provision of the Bankruptcy Code or the Bankruptcy Rules requires the Debtors to assume or reject an Executory Contract or Unexpired Lease by a deadline, including section 365(d) of the Bankruptcy Code, such requirement shall be satisfied if the Debtors make an election, either through the Filing of a motion or identification in the Plan Supplement or similar schedule in connection with a Sale Transaction, to assume or reject such Executory Contract or Unexpired Lease prior to the applicable deadline, regardless of whether or not the Bankruptcy Court has actually ruled on such proposed assumption or rejection prior to such deadline. Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving, subject to and upon the occurrence of the Effective Date, the assumptions, assumptions and assignments, or rejections of the Executory Contracts and Unexpired Leases as set forth in the Plan or the Assumed Executory Contracts and Unexpired Leases Schedule, pursuant to sections 365(a) and 1123 of the Bankruptcy Code; *provided* that neither the Plan nor the Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Sale Order to assume and assign Executory Contracts and Unexpired Leases to the Purchaser pursuant to the Asset Purchase Agreement.  Except as otherwise specifically set forth herein or in the Confirmation Order or any Transaction Documents approved pursuant to the Sale Order, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Notwithstanding anything herein to the contrary, with respect to any Unexpired Lease that is not assumed on the Effective Date pursuant to this Article V.A, the effective date of rejection of such Unexpired Leases shall be the later of:  (A) the Effective Date, except if agreed by the applicable counterparty, and (B) the date upon which the Debtors notify the landlord in writing (e-mail being sufficient) that they have surrendered the premises to the landlord and returned the keys, key codes, or security codes, as applicable; provided that on the date the Debtors surrender the premises as set forth in subsection (B) above, all property remaining in the premises will be deemed abandoned and landlords may dispose of such property without further notice or court order, unless otherwise agreed by the applicable lessor or pursuant to an order of the Bankruptcy Court.  If the effective date of any rejection of an Unexpired Lease is after the Confirmation Date pursuant to the terms herein, the Debtors shall provide notice of such rejection to the applicable landlord no later than the applicable deadlines set forth in section 365(d)(4), setting forth the deadline for Filing any Claims arising from such rejection.

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, the rights of counterparties to Unexpired Leases of nonresidential real property to object to the continued possession of such leased property, including the ability to conduct sales on the properties, or failure to comply with any other lease terms or obligations, including payment of rents and charges and insurance obligations, in each case related to such Unexpired Lease following entry of the Confirmation Order are expressly preserved, and the rights of such counterparties to request such objection be heard on shortened notice are preserved.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall revest in the applicable Debtor or the Liquidating Trust, as applicable, and be fully enforceable by the applicable Debtor or the Liquidating Trustee, as applicable, in accordance with its terms, except as such terms may have been modified by written agreement (with email being sufficient) of the parties thereto, subject to this Article V.A. Notwithstanding anything to the contrary to the Plan or the Confirmation Order, the Debtors may amend or otherwise modify the Assumed Executory Contracts and Unexpired Leases Schedule prior to the Effective Date to designate an Executory Contract previously included on the Assumed Executory Contracts and Unexpired Leases Schedule for assumption and assignment.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Confirmation Date shall be subject to a Final Order on or after the Confirmation Date but may be withdrawn, settled, or otherwise prosecuted by the applicable Debtor or the Liquidating Trustee, as applicable.

Subject to the Sale Order and the Asset Purchase Agreement, to the maximum extent permitted by law, the transactions contemplated by the Plan shall not constitute a "change of control" or "assignment" (or terms with similar effect) under any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan, or any other transaction, event, or matter that would (A) result in a violation, breach, or default under such Executory Contract or Unexpired Lease, (B) increase, accelerate, or otherwise alter any obligations, rights, or liabilities of the Debtors or the Liquidating Trust under such Executory Contract or Unexpired Lease, or (C) result in the creation or imposition of a Lien upon any property or asset of the Debtors, or the Liquidating Trust pursuant to the applicable Executory Contract or Unexpired Lease, and to the extent any provision in any such Executory Contract or Unexpired Lease restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the transactions contemplated by the Plan, the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto, and any consent or advance notice required under such Executory Contract or Unexpired Lease in connection with assumption thereof (subject to the other provisions of this Article V.A) shall be deemed satisfied by Confirmation.

Notwithstanding anything to the contrary in the Plan, after the Effective Date, an Unexpired Lease on the Assumed Executory Contracts and Unexpired Leases Schedule as of the Effective Date may not be rejected by the applicable Debtor(s), other than as provided for in the Plan, unless the applicable lessor has (x) consented to such rejection, (y) objected to the assumption of such Unexpired Lease and such objection remains outstanding, or (z) consented to an extension of the time period in which the applicable Debtor(s) must assume or reject such Unexpired Lease pursuant to section 365(d)(4) of the Bankruptcy Code (as extended with the applicable lessor's consent, the "Deferred Deadline"), in which case for purposes of clause (z) the applicable Debtor(s) shall have until the Deferred Deadline to assume or reject such Unexpired Lease, subject to the applicable lessor's right to object to such assumption or rejection.  For any assumed Unexpired Lease, all costs required to cure an Executory Contract or Unexpired Lease shall be paid on the Effective Date or as soon as reasonably practicable thereafter, unless subject to a dispute with respect to Cure Cost, such dispute shall be addressed in accordance with Article V.D.  Any guaranty of an Unexpired Lease that is assumed pursuant to this Plan, the Confirmation Order, or any other order of the Bankruptcy Court shall be reaffirmed by the applicable Debtor or Liquidating Trustee and remain in full force and effect as of the Effective Date, unless otherwise agreed in writing by the Debtor or Liquidating Trustee, as applicable, and the applicable counterparty.

Notwithstanding anything to the contrary in the Plan, the Debtors reserve the right to alter, amend, modify, or supplement (i) the Assumed Executory Contracts and Unexpired Leases Schedule and (ii) any schedule of Executory Contracts and Unexpired Leases that is attached to any Transaction Documents, with the consent of the Purchaser, at any time up to the earlier of (x) 90 days following the closing date of a Sale Transaction, and (y) solely with respect to Unexpired Leases of nonresidential real property, the deadline set forth in section 365(d)(4) of the Bankruptcy Code, as such date may be extended with the written consent (with email being sufficient) of the applicable landlord counterparty, consistent with any Transaction Documents, as applicable.

B.      *Indemnification Obligations*

Consistent with applicable law, all indemnification provisions in place as of the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, D&O Liability Insurance Policies, or otherwise) for current and former members of any Governing Body, directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors, as applicable, shall (i) not be discharged, impaired, or otherwise affected in any way, including by the Plan, the Plan Supplement, or the Confirmation Order; (ii) remain intact, in full force and effect, and irrevocable; (iii) not be limited, reduced, or terminated after the Effective Date; and (iv) survive the effectiveness of the Plan on terms no less favorable to such current and former directors, officers, managers, employees, attorneys, accountants, investment bankers, and other professionals of the Debtors than the indemnification provisions in place prior to the Effective Date irrespective of whether such indemnification obligation is owed for an act or event occurring before, on, or after the Petition Date. All such obligations shall be deemed and treated as Executory Contracts to be assumed by the Debtors under the Plan and shall continue as obligations of the Liquidating Trust. For the avoidance of doubt, if the Sale Transaction is consummated, no such obligations shall be enforceable against the Purchaser or any of its affiliates. Notwithstanding the foregoing, such obligations shall be subject and subordinate in all respects to any Secured Claims that remain outstanding against the Liquidating Trust after the Effective Date. Notwithstanding the foregoing, all obligations under this Article V.B shall be limited solely to recovery available under the Debtors' applicable Insurance Policies, including D&O Liability Insurance Policies, and neither the Liquidating Trust nor any of the Liquidating Trust Assets (other than the Debtors' Insurance Policies, including D&O Liability Insurance Policies) shall be liable for any such obligations.

C.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty days after the later of (1) the date of service of notice of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims (except to the extent an Executory Contract or Unexpired Lease is secured by a security deposit or subject to setoff pursuant to the terms of such Executory Contract, Unexpired Lease, or applicable law), and shall be treated in accordance with Article III of the Plan or such other treatment as agreed to by the Liquidating Trustee and the Holder of such Claim; *provided, however*, that nothing in this Plan shall prevent a counterparty to a rejected Unexpired Lease from asserting an Administrative Claim prior to the Administrative Claims Bar Date.

D.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under an assumed Executory Contract or Unexpired Lease, as reflected on the Cure Notice, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the Effective Date (it being understood that the assumption and assignment of the Executory Contracts or Unexpired Leases pursuant to the Asset Purchase Agreement shall be authorized and governed by the Sale Order, and, in the event of any inconsistency between this Plan and the Sale Order concerning the assumption and assignment of such Executory Contracts or Unexpired Leases and related Cure Claims, the terms of the Sale Order shall govern and control), subject to the limitations described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Liquidating Trust or any assignee, as applicable, to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption.

At least twenty-one (21) days before the Confirmation Hearing, the Debtors shall distribute, or cause to be distributed, Cure Notices of proposed assumption or assumption and assignment and proposed amounts of Cure Claims to the applicable third parties. Any objection by a counterparty to an Executory Contract or Unexpired Lease

to a proposed assumption or assumption and assignment or related cure amount must be Filed, served, and actually received by the Debtors at least seven (7) days before the Confirmation Hearing. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption or assumption and assignment or cure amount will be deemed to have assented to such assumption or assumption and assignment and cure amount. Notwithstanding anything herein to the contrary, in the event that any Executory Contract or Unexpired Lease is added to the Assumed Executory Contracts and Unexpired Leases Schedule after such 21-day deadline, a Cure Notice of proposed assumption or assumption and assignment and proposed amounts of Cure Claims with respect to such Executory Contract or Unexpired Lease will be sent promptly to the counterparty thereof, the applicable counterparty shall have fourteen (14) days to object to such Cure Notice, and a noticed hearing will be set to consider whether such Executory Contract or Unexpired Lease can be assumed or assumed and assigned.

If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors may remove such Executory Contract or Unexpired Lease from the Assumed Executory Contracts and Unexpired Leases Schedule prior to the Effective Date, in which case such Executory Contract or Unexpired Lease will be deemed rejected as the Effective Date.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, payment of the applicable Cure Claim as provided for in the Plan, and cure of any non-monetary defaults under such agreement (solely to the extent agreed between the Debtors and the counterparty to an applicable Executory Contract or Unexpired Lease or as ordered by the Bankruptcy Court), shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary (solely to the extent agreed between the Debtors and the counterparty to an applicable Executory Contract or Unexpired Lease), including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtors assume such Executory Contract or Unexpired Lease. Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court; *provided* that notice with an opportunity to be heard in accordance with the Bankruptcy Code and Bankruptcy Rules will be provided to such Executory Contract or Unexpired Lease counterparty prior to the disallowance and expungement of such Proof of Claim.

E.    *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Liquidating Trustee, as applicable, under such Executory Contracts or Unexpired Leases. In particular, notwithstanding any non-bankruptcy law to the contrary, the Debtors and the Liquidating Trustee, as applicable, expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

F.    *Insurance Policies*

Each of the Debtors' Insurance Policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan. Unless otherwise provided in the Plan, on the Effective Date, (a) the Debtors shall be deemed to have assumed all Insurance Policies and any agreements, documents, and instruments relating to coverage of all insured Claims, including all D&O Liability Insurance Policies, and (b) all such Insurance Policies and any agreements, documents, or instruments relating thereto, including all D&O Liability Insurance Policies, shall revest, unaltered and in their entireties, in the Liquidating Trust.

Nothing in the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any other order of the Bankruptcy Court (including any other provision that purports to be preemptory or supervening), (i) alters, modifies, or otherwise amends the terms and conditions of (or any coverage or benefits provided under) any Insurance Policies or (ii) alters or modifies the duty, if any, that the Insurers or third party administrators have to pay claims covered by such Insurance Policies and their right to seek payment or reimbursement from the Debtors or the Liquidating Trustee, as applicable, or draw on any collateral or security therefor.

G.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

H.      *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Assumed Executory Contracts and Unexpired Leases Schedule, or any other exhibit, schedule or annex, nor anything contained in the Plan or Plan Supplement, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Debtors have any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Liquidating Trustee, as applicable, shall have thirty days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease under the Plan.

I.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan or the Confirmation Order, on the Effective Date (or if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim (as applicable) shall receive the full amount of the distributions that the Plan provides for Allowed Claims (as applicable) in the applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.  After such initial distribution, the Disbursing Agent shall distribute additional Distributable Proceeds or Liquidating Trust Assets (as the case may be), if any, as soon as practicable upon such Distributable Proceeds or Liquidating Trust Assets becoming available to the Debtors or the Liquidating Trust, as applicable.  Such additional Distributable Proceeds or Liquidating Trust Assets shall be distributed in accordance with the Waterfall Recovery, the Liquidating Trust Agreement, and this Plan.

If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in Article VII hereof.  Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on Plan Distributions, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.      *Disbursing Agent*

All Plan Distributions shall be made by the applicable Disbursing Agent.  No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties.

C.      *Rights and Powers of Disbursing Agent*

1.      Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan and the Confirmation Order; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or the Confirmation Order, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof; *provided however*, that the Debtors or the Liquidating Trustee, as applicable, shall maintain the Claims Register.

2.      Expenses Incurred on or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent (or any reasonable and documented out-of-pocket expenses incurred by a third party that is acting at the direction of the Disbursing Agent) on or after the Effective Date and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent (collectively, the "Liquidating Trust Fees and Expenses") shall be paid in Cash by the Liquidating Trustee from the Trust GUC Assets; *provided* that under no circumstances shall the Liquidating Trustee be permitted to satisfy Liquidating Trust Fees and Expenses by seeking the clawback, setoff, recovery, or turnover of assets previously distributed pursuant to the Plan; *provided*, *further*, that in the event that the Liquidating Trustee determines, in its sole discretion, that the Trust GUC Assets will be insufficient to satisfy all anticipated Liquidating Trust Fees and Expenses (including for the avoidance of doubt, any fees and expenses of the Disbursing Agent or professionals retained by the Liquidating Trustee or the Disbursing Agent) (an "Insufficiency Event"), the Liquidating Trustee shall provide the Required Lenders (as defined in the Prepetition Priority Term Loan Credit Agreement) no less than forty-five (45) days advance written notice (an "Insufficiency Notice") that an Insufficiency Event is expected to occur and the approximate date that the Insufficiency Event is anticipated (the "Projected Insufficiency Date").  Any Insufficiency Notice shall further contain: (i) a general description of the remaining assets of the Liquidating Trust; (ii) a detailed listing of the projected receipts and disbursements of the Liquidating Trust from the date of the Insufficiency Notice through the Projected Insufficiency Date; and (iii) a proposed budget to pursue and reduce to cash the remaining assets of the Liquidating Trust and to effectuate the winddown and dissolution of the Liquidating Trust (the "Proposed Budget").  On or before the tenth business day before the Projected Insufficiency Date, the Required Lenders shall elect, in their sole discretion, one of the following:  (a) to approve the Proposed Budget or such other budget that may be mutually agreed upon by the Liquidating Trustee and the Required Lenders, each in their respective sole discretion; (b) to direct the transfer of any remaining undistributed assets of the Liquidating Trust to either (1) a successor liquidating trustee for the benefit of Holders of Prepetition Priority Term Loan Claims or (2) directly to Holders of Prepetition Priority Term Loan Claims or their agent; or (c) such other arrangements as may be mutually agreed upon by the Liquidating Trustee and the Required Lenders, each in their respective sole discretion.  For the avoidance of doubt, any and all expenses of the Liquidating Trust (including all expenses to wind down and dissolve the Liquidating Trust) shall be funded solely from the Trust GUC Assets, unless the Required Lenders in their sole discretion shall have provided advance written consent to the use of any other assets of the Liquidating Trust.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.      Record Date for Distribution

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims

Register as of the close of business on the Distribution Record Date. If a Claim, other than one based on a publicly traded Security, is transferred twenty or fewer days before the Distribution Record Date, Plan Distributions shall be made to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor. For the avoidance of doubt, nothing provided for herein shall enjoin or otherwise prejudice the rights of Governmental Units to File Proofs of Claim by the Governmental Bar Date.

2. Delivery of Distributions

Except as otherwise provided herein, the Disbursing Agent shall make Plan Distributions to Holders of Allowed Claims (as applicable) as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such Plan Distribution; *provided* that the manner of such Plan Distributions shall be determined at the discretion of the applicable Disbursing Agent; *provided further*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

All distributions to Holders of Allowed Prepetition Priority Term Loan Claims and Holders of Allowed Prepetition Existing Term Loan Claims shall be deemed completed when made to or at the direction of the applicable Prepetition Term Loan Agent. The applicable Prepetition Term Loan Agent shall hold or direct such distributions for the benefit of the Holders of the Allowed Prepetition Priority Term Loan Claims and the Allowed Prepetition Existing Term Loan Claims. The Prepetition Term Loan Agents shall not incur any liability whatsoever on account of any distributions under the Plan except for fraud, gross negligence, or willful misconduct. For the avoidance of doubt, all distributions referenced in this paragraph shall be subject to the terms of the Prepetition Term Loan Intercreditor Agreement.

3. Minimum Distributions

Notwithstanding any other provision of the Plan, the Disbursing Agent will not be required to make distributions of Cash less than $50 in value, and each such Claim to which this limitation applies shall be discharged pursuant to Article VIII and its Holder is forever barred pursuant to Article VIII from asserting that Claim against the Debtors, the Liquidating Trust, or their respective property.

4. Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder of an Allowed Claim or Allowed Interest (as applicable) is returned as undeliverable, such distribution shall be deemed an Unclaimed Distribution, and no distribution to such Holder shall be made unless and until the applicable Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of ninety (90) days from the date of the initial attempted distribution. After such date, all unclaimed property or interests in property shall revest in the Liquidating Trust automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim or Interest of any Holder of Claims or Interests related to such property shall be released, settled, compromised, extinguished and forever barred; *provided* that notice with an opportunity to be heard in accordance with the Bankruptcy Code and Bankruptcy Rules will be provided to the Holder of such Claim (or such Holder's known counsel) prior to the disallowance and extinguishment of such Claim.

E. *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors, the Liquidating Trustee, the Disbursing Agent, and any applicable withholding agent, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all Plan Distributions shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the Plan Distributions to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or

establishing any other mechanisms they believe are reasonable and appropriate. The Debtors, the Liquidating Trustee, the Disbursing Agent, and any applicable withholding agent, as applicable, reserve the right to allocate all Plan Distributions in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

Any person entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Debtors, the Liquidating Trustee, the Disbursing Agent, or any applicable withholding agent, as applicable, an Internal Revenue Service Form W-9 or, if the payee is a foreign Person, an appropriate Internal Revenue Service Form W-8, as applicable.

F.      Allocations

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for United States federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to the remainder of the Claims, including any Claims for accrued but unpaid interest.

G.      No Postpetition or Default Interest on Claims

Unless otherwise specifically provided for in the DIP Order, the Plan, or the Confirmation Order or required by applicable bankruptcy and non-bankruptcy law, (a) postpetition and/or default interest shall not accrue or be paid on any Claims, and (b) no Holder of a Claim shall be entitled to (i) interest accruing on or after the Petition Date on any such Claim or (ii) interest at the contract default rate, as applicable.

H.      Setoffs and Recoupment

Except with respect to the Allowed Prepetition Secured Lender Claims, or as expressly provided in this Plan (including the Plan Supplement), the Debtors or the Liquidating Trustee, as applicable, may, pursuant to section 553 of the Bankruptcy Code, setoff and/or recoup against any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action (other than Avoidance Actions) that the Debtors or their Estates may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the Debtors or the Liquidating Trustee, as applicable, and the Holder of the Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; provided, that neither the failure to effectuate a setoff or recoupment nor the Allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Liquidating Trustee, as applicable, of any and all claims, rights, and Causes of Action that the Debtors or their successor may possess against the applicable Holder. Notwithstanding anything to the contrary herein, in no event shall any Holder of a Claim be entitled to setoff any such Claim against the Purchasers following consummation of the Sale Transactions; provided, however, such setoff shall not be released solely to the extent asserted prior to Confirmation.

Notwithstanding anything to the contrary in the Plan, Plan Supplement, Confirmation Order, or any other documents related to the foregoing, nothing shall modify or restrict the rights, if any, of any counterparty related to an Unexpired Lease of non-residential real property to assert any right of setoff or recoupment that such party may have under the terms of the Unexpired Lease or applicable bankruptcy or non-bankruptcy law, including, but not limited to, (i) the ability, if any, of such party to setoff or recoup a security deposit held pursuant to the terms of an Unexpired Lease with the Debtors, (ii) assertion of rights of setoff or recoupment, if any, in connection with claims reconciliation, (iii) assertion of setoff or recoupment as a defense, if any, to any claim or action by the Debtors, the Liquidating Trustee, or any successors thereto, or (iv) assertion of setoff and/or recoupment in connection with periodic reconciliations in accordance with the terms of an assumed Unexpired Lease.

I.      No Double Payment of Claims

To the extent that a Claim is Allowed against more than one Debtor's Estate, there shall be only a single recovery on account of that Allowed Claim, but the Holder of an Allowed Claim against more than one Debtor may recover distributions from all co-obligor Debtors' Estates until the Holder has received payment in full on the Allowed Claims. No Holder of an Allowed Claim shall be entitled to receive more than payment in full of its Allowed Claim,

and each Claim shall be administered and treated in the manner provided by the Plan only until payment in full on that Allowed Claim.

*J.      Claims Paid or Payable by Third Parties*

1.      Claims Paid by Third Parties

The Debtors or the Liquidating Trustee, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claim Objection having to be Filed and without any notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Liquidating Trustee; *provided* that notice with an opportunity to be heard in accordance with the Bankruptcy Code and Bankruptcy Rules will be provided to the Holder of such Claim (or such Holder's known counsel) prior to the disallowance of such Claim, but without any objection having to be filed and without further notice to or action, order, or approval of the Bankruptcy Court.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Liquidating Trustee on account of such Claim, such Holder shall, within fourteen days of receipt thereof, repay or return the distribution to the applicable Debtor or the Liquidating Trustee, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Plan Distribution.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor or Liquidating Trust annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen-day grace period specified above until the amount is repaid.

2.      Claims Payable by Third Parties

No Plan Distributions shall be made on account of an Allowed Claim that is payable pursuant to one of the Insurance Policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such Insurance Policy.  To the extent that one or more Insurers pays in full or in part a Claim, then immediately upon such Insurers' payment of such Claim, the applicable portion of such Claim may be expunged without a Claim Objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court *provided* that notice with an opportunity to be heard in accordance with the Bankruptcy Code and Bankruptcy Rules will be provided to the Holder of such Claim (or such Holder's known counsel) prior to the disallowance of such Claim.

3.      Applicability of Insurance Policies

Except as otherwise provided in the Plan (including the Plan Supplement), payments to Holders of Claims covered by Insurance Policies shall be in accordance with the provisions of any applicable Insurance Policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including Insurers, under any Insurance Policies, nor shall anything contained herein constitute or be deemed a waiver by such Insurers of any rights or defenses, including coverage defenses, held by such Insurers.

**ARTICLE VII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED AND DISPUTED CLAIMS**

*A.      Allowance of Claims*

After the Effective Date, the Liquidating Trustee shall have and retain any and all rights and defenses the applicable Debtor had with respect to any Claim or Interest immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Interest unless and until such Claim or Interest, as applicable, is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases allowing such Claim or Interest.

B.    *Claims Administration Responsibilities*

With respect to all Classes of Claims and amounts distributable under the Plan, and except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Liquidating Trustee shall have the authority, subject to the consent of the Required Consenting Stakeholders, to: (a) File and prosecute Claim Objections; (b) settle, compromise, withdraw, litigate to judgment, or otherwise resolve any and all Claim Objections, regardless of whether such Claims are in a Class or otherwise (c) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (d) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. After the Effective Date, the Liquidating Trustee shall resolve Disputed Claims in accordance with its fiduciary duties and pursuant to the terms of the Plan. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Liquidating Trustee shall have and retain any and all rights and defenses the Debtors had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Retained Causes of Action pursuant to Article IV.R of the Plan.

The Debtors up to the Effective Date, and the Liquidating Trustee, on and after the Effective Date, shall be responsible and obligated to maintain the Claims Register and to administer and adjust the Claims Register in regard to Allowance of Claims. The Debtors or the Liquidating Trustee, as applicable, may, as applicable, maintain the retention of the Claims and Noticing Agent and develop a budget for compensation of the Claims and Noticing Agent following the Effective Date to be incorporated into the Wind-Down Amount.

C.    *Estimation of Claims*

Before, on, or after the Effective Date, the Debtors, the Debtors, or the Liquidating Trustee, as applicable, may (but is not required to) at any time request that the Bankruptcy Court estimate the amount of any Claim pursuant to applicable law, including, without limitation pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the pendency of any appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim or Interest, such estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of Plan Distributions) and may be used as evidence in any supplemental proceedings, and the Debtors or the Liquidating Trustee, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.    *Adjustment to Claims or Interests Without Objection*

Any Claim or Interest that has been paid or satisfied (including through such Claim or Interest being assigned to any third party) may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Debtors or the Liquidating Trustee, as applicable, after notice with an opportunity to be heard in accordance with the Bankruptcy Code and Bankruptcy Rules to the Holder of such Claim (or such Holder's known counsel), but without any further notice to or action, order, or approval of the Bankruptcy Court.

E.    *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the later of (1) one-hundred eighty days after the Effective Date and (2) such other period of limitation as may be specifically fixed by a Final Order of the Bankruptcy Court, subject to a notice and objection period, for objecting to such Claims. For the avoidance of doubt, Administrative Claims are subject to the Administrative Claims Objection Bar Date and the period of limitation set forth herein shall not apply to Administrative Claims.

F.      *Disallowance of Claims or Interests*

Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code; *provided* that notice with an opportunity to be heard in accordance with the Bankruptcy Code and Bankruptcy Rules will be provided to the Holder of such Claim (or such Holder's known counsel) prior to the disallowance of such Claim, but without any objection having to be filed and without further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims or Interests may not receive any distributions on account of such Claim until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors or the Liquidating Trustee, as applicable.

G.      *Amendments to Proofs of Claims or Interests*

On or after the applicable bar date, a Proof of Claim or Interest may not be Filed or amended without the prior written authorization of, as applicable, the Bankruptcy Court or the applicable Debtor or the Liquidating Trustee, as applicable.  Absent such authorization, any new or amended Claim or Interest Filed shall be deemed disallowed in full and expunged without any further action; *provided* that notice with an opportunity to be heard in accordance with the Bankruptcy Code and Bankruptcy Rules will be provided to the Holder of such Claim (or such Holder's known counsel) prior to the disallowance of such Claim, but without any objection having to be filed and without further notice to or action, order, or approval of the Bankruptcy Court.

H.      *No Distributions Pending Allowance*

Notwithstanding any other provision of the Plan or the Confirmation Order, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

I.      *Distributions After Allowance*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest (as applicable) in accordance with the provisions of the Plan and the Confirmation Order.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the applicable Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

**ARTICLE VIII.
SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS**

A.      **Release of Liens**

**Except as otherwise provided in the Plan, the Plan Supplement, Confirmation Order, or any contract, instrument, release, or other agreement or document created pursuant to the Plan or Confirmation Order, immediately following the making of all distributions to be made to an applicable Holder pursuant to the Plan and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to reinstate in accordance with Article III.B.1 hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be automatically, unconditionally, and fully released, settled, and compromised, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically and unconditionally to the applicable Debtor and its successors and assigns.  Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized**

and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to promptly take such actions as may be reasonably requested by the Liquidating Trustee to evidence the release of such Lien and/or security interest, including the execution, delivery, and Filing of such releases. The presentation or Filing of the Confirmation Order to or with any federal, state, provincial, or local agency, records office, or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

If any Holder of a Secured Claim that has been satisfied or released in full pursuant to the Plan or the Confirmation Order, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as reasonably practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall take any and all steps requested by the Debtors or the Liquidating Trustee that are necessary or desirable to record and/or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Liquidating Trustee shall be entitled to make any such filings or recordings on such Holder's behalf.

B.      *Releases by the Debtors*[4]

Notwithstanding anything contained in the Plan or the Confirmation Order to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, the adequacy of which is hereby confirmed, upon entry of the Confirmation Order and effective as of the Effective Date, to the fullest extent permitted by applicable law, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each and all of the Debtors and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, including any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that any such Entity would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against or Interest in a Debtor or other Entity, or that any Holder of any Claim against or Interest in a Debtor or other Entity could have asserted on behalf of the Debtors, to the extent such Claim or Cause of Action (x) has not been sold pursuant to the Transaction Documents and (y) is based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted against the Debtors), intercompany transactions between or among a Debtor, or an Affiliate of a Debtor and another Debtor or Affiliate of a Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, any of the Wind-Down Transactions, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Sale Transaction, the pursuit of Confirmation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.

---

[4]    For the avoidance of doubt, the releases set forth in the Plan of any party (other than a Sale Release Party) shall remain subject in all respects to the Plan Investigation.

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release: (1) any obligations of any party or Entity under the Plan, the Transaction Documents, the Confirmation Order, any post-Effective Date transaction contemplated by the Plan or the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, the Transaction Documents (including the Asset Purchase Agreement and any documents in connection therewith), or the Wind-Down Transactions; or (2) any matters retained by the Debtors pursuant to the Schedule of Retained Causes of Action.**

C.      *Releases by the Releasing Parties*[5]

**Except as otherwise expressly set forth in this Plan or the Confirmation Order, effective as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed hereby to be, fully, conclusively, absolutely, unconditionally, irrevocably, and forever released by each Releasing Party from any and all claims and Causes of Action, whether known or unknown, including any derivative claims, asserted or assertable on behalf of any of the Debtors or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof or otherwise), the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, the purchase, sale, or rescission of any security of the Debtors, any Avoidance Actions (but excluding Avoidance Actions brought as counterclaims or defenses to Claims asserted by the Debtors), intercompany transactions, the Chapter 11 Cases, the formulation, preparation, dissemination, solicitation, negotiation, entry into, or filing of the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, or any Wind-Down Transaction, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, any of the Wind-Down Transactions, the Chapter 11 Cases, the filing of the Chapter 11 Cases, the pursuit of the Sale Transaction, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for any claims arising from or related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence.**

**Notwithstanding anything to the contrary in the foregoing, the Third-Party Release does not release (1) any obligation of any party or Entity arising under the Transaction Documents on or after the date of entry of the Sale Order, (2) any obligations arising on or after the Effective Date (solely to the extent such obligation does not arise from any acts or omissions prior to the Effective Date) of any party or Entity under the Transaction Documents, the Plan, the Confirmation Order, or any post-Effective Date transaction contemplated by the Plan or the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Wind-Down Transactions, or (3) the rights of any Holder of Allowed Claims to receive distributions under the Plan.**

D.      *Exculpation*

**Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur any liability for, and each such party shall be exculpated from any Cause of Action for any claim related to any act or omission occurring between the Petition Date and the Effective Date in connection with, relating to or arising out of the Chapter 11 Cases prior to the Effective Date, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement, the Transaction Documents, the Plan, the Plan Supplement, any other Definitive Document, or any Wind-Down Transaction, or any contract, instrument,**

---

[5]    For the avoidance of doubt, the releases set forth in the Plan of any party (other than a Sale Release Party) shall remain subject in all respects to the Plan Investigation.

release, or other agreement or document created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Transaction Documents, any other Definitive Document, any of the Wind-Down Transactions, the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of the Sale Transaction, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, except for claims related to any act or omission that is determined in a Final Order to have constituted gross negligence, willful misconduct, or actual fraud. Notwithstanding anything to the contrary in the foregoing, the exculpation set forth above does not exculpate any obligations arising on or after the Effective Date of any Person or Entity under the Plan, any post-Effective Date transaction contemplated by the Wind-Down Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Notwithstanding anything herein to the contrary, nothing in this Plan shall affect, limit, or release in any way any obligations of any party or Entity under the Plan, the Transaction Documents, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or the Transaction Documents (including the Asset Purchase Agreement and any documents in connection therewith).

E.     *Injunction*

In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors. Section 1141(c) of the Bankruptcy Code nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors.  Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims, Interests, or Causes of Action in the Debtors, shall be precluded and permanently enjoined on and after the Effective Date, from taking any of the following actions against the Debtors, the Liquidating Trust (but solely to the extent such action is brought against the Debtors or the Liquidating Trust to directly or indirectly recover upon any property of the Estates, upon the Effective Date), the Exculpated Parties, the Released Parties, and any successors, assigns, or representatives of such Persons or Entities, solely with respect to any Claims, Interests, or Causes of Action that will be or are treated by the Plan:  (a) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (c) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (d) asserting any right of setoff that was not asserted pre-confirmation or subrogation of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date; and (e) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released, compromised, or settled pursuant to the Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, managers, principals, and direct and indirect Affiliates, in their capacities as such, shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article VIII.E.

F.     *Protections Against Discriminatory Treatment*

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtors, or another Entity with whom the Debtors have

been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Effective Date), or has not paid a debt that is addressed under the Plan or otherwise in the Chapter 11 Cases.

G.    *Document Retention*

On and after the Effective Date, the Debtors or the Liquidating Trustee, as applicable, shall preserve all books, records, electronically stored information, and other documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Debtors, Liquidating Trustee, and applicable law.

H.    *Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of Allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:  (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

I.    *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

J.    *Good Faith Solicitation*

All persons within the definition of Exculpated Parties who solicited votes on the Plan are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code as well as the exculpation and limitation of liability provisions set forth in this Article VIII of the Plan.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

A.    *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1.    to the extent applicable, the Bankruptcy Court shall have entered the Sale Order and the Sale Order shall not have been reversed, stayed, modified or vacated on appeal;

2.    the Bankruptcy Court shall have entered the Store Closing Order and the Store Closing Order shall not have been reversed, stayed, modified or vacated on appeal;

3.    the Bankruptcy Court shall have entered the Confirmation Order and the Confirmation Order shall not have been reversed, stayed, modified or vacated on appeal;

4.    the Professional Fee Escrow Account shall have been funded with the Professional Fee Escrow Amount;

5.    all actions, documents, and agreements necessary to implement and consummate the Plan shall have been effected and executed;

6.    the Debtors shall have implemented the Sale Transaction, any Wind-Down Transactions, and all transactions contemplated herein, in a manner consistent in all respects with the Plan (including the Wind-Down Transactions Memorandum), pursuant to documentation acceptable to the Debtors and the Required Consenting Stakeholders;

7.    the Debtors shall have paid all fees and expenses of the Prepetition Term Loan Agents and the Prepetition ABL Agent and their advisors accrued through the Effective Date of the Plan; and

8.    any and all requisite governmental, regulatory, and third party approvals and consents shall have been obtained, not be subject to unfulfilled conditions, and be in full force and effect, and all applicable waiting periods shall have expired or terminated without any action being taken or threatened by any competent authority that would restrain, prevent, or otherwise impose materially adverse conditions on the Wind-Down Transactions.

B.    *Waiver of Conditions*

The conditions to Confirmation and to Consummation set forth in Article IX may be waived by the Debtors, with the prior written consent of the Required Consenting Stakeholders, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

C.    *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in sections 1101 and 1127 of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

D.    *Effect of Failure of Conditions*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by the Debtors, any Holders, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.  Notwithstanding the foregoing, the non-Consummation of the Plan shall not require or result in the voiding, rescission, reversal, or unwinding of (a) the DIP Order, including, without limitation, any releases provided for therein, or (b) the Sale Transactions or the revocation of the Debtors' authority under any Sale Order to consummate the Sale Transaction, and all provisions of the Transaction Documents that survive termination thereof shall remain in effect in each case, in accordance with the terms thereof.

**ARTICLE X.**
**MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN**

A.    *Modification and Amendments*

Except as otherwise specifically provided in the Plan or the Confirmation Order, the Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, if permissible under section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, not re-solicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend, or modify the Plan with respect to such Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan; *provided however*, that the Debtors or the Liquidating

Trustee, as the case may be, shall not amend or modify the Plan in a manner that adversely affects the treatment of any Class of Claims and/or Interests without resoliciting such Class of Holders of Claims or Interests.

B.      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof, but before entry of the Confirmation Order, are approved pursuant to section 1127(a) of the Bankruptcy Code and shall constitute a finding that such modifications or amendments to the Plan do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to File subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims or Interests, (b) prejudice in any manner the rights of such Debtor or any other Entity, or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured, or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to (for the avoidance of doubt, notwithstanding whether such treatment arises under the terms of the Plan or the Transaction Documents): (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; *provided* that to the extent such a matter does not constitute a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), the Bankruptcy Court shall not have jurisdiction over such dispute; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Liquidating Trustee amending, modifying, or supplementing, after the Effective Date, pursuant to Article V, the Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.      ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

8.      enforce the terms of the Transaction Documents and any related documents or schedules thereto (if applicable) and enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.J.1;

13.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14.     determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15.     enter an order or final decree concluding or closing any of the Chapter 11 Cases;

16.     adjudicate any and all disputes arising from or relating to Plan Distributions;

17.     consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Sale Order, or the Confirmation Order, including disputes arising under agreements (including the Asset Purchase Agreement), documents, or instruments executed in connection therewith;

20.     hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Wind-Down Transactions, whether they occur before, on, or after the Effective Date;

21.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including, without limitation, any request by the Debtors or the

Liquidating Trustee on behalf of the Liquidating Trust (as applicable) for an expedited determination of tax under section 505(b) of the Bankruptcy Code);

22.     hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, injunctions, and releases granted in connection with and under the Plan, including under Article VIII;

23.     Consider requests for extensions of the term of the Liquidating Trust.

24.     enforce all orders previously entered by the Bankruptcy Court; and

25.     hear any other matter over which the Bankruptcy Court has jurisdiction under the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

*A.      Immediate Binding Effect*

Subject to Article IX.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Liquidating Trustee, and any and all Holders of Claims against or Interests in the Debtors (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

*B.      Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Liquidating Trustee, as applicable, and all Holders receiving Plan Distributions and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

*C.      Payment of Statutory Fees*

Quarterly Fees due and payable prior to the Effective Date shall be paid by the Debtors in full in Cash on the Effective Date. After the Effective Date, the Liquidating Trustee shall pay any and all Quarterly Fees in full in Cash when due and payable. Promptly after the Effective Date, the Debtors or the Liquidating Trustee and any other authorized parties who have been charged with administering the Plan, shall file a Notice of Occurrence of the Effective Date, identifying the Effective Date and indicating that it has occurred. The Debtors shall file all monthly operating reports relating to the time period prior to the Effective Date when they become due, using UST Form 11-MOR. After the Effective Date, the Liquidating Trustee shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. The Liquidating Trustee shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code. The U.S. Trustee shall not be required to file any Proof of Claim in the case and shall not be treated as providing any release under the Plan.

*D.      Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to

be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

E.      *Successors and Assigns*

      The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

F.      *Notices*

      To be effective, all notices, requests and demands to or upon the Debtors shall be in writing.  Unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, addressed to the following:

    1.    <u>If to the Debtors, to:</u>

        Claire's Holdings LLC
        2400 West Central Road
        Hoffman Estates, Illinois 60192
        Attention:        Brendan McKeough
        Email address:    Brendan.McKeough@claires.com

        with copies (which shall not constitute notice) to:

        Kirkland & Ellis LLP
        601 Lexington Avenue
        New York, New York 10022
        Attention:        Joshua A. Sussberg, P.C.
                              Allyson B. Smith
        Email address:    joshua.sussberg@kirkland.com
                              allyson.smith@kirkland.com

        -and-

        Kirkland & Ellis LLP
        333 West Wolf Point Plaza
        Chicago, Illinois 60654
        Attention:         Alexandra F. Schwarzman, P.C.
                              Robert A. Jacobson
          Email address:   alexandra.schwarzman@kirkland.com
                              rob.jacobson@kirkland.com

        -and-

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 N. King Street
Wilmington, Delaware 19801
Attention:      Daniel J. DeFranceschi
                Paul N. Heath
                Zachary I. Shapiro
                Clint M. Carlisle
                Colin A. Meehan
Email address:   defranceschi@rlf.com
                heath@rlf.com
                shapiro@rlf.com
                carlisle@rlf.com
                meehan@rlf.com

2.   <u>If to the Liquidating Trustee, to:</u>

META Advisors, LLC
3 World Trade Center 175 Greenwich Street, 67th Floor
New York, New York 10007
Attention:      James S. Carr
                Kristin S. Elliott
                Dana P. Kane
                Grace Marie Codispoti
Email address:   jcarr@kelleydrye.com
                kelliott@kelleydrye.com
                dkane@kelleydrye.com
                gcodispoti@kelleydrye.com

3.    <u>If to the Committee, to:</u>

> MCDERMOTT WILL & SCHULTE LLP
> One Vanderbilt Avenue
> New York, NY, 10017
> Attention:        Darren Azman
>                       Kristin K. Going
>                       Stacy A. Lutkus
> Email address:    dazman@mwe.com
>                       kgoing@mwe.com
>                       salutkus@mwe.com
>
> -and-
>
> COLE SCHOTZ P.C.
> 500 Delaware Avenue, Suite 600
> Wilmington, DE 19801 Attention:   Justin R. Alberto
>                       Stacy L. Newman
>                       Michael E. Fitzpatrick
>                       Melissa M. Hartlipp
> Email address:    jalberto@coleschotz.com
>                       snewman@coleschotz.com
>                       mfitzpatrick@coleschotz.com
>                       mhartlipp@coleschotz.com
>
> -and-
>
> COLE SCHOTZ P.C.
> 1325 Avenue of the Americas,
> 19th Floor New York, NY 10019
> Attention:        Seth Van Aalten
>                       Sarah A. Carnes
> Email address:    svanalten@coleschotz.com
>                       scarnes@coleschotz.com

After the Effective Date, the Liquidating Trustee may notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Liquidating Trustee is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to (i) those Entities who have Filed such renewed requests; and (ii) those Entities whose rights are materially affected by such documents.

G.      *Entire Agreement*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

H.      *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Claims and Noticing Agent at https://omniagentsolutions.com/Claires or the Bankruptcy Court's website at http://www.deb.uscourts.gov/. To the extent any exhibit or document is inconsistent

with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

I.      *Non-Severability of Plan Provisions*

The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors, consistent with the terms set forth herein; and (3) non-severable and mutually dependent.

J.      *Closing of Chapter 11 Cases*

The Liquidating Trustee shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and by Local Rule 3022-1, including the motion required by Local Rule 3022-1, and any applicable order necessary to close the Chapter 11 Cases.

K.      *Waiver or Estoppel.*

Each Holder of a Claim or Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, secured, or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court prior to the Confirmation Date.

L.      *Conflicts*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan or Plan Supplement, the Confirmation Order shall control.

M.      *Sale Order*

Notwithstanding anything to the contrary herein, nothing in this Plan shall affect, impair, or supersede the Sale Order, which remains in full force and effect and governs in the event of any inconsistency with the Plan.

*[Remainder of page intentionally left blank]*

Respectfully submitted,

Date: October 21, 2025

Claire's Holdings LLC
on behalf of itself and all other Debtors

By:    */s/ Christopher T. Cramer*
Name:  Christopher T. Cramer
Title:   Chief Executive Officer,
       Chief Operating Officer, and
       Chief Financial Officer,
       Claire's Holdings LLC